**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SVOTHI INC.,

              Plaintiff,

       v.

DARK ALLEY MEDIA, LLC and
ROBERT FELT,

             Defendants.

Civil Action No. 25 CV 00333

**ANSWER WITH COUNTERCLAIMS**

---

**ANSWER OF DEFENDANTS DARK ALLEY MEDIA, LLC AND ROBERT FELT TO PLAINTIFF'S COMPLAINT WITH AFFIRMATIVE DEFENSES AND COUNTERCLAIM WITH JURY DEMAND**

Defendants Dark Alley Media, LLC ("DAM") and Robert Felt, by their attorneys, Ravi Ivan Sharma, P.C., as and for their Answer to the Complaint of Plaintiff, Affirmative Defenses,[1] and Counterclaims against SVOTHI, INC., respectfully allege as follows:

    1.    This is an action for trademark infringement.

    **ANSWER:   Defendants  admit  that  Plaintiff  has  made  the**

---

[1] **Matter subject to Arbitration**: Defendants assert that this matter must be stayed pending arbitration involving the parties, have plead such as an affirmative defense to the Complaint to preserve their right to arbitration, and intend to move the court for a stay for such purpose. Defendants are filing this Answer, notwithstanding that this matter should be stayed pending arbitration, to assert their Counterclaims against Plaintiff and to protect the substantial goodwill that Dark Alley Media, LLC has developed over approximately 17 years in its distinctive word mark and logo alleged in the Complaint and the Counterclaim as the RFC Marks. Accordingly, this Answer does not wave Defendant's right to move the Court to stay this matter pending arbitration.

**allegation of Paragraph 1 of the Complaint regarding the reason it claims to have filed its Complaint but deny Plaintiff's claims have merit and denies the allegations in Paragraph 1 of the Complaint.**

2.    For more than two decades, Plaintiff SVOTHI, Inc. ("<u>SVOTHI</u>") has been a leader in the adult online content industry, operating a digital platform for the delivery of premium adult content. SVOTHI runs adult websites and other technology channels under the common-law marks "RFC"; "RFC.com"; and <span style="background:black;color:red">**RFC**</span> (together, the "<u>RFC Marks</u>").

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of the first sentence of paragraph 2 of the Complaint. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations that Plaintiff "runs" anything of the second sentence of paragraph 2 of the Complaint. Defendants deny any implication of the allegations of the second sentence of paragraph 2 of the Complaint that Plaintiff has any cognizable rights to the RFC Marks referenced.**

3.    SVOTHI has invested millions of dollars and decades of effort to ensure that consumers associate the RFC Marks with SVOTHI and its premium adult content.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 3 of**

the Complaint.

4.      Defendants Dark Alley Media, LLC ("Dark Alley") and its principal Mr. Robert Felt, an adult content creator professionally known as Owen Hawk ("Mr. Felt" and, together with Dark Alley, "Defendants"), have affixed exact reproductions of the RFC Marks to Defendants' own websites and video content. Defendants' conduct deliberately trades on Plaintiff's RFC Marks and goodwill, and is intended to deceive consumers into believing that SVOTHI is the source of, or associated, with Defendants' content and businesses.

> **ANSWER: Defendants admit the allegations of the first sentence of paragraph 4 of the Complaint but deny any affixing to video content. Defendants deny the allegations of the second sentence of paragraph 4 of the Complaint.**

5.      Defendants' conduct is causing irreparable harm to SVOTHI in violation of the Lanham Act and state law. Plaintiff seeks injunctive relief against Defendants' ongoing, unauthorized conduct; damages; attorney's fees; and other appropriate relief described below

> **ANSWER: Defendants deny the allegations of the first sentence of paragraph 5 of the Complaint. Defendants deny that Plaintiff is entitled to the judgment and relief prayed for in the allegations of the second sentence of paragraph 5 and denies the remainder of the allegations of the second sentence of paragraph 5 of the complaint.**

**PARTIES**

6.      Plaintiff SVOTHI, Inc. is a corporation organized under the laws of the State of New York.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 6 of the Complaint.**

7.      Defendant Dark Alley Media, LLC is a limited liability company organized under the laws of the State of New York.

**ANSWER: Defendants admit the allegations of paragraph 4 of the Complaint.**

8.      Defendant Mr. Robert Felt is a natural person who resides in this District.

**ANSWER: Defendants admit the allegations of paragraph 8 of the Complaint.**

9.      Upon information and belief, Defendant Mr. Robert Felt is the sole member and manager of Defendant Dark Alley Media, LLC.

**ANSWER: Defendants deny the allegations of paragraph 9 of the Complaint.**

10.     Defendants conduct substantial business in New York State and within this District, including the unauthorized and infringing conduct complained of herein. Defendant Dark Alley Media, LLC maintains its headquarters and principal office in the County of New York and manages the owenhawk.com website from within this District. Defendant Mr. Felt operates

and directs the operations of Dark Alley Media, LLC and the owenhawk.com website from the company's headquarters, and frequently within the State of New York and this District to, among other things, manage and operate Defendant Dark Alley Media, LLC's digital properties and to produce video content for distribution, including through Dark Alley Media, LLC's digital properties and the owenhawk.com website. Moreover, Defendant Mr. Felt operates his X (formerly Twitter) account @owenhawkxxx within the State of New York and publishes its content to users within the State of New York.

> **ANSWER: Defendants admit the allegations of the first part of the first sentence of paragraph 10 of the Complaint. Defendants deny the allegations of the second part of the first sentence of paragraph 10 of the Complaint. Defendants admit the allegations of the first part of the second sentence of paragraph 10 of the Complaint. Defendants deny the allegations of the second part of the second sentence of paragraph 10 of the Complaint. Defendants admit the allegations of the third sentence of paragraph 10 of the Complaint. Defendants admit the allegations of the fourth sentence of paragraph 10 of the Complaint.**

11.     On information and belief, other persons or entities whose identities are not yet known to Plaintiff have participated in the willful and wrongful infringement of Plaintiff's RFC Marks.

> **ANSWER: Defendants admit that Plaintiff has made the allegation**

of Paragraph 11 of the Complaint but deny the allegation itself.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over Plaintiff's claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) because Plaintiff's claims arise under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.

**ANSWER: Defendants admit the allegations of paragraph 12 of the Complaint that the Court has subject matter jurisdiction over this case.**

13.    This Court has pendent jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1338(b) because they are "joined with a substantial and related claim under the

… trademark laws" of the United States.

**ANSWER: Defendants admit the allegations of paragraph 13 of the Complaint that the Court has jurisdiction over state law claims in this case.**

14.    This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a) because they are related to claims within the original jurisdiction of this Court.

**ANSWER: Defendants admit the allegations of paragraph 14 of the Complaint that the Court has jurisdiction over state law claims in this case.**

15.    Venue is proper under 28 U.S.C. § 1400(a) and under 28 U.S.C. §

1391(b).

**ANSWER: Defendants admit the allegations of paragraph 15 of the Complaint that the Court has venue in this case.**

16.    This Court has personal jurisdiction over the Defendants pursuant to CPLR 301 and CPLR 302. Dark Alley Media, LLC is headquartered in New York, is essentially at home in New York, and transacts substantial and ongoing business in New York. Mr. Felt resides in New York, manages Dark Alley Media, LLC from and within New York, and routinely travels within the state of New York in connection with his and Dark Alley Media, LLC's businesses and infringing conduct, including the conduct herein alleged.

**ANSWER: Defendants admit that the Court has personal jurisdiction over them for purposes of this case and Defendants admits they have sufficient contacts with New York. Defendants deny the remainder of the allegations in Paragraph 16.**

**PLAINTIFF'S RFC MARKS**

17.    Plaintiff established common-law rights in the RFC Marks no later than 2010 through its public marketing and sale of adult video content and other digital media under and in connection with the RFC Marks.

**ANSWER: Defendants deny the allegations of paragraph 17 of the Complaint.**

18.    Plaintiff has used the RFC Marks continuously since in or about 2010 through its operation of its websites and other properties and services.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 18 of the Complaint because they are indecipherable regarding the meaning and the use of word "used", the meaning and the use of the words "through its operation", and due to the lack of specificity of the words "Plaintiff's websites and other properties and services."**

19.    Plaintiff's RFC Marks are well-known to consumers, including thousands of consumers who pay and subscribe for access to SVOTHI's online video content.

**ANSWER: Defendants admit the allegations of paragraph 19 of the Complaint that the RFC Marks are well-known to consumers. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 19 of the Complaint.**

20.    Plaintiff has spent substantial time, money and effort in building up and developing consumer recognition, awareness and goodwill in the RFC Marks.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 20 of the Complaint.**

21.    The success of Plaintiff's business, and of the RFC Marks and brand, is due in material part to Plaintiff's marketing and promotional efforts. Plaintiff

has spent millions of dollars in the marketing, promotion and sales of adult media offered to consumers under the RFC Marks.

> **ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 21 of the Complaint.**

22.    Plaintiff's success is also due to its earned reputation for high-quality video content, and for scrupulous compliance with the web of laws and regulations that apply to adult media.

> **ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 21 of the Complaint.**

23.    As a result of Plaintiff's efforts and investments, the quality of its media offerings, including online video offerings under the RFC Marks, and Plaintiff's extensive and costly marketing, promotion, compliance and sales efforts, members of the public have become familiar with Plaintiff's brand and with the RFC Marks, and they associate them exclusively with Plaintiff.

> **ANSWER: Defendants deny the allegations of paragraph 23 of the Complaint that members of the public associate the RFC Marks exclusively with Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of all the other allegations of paragraph 23 of the Complaint.**

24.    Plaintiff has spent extensive time and money on the development

and marketing of its adult websites offered to the public under and in connection with the RFC Marks. The public associates the RFC Marks with Plaintiff's websites and other digital media businesses due to the common and continuous use of the RFC Marks. The goodwill and positive reputation that Plaintiff has acquired through the continued success of its ventures is of value to Plaintiff in its marketing and promotion of its websites and media technology.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 24 of the Complaint.**

25.    Customers and potential customers; business partners including content creators and networked distribution platforms; and compliance-involved entities including financial institutions and regulators have all come to associate the RFC Marks exclusively with Plaintiff as a reputable source of premium, compliant and ethical adult video content.

**ANSWER: Defendants deny the allegations of paragraph 25 of the Complaint that the people and entities alleged associate the RFC Marks exclusively with Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of all the other allegations of paragraph 25 of the Complaint.**

26.    The RFC Marks are distinctive and have acquired additional distinctiveness

through Plaintiff's marketing and promotional efforts.

**ANSWER: Defendants admit the allegations of paragraph 26 of the**

**Complaint that the RFC Marks are distinctive and have acquired additional distinctiveness. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 26 of the Complaint.**

27.    Plaintiff has acquired valuable reputation and goodwill among the public as a result of the association of the RFC Marks with Plaintiff's premium, ethical and compliant digital media.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 27 of the Complaint.**

28.    Plaintiff endeavors to protect its reputation, intellectual property, and other highly valuable commercial interests.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 28 of the Complaint.**

29.    Plaintiff has not authorized Defendants to use the RFC Marks.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 28 of the Complaint.**

**DEFENDANTS' TRADEMARK INFRINGEMENT**

30.    Starting in or about December 2024 and early January 2025, Defendants have begun to engage in the sale and distribution in interstate

commerce of goods and services unlawfully using Plaintiff's RFC Marks.

**ANSWER: Defendants deny the allegations of paragraph 30 of the Complaint.**

31.    Defendants are thus engaged in the unauthorized, willful infringement of the RFC Marks.

**ANSWER: Defendants deny the allegations of paragraph 31 of the Complaint.**

32.    On or about January 1, 2025, Defendants added the RFC Marks to their own adult video website owenhawk.com and Defendant Robert Felt added the RFC Marks to his own social media content, including Mr. Felt's X (formerly Twitter) account @owenhawkxxx.

**ANSWER: Defendants admit the allegations of paragraph 32 of the Complaint only to the extent that the RFC Marks were added to owenhawk.com by Defendants.**

33.    For example, beginning on or about January 1, 2025, Defendants displayed Plaintiff's graphical mark RFC without authorization on the homepage of owenhawk.com, side-by-side with Defendants' own graphical mark:

<u>IMAGE FROM DEFENDANTS' OWENHAWK.COM HOMEPAGE</u>[1]



**ANSWER: Defendants admit the allegations of paragraph 33 of the Complaint only to the extent that the RFC Marks were displayed on owenhawk.com. Defendants deny the allegations of paragraph 33 of the Complaint that any mark is Plaintiff's and that any mark was displayed without authorization.**

34.    The unauthorized display of Plaintiff's RFC mark on Defendants' website, and use of the RFC mark as a source indicator for Defendants' digital content, is a willful and unlawful attempt to confuse consumers into believing that Plaintiff is the source of, or has sponsored or approved of, the content created, published or distributed by the Defendants.

**ANSWER: Defendants deny the allegations of paragraph 34 of the Complaint.**

35.    The unauthorized display of Plaintiff's RFC mark next to Defendants' graphical Owen Hawk.com mark and related content is a willful and unauthorized effort to suggest a false connection between Plaintiff and Defendants.

**ANSWER: Defendants deny the allegations of paragraph 35 of the**

**Complaint.**

36.    Other infringing content published on Defendants' websites and media

properties is also unlawful and harmful to Plaintiff.

**ANSWER: Defendants deny the allegations of paragraph 36 of the**

**Complaint.**

37.    The "Contact" page of Defendants' owenhawk.com website, which page

is prominently linked-to and accessible from the owenhawk.com homepage,

displays the following infringing image and text:

IMAGE FROM DEFENDANTS' OWENHAWK.COM CONTACT

PAGE[2]



**ANSWER: Defendants admit the allegations of paragraph 38 of the**

**Complaint only to the extent that the RFC Marks are displayed on**

**owenhawk.com. Defendants deny the allegations of paragraph 37**

**of the Complaint that any mark is infringing.**

38.    The above-depicted contact page from Defendants' website, and the images and text thereon, falsely suggest that the Defendants are operating Plaintiff's online media businesses and the content offered under the RFC Marks; that Plaintiff's online media business is "in the grave" and needs to be "br[ought] … back" from it; and that Defendants are authorized to, or in the process of, soliciting "founding member[s]" for a "new RFC" with the approval and endorsement of Plaintiff SVOTHI. None of those claims is true and none of that conduct is authorized by the Plaintiff.

**ANSWER: Defendants deny the allegations of paragraph 38 of the Complaint.**

39.    Defendant Mr. Felt's X account at @owenhawkxxx is also replete with infringing and unauthorized uses of Plaintiff's RFC Marks.

**ANSWER: Defendants deny the allegations of paragraph 39 of the Complaint.**

40.    Defendant Mr. Felt's X account at @owenhawkxxx displays unprofessional, profane and in some cases unlawful content — including but not limited to depictions of the use of illicit drugs, depictions of non-consensual sexual encounters, depictions of sexual encounters with persons under the influence of intoxicants, and statements endorsing rape and nonconsensual sex — next to and in some cases on the same posts that use, without authorization, the RFC Marks.

**ANSWER: Defendants deny the allegations of paragraph 40 of the Complaint.**

41.    Social media posts on Mr. Felt's @owenhawkxxx account depict Mr. Felt himself visibly under the influence of intoxicating drugs.

**ANSWER: Defendants deny the allegations of paragraph 41 of the Complaint.**

42.    Mr. Felt's illegal and unauthorized use of the RFC Marks next to and in connection with the foregoing content is harmful to Plaintiff because it erodes public confidence in Plaintiff's reputation for, and longstanding commitment to compliance with, legal and regulatory restrictions against (among other things) depictions of drug use and nonconsensual sex.

**ANSWER: Defendants deny the allegations of paragraph 42 of the Complaint.**

43.    A "pinned" X post on @owenhawkxxx invites digital content producers who "filmed studio content … in the last 15 years" to "license it back to [their own] fan sites", thus deliberately and unlawfully attempting to induce adult content producers to breach their agreements with Plaintiff.

**ANSWER: Defendants deny the allegations of paragraph 43 of the Complaint to the extent they allege that that Defendants attempted to induce anyone to breach any agreements with Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 18 of the Complaint that anyone has agreements with Plaintiff.**

44.    Defendant Mr. Felt is a moving, active and conscious force behind

Defendant Dark Alley Media, LLC's infringing conduct because, among other things, he directs and authorizes that conduct, and because he single-handedly operates the X account @owenhawkxxx which participates in and contributes to Dark Alley Media, LLC's infringing conduct.

**ANSWER: Defendants deny the allegations of paragraph 44 of the Complaint to the extent they allege that any conduct is infringing, that Mr. Felt authorizes infringing conduct and that X account @owenhawk participates in and contributes to any infringing conduct.**

45.    Mr. Felt is also the sole member, manager, employee and officer of Dark Alley Media, LLC.

**ANSWER: Defendants deny the allegation of paragraph 45 of the Complaint.**

46.    Mr. Felt has the authority to bind Dark Alley Media, LLC in transactions with third parties, including because he is the sole member, manager, employee and officer of Dark Alley Media, LLC, and because he contracts with producers and adult artists to license their work, images, and content for distribution through Dark Alley Media, LLC's business and websites.

**ANSWER: Defendants admit that Mr. Felt has the authority to bind Dark Alley Media, LLC in transactions but deny that the list of reasons why such may be so as alleged in paragraph 46 is fully accurate or correct.**

47.    Defendants' deliberate and unauthorized misappropriation and use of Plaintiff's RFC Marks is confusing to consumers and is intended to deceive the public into believing that Defendants' enterprises and media are affiliated with Plaintiff.

**ANSWER: Defendants deny the allegations of paragraph 47 of the Complaint.**

48.    Through their unlawful conduct, Defendants seek to gain the benefit of the goodwill and reputation for quality and compliance that Plaintiff has established through its extensive efforts to build its brand and the RFC Marks.

**ANSWER: Defendants deny the allegations of paragraph 48 of the Complaint.**

49.    Through their infringing use of the RFC Marks, Defendants are irreparably harming Plaintiff's reputation and goodwill, infringing and diluting Plaintiff's trademark, improperly profiting from Plaintiff's intellectual property, and engaging in unfair competition.

**ANSWER: Defendants deny the allegations of paragraph 49 of the Complaint.**

50.    Plaintiff is irreparably harmed by the false association and link between Defendants' adult media business and Plaintiff's businesses, including those conducted under the RFC Marks.

**ANSWER: Defendants deny the allegations of paragraph 50 of the Complaint.**

51.    Defendants' conduct is willful, deliberate, and in bad faith.

**ANSWER: Defendants deny the allegations of paragraph 51 of the Complaint.**

### COUNT I: TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT 15 U.S.C. § 1125(a)

52.    Plaintiff realleges each and every allegation set forth in the preceding paragraphs as if more fully set forth herein.

**ANSWER: Defendants repeat, and fully incorporate by reference, their answers to paragraphs 1 through 51 of the Complaint.**

53.    Plaintiff has priority of rights in the RFC Marks.

**ANSWER: Defendants deny the allegation of paragraph 53 of the Complaint.**

54.    Defendants are intentionally and willfully, or acting with willful blindness, using Plaintiff's RFC Marks in connection with Defendants' adult websites, social media accounts, and other media businesses, for Defendants' financial gain.

**ANSWER: Defendants deny the allegations of paragraph 54 of the Complaint.**

55.    Defendants' use of the RFC Marks without Plaintiff's consent constitutes trademark infringement in violation of 15 U.S.C. § 1125, in that, among other things, such use is likely to cause confusion, deception, and mistake among the consuming public and industry as to the origin, approval or sponsorship of goods, services and commercial activities.

**ANSWER: Defendants deny the allegations of paragraph 55 of the**

Complaint.

56.     As a direct and proximate result of the foregoing acts, Plaintiff has been damaged and has suffered, and will continue to suffer, significant damages, in an amount to be determined at trial.

**ANSWER: Defendants deny the allegations of paragraph 55 of the Complaint.**

57.     Defendants' actions have caused and — unless enjoined by this Court — will continue to cause irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law. Plaintiff is therefore entitled to injunctive relief enjoining and restraining Defendants from use of the RFC Marks or any mark that is confusingly similar thereto.

**ANSWER: Defendants deny the allegations of paragraph 57 of the Complaint.**

## COUNT II:   TRADEMARK INFRINGEMENT UNDER NEW YORK COMMON LAW

58.     Plaintiff realleges each and every allegation set forth in the preceding paragraphs as if more fully set forth herein.

**ANSWER: Defendants repeat, and fully incorporate by reference, their answers to paragraphs 1 through 57 of the Complaint.**

59.     Defendants are intentionally and willfully, or acting with willful blindness, using Plaintiff's RFC Marks in connection with Defendants' adult websites, social media accounts, and other media businesses, for Defendants' financial gain.

**ANSWER: Defendants deny the allegations of paragraph 59 of the Complaint.**

60.    Defendants' use of the RFC Marks without Plaintiff's consent constitutes trademark infringement in violation of New York common law in that, among other things, such use is likely to cause confusion, deception, and mistake among the consuming public and industry as to the source, approval or sponsorship of goods, services and commercial activities.

**ANSWER: Defendants deny the allegations of paragraph 60 of the Complaint.**

61.    As a direct and proximate result of the foregoing acts, Plaintiff has been damaged and has suffered, and will continue to suffer, significant damages in an amount to be determined at trial.

**ANSWER: Defendants deny the allegations of paragraph 61 of the Complaint.**

62.    Defendants' actions have caused and — unless enjoined by this Court — will continue to cause irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law. Plaintiff is therefore entitled to injunctive relief enjoining and restraining Defendants from use of Plaintiff's Marks or any mark that is confusingly similar thereto.

**COUNT III: UNFAIR COMPETITION**

63.    Plaintiff realleges each and every allegation set forth in the preceding paragraphs as if more fully set forth herein.

**ANSWER: Defendants repeat, and fully incorporate by reference, their answers to paragraphs 1 through 62 of the Complaint.**

64.    With knowledge and/or constructive knowledge of Plaintiff's exclusive rights to the RFC Marks, Defendants intended to and did misappropriate Plaintiff's labors and expenditures in creating such marks and Plaintiff's investment in and exclusive use of the marks by facilitating the distribution of goods and services for Defendant's own financial gain.

**ANSWER: Defendants deny the allegations of paragraph 64 of the Complaint.**

65.    Defendants' use of the RFC Marks without Plaintiff's consent is likely to cause confusion, deception, and mistake among the consuming public and industry as to the source, approval or sponsorship of goods, services and commercial activities. Accordingly, Defendants have engaged in unfair competition in violation of New York common law.

**ANSWER: Defendants deny the allegations of paragraph 65 of the Complaint.**

66.    Defendants engaged in these acts with bad faith and intent to profit from the name, goodwill, and strong brand recognition associated with Plaintiff and its marks.

**ANSWER: Defendants deny the allegations of paragraph 66 of the Complaint.**

67.    As a direct and proximate result of the foregoing acts, Plaintiff has

been damaged and has suffered, and will continue to suffer, significant damages in an amount to be determined at trial.

**ANSWER: Defendants deny the allegations of paragraph 67 of the Complaint.**

68.    Defendants' conduct was knowing, intentional, and in reckless disregard of Plaintiff's exclusive rights in its marks. Pursuant to New York common law, Plaintiff is therefore entitled to an award of punitive damages in an amount to be determined at trial.

**ANSWER: Defendants deny the allegations of paragraph 68 of the Complaint.**

69.    Plaintiff is also entitled to injunctive relief enjoining and restraining Defendants and all persons acting in concert with Defendants from use of Plaintiff's Marks or any other marks that are confusingly similar thereto.

**ANSWER: Defendants deny the allegations of paragraph 69 of the Complaint.**

## GENERAL DENIAL

Defendants deny each factual allegation in the Complaint that is not specifically admitted or otherwise addressed in the preceding paragraphs and demands strict proof thereof.

## ANSWER TO PLAINTIFF'S REQUEST FOR RELIEF

Defendants deny that Plaintiff is entitled to the judgment and relief prayed for in paragraphs 1, 2, 3, 4, 4a, 4b, 4c, 4d, 4e, 4f, 4g, 4h, 4i, 4j, 4k, 5, 6, 7, 8, 9, 10, and 11 of the Prayer for Relief of the Complaint.

**AFFIRMATIVE AND OTHER DEFENSES**

Defendant states the following affirmative and other defenses:

1. **Failure to State a Claim**. The Complaint fails to state a claim upon which relief can be granted. Plaintiff has not sufficiently alleged facts to establish the elements of trademark infringement, unfair competition, or any other cause of action under the Lanham Act or New York common law.

2. **Lack of Standing**: The plaintiff does not have the legal right to bring the lawsuit.

3. **Statute of Limitations**. The plaintiff's lawsuit is barred because it was not filed within the legally prescribed time limit.

4. **No Likelihood of Confusion**. Plaintiff cannot establish a likelihood of confusion, which is a necessary element of its trademark infringement claim under the Lanham Act. Defendant's use of the trademarks does not mislead or confuse consumers as to the source, sponsorship, or affiliation of the goods or services.

5. **Abandonment**. Plaintiff has abandoned any rights it may have had in the trademarks by failing to exercise control over their use.

6. **Unclean Hands**. Plaintiff's claims are barred by the doctrine of unclean hands due to its inequitable conduct, including any misrepresentation, concealment, or bad faith actions related to the trademarks or the business relationship between the parties.

7. **Laches**. Plaintiff's claims are barred by the doctrine of laches due to its unreasonable delay in asserting its rights, which has prejudiced Defendant. Plaintiff's delay in bringing this action has allowed Defendant to invest time, money, and resources in the use of the trademarks.

8. **Estoppel**. Plaintiff is estopped from asserting its claims due to its prior conduct, representations, or omissions, which led Defendant to reasonably rely on the belief that Plaintiff had no objection to Defendant's use of the trademarks.

9. **Acquiescence**. Plaintiff's claims are barred by the doctrine of acquiescence because Plaintiff knowingly allowed Defendant to use the trademarks without objection for an extended period, thereby consenting to such use.

10. **Failure to Mitigate Damages**. Plaintiff has failed to mitigate its damages, if any, by not taking reasonable steps to address the alleged trademark issues in a timely manner.

11. **Injury to Business Reputation or Dilution Not Established**. Plaintiff has failed to demonstrate any likelihood of injury to business reputation or dilution of the distinctive quality of its marks, as required under New York General Business Law § 360-L.

12. **No Damages**. Plaintiff has not suffered any actual damages as a result of Defendant's actions. Plaintiff's claims for relief are speculative and unsupported by evidence.

13. **Non-Infringement**: The defendant's actions do not constitute trademark infringement.

14. **Priority of Use**: The defendant has prior use of the trademark, which takes precedence over the plaintiff's claim.

## AFFIRMATIVE AND OTHER DEFENSES BASED ON THE VIDEOAPP INC. JOINT VENTURE AGREEMENT

15. **The Joint Venture Agreement**. Defendant, Dark Alley Media, LLC ("<u>DAM</u>"), and non-party VideoApp Inc. entered into a written joint venture agreement (the "<u>JV Agreement</u>") to memorialize their ongoing business relationship which had been ongoing for approximately ten years at such time. The Agreement established a joint venture for the purpose of marketing and selling pay-per-view videos produced by DAM on a website maintained and/or administered by VideoApp Inc.

16. **Ownership of Trademarks**. The Agreement explicitly states that the trademarks affixed to the videos and the websites that marketed and sold the views of the videos through the joint venture, which consist of the identical marks alleged in the Complaint (the "RFC Marks") were the property of the joint venture itself. The Agreement further provided that, in the event of a breach by VideoApp Inc. resulting

in termination of the Agreement, all rights to the RFC Marks would transfer to DAM.

17. **Affiliation Between Plaintiff and VideoApp Inc.** Plaintiff Svothi is an affiliate of VideoApp Inc., as evidenced by their shared address, shared attorney, shared ownership, use of the same d/b/a, similar website evidencing the same control and function, and the fact that Plaintiff was the payor on checks to DAM pursuant to profit shares due DAM from the proceeds of the exploitation of DAM's videos on the websites under the Agreement. Despite this close affiliation, Plaintiff was not a party to the Agreement, nor was it identified as having any independent rights to the RFC Marks.

18. **Termination of the Joint Venture.** Following a dispute between the parties, VideoApp Inc., through letters sent by Plaintiff's attorney, purported to terminate the Agreement, alleging breach by DAM. DAM, in turn, alleged breach by VideoApp Inc. and also terminated the Agreement. DAM subsequently initiated arbitration proceedings against VideoApp Inc. in accordance with the Agreement's arbitration clause in order to obtain payment due it from VideoApp Inc. and to establish that the termination of the Agreement was due to VideoApp Inc.'s breach and a ruling that therefor DAM is the owner the RFC Marks.

19. **Plaintiff's Claims.** Plaintiff filed this action, asserting ownership of the trademarks and alleging trademark infringement and unfair competition under the Lanham Act and New York common law. Plaintiff's claims are inconsistent with the

terms of the Agreement, which govern the ownership and use of the RFC Marks, and with Plaintiff's role as an affiliate of VideoApp Inc.

20. **Defendant's Position**. Defendant contends that Plaintiff is either the alter ego of VideoApp Inc. or a co-party in interest with VideoApp Inc. and is therefore bound by the terms of the Agreement, including the arbitration clause and the provisions regarding RFC Marks ownership.

21. **Lack of Standing**. Plaintiff lacks standing to bring this action because the Agreement identifies VideoApp Inc. as the party to the joint venture and the owner of the RFC Marks. Plaintiff, as an affiliate of VideoApp Inc., has no independent legal interest in the trademarks and cannot assert claims based on them.

22. **Alter Ego Doctrine**. Plaintiff is the alter ego of VideoApp Inc., as evidenced by their shared address, shared attorney, shared ownership, use of the same d/b/a, similar website evidencing the same control and function, and the fact that Plaintiff was the payor on checks to DAM under profit shares due DAM from the proceeds of the exploitation of DAM's videos on the websites under the Agreement. As such, Plaintiff is bound by the terms of the Agreement, including the arbitration clause and the provisions regarding the RFC Marks ownership.

23. **Estoppel**. Plaintiff is estopped from asserting ownership of the trademarks because the Agreement explicitly states that the RFC Marks were the property of the joint

venture. Plaintiff, as an affiliate of VideoApp Inc., cannot now contradict the terms of the Agreement.

24. **Waiver**. Plaintiff has waived any claim to common-law trademark rights to the RFC Marks by failing to assert such rights during the 15-year-long joint venture and by accepting the terms of the Agreement through its affiliation with VideoApp Inc.

25. **Arbitration and Forum Selection**. Plaintiff's claims are subject to mandatory arbitration under the Agreement, which requires disputes to be resolved in arbitration in New York City. As an alter ego or affiliate of VideoApp Inc., Plaintiff is bound by this arbitration clause.

26. **Unclean Hands**. Plaintiff's claims are barred by the doctrine of unclean hands due to its misrepresentation or concealment of its role in the joint venture and its attempt to circumvent the terms of the Agreement by asserting ownership of the RFC Marks.

27. **Fraud or Misrepresentation**. Plaintiff, through its affiliation with VideoApp Inc., engaged in fraud or misrepresentation by inducing Defendant to enter into the Agreement under the belief that VideoApp Inc. was the sole party in interest, while concealing Plaintiff's alleged role as the operator of the website before and during the term of the joint venture and the Agreement.

28. **Failure to State a Claim**. The Complaint fails to state a claim upon which relief can be granted because the Agreement governs the ownership of the RFC Marks, and Plaintiff has no independent rights outside of that Agreement.

29. **Preemption by Contract**. The Agreement preempts any common-law claims to the RFC Marks, as the Agreement explicitly governs the ownership and use of the RFC Marks.

30. **Laches**. Plaintiff's claims are barred by laches due to its delay in asserting ownership of the RFC Marks, which has prejudiced Defendant by allowing the joint venture to operate for approximately 15 years under the terms of the Agreement.

31. **Ownership by Defendant**. Under the terms of the Agreement, Defendant is the rightful owner of the RFC Marks due to the alleged breach by VideoApp Inc., which triggered the provision transferring ownership of the RFC Marks to Defendant.

32. **No Likelihood of Confusion**. There is no likelihood of confusion under the Lanham Act because Defendant's use of the RFC Marks is consistent with the terms of the Agreement and does not mislead consumers.

33. **Good Faith Use**. Defendant's use of the trademarks was in good faith and in accordance with the Agreement, precluding any claim of unfair competition or infringement.

34. **Failure to Mitigate Damages**. Plaintiff failed to mitigate its damages, if any, by not addressing the alleged trademark issues during the operation of the joint venture of which it had knowledge at all times.

35. **Preclusion by Arbitration**. Any determination made in the pending arbitration between VideoApp Inc. and Defendant will bind Plaintiff, as it is an alter ego or affiliate of VideoApp Inc., and preclude Plaintiff's claims in federal court.

36. **Stay on Account of Arbitration Agreement**. The pending arbitration between VideoApp Inc. and Defendant will bind Plaintiff, as it is an alter ego or affiliate of VideoApp Inc., and preclude Plaintiff's claims in federal court. Accordingly, this proceeding should be stayed pending the outcome of the pending aritration.

37. **Reservation of Rights**. Defendants reserve their right to amend or supplement these defenses as discovery progresses.

## COUNTERCLAIMS

Defendant/Counterclaim Plaintiff, Dark Alley Media, LLC ("DAM"), by and through its attorneys, asserts this Counterclaim against Counterclaim Defendant Svothi, Inc. ("Svothi") for its fraudulent, deceptive, and bad-faith conduct, which has caused significant harm to DAM.

**NATURE OF THE ACTION**

1. This Counterclaim arises from Svothi's improper and bad faith attempt to claim ownership of the RFC Marks, which were created, developed, and used in commerce by DAM for over 17 years.

2. DAM brings this counterclaim to protect the substantial goodwill that it has developed over 17 years in its distinctive RFC Marks. Due to this lengthy use and DAM's substantial investment in advertising and promotion, DAM's trademark has gained a reputation as being a source of high-quality adult videos.

3. The goodwill and reputation for quality that DAM has worked so hard to cultivate has been threatened by Defendant's actions. Since termination of the JVA due to VideoApp's breach of the JVA, VideoApp, by an through Counterclaim Defendant has used and continues to use DAM's RFC Marks, and Counterclaim Defendant has used and continues to use DAM's RFC Mark to sell competing goods to many of the same consumers served by DAM. Unless Counterclaim Defendant and VideoApp are enjoined from using the RFC Marks, such use will continue to cause consumer confusion and will cause irreparable harm to Plaintiff.

4. This action seeks injunctive relief, damages, and other appropriate relief arising from Counterclaim Defendant's willful acts of trademark infringement and unfair competition in concert with and for the purpose of aiding and abetting VideoApp in depriving DAM of its valuable marks and income.

5. Svothi's actions, including its misrepresentations, fraudulent conduct, and breach of contractual obligations, have caused severe financial and reputational harm to DAM, threatening its survival.

6. Counterclaim Plaintiff seeks relief under federal and New York state law, including claims for fraud, breach of contract, unjust enrichment, tortious interference with contractual relations, and declaratory judgment regarding the ownership of the RFC Marks.

7. Counterclaim Defendant's conduct has caused significant harm to Counterclaim Plaintiff, including financial losses, reputational damage, and interference with its business operations.

**PARTIES**

4. Counterclaim Plaintiff Dark Alley Media, LLC is a New York limited liability company and is a media company specializing in the production and distribution of adult content.

5. Counterclaim Defendant Svothi, Inc. is a New York corporation with its principal place of business in New York, New York.

6. Counterclaim Defendant is an affiliate of VideoApp, Inc. ("VideoApp"), a Nevis corporation.

7. Counterclaim Defendant shares the same address, ownership, and attorney as VideoApp.

**JURISDICTION AND VENUE**

8.  This Court has jurisdiction over this action under 28 U.S.C. § 1331, as the claims arise under federal law, including the Lanham Act, 15 U.S.C. § 1125.

9.  This action also includes claims under New York State law for trademark infringement and unfair competition.

10. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

11. This Court has personal jurisdiction over Counterclaim Defendant. Counterclaim Defendant's acts of infringement of Plaintiff's mark were committed in New York State within the jurisdiction of this Court. Counterclaim Defendant has advertised its offerings and websites under the infringing mark in this state and has transacted business by selling licensing videos bearing DAM's RFC Marks to other website channels that make such videos available to consumers. Defendant has engaged in substantial activity within New York State and this judicial district and has had substantial contacts there, having purposefully availed itself of the privilege of conducting activities in the forum. Defendant has caused injury to DAM within New York State and within this judicial district.

12. Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to the claims occurred in this District.

13. Venue is also proper because the parties agreed to arbitrate disputes in New York, New York.

**FACTUAL BACKGROUND**

12. DAM was founded in 2005 and has since become a recognized leader in the adult content industry, with a library of over 300 titles and numerous awards.

13. In 2007, DAM created the RFC Marks, including the domain name rawfuckclub.com, which DAM has continuously used in commerce since August 2007.

14. DAM's prior use of the trademark takes precedence over Counterclaim Defendant's claim that it acquired common-law rights to the RF Marks in 2010.

15. On January 1, 2019, DAM and VideoApp, also known as PPVNetworks, entered into a Joint Venture Agreement (the "JVA") to operate an adult video website under the brand "Raw Fuck Club" and the associated trademarks "RFC" and "Raw Fuck Club" (collectively, the "RFC Marks").

16. The JVA explicitly stated that the RFC Marks and associated domain names were the property of the joint venture (the "JV").

17. The JVA further stated that any goodwill derived from the use of the RFC Marks would inure to the benefit of the JV.

18. DAM contributed original video content, industry expertise, and performer connections to the JV.

19. VideoApp provided website hosting, billing, and customer service for the JV.

20. The JVA included provisions governing the ownership of the RFC Marks upon termination of the agreement.

21. The JVA specified that if VideoApp breached the agreement, all rights to the RFC Marks would belong to DAM.

22. Counterclaim Defendant Svothi, Inc., an affiliate of VideoApp, was deeply involved in the JV's operations.

23. Counterclaim Defendant Svothi, Inc., holds itself out via the dba of PPVNetworks.

24. Counterclaim Defendant issued payments to DAM and acted as the payor on checks resulting from proceeds from the exploitation of DAM's videos as set forth in the JVA.

25. Counterclaim Defendant issued payments to DAM and acted as the payor on checks resulting from proceeds from the exploitation of the JV's videos as set forth in the JVA.

26. At all relevant times herein, Counterclaim Defendant was involved with the functioning of the activities of the JV.

27. At all relevant times herein, Counterclaim Defendant was aware of some or all of the activities of the JV.

28. At all relevant times herein, Counterclaim Defendant was aware of the JVA.

29. At all relevant times herein, Counterclaim Defendant was affiliated with VideoApp.

30. At all relevant times herein, Counterclaim Defendant was the principal of VideoApp.

31. At all relevant times herein, VideoApp was the nominee of Counterclaim Defendant.

32. At all relevant times herein, Damian Todaro controlled VideoApp, Inc.

33. At all relevant times herein, Damian Todaro directed VideoApp, Inc.

34. At all relevant times herein, Damian Todaro was the chief executive officer of VideoApp, Inc.

35. At all relevant times herein, Damian Todaro was the majority owner of VideoApp, Inc.

36. At all relevant times herein, Damian Todaro controlled Counterclaim Defendant.

37. At all relevant times herein, Damian Todaro directed Counterclaim Defendant.

38. At all relevant times herein, Damian Todaro was the chief executive officer of Counterclaim Defendant.

39. At all relevant times herein, Damian Todaro was the majority owner of Counterclaim Defendant.

40. Counterclaim Defendant is the parent company of VideoApp, Inc.

41. Counterclaim Defendant is alter ego of VideoApp, Inc.

42. PPVNetworks is the dba of Counterclaim Defendant.

43. PPVNetworks is the dba of VideoApp. Inc.

44. Counterclaim Defendant claims it obtained common-law rights to the RFC Marks by operating a website operated under the RFC Marks.

45. Counterclaim Defendant's claim is in direct contradiction to the terms of the JVA.

46. Alternatively Video App and Counterclaim Defendant simultaneously operated the JVA websites.

47. The JVA governs the ownership and use of certain intellectual property, including the RFC Marks, and includes a binding arbitration clause.

## COUNTERCLAIMS

## COUNT I: Declaratory Judgment (15 U.S.C. § 1125 and 28 U.S.C. § 2201)

26. Counterclaim Plaintiff realleges and incorporates by reference all preceding paragraphs of the Counterclaims.

27. An actual controversy exists regarding the ownership of the RFC Marks.

28. Counterclaim Plaintiff seeks a declaratory judgment that DAM is the rightful owner of the RFC Marks under the JVA.

29. Counterclaim Plaintiff further seeks a declaratory judgment that Counterclaim Defendant has no rights to the RFC Marks.

## COUNT II: Breach of Contract (New York State Law)

30. Counterclaim Plaintiff realleges and incorporates by reference all preceding paragraphs of the Counterclaims.

31. The JVA is a valid and enforceable contract.

32. Counterclaim Defendant, as an affiliate or the alter ego of VideoApp, breached the JVA by asserting ownership of the RFC Marks.

33. Counterclaim Defendant further breached the JVA by interfering with DAM's rights under the agreement.

34. As a result of the breach, Counterclaim Plaintiff has suffered damages.

35. DAM's damages include lost revenue and harm to its business reputation.

## COUNT III: Fraudulent Misrepresentation (New York State Law)

36. Counterclaim Plaintiff realleges and incorporates by reference all preceding paragraphs of the Counterclaims.

37. Counterclaim Defendant and VideoApp, through their owner Damian Todaro, knowingly made false representations in the JVA.

38. These false representations included that the RFC Marks were the property of the JV.

39. Specifically, the untrue statements were made by Counterclaim Defendant and Damian Todaro when Mr. Todaro, on behalf of VideoApp, prior to the execution of the JVA worked on with and approved the language of such and which was included in the signed JVA which stated:

> The parties acknowledge and agree the JV is the owner of the Domains, listed in Appendix B, and Brands throughout the world. Any goodwill derived from the use [of] and license of the Domains and the Brands shall inure to the benefit of the JV. If any license[e]
> acquires any rights in the Domains and the Brands, by operation of law, or otherwise, such rights shall be deemed and are hereby irrevocably assigned to the JV without further action by any of the parties.
>
> . . .
>
> Both parties agree that they shall not, during the Term or thereafter, directly or indirectly:
>
> I. do, omit to do, or permit to be done, any act which will or may dilute the Domains and the Brands or tarnish or bring into

disrepute the reputation of or goodwill associated with the Domains and the Brands, or the other party, or which will or may invalidate or jeopardize any registration or registrability of the Domains and
the Brands; or

II.        apply for, or obtain, or assist any person in applying for or obtaining any
registration or any trademark, service mark, trader name or other [indicia]
confusingly similar to the Domains and the Brands in any country.

. . .

Although the Domains shall be registered and managed by PPVNetworks during the Term hereof, the Domains (in addition to the Brands) shall be solely owned by the JV

. . .

PPVNetworks shall immediately notify DAM in writing giving reasonable detail if any of the following matters come to its attention:

I.any actual, suspected or threatened infringement of the Domains and Brands;

II.        any actual, suspected or threatened claim that the Domains and Brands is invalid;

III.        any actual, suspected or threatened opposition to the Domains and Brands;

IV.        any actual, suspected or threatened claim that use of the Domains and Brands infringes the rights of any third party:

V.        any person applies for, or is granted, a registered trademark by reason of which that person may be, or has been, granted rights which conflict with any of the rights granted to PPVNetworks under this Agreement; or

VI.        any other actual, suspected or threatened claim to which the Domains and Brands may be subject.

. . .

PPVNetworks will operate a channels-based membership site at one or more of the aforementioned Domains. PPVNetworks will handle all aspects of Site operations, with the exception of original content production, including but not limited to hosting; software development and updates; cloud infrastructure architecture; registrar and domain management, management and protection: customer service: technical support: independent producer management; marketing operations using newsletters and twitter; cascaded payment processing; DoS/DDoS threat mitigation;

. . .

Both parties represent and warrant to each other that it has been duly incorporated and is validly existing as a corporation under the laws of its government jurisdiction; it has the right to enter into this Agreement and perform its obligations;

40.  Counterclaim Defendant intended to induce DAM to enter into the JVA based on these false representations.

41.  DAM reasonably relied on these representations to its detriment.

42.  The truth was that neither Counterclaim Defendant nor its principal, Damian Todaro, had any intention of honoring such statements.

43.  The truth was neither Video App nor its principal, Damian Todaro, instead planned to have Mr. Todaro's other company, Counterclaim Defendant, operate the website at the various domains as specifically alleged by Counterclaim Defendant.

44.  All resulting in Counterclaim Defendant having made the claims resulting from the fraud of its principal and Videoapp against Defendants including DAM in the Complaint.

45. As a result, DAM has suffered significant damages.

46. DAM's damages include loss of ownership rights to the RFC Marks.

## COUNT IV: Unjust Enrichment (New York State Law)

43. Counterclaim Plaintiff realleges and incorporates by reference all preceding paragraphs of the Counterclaims.

44. Counterclaim Defendant has been unjustly enriched by its wrongful assertion of ownership over the RFC Marks.

45. Counterclaim Defendant has also been unjustly enriched by its use of DAM's content without proper compensation.

46. Equity and good conscience require restitution to Counterclaim Plaintiff.

## COUNT V: Breach of Fiduciary Duty (New York State Law)

47. Counterclaim Plaintiff realleges and incorporates by reference all preceding paragraphs of the Counterclaims.

48. As a joint venture partner, Counterclaim Defendant owed fiduciary duties to DAM.

49. These duties included duties of loyalty and good faith.

50. Counterclaim Defendant breached these duties by asserting ownership of the RFC Marks.

51. Counterclaim Defendant further breached these duties by interfering with DAM's rights under the JVA.

52. As a result, DAM has suffered damages.

**COUNT VI: Conversion (New York State Law)**

53. Counterclaim Plaintiff realleges and incorporates by reference all preceding paragraphs of the Counterclaims.

54. Counterclaim Defendant wrongfully exercised control over the RFC Marks.

55. Counterclaim Defendant also wrongfully exercised control over DAM's content.

56. Counterclaim Defendant's actions deprived DAM of its rightful ownership and use of the RFC Marks and content.

57. As a result, DAM has suffered damages.

**COUNT VII: Trademark Dilution (15 U.S.C. § 1125(c) & N.Y. Gen. Bus. Law § 360-L)**

58. Counterclaim Plaintiff realleges and incorporates by reference all preceding paragraphs of the Counterclaims.

59. Counterclaim Defendant's unauthorized use of the RFC Marks has diluted their distinctiveness.

60. Counterclaim Defendant's actions have harmed the reputation of the RFC Marks.

61. Counterclaim Plaintiff seeks injunctive relief and damages.

**COUNT VIII: Rescission of the Joint Venture Agreement (New York State Law)**

62. Counterclaim Plaintiff realleges and incorporates by reference all preceding paragraphs of the Counterclaims.

63. Counterclaim Defendant's fraudulent conduct in inducing DAM to enter into the JVA is grounds for rescission.

64. DAM seeks rescission of the JVA and restitution for all damages suffered.

65. DAM's prior use of the trademark survives the rescission of the JVA.

66. DAM's prior use of the trademark takes precedence over Counterclaim Defendant's claim that it acquired common-law rights to the RF Marks in 2010.

67.  precedence over Counterclaim Defendant's claim that it acquired common-law rights to the RF Marks in 2010.

## COUNT IX: Enforcement of Section 12.4 of the Joint Venture Agreement

65. Counterclaim Plaintiff realleges and incorporates by reference all preceding paragraphs of the Counterclaims.

66. Under Section 12.4 of the JVA, DAM is entitled to all digital assets, metadata, source video, encoded stream files, and customer database tables upon termination due to VideoApp's breach.

67. DAM seeks enforcement of these provisions.

## COUNT X: Accounting (New York State Law)

68. Counterclaim Plaintiff realleges and incorporates by reference all preceding paragraphs of the Counterclaims.

69. Counterclaim Defendant has failed to provide an accounting of revenues and profits generated from the use of the RFC Marks and DAM's content.

70. DAM seeks an accounting to determine the full extent of its damages.

**COUNT XI: Alter Ego Liability**

76. Counterclaim Plaintiff realleges and incorporates by reference all preceding paragraphs of the Counterclaims.

77. Counterclaim Defendant Svothi, Inc. is an affiliate of VideoApp, Inc., a Nevis corporation, and shares the same address, ownership, and attorney as VideoApp.

78. Counterclaim Defendant Svothi, Inc. was deeply involved in the operations of the joint venture, including issuing payments to Counterclaim Plaintiff and acting as the payor on checks resulting from the activities of VideoApp under the Joint Venture Agreement.

79. Counterclaim Defendant Svothi, Inc. asserts ownership of the RFC Marks, despite the terms of the Joint Venture Agreement, in direct contradiction to the rights of Counterclaim Plaintiff.

80. Counterclaim Defendant Svothi, Inc. and VideoApp, Inc. have failed to maintain separate corporate identities, including, but not limited to, as evidenced by their shared address, ownership, and attorney.

81. Counterclaim Defendant Svothi, Inc. and VideoApp, Inc. have commingled their operations and resources, creating a unity of interest and ownership such that they are not truly separate entities.

82. Counterclaim Defendant Svothi, Inc. has used its corporate structure to perpetrate a fraud or injustice against Counterclaim Plaintiff by asserting ownership of the RFC Marks and interfering with Counterclaim Plaintiff's rights under the Joint Venture Agreement.

83. Counterclaim Defendant Svothi, Inc.'s actions have caused significant harm to Counterclaim Plaintiff, including financial losses, reputational damage, and interference with its ability to monetize its content and trademarks.

84. Counterclaim Plaintiff seeks to pierce the corporate veil and hold Counterclaim Defendant Svothi, Inc. liable for the actions and obligations of VideoApp, Inc., as they are alter egos of one another.

**COUNT XIII: Trademark Infringement Under The Lanham Act 15 U.S.C. § 1125(A)**

85. Counterclaim Plaintiff realleges and incorporates by reference all preceding paragraphs of the Counterclaims.

86. DAM has priority of rights in the RFC Marks.

87. Counterclaim Defendant is intentionally and willfully, or acting with willful blindness, using DAM's RFC Marks in connection with Counterclaim Defendant's adult websites, social media accounts, and other media businesses, for Counterclaim Defendant's financial gain.

88. Counterclaim Defendant's use of the RFC Marks without DAM's consent constitutes trademark infringement in violation of 15 U.S.C. § 1125, in that, among other things, such use is likely to cause confusion, deception, and mistake among the consuming public and industry as to the origin, approval or sponsorship of goods, services and commercial activities.

89. As a direct and proximate result of the foregoing acts, DAM has been damaged and has suffered, and will continue to suffer, significant damages, in an amount to be determined at trial.

90. Counterclaim Defendant's actions have caused and — unless enjoined by this Court — will continue to cause irreparable injury to DAM for which DAM has no adequate remedy at law. DAM is therefore entitled to injunctive relief enjoining and restraining Counterclaim Defendant from use of the RFC Marks or any mark that is confusingly similar thereto.

### Count XIV:  Trademark Infringement Under New York Common Law

91. Counterclaim Plaintiff realleges and incorporates by reference all preceding paragraphs of the Counterclaims.

92. Counterclaim Defendant is intentionally and willfully, or acting with willful blindness, using DAM's RFC Marks in connection with Counterclaim Defendant's adult websites, social media accounts, and other media businesses, for Counterclaim Defendant's financial gain.

93. Counterclaim Defendant's use of the RFC Marks without DAM's consent constitutes trademark infringement in violation of New York common law in that, among other things, such use is likely to cause confusion, deception, and mistake among the consuming public and industry as to the source, approval or sponsorship of goods, services and commercial activities.

94.    As a direct and proximate result of the foregoing acts, DAM has been damaged and has suffered, and will continue to suffer, significant damages in an amount to be determined at trial.

95.    Counterclaim Defendant's actions have caused and — unless enjoined by this Court — will continue to cause irreparable injury to DAM for which DAM has no adequate remedy at law. DAM is therefore entitled to injunctive relief enjoining and restraining Counterclaim Defendant from use of DAM's Marks or any mark that is confusingly similar thereto.

## COUNT XV: Unfair Competition

96.    Counterclaim Plaintiff realleges and incorporates by reference all preceding paragraphs of the Counterclaims.

97.    With knowledge and/or constructive knowledge of DAM's exclusive rights to the RFC Marks, Counterclaim Defendant intended to and did misappropriate DAM's labors and expenditures in creating such marks and DAM's investment in and exclusive use of the marks by facilitating the distribution of goods and services for Defendant's own financial gain.

98.    Counterclaim Defendant's use of the RFC Marks without DAM's consent is likely to cause confusion, deception, and mistake among the consuming public and industry as to the source, approval or sponsorship of goods, services and commercial activities. Accordingly, Counterclaim Defendant have engaged in unfair competition in violation of New York common law.

99.    Counterclaim Defendant engaged in these acts with bad faith and

intent to profit from the name, goodwill, and strong brand recognition associated with DAM and its marks.

100.    As a direct and proximate result of the foregoing acts, DAM has been damaged and has suffered, and will continue to suffer, significant damages in an amount to be determined at trial.

101.    Counterclaim Defendant's conduct is and was knowing, intentional, and in reckless disregard of DAM's exclusive rights in its marks. Pursuant to New York common law, DAM is therefore entitled to an award of punitive damages in an amount to be determined at trial.

102.    DAM is also entitled to injunctive relief enjoining and restraining Counterclaim Defendant and all persons acting in concert with Counterclaim Defendant from use of DAM's Marks or any other marks that are confusingly similar thereto.

**RELIEF REQUESTED**

WHEREFORE, Counterclaim Plaintiff respectfully requests that this Court:

1.  Declare that DAM is the rightful owner of the RFC Marks under 28 U.S.C. § 2201 and 15 U.S.C. § 1125.

2.  Declare that Counterclaim Defendant Svothi, Inc. and VideoApp, Inc. are alter egos of one another.

3.  Pierce the corporate veil and hold Counterclaim Defendant Svothi, Inc. liable for the actions and obligations of VideoApp, Inc. under the Joint Venture Agreement.

4. Award damages to Counterclaim Plaintiff for the harm caused by Counterclaim Defendant Svothi, Inc.'s fraudulent and bad-faith conduct.

5. Awarding Counterclaim Plaintiff compensatory damages in an amount to be determined at trial.

6. Awarding Counterclaim Plaintiff punitive damages in an amount sufficient to deter Counterclaim Defendant Svothi, Inc. and others from engaging in similar conduct in the future.

7. Award damages to Counterclaim Plaintiff for breach of contract, fraudulent misrepresentation, unjust enrichment, breach of fiduciary duty, and conversion.

8. Rescind the JVA and award restitution to Counterclaim Plaintiff.

9. Enforce Section 12.4 of the JVA and order Counterclaim Defendant to provide all digital assets, metadata, source video, encoded stream files, and customer database tables to DAM.

10. For an award of actual damages, enhanced discretionary damages, and treble damages in an amount to be determined at trial for Counterclaim Defendant's willful violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.;

11. In the alternative to actual damages, for statutory damages pursuant to the Lanham Act, as the Court considers just, and/or as Counterclaim Plaintiff may elect prior to final judgment;

12. For an award of damages to be proven at trial for trademark infringement and unfair competition under New York common law;

13. For a temporary, preliminary and permanent injunction by this Court enjoining and prohibiting Counterclaim Defendant, or its agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Counterclaim Defendant, and all those in active concert or participation with Counterclaim Defendant, and each of them who receives notice directly or indirectly of such injunction from:

    a. advertising, marketing, promoting, distributing, displaying, offering for sale, selling, operating, and/or otherwise dealing in infringing goods, services, or businesses;

    b. using Counterclaim Plaintiff's trademarks or other rights (whether now in existence or hereafter created) including, without limitation, the RFC Marks, to identify any goods, services or businesses not authorized by Counterclaim Plaintiff;

    c. using any of Counterclaim Plaintiff's trademarks or other rights (whether now in existence or hereafter created) including, without limitation, the RFC Marks, or any other marks that are confusingly or substantially similar to the RFC Marks, on or in connection with Counterclaim Defendant's advertising, marketing, promoting, distributing, displaying, offering for sale, selling, operating and/or otherwise dealing in goods and services, or engaging in business, not authorized by Counterclaim Plaintiff;

    d. engaging in any action which is likely to cause confusion or cause

mistake and/or to deceive members of the public as to the affiliation, connection or association of any goods, services or businesses advertised, marketed, promoted, distributed, displayed, operated, offered for sale or sold by Counterclaim Defendant with Counterclaim Plaintiff, and/or as to the origin, sponsorship or approval of any product, service or business advertised, marketed, promoted, distributed, displayed, operated, offered for sale or sold by Counterclaim Defendant with Counterclaim Plaintiff;

e.  engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the advertising, promotion, marketing, operating and/or dealing in any infringing products, services or businesses;

f.  engaging in any other actions that constitute unfair competition with Counterclaim Plaintiff;

g.  secreting, destroying, altering, removing, or otherwise dealing with infringing goods or services, or any books or records that contain any information relating advertising, marketing, promoting, distributing, displaying, operating, offering for sale, selling and/or otherwise dealing in infringing goods, services, businesses or domain names identical and/or confusingly similar to the RFC Marks;

h.  from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing any computer files, data, business records, documents or any other records or

evidence relating to Counterclaim Defendant's businesses or any money, securities or other property or assets of Counterclaim Defendant (whether said assets are located in the U.S. or abroad) ("Counterclaim Defendant's Assets") from or to financial accounts associated with or utilized by Counterclaim Defendant in the advertising, marketing, promotion, operation, distribution, display, offering for sale and/or sale of infringing products, services or businesses;

i.  from secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any of Counterclaim Defendant's Assets from any financial account until further ordered by this Court;

j.  effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any final judgment or order in this action;

k.  instructing, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in the foregoing subparagraphs.

14. For an order directing the forfeiture, cancellation, and/or transfer to Counterclaim Plaintiff of all domain names and social media names that are identical and/or confusingly similar to the RFC Marks;

15. For an order of the Court requiring that Counterclaim Defendant provide complete accountings for any and all monies, profits, gains and advantages derived by Counterclaim Defendant from its advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or other dealings in the infringing business and services, including prejudgment interest;

16. For a declaration on such terms as the Court may deem appropriate based on evidence to be offered and received at or prior to a hearing or trial that Counterclaim Plaintiff is the owner of its RFC Marks to the exclusion of the Counterclaim Defendant;

17. For an award of exemplary or punitive damages in an amount to be determined by the Court;

18. For Counterclaim Plaintiff's reasonable attorneys' fees;

19. For all costs of suit; and

20. For such other and further relief as the Court may deem just and proper.

21. Award attorneys' fees, costs, and interest under 15 U.S.C. § 1117(a).

22. Grant such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Counterclaim Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

Dated: New York, NY

January 31, 2025                    SHARMALAW – Ravi Ivan Sharma, P.C.

By:        /s/
           Ravi Ivan Sharma
           26 Broadway, Suite 1108
           New York, NY 10004
           (212) 537-5957
           ravi@sharmalaw.com

           *Counsel for Defendants and
           Counterclaim Plaintiff*