# EXHIBIT 19

*Svothi, Inc. v. Dark Alley Media, LLC, et. al.* No. 25 CV 00333 | Declaration of Robert Felt

**WESLEY M. MULLEN**                                              MULLEN P.C.
                                                          745 FIFTH AVENUE | SUITE 500
                                                          NEW YORK, NY 10151

October 25, 2024

Mr. Robert Felt
Dark Alley Media, LLC
4005 NE 6th Avenue
Oakland Park, FL 33334

robert@darkalleymail.com

<u>VIA FEDEX AND EMAIL</u>

    Re:    <u>Notice of Termination of Joint Venture Agreement</u>

Mr. Felt:

My Firm is legal counsel to VideoApp, Inc. a/k/a PPVNetworks ("<u>PPVN</u>").

I write to you in your capacity as President of Dark Alley Media, LLC ("<u>DAM</u>") regarding the Joint Venture Agreement dated as of March 25, 2019 between VideoApp and DAM (the "<u>Agreement</u>"). Capitalized terms used but not defined in this letter have the meanings set forth in the Agreement.

To my understanding neither you nor DAM is represented by counsel; if I am mistaken, please forward this communication to him or her immediately.

                *    *    *

This letter is formal notice that the Agreement terminated due to Breach, effective October 17, 2024 (the "<u>Termination Date</u>"), pursuant to Sections 5, 9, 12, and 13 of the Agreement.

Accordingly, and pursuant to Section 12.3 of the Agreement, you are hereby notified that: (a) PPVN has exercised its contractual right of election to continue to use the Content, Domains and RFC Brands for the continued operation of Sites; and (b) PPVN intends to outsource production of new RFC-branded Content for use on Sites.

Pursuant to Section 12.3.c of the Agreement, if DAM desires that pre-termination Content "originally produced and supplied by DAM" should remain available on any Sites for "continued commercialization," please let me know on or before November 5, 2024. If DAM so elects, we should confer regarding the terms of an appropriate "revenue share … consistent with the payment schedule used for all Independent Producers" that is in place as of the Termination Date. If DAM do not so elect — or if you do not respond — all

DAM pre-termination Content will be removed from the Sites, except as may be permitted under Section 12.3 of the Agreement or otherwise.

I understand you and PPVN have been in discussions for months concerning DAM's pervasive, material breaches of the Agreement, and concerning DAM's ongoing failure to perform its contractual obligations. Nevertheless, and for the avoidance of doubt, DAM's actions and failures to act constitute termination for Breach include but are not limited to the following:

1. **DAM's pervasive violations of 18 U.S.C. § 2257.** Pursuant to Section 5.5 of the Agreement, DAM was obligated to "maintain records, for immediate delivery upon request, of model releases and proof of age for each performer in compliance with, and organized electronically and physically as specified by," Section 2257 of Title 18 of the U.S. Code (the "Federal Criminal Code"). These are critical obligations: violations jeopardize the very existence of DAM and of PPVN, not least because they expose covered producers (including DAM and its principals) to felony federal criminal liability.[1] As you know and have repeatedly admitted, DAM has breached its obligations under the Agreement and the Federal Criminal Code in multiple material respects, including:

    a. On August 13, 2024, PPVN notified DAM of its breaches of compliance obligations under Section 5.5 of the Agreement and requested that DAM confirm that it has IDs and model releases for all DAM Content furnished to PPVN under the Agreement.

        i. By email response on the same day, DAM claimed to have complied with its obligations only "over the last six years" while admitting that its recordkeeping violated the Agreement and the Federal Criminal Code for all other DAM Content.

        ii. DAM has failed to cure its admitted noncompliance as required under Sections 9.10 and 12.1.a of the Agreement, and forty-five (45) business days have elapsed since notice of the same.

---

[1] *See* 18 U.S.C. § 2257(i) (providing that violators "shall be imprisoned for not more than 5 years, and fined … .").

    b.    Email correspondence between PPVN and DAM during August and September 2024 confirms DAM's continued failure meet its contractual obligations under Section 5.5 — as evidenced, *inter alia*, by DAM's written claim that a DAM performer involved in a recordkeeping compliance audit (one Mr. Eck) appeared in only seven (7) DAM videos. DAM's assertion was proven false by the results of PPVN's own audit of DAM's Content, which demonstrated that the performer appeared in no fewer than forty-two (42) DAM videos, and that all such appearances constituted violations of Section 5.5 of the Agreement given DAM's failure to maintain and produce written documentation satisfying 18 U.S.C. § 2257 for those videos, as required under the Agreement and the Federal Criminal Code.

    c.    In an email dated August 23, 2024, DAM admitted that there "is a gap in [its] paperwork from from [sic] June of 2023 to December of 2023," and that "paperwork [is] missing" for multiple performers in DAM content, in each separate case constituting a violation of the Agreement and the Federal Criminal Code.

    d.    In an email dated August 31, 2024, DAM admitted that it does not have, and is only able to "get" as little as 80 percent of the records that DAM is required to maintain under the Agreement and the Federal Criminal Code.

    e.    By September 9, 2024, DAM had engaged a consultant, Mr. Wicht, to attempt to remedy its admitted breaches (which DAM termed a "prior operational competency gap"). In response to PPVN's September 6, 2024 email concerning "the areas where DAM is in breach," Mr. Wicht claimed on September 9, 2024 to have "begun" working on compliance with DAM's longstanding recordkeeping obligations under the Agreement and the Federal Criminal Code, while acknowledging that he lacked even an "understanding of how many documents are missing."

2.    **DAM's violations of third-party intellectual property rights.** Pursuant to Section 5.3 of the Agreement, DAM agreed that its "Content shall be entirely original, directed and filed by DAM, and [shall] not infringe on any third party right[], title or

MULLEN P.C.

Mr. Felt
October 25, 2024
Page 4 of 4

        interest." In violation of that clear covenant, and as you admitted in writing on August 17, 2024, substantial Content delivered by DAM was filmed by a third-party who "was never an employee of DAM," was not "contracted by the company," and who has subsequently threatened legal action against PPVN regarding his ownership of DAM-supplied Content. DAM also failed to respond to PPVN's repeated requests, on August 20, 2024 and otherwise, for written confirmation that DAM is the sole owner of its content and that there are no third-party claims to the same.

3. **DAM's violation of content-production obligations.** Under Sections 5.1 and 5.2 of the Agreement, DAM agreed to supply and deliver to PPVN certain Content including two (2) new originally-produced Scenes per month with consistent quality, length, number and appearance of performers, and video quality. DAM has failed in its obligations by delivering sub-standard content, with observably impaired performers engaging in prohibited or illegal activities, at a quality objectively inconsistent with the Scenes and Content that DAM produced years ago.

4. **DAM's violations of newsletter delivery obligations.** Section 5.4 of the Agreement required DAM to design and deliver weekly newsletters. It simply has not.

The foregoing is not and should not be construed as an exhaustive statement of DAM's material breaches of the Agreement or the grounds for termination thereof.

Kind regards,

*/s/ Wesley M. Mullen*

Wesley M. Mullen

WMULLEN@MULLENPC.COM | (646) 632-3718