**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SVOTHI INC., <br><br>             Plaintiff, <br><br> v. <br><br> DARK ALLEY MEDIA, LLC and ROBERT FELT, <br><br>             Defendants. | Civil Action No. 25 CV 00333 <br><br> **DECLARATION OF RAVI IVAN SHARMA IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCITON AND ORDER TO SHOW CAUSE FOR TEMPORARY RESTRAINING ORDER** |

COMES NOW, counsel Ravi Ivan Sharma, under 28 U.S.C. § 1746, and hereby declares under penalty of perjury that the following is true and correct:

**INTRODUCTION**

1. I am counsel for Counterclaim Plaintiff Dark Alley Media, LLC ("DAM") in this action. I submit this affirmation in support of DAM's motion for injunctive relief against Plaintiff Svothi, Inc. ("Counterclaim Defendant") and its alter ego, VideoApp, Inc.

2. This affirmation is based on my personal knowledge, my review of the relevant documents, and my direct involvement in the matters at issue.

3. **Attempt to Meet and Confer**. On January 31, 2025, I emailed opposing counsel, Wesley Mullen, Esq., and informed him that I would soon be seeking injunctive relief against Counterclaim Defendants based on the Counterclaims and invited him to meet and confer regarding the same. Following such email, on January 31, 2025, Mr. Mullen and I spoke on the phone but did not discuss this Order to Show

Cause. A true and correct copy of my January 31, 2025 email is attached hereto as **Exhibit 1**.

4. On February 4, 2025, I followed up my January 31, 2025 email and again invited Mr. Mullen to meet and confer on February 5, 2025 regarding my client's intention to seek injunctive relief. A true and correct copy of my February 4, 2025 email is attached hereto as **Exhibit 2**.

5. On February 5, 2025, upon Mr. Mullen's request, I emailed him a draft Order to Show Cause to which he replied "Plaintiff does not consent."

6. **Notice To Opposing Counsel**. On February 5, 2025, I provided notice to opposing counsel, Wesley Mullen, Esq. via email at wmullen@mullenpc.com at approximately 4:20 pm. I informed Mr. Mullen of the relief sought in thus Order to Show Cause by including the moving papers in the email.

7. **No Prior Application**. To my knowledge, no prior application for the same or similar relief has been made in this or any other court.

8. The requested relief is necessary to prevent irreparable harm to Dark Alley Media, LLC, as detailed in the accompanying affidavits and exhibits.

9. I certify that this application is made in good faith and in compliance with Federal Rule of Civil Procedure 65(b)(1) and SDNY Local Civil Rule 6.1(d)."

10. **Need for Expedited Relief including Accounting and Disgorgement of Royalties Due DAM As A Result Of the Use Of the Marks By Counterclaim Defendant**. As detailed in the Declaration of Robert Felt, the Counterclaim Defendant has not only been using the exclusive marks of DAM since termination

of a Joint Venture Agreement between DAM and third-party VideoApp Inc. ("VideoApp") that, upon information and belief, is the alter ego of Counterclaim Defendant, but that VideoApp (and therefor Counterclaim Defendant) has failed to pay DAM for the use of the marks since August 2025 causing DAM extreme financial difficulties and irreparable harm as a result since such has brought DAM's business to a standstill and without the ability without fear utilize the marks in commerce until granted the relief sought herein. Without immediate relief in the form of ordering an accounting, and due payment for the use of the goods, including an order prohibiting the Counterclaim Defendant and its affiliates from removing such funds from the jurisdiction of this Court, irreparable injury will occur which will not be avoided by regular motion practice.

## FACTS KNOWN TO COUNSEL

**1. Claims of Trademark Infringement and Dilution Against Counterclaim Defendant.**

11. This Motion and Order To Show Cause arises from the claims of Counterclaim Plaintiff, Dark Alley Media, LLC as contained in the Amended Answer and Amended Counterclaim of Defendant in this Action. A true and correct copy of the Amended Answer and Amended Counterclaim of moving party is attached hereto as **EXHIBIT 1**.

12. The claims of DAM against Counterclaim Defendant arise from common law trademarks created by DAM and its founder, Defendant, Robert Felt, in 2007 and which were contributed to a Joint Venture Agreement (the "JVA") between DAM

and VideoApp Inc., the affiliate and/or alter ego of Counterclaim defendant.

13. After the JVA was terminated in December, 2024, due to the breach of the VideoApp Inc. for failure to pay DAM money due under the JVA, such trademarks reverted to DAM.

14. However, since that time, Counterclaim Defendant has refused to stop using such marks and has untruthfully claimed via the complaint in this action that it is the owner of such marks since it started to use them in 2010.

15. **2. Notice and Termination of the Joint Venture Agreement**

16. On October 25, 2024, Wesley Mullen, counsel for an affiliate and/or alter ego of Counterclaim Defendant, VideoApp, Inc., sent a letter purporting to terminate a Joint Venture Agreement ("JVA") between DAM and VideoApp, Inc.[1] The letter was sent via overnight delivery and stated:

    > This letter is formal notice that the Agreement terminated due to Breach, effective October 17, 2024, pursuant to Sections 5, 9, 12, and 13 of the Agreement.[2]

17. However, the purported termination was ineffectual because it relied on prior notices of breach that were not communicated in compliance with the JVA's notice requirements. Section 9.3 of the JVA provides:

    > All notices, solicitations of consent or approval, and other communications hereunder shall be in writing and shall be sent by

---

[1] A true and correct copy of the JVA is attached as **EXHIBIT 11 to the Declaration of Robert Felt** filed herewith.

[2] A true and correct copy of Counsel Mullen's letter of October 25, 2025, is attached as **EXHIBIT 19 to the Declaration of Robert Felt** filed herewith.

    certified or registered mail, return receipt requested, or by hand delivery or overnight courier with return receipt.

18. The alleged notices of breach referenced in Mr. Mullen's October 25, 2024, letter were, as acknowledged in the letter, communicated either orally or via email. Accordingly, neither method satisfies the requirements of Section 9.3. As such, these communications did not constitute valid notices of breach under the JVA, and therefore the time to cure any alleged breaches did not commence.

19. On November 1, 2024, I responded to Mr. Mullen, disputing the validity of the purported termination and notifying VideoApp, Inc. of its own breaches of the JVA. and I informed Mr. Mullen:

> Your allegation of notice of breach via an email from your client dated August 13, 2024, is without factual support. As you and your client are aware, subsection 9.3 of the Agreement requires all notices or communications under the agreement be in writing and sent by certified or registered mail, return receipt requested, or by hand delivery or overnight courier with return receipt and does not allow for notices via email. Even if the content of such email were delivered property, it constitutes no notice where no indication of breach or demand for cure is made to anyone, much less to DAM or with the particularity of an adequate notice under the Agreement.

20. I further notified VideoApp, Inc. of its breaches, including failure to remit payments due to DAM and failure to provide required financial reports as follows:

> [T]he email you identify is clear and convincing evidence or your client's intentional breach of the Agreement where the principal of PPVN admits he has directed its employ to stop all payments to DAM.

> As a result of PPVN's decision to stop payment, to date PPVN has withheld due payments with no basis to do so in the amount of at least $67,289.62 ($79,155.78 less $6,000 paid and the $5,866.16 withheld for back payments of model bonuses) since August 13, 2024.
>
> Accordingly, please take notice that PPVN is default of subsections 4.1, 4.2, and 4.3 for its nonpayment of such funds to DAM and DAM must make payment in full immediately and within the time required by the Agreement or else DAM shall have the right to terminate the Agreement based on PPVN's uncured breach.

21. A true and correct copy of my November 1, 2024, letter is attached hereto as **Exhibit 4**.

22. On November 12, 2024, Mr. Mullen responded, reiterating VideoApp, Inc.'s position but failing to address the deficiencies in its purported termination notice. A true and correct copy of the November 12, 2024, letter is attached hereto as **Exhibit 5**.

23. On December 4, 2024, I issued a formal notice of termination on behalf of DAM, citing VideoApp, Inc.'s material breaches, including failure to remit payments and failure to provide required financial reports and in such notice I informed VideoApp, Inc.:

    > This letter serves as formal notification that the Joint Venture Agreement ("Agreement"') between Dark Alley Media, LLC (DAM) and VideoApp Inc., doing business as PPVNetworks (PPVN), is terminated effective December 4, 2024 ("Termination Date"), pursuant to Section 12.1 of the Agreement. This termination results from PPVN's failure to cure its breach of Section 4 of the Agreement within the 30-day cure period following your receipt of the Notice of Default dated November 1, 2024, specifically

regarding PPVN's failure to disburse the full profit share amounts due for the period from July 1, 2024, through September 20, 2024, as detailed in such notice.

24. I further demanded of VideoApp, Inc. the requirements of the Joint Venture Agreement paragraph 12.3 as follows:

> In accordance with subsection 12.4a of the Agreement, effective immediately as of the Termination Date, PPVN is required to cease the utilization of all digital assets previously exchanged as part of the joint venture. Furthermore, PPVN is obligated to transfer all such digital assets to DAM, including, but not limited to, metadata, source video, encoded stream files, and customer database tables.
>
> Moreover, as stipulated in subsection 12.4b, PPVN must immediately discontinue any monetization or other forms of utilization of the RFC Brands, Content, and Domain names. All rights associated with these intellectual properties now exclusively revert to DAM for its sole monetization and use.
>
> . . .
>
> PPVN is also instructed to halt all operations related to the joint venture's online presence and any commercial activities tied to it. Any use or exploitation of the RFC Brands, Domains, and Content without the explicit written consent of DAM is strictly prohibited.
>
> . . .
>
> Failure to adhere to the above demand for payment and directive will compel DAM to pursue all available remedies under the Agreement and applicable law to enforce its rights and safeguard its interests, including, among other remedies: (a) Seeking disgorgement of any profits improperly retained by PPVN; (b) Requesting the imposition of a constructive trust over any assets or funds wrongfully withheld; (c) Obtaining injunctive relief to prevent further unauthorized use of DAM's intellectual property; (d)

Recovering compensatory and punitive damages; and (e) Recouping all attorneys' fees and costs incurred in enforcing DAM's rights.

25. A true and correct copy of my December 4, 2024, letter is attached hereto as **Exhibit 6**.

**Counterclaim Defendant's Continued Illegal Use Of the JV Marks**

26. Despite the termination of the Joint Venture Agreement as of December 4, 2024, my client informed me that Counterclaim Defendant and VideoApp failed to comply with the directives of section 12.4 and continued to use the marks.

27. Accordingly, on January 15, 2025, I sent counsel for VideoApp and Counterclaim Defendant a letter demanding they cease and desist from such conduct else face the claims as set forth in the Counterclaim as follows:

> I respond to your emailed letter to me dated January, 13, 2025 … in regard to DAM's protected marks "RFC", "RFC.COM" (the "DAM
>
> 
>
> RFC Wordmarks"), and DAM's protected stylized graphical mark, (the "DAM RFC Graphical Mark" together with the DAM RFC Wordmarks, the "DAM RFC Marks") as well as other claims.
>
> Please take notice that DAM is the exclusive owner of not only the DAM RFC Marks, but also its protected marks, "DARK ALLEY" (the "DAM Wordmark") and DAM's protected stylized graphical mark,
>
> 
>
> (the "DAM Graphical Mark", together with the DAM Wordmark and the DAM RFC Marks, the "DAM Marks").
> . . .
> In accordance with the Notice of Termination, your client was

required to (a) cease the utilization of all digital assets previously exchanged as part of the joint venture, (b) transfer all such digital assets to DAM, including, but not limited to, metadata, source video, encoded stream files, and customer database tables, and (c) immediately discontinue any monetization or other forms of utilization of the DAM brands, DAM content and DAM domain names including the DAM RFC Marks. As per the termination notice, all rights associated with such intellectual property reverted to exclusive DAM use.

Since that time, your client, via its various websites including rawtop.tv, barebackbox.com and dickwadd.com, has failed to cease using and exploiting the DAM Marks and DAM videos, continues to do so as of the date of this letter without permission or payment therefore, and has failed to provide the credentials to all assets reverted to DAM, including, but not limited to, the RFC.COM domain and webhosting credentials and the Twitter/X account credentials. Your client also failed to halt all operations related to the joint venture's online presence and any commercial activities tied to the joint venture as required by the JV Agreement.

Accordingly, your clients and/or its affiliates, including, Videoapp Inc, SVOTHI, and Damian Todaro, are hereby directed to immediately (a) immediately cease and desist from the infringing use of the DAM Marks and the continued exploitation of DAM videos on its websites, (b) remove and/or destroy all infringing instances of the DAM Marks (including those contained and/or distributed on or in marketing materials, social media, and e-commerce websites); and (c) acknowledge within 48 hours that it and its affiliates have complied and will continue to comply with these demands.

. . .

The irreparable harm described above must cease immediately. If SVOTHI fails to comply, my client shall take appropriate action to enjoin the unlawful conduct described. Your failure to respond may be used as evidence of SVOTHI's willful infringement and bad faith

when seeking damages, attorney's fees, sanctions, and equitable relief.

28. A true and correct copy of my January 15, 2025, letter is attached hereto as **Exhibit 7**.

29. Following delivery of my letter, no one from or on behalf of Counterclaim Defendant responded to such letter.

## CONCLUSION

30. Based on the foregoing, DAM has demonstrated a likelihood of success on the merits of its claims for trademark infringement and unfair competition.

31. Plaintiff's actions have caused and will continue to cause irreparable harm to DAM's business, reputation, and ability to monetize its intellectual property.

32. I respectfully request that the Court grant DAM's motion for injunctive relief and issue an order enjoining Plaintiff and VideoApp, Inc. from further use of the RFC Marks.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, NY
February 5, 2025

/s/
Ravi Ivan Sharma
26 Broadway, Suite 1108
New York, NY 10004
(212) 537-5957
ravi@sharmalaw.com

*Counsel for Defendants and Counterclaim Plaintiff*