# EXHIBIT 4



# SHARMALAW

L AW OFFICES OF RAVI IVAN SHARMA, P.C.

26 BROADWAY, SUITE 1108, NEW YORK, NEW YORK 10004

**212 537 5957**
Facsimile 212 537 5956
Voice Mail 213 537 5953
RAVI@SHARMALAW.COM

November 1, 2024

**BY USPS PRIORITY MAIL 9405511206211553148430**
**AND BY EMAIL: wmullen@mullenpc.com**

Wesley M. Mullen
Mullen P.C.
745 Fifth Avenue, Suite 500
New York, NY 10151

**Re: NOTICE OF DEFAULT AND NOTICE TO CURE; Joint Venture Agreement between Dark Alley Media, LLC and VideoApp, Inc.**

Dear Mr. Mullen,

We represent Dark Alley Media, LLC ("DAM") in response to your communication alleging breaches of the Joint Venture Agreement ("Agreement") by DAM and purporting to terminate said Agreement. Upon thorough review and consideration of the detailed facts and circumstances surrounding these allegations, as well as the obligations and actions of VideoApp, Inc., a/k/a PPVNetworks ("PPVN"), we hereby dispute each allegation of breach attributed to DAM, reject as unsupported and improper your client's claim of termination, and, given your representation of PPVN, hereby notify PPVN of its default under the Agreement and demand that it cure the same within the time required by the Agreement.

As an initial matter your allegation of notice of breach via an email from your client dated August 13, 2024, is without factual support. As you and your client are aware, subsection 9.3 of the Agreement requires all notices or communications under the agreement be in writing and sent by certified or registered mail, return receipt requested, or by hand delivery or overnight courier with return receipt …" and does not allow for notices via email. Even if the content of such email were delivered property, it constitutes no notice where no indication of breach or demand for cure is made to anyone, much less to DAM or with the particularity of an adequate notice under the Agreement.

Instead, the email you identify is clear and convincing evidence or your client's intentional breach of the Agreement where the principal of PPVN admits he has directed its employ to stop all payments to DAM.

As a result of PPVN's decision to stop payment, to date PPVN has withheld due payments with no basis to do so in the amount of at least $67,289.62 ($79,155.78 less $6,000 paid and the $5,866.16 withheld for back payments of model bonuses) since August 13, 2024.

Accordingly, please take notice that PPVN is default of subsections 4.1, 4.2, and 4.3 for its nonpayment of such funds to DAM and DAM must make payment in full immediately and within the time required by the Agreement or else DAM shall have the right to terminate the Agreement based on PPVN's uncured breach.

Also please take notice that PPVN has failed to provide the real-time reports supporting the amount of payment that is due DAM since September 12, 2024 in violation of subsection 4.3. Accordingly, all such real time reportion must be provided and provision of the requested records provided immediately and within the time required by the Agreement or else DAM shall have the right to terminate the Agreement based on PPVN's uncured breach.

Your claims that any emails from my client constitute admissions of breach are non-ripe since no claim of breach has been made to date except perhaps your recent letter. However, your letter is indicated explicitly to be a notice of termination, which, for the reasons set forth above, at best, is mistaken.

At worst, however, your letter by its recitation of the Federal Criminal Code appears not only without merit, but extortionate where it is paired with the assertion that DAM must agree to accept less consideration than as required by the Agreement by a deadline of November 5, 2024, which agreement would simultaneously lend credence to the letter's holey attempt to terminate the Agreement. The fact that your client on one hand requests additional permission to exploit DAM content at a cut-rate price while on the other hand simultaneously claims such content is criminally deficient is evidence of the bad faith nature of PPVN's position set forth in your letter.

As you know, based on your participation and presence in email exchanges with my client, my client has bent over backwards to appease PPVN. However, your client has misstated the issues, mischaracterized communications by others, and, as one example of its bad faith conduct, has resisted utilizing a consultant provided by DAM to alleviate and eliminate its concerns, which is evidence of the pretextual basis of your client's claims, and a smokescreen designed to hide its own failures.

The various emails you point to evidence only a proactive investigation and good faith effort to appease your clients often unfounded claims and address any valid concerns. Even if, for the sake of argument, there were a default, the evidence of ongoing efforts to fix any issues is not grounds to terminate the Agreement under any reading of the Agreement or the law.

In addition to PPVN's default in payment set forth above, please take notice that PPVN is also in default of the following:

**Failure of Access and Financial Verification**: As set forth in Sections 4.3 and 4.4, PPVN is required to provide real-time reporting and monthly disbursements based on accurate revenue and expense data. PPVN has failed to restore the credentials needed to access the site's statistics page, specifically showing sales and revenue data. Accordingly, PPVN must restore DAM and Robert Felt's credentials to access the site's statistics page, specifically showing sales and revenue data.

Given the parties' 50/50 profit-sharing arrangement and the necessity of verifying expenses that impact net profits, PPVN must provide DAM with detailed accounting records, including full ledgers, receipts, and merchant account statements for the current fiscal year. This demand aligns with DAM's right to ensure the accuracy of profit distributions and upholds the joint venture's

duty of good faith and transparency in financial matters. It also verifies the accuracy of your client's claims that PPVN's expenses have grown so much that it must slash payments to DAM.

The fact that PPVN claimed increased expenses as basis to withhold payments due DAM, PPVN must substantiate its claims and its refusal to do so constitutes breach of its fiduciary duties to DAM and its obligation of good faith and fair dealing. Accordingly, all such real time reportion must be provided and provision of the requested records provided immediately and within the time required by the Agreement or else DAM shall have the right to terminate the Agreement based on PPVN's uncured breach.

**Failure of Payment of Full Profit Share**: PPVN is in default for not remitting the full 50% of profits owed for the period from July 1, 2024, through September 30, 2024, less the two partial payments of $25,000 already made. Additionally, the profit share for the period of October 1 through October 31, 2024, has not been paid in full by November 15, 2024, as required. Accordingly, PPVN must remit the full 50% of profits owed for the period from July 1, 2024, through September 30, 2024, less the two partial payments of $25,000 already made. In addition, the profit share for the period of October 1 through October 31, 2024, must be paid in full by November 15, 2024.

**Breach of Contract for Industry Standards**: PPVN has breached its contractual obligation to maintain the site at industry standards. The front-end UI has not been updated in over seven years and still relies on outdated jQuery technology, which is no longer industry standard. Additionally, PPVN lacks an adequate, streamlined onboarding system for new independent producers. Compared to competitors, our system is confusing and inadequate, severely impacting functionality and user experience. These failures to incorporate new web technologies and payment methods, like crypto, for example, leave the joint venture lagging behind its competition and is a clear violation of PPVN's obligations under the Agreement. Accordingly, PPVN must immediately address and implement new web technologies as set forth at a minimum within the time required under the Agreement or else DAM shall have the right to terminate the Agreement based on PPVN's uncured breach.

**Suppression of Content and Promotion Obligations**: PPVN has removed a significant portion of DAM content and algorithmically suppressed the remaining content, making it difficult to locate. Additionally, DAM content has been removed from the front page, which is the highest traffic area, directly violating Section 6.9 of the agreement, which requires PPVN to use its best efforts to promote the Domains and Brands. Ensuring they reach the broadest possible audience. Accordingly, PPVN must immediately move to cure these defaults and do within the requirements of the Agreement or else DAM shall have the right to terminate the Agreement based on PPVN's uncured breach.

**Failure to Return of the Twitter Account to DAM's Ownership**: PPVN continues to fail to return control of the company's Twitter account to DAM. DAM owns and controlled the Twitter account for at least seven years prior to April 12th of this year when DAM provided PPVN custodial access in order to meet its contractual obligation to provide customer service. However, since taking over custodial possession, PPVN has failed to meet its obligation to promote DAM content by (a) failing to allow DAM and Robert Felt to access the account and post on it, (b) restricting promotion of DAM content in favor of promoting other producer's content, and (c) without permission or authority PPVN created an infringing identical "Raw

Fuck Club" channels and applied to all promotional content regardless of quality, intentionally diluting the Raw Fuck Club brand in violation of Section 4 of the Agreement and in violation of PPVN's fiduciary duties to DAM and its obligation of good faith and fair dealing under the Agreement. While PPVN may continue using the account for necessary business functions, the account's ownership designation must be in DAM's name and PPVN must cease its dilution of the brand and cure this default by fully cooperating to transfer the twitter account to DAM within the time required under the Agreement or else DAM shall have the right to terminate the Agreement based on PPVN's uncured breach.

**Provision of the Full Customer Email List**: As co-owners the parties equally own the jointly developed customer email list. Accordingly, DAM is entitle to and PPVN must turn over such list. Furthermore, Section 13 of the Agreement requires unconditional reciprocal access to vital business data which includes the customer email list. Accordingly, PPVN must cure this default immediately and within the time required under the Agreement or else DAM shall have the right to terminate the Agreement based on PPVN's uncured breach.

**Restriction of DAM Access to RC Admin Panel**. PPVN has restricted DAM's Access to the RC Admin Panel thus preventing DAM from performing under the Agreement all in default of the terms of the Agreement. As an example, DAM was unable to upload October's second scene it produced in satisfaction of its obligations under the Agreement. PPVN must accordingly cure this default immediately and within the time required under the Agreement or else DAM shall have the right to terminate the Agreement based on PPVN's uncured breach.

**NOTICE TO CURE**

As set forth in detail above your client must immediately cure each of its defaults as set forth above within the time required under the Agreement or else DAM shall have the right to terminate the Agreement based on PPVN's uncured breach.

Please advise your client that its failure to promptly and adequately cure the defaults as demanded in this letter will result in immediate action to protect all of DAM's rights under the Agreement and applicable law. DAM reserves all rights, including, but not limited to, its right to seek all remedies available and initiate any available legal proceedings.

Very truly yours,

Ravi Ivan Sharma

RAVI IVAN SHARMA, P.C.
4
letter to wesley mullen 2024-11-01.docx