**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SVOTHI INC.,

               Plaintiff,

      v.

DARK ALLEY MEDIA, LLC and
ROBERT FELT,

             Defendants.

Civil Action No. 25 CV 00333

**MEMORANDUM OF LAW OF DARK ALLEY MEDIA, LLC IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND ORDER TO SHOW CAUSE**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**...................................................................... 3

**PRELIMINARY STATEMENT** ................................................................. 5

**STATEMENT OF FACTS** ...................................................................... 7

    **THE PARTIES AND THEIR RELATIONSHIP** ........................................... 7

    **THE JOINT VENTURE AGREEMENT** .................................................. 7

    **THE DISPUTE AND TERMINATION OF THE JVA**................................. 9

    **RELATIONSHIP BETWEEN VIDEOAPP AND COUNTERCLAIM DEFENDANT**.................. 10

    **COUNTERCLAIM DEFENDANT'S LACK OF PRIVITY OF CONTRACT AND ALTER EGO STATUS** ...................................... 10

    **THE NEED FOR COURT INTERVENTION**........................................... 11

**LEGAL STANDARD**............................................................................ 11

    **STANDARD FOR PRELIMINARY INJUNCTION** ................................... 11

**ARGUMENT** ................................................................................................................ **12**

**TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT**................................ **12**

**UNFAIR COMPETITION UNDER NEW YORK COMMON LAW** ............................ **13**

**DAM IS LIKELY TO SUCCEED ON THE MERITS** .................................................. **14**

**COUNTERCLAIM DEFENDANT'S CLAIMS ARE BARRED BY THE DOCTRINE OF ALTER**

**EGO LIABILITY** .......................................................................................................... **15**

**DAM WILL SUFFER IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF** .................... **16**

**THE BALANCE OF EQUITIES FAVORS DAM** .......................................................... **17**

**AN INJUNCTION IS IN THE PUBLIC INTEREST** ...................................................... **18**

**NO BOND SHOULD BE REQUIRED** .......................................................................... **19**

**CONCLUSION**............................................................................................................... **20**

*CERTIFICATE OF WORD LENGTH*...............................................................................*21*

## Table of Authorities

**Statutes**

15 U.S.C. § 1125 ...................................................................................................................10

**Cases**

*Baby Phat Holding Co. v. Kellwood Co.*,
  991 N.Y.S.2d 592 (2014) ....................................................................................................13

*Bravo Pizza Enters. v. Azizo*,
  2023 U.S. Dist. LEXIS 152478 ..........................................................................................18

*Camelot Si, L.L.C. v. ThreeSixty Brands Grp. L.L.C.*,
  632 F. Supp. 3d 471 (S.D.N.Y. 2022) ...............................................................................17

*Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*,
  598 F.3d 30 (2d Cir. 2010) .................................................................................................10

*Classic Maritime Inc. v. Limbungan Makmur SDN BHD*,
  646 F. Supp. 2d 364 (S.D.N.Y. 2009) ...............................................................................14

*Doctor's Assocs. v. Stuart*,
  85 F.3d 975 (2d Cir. 1996) .................................................................................................19

*Elastic Wonder, Inc. v. Posey*,
  179 F. Supp. 3d 307 (S.D.N.Y. 2016) ...............................................................................14

*KatiRoll Co. v. Kati Junction, Inc.*,
  33 F. Supp. 3d 359 (S.D.N.Y. 2014) .................................................................................15

*Kelly-Brown v. Winfrey*,
  95 F. Supp. 3d 350 (S.D.N.Y. 2015) .................................................................................18

*Kraft Gen. Foods, Inc. v. Allied Old English, Inc.*,
  831 F. Supp. 123 (S.D.N.Y. 1993) ....................................................................................15

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*,
  799 F.2d 867 (2d Cir. 1986) ..............................................................................................12

*N.Y. City Triathlon, L.L.C. v. NYC Triathlon Club, Inc.*,
  704 F. Supp. 2d 305 (S.D.N.Y. 2010) ...............................................................................18

*Nabisco, Inc. v. PF Brands, Inc.*,
  191 F.3d 208 (2d Cir. 1999) ..............................................................................................16

*Polaroid Corp. v. Polarad Elecs. Corp.*,
  287 F.2d 492 (2d Cir. 1961) .........................................................................................11, 15

*Salinger v. Colting*,
   607 F.3d 68 (2d Cir. 2010) ...........................................................................................17

*Surrey Propco LLC v. Denihan Ownership Co.*,
   614 F. Supp. 3d 62 (S.D.N.Y. 2022) ............................................................................13

*Vincent's of Mott Street, Inc. v. Quadami*,
   423 F. App'x 46 (2d Cir. 2011) ....................................................................................13

*Winter v. NRDC, Inc.*,
   555 U.S. 7 (2008) ..........................................................................................................10

**Other**

Rule 65 .....................................................................................................................................18

**MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE AND MOTION FOR PRELIMINARY INJUNCTION**

PRELIMINARY STATEMENT

1.      Defendants Dark Alley Media, LLC ("DAM") respectfully submits this memorandum of law in support of its motion for a preliminary injunction and an order to show cause for a temporary restraining order enjoining Plaintiff/Counterclaim Defendant Svothi, Inc. ("Counterclaim Defendant") from Counterclaim Defendant's continued unauthorized use of DAM's intellectual property, including DAM's valuable common law trademark word mark "RFC" and image mark "RFC" (together the "JV RFC Abbreviation Letter Marks"), as well as the word marks "Raw Fuck Club", "RFC Channels" ("JV Word Marks")   as well as the URLs "rawfuckclub.com, and rfcchannels.com ("JV URL Marks" together with the JV Abbreviation Letter Marks, and the JV Word Marks, the " JV Marks"), and to prevent further irreparable harm to DAM's business, reputation, and ability to monetize its intellectual property.

2.      The relief sought is necessary to prevent irreparable harm to DAM's rights in the JV Marks, which were at the center of a Joint Venture Agreement ("JVA") between DAM and third-party VideoApp ("VideoApp").

3.      As detailed in the Declaration of Robert Felt, the Counterclaim Defendant has not only been using the exclusive marks of DAM since termination of a Joint Venture Agreement between DAM and third-party VideoApp Inc. ("VideoApp") that, upon information and belief, is the alter ego of Counterclaim Defendant, but that VideoApp

(and therefor Counterclaim Defendant) has failed to pay DAM for the use of the marks since August 2025; causing DAM extreme financial difficulties and irreparable harm as a result since such has brought DAM's business to a standstill and without the ability without fear utilize the marks in commerce until granted the relief sought herein. Without immediate relief in the form of ordering an accounting, and due payment for the use of the goods, including an order prohibiting the Counterclaim Defendant and its affiliates from removing such funds from the jurisdiction of this Court, irreparable injury will occur which will not be avoided by regular motion practice.

4.      The evidence demonstrates that Counterclaim Defendant is either the alter ego of VideoApp or a co-party in interest bound by the JVA.  As a result, Counterclaim Defendant's claims of trademark infringement and unfair competition under the Lanham Act and New York common law in the Complaint are baseless. The JVA explicitly provides that the JV Marks are the property of the joint venture and assigns ownership to DAM upon VideoApp's breach, which DAM has alleged and is pursuing in arbitration.[1]

5.      DAM has demonstrated a likelihood of success on the merits, irreparable harm absent injunctive relief, a balance of equities tipping in its favor, and that the public interest supports granting the requested relief.

---

[1] JAMS Demand for Arbitration, *Dark Alley Media, LLC vs. VideoApp Inc.* #5425003243, submitted 1/16/2025, demands payment of at least $147,000 withheld by VideoApp since at least August 2024 and determination that the Marks and other assets are to be transferred to DAM on account of VideoApp's uncured breach of the JVA.

6.     Furthermore, no bond should be required, as the equities and circumstances of this case weigh against imposing such a requirement.

## STATEMENT OF FACTS

### The Parties and Their Relationship

7.     DAM, founded in 2005, is a New York-based media company specializing in the production and distribution of adult content. DAM has built a reputation for high-quality productions and has developed a library of over 300 titles. DAM is the creator and rightful owner of the JV Marks, including the brand "rawfuckclub" and the domain name "rawfuckclub.com", which it has continuously used in commerce since August 2007. (Felt Decl., ¶¶ 1-6).

8.     Robert Felt, DAM's founder and managing member, has been a prominent figure in the adult content industry for over two decades, contributing to DAM's success and the establishment of the RFC brand. (Felt Decl., ¶¶ 1-3).

9.     Counterclaim Defendant, a New York corporation, is an affiliate and alter ego of VideoApp ("VideoApp"), a Nevis corporation. Counterclaim Defendant and VideoApp share the same address, ownership, and attorney, and have commingled their operations and resources. (Sharma Decl., ¶¶ 1-4).

### The Joint Venture Agreement

10.     DAM, a New York-based media company specializing in the production and distribution of adult content, entered into a business relationship with VideoApp ("VideoApp") in 2010. This relationship was initially informal, with VideoApp hosting

and managing the website *rawfuckclub.com* (the "RFC Website"), which featured DAM's video content. Over the years, the parties collaborated closely, with DAM producing the content and VideoApp providing hosting, billing, and customer service. (Felt Decl., ¶¶ 12-15).

11.    In 2019, the parties formalized their relationship by executing the RFC Joint Venture Agreement ("JVA"), effective January 1, 2019. The JVA was executed by Robert Felt on behalf of DAM and Damian Todaro on behalf of VideoApp. The JVA memorialized the parties' joint efforts and explicitly stated that the JV Marks, including the trademarks "Raw Fuck Club" and "RFC," were the property of the joint venture. The agreement further provided that any goodwill derived from the use of the JV Marks would inure to the benefit of the joint venture. (Felt Decl., ¶¶ 26-27; JVA, § 2.1).

12.    The JVA also included provisions governing the termination of the agreement. Section 12.4 provided that, upon termination due to a breach by VideoApp, all rights to the JV Marks would revert to DAM. Conversely, if DAM breached the agreement, VideoApp would retain limited rights to use the JV Marks, subject to ongoing royalty payments to DAM. (Felt Decl., ¶¶ 28-30; JVA, §§ 12.3, 12.4). Additionally, the JVA included an arbitration provision that any disputes arising under the agreement would be resolved through arbitration in New York City. (Felt Decl., ¶¶ 26-27; JVA, §§ 2.1, 14.1)

13.    DAM granted rights to its intellectual property, including the JV Marks and original video content, to the joint venture, while VideoApp provided website hosting,

billing, customer service, and promised various representations and warranties. (Felt Decl., ¶¶ 11-12).

**The Dispute and Termination of the JVA**

14.     In 2024, disputes arose between DAM and VideoApp regarding the performance of their respective obligations under the JVA. DAM alleged that VideoApp had materially breached the agreement by failing to remit payments due to DAM and by failing to provide required financial reports. On November 1, 2024, DAM, through counsel, issued a notice of breach to VideoApp, demanding that it cure its breaches within the time specified in the JVA. (Sharma Decl., ¶¶ 18-19).

15.     VideoApp failed to cure its breaches within the required timeframe. Consequently, on December 4, 2024, DAM formally terminated the JVA pursuant to Section 12.4.

16.     The termination notice demanded that VideoApp cease all use of the JV Marks and transfer all digital assets, including the RFC Website, to DAM. (Sharma Decl., ¶¶ 21-22; JVA, § 12.4).

17.     Despite this, Counterclaim Defendant and VideoApp have continued to use the JV Marks without authorization, causing significant harm to DAM. (Sharma Decl., ¶¶ 11-15).

18.     Counterclaim Defendant also filed the present lawsuit, asserting ownership of the JV Marks and alleging trademark infringement and unfair competition by DAM. (Felt Decl., ¶¶ 45-47).

**Relationship Between VideoApp and Counterclaim Defendant.**

19.    VideoApp and Counterclaim Defendant are closely related entities. Both companies share the same address, ownership, and legal representation. Damian Todaro, the owner of VideoApp, is also the owner of Counterclaim Defendant. Additionally, Counterclaim Defendant issued payments to DAM under the JVA, despite not being a signatory to the agreement. These payments were made pursuant to profit shares due to DAM from the proceeds of the joint venture's operations. (Felt Decl., ¶¶ 31-33; Sharma Decl., ¶¶ 22-24).

20.    The overlap in corporate structure and operations demonstrates that Counterclaim Defendant and VideoApp function as a single economic unit. Counterclaim Defendant's involvement in the joint venture, including its role as the payor of DAM's profit shares, establishes that it is either the alter ego of VideoApp or a co-party in interest. (Felt Decl., ¶¶ 34-36).

**Counterclaim Defendant's Lack of Privity of Contract and Alter Ego Status**

21.    Counterclaim Defendant was not a signatory to the JVA and, therefore, lacks privity of contract with DAM. However, its actions demonstrate that it is the alter ego of VideoApp. Counterclaim Defendant and VideoApp share the same address, ownership, and attorney, and Counterclaim Defendant issued payments to DAM under the JVA. These facts establish that Counterclaim Defendant and VideoApp are not separate entities but rather a single economic unit operating under the same control. (Felt Decl., ¶¶ 31-33; Sharma Decl., ¶¶ 22-24).

22.     The alter ego relationship between Counterclaim Defendant and VideoApp precludes Counterclaim Defendant from asserting independent rights to the JV Marks. As the alter ego of VideoApp, Counterclaim Defendant is bound by the terms of the JVA, including the provisions governing the ownership and use of the JV Marks. (Felt Decl., ¶¶ 34-36).

**The Need for Court Intervention**

23.     Counterclaim Defendant's unauthorized use of the JV Marks has caused and continues to cause irreparable harm to DAM's business, reputation, and ability to monetize its intellectual property. Counterclaim Defendant's actions have also created consumer confusion and undermined DAM's goodwill. Immediate injunctive relief is necessary to prevent further harm. (Felt Decl., ¶¶ 16-20).

**LEGAL STANDARD**
**Standard for Preliminary Injunction**

24.     To obtain a preliminary injunction, a movant must demonstrate:

1.  A likelihood of success on the merits;

2.  Irreparable harm in the absence of injunctive relief;

3.  That the balance of equities tips in the movant's favor; and

4.  That an injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

25.     Alternatively, in the Second Circuit, a party may alternatively show "sufficiently serious questions going to the merits to make them a fair ground for

litigation" and a balance of hardships tipping decidedly in its favor. Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010).

## ARGUMENT

### Trademark Infringement Under the Lanham Act

26.     The Lanham Act, 15 U.S.C. § 1125(a), prohibits the unauthorized use of a trademark in a manner that is likely to cause confusion, mistake, or deception among consumers regarding the source of goods or services. The statute protects both registered and unregistered marks, provided the mark is used in commerce and has acquired distinctiveness.

27.     In *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961), the Second Circuit established a multi-factor test to determine the likelihood of confusion, including:

1. The strength of the mark;

2. The similarity of the marks;

3. The proximity of the goods;

4. Evidence of actual confusion;

5. The defendant's intent; and

6. The quality of the defendant's product.

DAM has demonstrated prior and continuous use of the JV Marks in commerce since 2007, predating Counterclaim Defendant's alleged use. The JV Marks are distinctive

and have acquired significant goodwill through DAM's efforts under the Joint Venture Agreement (JVA) and have been used in the same market as Counterclaim Defendant's infringing activities.

28.    Counterclaim Defendant's unauthorized use of the JV Marks creates a likelihood of confusion among consumers, as evidenced by the overlap in branding and the identical nature of the goods and services offered. (Felt Decl., ¶¶ 45-50).

29.    The facts here align with *Polaroid*, as the JV Marks are strong, the goods are identical, and Counterclaim Defendant's continued use of the marks demonstrates bad faith. The court in *Polaroid* emphasized that such factors strongly support a finding of infringement, which militates in favor of granting injunctive relief to DAM.

30.    DAM's evidence includes screenshots of Counterclaim Defendant's websites using the JV Marks without authorization, creating consumer confusion and damaging DAM's goodwill.

**Unfair Competition Under New York Common Law**

31.    New York common law recognizes claims for unfair competition, which include misappropriation of goodwill and trademark infringement. The essence of an unfair competition claim is the bad faith misappropriation of the labors and expenditures of another, likely to cause consumer confusion.

32.    In *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867 (2d Cir. 1986), the court held that unfair competition claims can arise from the unauthorized

use of a trademark that causes consumer confusion. The court emphasized that bad faith and the likelihood of confusion are central to such claims.

33.     Counterclaim Defendant's continued use of the JV Marks, despite the termination of the JVA, constitutes unfair competition as it misappropriates the goodwill associated with the RFC brand. DAM has invested significant resources in building the JV Marks, and Counterclaim Defendant's actions undermine DAM's reputation and business. (Felt Decl., ¶¶ 45-50).

34.     The facts here are analogous to *Lois Sportswear*, where the court found that the defendant's unauthorized use of a mark constituted unfair competition. Counterclaim Defendant's bad faith and the likelihood of consumer confusion strongly support DAM's claim and the requested injunctive relief.

**DAM Is Likely to Succeed on the Merits**

35.     DAM has established prior and continuous use of the JV Marks since 2007, predating Counterclaim Defendant's alleged use in 2010. In addition, the JVA between DAM and VideoApp explicitly states that the JV Marks are the property of the joint venture and explicitly recognized DAM's ownership of the JV Marks upon termination due to VideoApp's breach. (Felt Decl., ¶¶ 7-10; JVA, § 12.4).

36.     Section 12.4 of the JVA provides: "Upon termination of this Agreement due to a breach by VideoApp, all rights to the JV Marks shall revert to DAM."

37.     Counterclaim Defendant, as an affiliate or alter ego of VideoApp, is bound by this agreement. Courts have consistently held that affiliates or alter egos of

contracting parties are bound by the terms of the contract. *See Baby Phat Holding Co. v. Kellwood Co.*, 991 N.Y.S.2d 592 (2014).

38.     Courts hold that trademark ownership is determined by priority of use and the terms of any governing agreements. *Vincent's of Mott Street, Inc. v. Quadami*, 423 F. App'x 46 (2d Cir. 2011). See also, *Surrey Propco LLC v. Denihan Ownership Co.*, 614 F. Supp. 3d 62 (S.D.N.Y. 2022) Here, DAM's continuous use of the JV Marks since 2007 and the JVA's explicit reversion clause establish DAM's ownership.

39.     DAM's evidence includes the domain registration for rawfuckclub.com in 2007, production documents, and sales reports showing use of the JV Marks in commerce before 2010. These facts directly counter Counterclaim Defendant's claim of ownership and align with the principles in *Elastic Wonder, Inc. v. Posey,* 179 F. Supp. 3d 307 (S.D.N.Y. 2016).

40.     Counterclaim Defendant's claim is further undermined by its failure to provide or even allege evidence of use predating DAM's use. Nor may Counterclaim Defendant convincingly argue that DAM's use of the JV Marks creates consumer confusion. DAM's continuous use since 2007 establishes its priority and negates any confusion caused by Counterclaim Defendant's unauthorized actions.

**Counterclaim Defendant's Claims Are Barred by the Doctrine of Alter Ego Liability**

41.     The evidence demonstrates that Counterclaim Defendant and VideoApp share the same address, ownership, and legal representation, and that Counterclaim Defendant issued payments to DAM on behalf of VideoApp. These facts establish that Counterclaim Defendant is the alter ego of VideoApp and cannot assert independent

rights to the JV Marks. See, *Classic Maritime Inc. v. Limbungan Makmur SDN BHD*, 646 F. Supp. 2d 364 (S.D.N.Y. 2009).

42.    Moreover, under New York law, common law trademark rights are subordinate to contractual agreements. In *KatiRoll Co. v. Kati Junction, Inc.*, 33 F. Supp. 3d 359, 368 (S.D.N.Y. 2014), the court held that a party's failure to adhere to contractual terms governing trademark ownership precluded its common law claims. Here, Counterclaim Defendant's assertion of common law rights is directly contradicted by the JVA, which explicitly governs ownership of the JV Marks. Accordingly Counterclaim Defendant's common law trademark claims are precluded by the JVA and if they were not, such would be subject to DAM's priority in any event.

43.    Under the Lanham Act, trademark infringement occurs when a defendant's use of a mark is likely to cause confusion. *Polaroid Corp.*, 287 F.2d at 495. Here, Counterclaim Defendant's unauthorized use of the JV Marks is likely to cause consumer confusion, as the marks are identical and used in the same market.

**DAM Will Suffer Irreparable Harm Absent Injunctive Relief**

44.    Irreparable harm is presumed in trademark cases where there is a likelihood of confusion. *Kraft Gen. Foods, Inc. v. Allied Old English, Inc.*, 831 F. Supp. 123, 130 (S.D.N.Y. 1993). Similarly, in *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, the court emphasized the harm to goodwill and reputation as irreparable. Counterclaim Defendant's continued use of the JV Marks has caused significant harm to DAM's reputation and goodwill, which cannot be adequately compensated by monetary damages. (Felt Decl., ¶¶ 16-20).

45.    The loss of control over the JV Marks and the resulting damage to DAM's goodwill constitute irreparable harm. Courts have consistently held that irreparable harm is presumed in cases of trademark infringement. *See Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 223 (2d Cir. 1999). (affirming irreparable harm where trademark dilution threatened brand identity). Counterclaim Defendant's continued assertion of ownership over the JV Marks undermines DAM's ability to control its brand and causes confusion among consumers.

46.    DAM's inability to commercialize its content due to Counterclaim Defendant's baseless claims that has caused significant past and ongoing financial and reputational harm further underscores that such is irreparable. (Felt Decl., ¶¶ 45-50).

47.    As stated in the Declaration of Robert Felt: "Since the termination of the JVA, Counterclaim Defendant's unauthorized use of the JV Marks has caused harm to DAM's business, reputation, and ability to monetize its intellectual property." (Felt Decl. ¶ 45).

**The Balance of Equities Favors DAM**

48.    The harm to DAM from Counterclaim Defendant's unauthorized use of the JV Marks far outweighs any potential harm to Counterclaim Defendant from ceasing its infringing activities. Counterclaim Defendant has no legitimate claim to the JV Marks, and its continued use is in bad faith.

49.    The harm to Defendants from Counterclaim Defendant's baseless claims far outweighs any potential harm to Counterclaim Defendant. Defendants have invested

significant resources in developing the JV Marks under the JVA, while Counterclaim Defendant's claims are an attempt to circumvent the arbitration process and undermine DAM's rights. *See Camelot Si, L.L.C. v. ThreeSixty Brands Grp. L.L.C.,* 632 F. Supp. 3d 471, 482 (S.D.N.Y. 2022) (balancing equities in favor of the party with contractual rights).

50.    In *Salinger v. Colting, 607 F.3d 68 (2d Cir. 2010)*, the court held that the balance of equities favors the party suffering irreparable harm over the party engaging in infringing conduct. Specifically, the court noted that harm might be irreparable if it is difficult to replace, measure, or if it is a loss that one should not be expected to endure. The court also highlighted that the harm to the plaintiff's property interest, particularly in cases of market confusion, is often characterized as irreparable. Here, DAM's harm is significant, while Counterclaim Defendant has no legitimate claim to the JV Marks given its breach of the JV Agreement.

51.    DAM's rights to the JV Marks are explicitly protected under the JVA, and Counterclaim Defendant's continued use of the marks is unauthorized and in bad faith.

**An Injunction Is in the Public Interest**

52.    The public has a strong interest in preventing consumer confusion and protecting trademark rights. *N.Y. City Triathlon, L.L.C. v. NYC Triathlon Club, Inc.,* 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010). *See Kelly-Brown v. Winfrey*, 95 F. Supp. 3d 350, 364 (S.D.N.Y. 2015) (noting the public interest in protecting trademark rights and preventing deception).

53.    DAM's trademarks have been associated with high-quality content for over 17 years, and Counterclaim Defendant's unauthorized use threatens to erode consumer trust and goodwill.

54.    Protecting DAM's rights to the JV Marks ensures the integrity of trademark law and prevents deception in the marketplace.

## No Bond Should Be Required

55.    Since Counterclaim Defendant has failed to show its right to any marks is superior to DAM's whether via contract or priority, it can suffer no loss if it is unable to utilize the marks without permission any longer. Under Rule 65(c) of the Federal Rules of Civil Procedure, the court has discretion to waive the bond requirement where the movant has demonstrated a strong likelihood of success, and the opposing party faces minimal risk of harm.

56.    In *Bravo Pizza Enters. v. Azizo*, 2023 U.S. Dist. LEXIS 152478, the court issued a preliminary injunction to prevent the defendants from using the plaintiff's trademarks, noting that the plaintiff had a clear likelihood of success on the merits and would suffer irreparable harm without the injunction. The court also compelled arbitration regarding the breach of the license agreement and stayed litigation on the remaining claims.

57.    DAM's loss of income caused by VideoApp's breaches of the JVA, make it unable to post a bond. Given DAM's financial hardship caused by Counterclaim Defendant's actions and the clear equities in DAM's favor, no bond should be required. *Doctor's Assocs. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996).

CONCLUSION

58.    The statutory and common law bases for DAM's claims, combined with the applicable legal standards for obtaining a preliminary injunction, strongly support the requested relief. The facts of this case align with established legal principles, demonstrating that Counterclaim Defendant's actions are unauthorized and detrimental to DAM's rights and the public interest.

59.    For the foregoing reasons, DAM respectfully requests that the Court grant its motion for a preliminary injunction and order to show cause, enjoining Counterclaim Defendant from its continued unauthorized use of the JV Marks and granting such other relief as the Court deems just and proper.

Dated: February 5, 2025

Respectfully submitted,

**SHARMALAW – Ravi Ivan Sharma, P.C.**

By: /s/_____

Ravi Ivan Sharma
26 Broadway, Suite 1108
New York, NY 10004
(212) 537-5957
ravi@sharmalaw.com

Counsel for Defendants
and Counterclaim Plaintiffs

Certificate of Word Length

Please take notice that this Memorandum
Consists of 3,692 words.

/s/ _____
Ravi Ivan Sharma