**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SVOTHI, INC.,

        Plaintiff-Counterclaim Defendant,

             v.

DARK ALLEY MEDIA, LLC and
    ROBERT FELT,

        Defendants-Counterclaim Plaintiffs.

No. 25 CV 0333 (ALC)

---

**PLAINTIFF SVOTHI, INC.'s MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR A PRELIMINARY INJUNCTION**

---

MULLEN P.C.
Wesley M. Mullen
Martin J.E. Arms
Vincent R. FitzPatrick III
745 Fifth Avenue | Suite 500
New York, NY 10151
(646) 632-3718

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT .................................................................. 1

II.   SUMMARY OF THE CASE ................................................................... 3

      A.    SVOTHI's claims against the Defendants .................................... 3

      B.    Defendants' barrage of retaliatory lawsuits.................................. 4

      C.    Defendants' public statements about their strategy ...................... 5

      D.    The narrow counterclaims at issue on this Motion ...................... 7

III.  SUMMARY OF THE REQUESTED RELIEF .................................... 8

IV.   STANDARDS ....................................................................................... 9

V.    ARGUMENT .......................................................................................10

      A.    The Motion seeks to upend the *status quo* ...................................10

      B.    The Court should deny the Motion because
            there is no irreparable harm ..........................................................11

            1.    Defendants' delay precludes injunctive relief ....................11

            2.    Even ignoring the delay, there is no irreparable harm .......14

      C.    The Court should deny the motion because there is no
            clear likelihood of success on any counterclaim..........................16

            1.    The Motion's claim of alter ego liability fails....................16

            2.    There is no clear likelihood of success on Defendants' federal
                  trademark infringement claim............................................17

            3.    There is no clear likelihood of success on Defendants' unfair
                  competition claim...............................................................19

      D.    The balance of hardships favors SVOTHI ...................................20

      E.    The requested injunction would harm the public interest .............21

VI.   CONCLUSION ....................................................................................23

i

# TABLE OF AUTHORITIES

## Cases

*A.H. v. French,*
    985 F.3d 165 (2d Cir. 2021) ................................................................................10

*Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.,*
    No. 10-CV-3314 (RWS), 2015 U.S. Dist. LEXIS 84172, 2015 WL 4033019
    (S.D.N.Y. June 26, 2015) ..................................................................................15

*Baker v. Parris,*
    777 F. Supp. 299 (S.D.N.Y. 1991) .......................................................................18

*Basank v. Decker,*
    449 F. Supp. 3d 205 (S.D.N.Y. 2020) .................................................................. 9

*C.L.A.S.S. Promotions, Inc. v. D.S. Magazines, Inc.,*
    753 F.2d 14 (2d Cir. 1985) ..................................................................................17

*Citibank, N.A. v. Citytrust,*
    756 F.2d 273 (2d Cir. 1985) ........................................................................... 12, 13

*Coscarelli v. Esquared Hosp. LLC,*
    364 F. Supp. 3d 207 (S.D.N.Y. 2019) ..................................................................12

*Council for Responsible Nutrition v. James,*
    No. 24-CV-1881 (ALC), 2024 U.S. Dist. LEXIS 72982
    (S.D.N.Y. Apr. 19, 2024) ...................................................................................14

*Daileader v. Certain Underwriters at Lloyds Ldn. Synd. 1861,*
    96 F.4th 351 (2d Cir. 2024) ...................................................................... 9, 10, 11

*Doctor's Assocs. v. Stuart,*
    85 F.3d 975 (2d Cir. 1996) ..................................................................................22

*Faiveley Transp. Malmo AB v. Wabtec Corp.,*
    559 F.3d 110 (2d Cir. 2009) ................................................................................11

*Fung-Schwartz v. Cerner Corp.,*
    804 Fed. Appx. 85 (2d Cir. 2020) ....................................................................... 9

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.,*
    13 F. Supp. 2d 417 (S.D.N.Y. 1998) ...................................................................12

*Hanson Tr. PLC v. ML SCM Acquisition, Inc.*,
    781 F.2d 264 (2d Cir. 1986) ................................................................................. 9

*Hodnett v. Medalist Partners Opportunity Master Fund II-A, L.P.*,
    No. 21-CV-00038 (MKV), 2021 U.S. Dist. LEXIS 27205, 2021 WL 535485
    (S.D.N.Y. Feb. 12, 2021) .....................................................................................14

*Hyundai Mipo Dockyard Co. v. AEP/Borden Indus.*,
    261 F.3d 264 (2d Cir. 2001) ......................................................................... 11, 23

*In re Currency Conversion Fee Antitrust Litig.*,
    265 F. Supp. 2d 385 (S.D.N.Y. 2003) .................................................................17

*Ivoclar N. Am. v. Dentsply Int'l*,
    41 F. Supp. 2d 274 (S.D.N.Y. 1998) ............................................................. 17, 19

*Jaryaj v. Scappinin*,
    66 F.3d 36 (2d Cir. 1995). ...................................................................................14

*Johnson v. Saba Cap. Mgmt., L.P.*,
    No. 22-CV-4915 (AT), 2023 U.S. Dist. LEXIS 16388, 2023 WL 1345717
    (S.D.N.Y. Jan. 31, 2023) .....................................................................................11

*Kamerling v. Massanari*,
    295 F.3d 206 (2d Cir. 2002) ................................................................................10

*KatiRoll Co. v. Kati Junction, Inc.*,
    33 F. Supp. 3d 359 (S.D.N.Y. 2014) ...................................................................20

*La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*,
    495 F.2d 1265 (2d Cir. 1974) ..............................................................................18

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*,
    799 F.2d 867 (2d Cir. 1986) ................................................................................20

*M.V. Music v. V.P. Records Retail Outlet, Inc.*,
    653 F. Supp. 3d 31 (E.D.N.Y. 2023) ...................................................................15

*MAG Portfolio Consult, GmbH v. Merlin Biomed Group, LLC*,
    268 F.3d 58 (2d Cir. 2001) ..................................................................................17

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) .........................................................................................9, 20

*MCGM, GmbH v. OPTA Grp. LLC*,
No. 22-CV-5851 (PKC), 2024 U.S. Dist. LEXIS 52769, 2024 WL 1250629
(S.D.N.Y. Mar. 21, 2024) ....................................................................................17

*Monowise Ltd. v. Ozy Media, Inc.*,
No. 17-CV-8028 (JMF), 2018 U.S. Dist. LEXIS 75312, 2018 WL 2089342
(S.D.N.Y. May 3, 2018)........................................................................... 2, 11, 12

*Morris v. State Dep't of Taxation & Fin.*,
82 N.Y.2d 135 (1993)..........................................................................................17

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*,
883 F.3d 32 (2d Cir. 2018)...............................................................................2, 10

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*,
269 F.3d 114 (2d Cir. 2001).................................................................................17

*Pado, Inc. v. SG Trademark Holding Co LLC*,
No. 19-CV-6614 (RPK) (RER), 2020 U.S. Dist. LEXIS 240423, 2020 WL 7625363
(E.D.N.Y. Dec. 22, 2020) ....................................................................................15

*Polaroid Corp. v. Polarad Elecs. Corp.*,
287 F.2d 492 (2d Cir. 1961)...................................................................... 2, 18, 19

*Portkey Techs. PTE Ltd. v. Venkateswaran*,
No. 23-CV-5074 (JPO) 2024, 2024 U.S. Dist. LEXIS 128942, 2024 WL 3487735
(S.D.N.Y. July 19, 2024)......................................................................................19

*Roberts v. Atl. Recording Corp.*,
892 F. Supp. 83 (S.D.N.Y. 1995).........................................................................11

*Rodriguez ex rel. Rodriguez v. DeBuono*,
175 F.3d 227 (2d Cir. 1998).................................................................................10

*Rodriguez v. Redbubble, Inc.*,
No. 21-CV-2973 (VSB), 2023 U.S. Dist. LEXIS 173126, 2023 WL 6294180
(S.D.N.Y. Sept. 27, 2023) ....................................................................................20

*Salinger v. Colting,* 607
F.3d 68 (2d Cir. 2010) .............................................................................. 14, 20, 21

*Streetwise Maps v. VanDam, Inc.*,
159 F.3d 739 (2d Cir. 1998).................................................................................19

*Tom Doherty Assocs. v. Saban Entm't*,
60 F.3d 27 (2d Cir. 1995) .............................................................................. 14, 15

iv

*Tough Traveler, Ltd. v. Outbound Prods.*,
    60 F.3d 964 (2d Cir. 1995) ....................................................................................16

*VideoApp, Inc. v. Dark Alley Media, LLC*,
    No. 650680/2025 (N.Y. Sup. Ct. N.Y. Cty.) ............................................................ 4

*Weight Watchers Int'l, Inc. v. Luigino's, Inc.*,
    423 F.2d 137 (2d Cir. 2005) ...............................................................................12

*Weisshaus v. Cuomo*,
    512 F. Supp. 3d 379 (E.D.N.Y. 2021) ...................................................................23

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2008) ........................................................................................ 2, 9, 14

## Statutes and Rules

15 U.S.C. 1116 ...............................................................................................................15

Fed. R. Civ. P. 65 .................................................................................................... 17, 22

Plaintiff SVOTHI, Inc. ("SVOTHI") respectfully submits this Memorandum of Law in Opposition to Defendants' Motion for a Preliminary Injunction (ECF Doc. 21) (the "Motion").[1]

## I.    PRELIMINARY STATEMENT

For more than a decade, SVOTHI has operated the successful adult website rawf\*\*\*club.com[2] (the "Website") using the common law marks RFC, RFC.com, and ⬛RFC. (Corso Decl. at 1 ¶ 3.) The Website has thousands of members who pay recurring subscription fees to access video content and to participate in social media activity. (*Id.* at 1 ¶ 5.) SVOTHI also has ongoing relationships with hundreds of producers who post video content on the Website in exchange for payment. (*Id.* at 2 ¶ 7.)

Defendants now ask the Court for an injunction that would inflict immediate financial harm and could well put SVOTHI out of business. (*Id.* at 4 ¶ 15.) The requested injunction would leave users who have already paid SVOTHI for access to the Website out in the cold by prohibiting SVOTHI from exploiting marks and domain names that it has *openly* used in commerce for years.

The Motion should be denied without a hearing for a host of reasons.

First, whereas the purpose of a preliminary injunction is to preserve the status quo, this Motion seeks to disrupt it. The Motion admits that — for years and with Defendants' full

---

[1] Defendants' Memorandum of Law, (ECF Doc. 21) is referred to as the "Motion" and cited as "Mot."

[2] Some of the parties' business enterprises, and several of the marks over which Defendants assert trademark rights, involve profanity. Throughout this Memorandum, and for the purposes of decorum, Plaintiff has paraphrased or elided terms that are not commonly used in federal civil practice.

knowledge — SVOTHI has operated an interactive website using the contested marks. The Court should deny the relief requested because Defendants seek to alter that relationship without even attempting to meet the "heightened standard" for a mandatory injunction.[3]

_Second_, the Motion fails to show irreparable harm under any standard. The Motion proves that Defendant Mr. Felt has been aware of SVOTHI's Website, and its use of the contested marks, since 2010. "[C]ourts in [the Second] Circuit typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months,"[4] so the Defendants' delay of well more than a decade is the end of the inquiry. And even setting aside the outsize delay, the Motion describes no injury that might amount to irreparable harm justifying the "extraordinary remedy"[5] of preliminary relief. To the contrary, Defendants' (incorrect and hotly-contested) theory of the case is a contract dispute involving financial harms that are not irreparable as a matter of law.[6]

_Third_, the Motion cannot show a likelihood of success under any formulation of the Defendants' counterclaims. Every one of the counterclaims against SVOTHI turns on a theory of alter ego liability that is barely discussed (let alone proved) in the moving papers. As to its federal trademark claim, the Motion misapplies the _Polaroid_ test and offers no evidence at all of actual confusion. And the Motion ignores the bad faith element for state-

---

[3] _See N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc._, 883 F.3d 32, 36-37 (2d Cir. 2018).

[4] _Monowise Ltd. v. Ozy Media, Inc.,_ No. 17-CV-8028 (JMF), 2018 U.S. Dist. LEXIS 75312, at *4, 2018 WL 2089342 (S.D.N.Y. May 3, 2018).

[5] _Winter v. NRDC, Inc._, 555 U.S. 7, 24 (2008).

[6] _E.g._ Mot. at 9 ¶ 14 ("In 2024, disputes arose between [Defendant Dark Alley] and [non-party] VideoApp regarding the performance of their respective obligations under" a joint venture agreement between Dark Alley and VideoApp).

law unfair competition. Put simply, the Motion fails to demonstrate a clear likelihood of success on any counterclaim against SVOTHI that would support the entry of the requested relief.

And <u>fourth</u>, the balance of hardships and the public interest both weigh heavy against the movants. The Motion describes no cognizable harm that the Defendants might suffer in the absence of relief; Mr. Felt's vague and conclusory allusions to "significant harm to … business and reputation," (Felt Decl. (<u>ECF Doc. 21-1</u>) at 17 ¶ 68), and to generalized "financial losses," (*id*. at 17 ¶ 69), do not clear the bar; and there is no evidence of consumer confusion. By contrast, SVOTHI and its thousands of Website users and producers will be immediately and irreparably injured if the Court enters a preliminary injunction prohibiting SVOTHI from continuing to operate the Website.

For any or all the above reasons, the Motion should be denied.

## II.    SUMMARY OF THE CASE

Plaintiff SVOTHI is a technology company that operates adult media properties including the Website, <u>rawf\*\*\*club.com</u>, which it owns and has run for more than a decade. (Corso Decl. at 1 ¶¶ 1-2.) Defendant Mr. Felt is a "performer in the adult industry" who describes his "resume of achievements in t[he] industry" as "one that few … can match." (Felt Decl. at 1 ¶ 2.) Defendant Dark Alley is his production company. (*Id*. at 1 ¶ 1.)

## A.    SVOTHI's claims against the Defendants

SVOTHI filed this action on January 13, 2025 alleging infringement of three common law marks: RFC, RFC.com, and ◼RFC◼. SVOTHI's Complaint describes how, "for more than two decades," SVOTHI has been operating digital adult-content platforms under those marks, (Compl. (<u>ECF Doc. 7</u>) at 1 ¶ 2); and it explains that, around January 1, 2025, the Defendants

began infringing the marks by affixing them their own adult websites and adult videos, (*id.* at 5 ¶ 32). SVOTHI's Complaint states claims under the Lanham Act and New York state law. (*Id.* at 10-12 ¶¶ 52-69.)

## B.    Defendants' barrage of retaliatory lawsuits

Defendants responded by firing off a battery of retaliatory claims, in three forums, against SVOTHI, its principal Mr. Damian Todaro, and his family members.

First — just three days after SVOTHI filed this action — Dark Alley purported to demand arbitration before JAMS against VideoApp, Inc. based on a joint venture agreement between Dark Alley and VideoApp. (Mullen Decl. Ex. A) Though the demand for arbitration does not name SVOTHI, it targets it. Dark Alley's four-sentence JAMS demand alleges, in conclusory fashion, that SVOTHI is "the alter-ego of" VideoApp and that SVOTHI is therefore liable to Dark Alley in damages for "falsely claiming ownership of the RFC trademarks … ." (*Id.* at 2.) That arbitration was short-lived. On February 6, 2025, JAMS informed the parties that it would not administer arbitration because "JAMS is not named in the arbitration clause in this matter and [because] Respondent [VideoApp] does not wish to proceed." (Mullen Decl. Ex. B.)[7] Dark Alley has made no other attempt at arbitration.

Second, on January 31, 2025, Defendants filed a New York Supreme Court defamation case against SVOTHI's principal Mr. Todaro, his unnamed "long-term [domestic] partner," and VideoApp. (Mullen Decl. Ex. C at 3 ¶ 8.) In that action, Mr. Felt

---

[7] VideoApp also petitioned a New York state court to stay any arbitration (before JAMS or otherwise) on the grounds, among others, that Dark Alley waived any right it might once have had to arbitrate. *VideoApp, Inc. v. Dark Alley Media, LLC*, No. 650680/2025 (N.Y. Sup. Ct. N.Y. Cty.). (*See* Mullen Decl. Ex. D.)

and Dark Alley allege that anonymous Twitter accounts — which the state-court plaintiffs suppose might have been operated Mr. Todaro's partner — made unflattering statements on the internet about Mr. Felt's adult-film alter ego, Owen Hawk. On that basis and others, the Defendants claim that VideoApp, Mr. Todaro, and his family member are responsible for purported "lost revenue and harm to … business reputation." (*E.g., id.* at 11 ¶ 46.) That action is pending in New York Supreme Court and the defendants have yet to respond.

Third, and also on January 31, 2025, Dark Alley filed an answer with fifteen counterclaims in this case. The counterclaims seek to hold SVOTHI liable for, among other things, breach of a joint venture contract between Dark Alley and non-party VideoApp. (Am. Ans. ([ECF Doc. 19](#)) at 39 ¶ 32.) SVOTHI intends timely to move against the counterclaims under Rule 12(b)(6).

In the declarations submitted in support of this Motion, the Defendants narrate at length the theories underpinning their sundry claims and counterclaims against VideoApp, Mr. Todaro, and SVOTHI. Much of the testimony is irrelevant to the Motion and to the counterclaims in *this* action on which the Defendants must establish a clear likelihood of success. Mr. Felt contends that SVOTHI's "complaint … is astoundingly dishonest, omits significant material evidence and paints me … as violating the rights of a corporate entity with no convincing claim to own these marks." (Felt Decl. at 13 ¶ 47.) SVOTHI responds that those opinions do not support the relief sought, but are instead (and at best) defenses to Plaintiff's claims, which can and should be dealt with in the ordinary course of litigation.

## C.    Defendants' public statements about their strategy

While preparing his litigation broadside, Mr. Felt publicly narrated the Defendants' strategy to his hundreds of thousands of fans and social media followers. (*See* Mullen Decl. ¶

8 (Mr. Felt's Twitter) ("I have a federal case, a state case, and an arbitration case all open at the same time. … For anyone that's interested, I did a 10-minute TikTok explaining the … trifecta of hell … .").) Mr. Felt's public statements leave no mystery that he is personally offended by SVOTHI's claims and bent on revenge in the courts. (*Id.* ¶ 9 ("Damian Todaro, a conflict avoidant beta, … is as mentally stable as a Jenga tower in an earthquake. … So yes, f*** @raw****club and especially the weak beta male Damian who runs it.")); *id.* ¶ 10 ("Lie all you want. … It won't matter. The complaint will be filed, Damian will be held to account. You are powerless and immaterial, if anything the lies and harassment will help us proof [sic] bad faith.").)

Mr. Felt has more recently taken to addressing Plaintiff's counsel by name. (*Id.* ¶ 11 ("Yo, Wesley, if you're reading this your guy [is] really really f***ed … [N]one of this was f***ing necessary so think on that. Prison, honey.").)

Mr. Felt has also expanded beyond social media and begun cultivating coverage in more mainstream press. On February 2, 2025 he posted on Twitter that he "spoke with a reporter from @Independent … and expect[ed] a story on [his] disputes … to be published soon." (*Id.* ¶ 12 ("I appreciate any attention on this issue.").) The Independent indeed published a piece that quotes Mr. Felt at length — and that expands his long list of grievances against Mr. Todaro — under the attention-grabbing headline *Porn star says his career was destroyed by false claims he nearly killed a dog with meth*. J. Rohrlich, INDEPENDENT (Feb. 5, 2025) (last visited Feb. 10, 2025). (*See* Mullen Decl. Ex. E ¶ 13) The same journalist also reached out to Plaintiff's counsel, who declined to comment. (*Id.*)

Mr. Felt's public behavior raises the question whether, if granted the relief he seeks on this Motion, he would be a careful steward of the valuable marks, Website and digital properties SVOTHI has operated for years.[8]

## D.    The narrow counterclaims at issue on this Motion

Defendants' various claims, in three various venues, help illuminate the Defendants' expansive, emotional, and highly-personalized view of the disputes between the parties. The Defendants' "trifecta from hell" litigation strategy also helps to explain why the Defendants' submissions in support of this Motion seem to range well beyond their counterclaims. SVOTHI disputes Defendants' allegations. In the accelerated time permitted on this application for preliminary relief, SVOTHI focuses only on factual assertions and purported evidence that bear on the relief requested. SVOTHI reserves the right to challenge the Defendants' proof, and if the Motion is not denied on the papers, respectfully requests a hearing.[9]

But Defendants' broad view of the disputes should not confuse the Court about the matters before it on this Motion. Only the Defendants' counterclaims against SVOTHI *in this action* can support injunctive relief *in this action*. And of the fifteen purported counterclaims in Defendants' Amended Answer, the Motion is based on only two:  federal trademark infringement, (Mot. at 12-13 ¶¶ 26-30), and New York common-law unfair competition, (*id.*

---

[8] The same concerns underscore the need for an appropriate bond if injunctive relief were to issue. Fed. R. Civ. P. 65(c); *see discussion infra*.

[9] Defendants object to Mr. Sharma's declaration on the ground that it contains hearsay and is not based on personal knowledge. (*See, e.g.* Sharma Decl. (ECF Doc. 21-22) at 8 ¶ 26 "my client informed me that … .") Rather than asserting particularized objections to the various assertions in Mr. Felt's declaration, Plaintiff reserves the right to object at a hearing to any evidence proffered by the Defendants.

at 13-14 ¶¶ 31-34). This Opposition thus discusses only those claims, and explains why the Motion falls far short of entitlement to preliminary relief. [10]

## III.    SUMMARY OF THE REQUESTED RELIEF

On February 5, 2025, Defendants moved by order to show cause for a broad range of relief, (ECF Docs. 21 (order to show cause); 21-31 (proposed order)), including prohibitions on: (1) using or exploiting the RFC Marks and related marks, (*see* ECF Doc. 21-31 at ¶¶ 1(b), 3-6); (2) engaging in unstated "unlawful, unfair, or fraudulent business acts or practices," (*id.* ¶¶ 7-8); (3) "destroying" or "altering" various "goods or services" and "documents" related to the purported infringing conduct, (*id.* ¶¶ 9-10); (4) "transferring [or] disposing of" unidentified "Counterclaim Defendant's Assets from any financial account," (*id.* ¶ 11); (5) "forming new entities or associations" that might "avoid[] the prohibitions set forth in any" as-yet-nonexistent "final judgment … in this action," (*id.* ¶ 12); or (6) "aiding[] or abetting any other person or entity in engaging in … any of the … foregoing … ," (*id.* ¶ 13).

In contrast to the broad relief sought in its proposed order, the Motion only seeks an order on the first point: it seeks a temporary injunction "enjoining [Plaintiff] from continued unauthorized use of [Defendant's] intellectual property[.]" (Mot. at 5 ¶ 1.) Plaintiff responds to that request for relief below. The remainder of the relief described in Defendants' proposed order is not addressed in, much less justified by, the Motion. It should be denied.

Defendants' proposed order, (ECF Doc. 21-31), also seeks relief affirmatively requiring Plaintiffs to provide an immediate accounting to the Defendants and, to "transfer

---

[10] The Motion also seems to be opposing a nonexistent motion for injunctive relief in favor of the Plaintiff. (*See* Felt. Decl. at 13 ¶ 50 ("if Counterclaim Defendant were to be granted the injunction it seeks … .").)

all digital assets … associated with the RFC Marks" to the Defendants. (*Id.* at 5-6 ¶¶ A-B.) Here too, nothing in the Motion supports those requests; there is no authority for them; and they should also be denied.

The Court denied Defendants' request for a temporary restraining order by Order entered February 8, 2025. (ECF Doc. 23.) The standard on this Motion is the same one that the Court applied when it denied Defendants' request for a TRO. *Basank v. Decker,* 449 F. Supp. 3d 205, 209 (S.D.N.Y. 2020) ("It is well established that in this Circuit the standard for … entry of a TRO is the same as for a preliminary injunction.") (citation omitted).

## IV.    STANDARDS

A preliminary injunction is an "extraordinary and drastic remedy[.]" *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). It is "never awarded as of right." *Winter*, 555 U.S. at 24; *accord Daileader v. Certain Underwriters at Lloyds Ldn. Synd. 1861*, 96 F.4th 351, 356 (2d Cir. 2024). To obtain a preliminary injunction — "one of the most drastic tools in the arsenal of judicial remedies" — is a "formidable task[.]" *Hanson Tr. PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 272-73 (2d Cir. 1986) (citations omitted).

To obtain a traditional, prohibitory preliminary injunction that preserves the *status quo*, "the moving party must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *Fung-Schwartz v. Cerner Corp.*, 804 Fed. Appx. 85, 87 (2d Cir. 2020) (citation and punctuation omitted).

However, to obtain the type of preliminary injunction sought here — one that alters the relationship between the parties and shuts down a longstanding business operation — the moving party must go further. On the first element, it must make a "*strong* showing of

irreparable harm," *A.H. v. French*, 985 F.3d 165, 176 (2d Cir. 2021) (emphasis added); and on the second element, it must prove a "*clear* likelihood of success" on the merits. *N. Am. Soccer*, 883 F.3d at 38 (emphasis added).

Under any standard, "irreparable harm must be shown to be actual and imminent, not remote or speculative." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002). And "[i]n the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1998).

## V.    ARGUMENT

### A.    The Motion seeks to upend the *status quo*

"[P]rohibitory injunctions maintain the status quo pending resolution of the case; mandatory injunctions alter it." *Daileader*, 96 F.4th at 356. The "status quo" to be evaluated is "really the status quo *ante* — that is, the last actual, peaceable, uncontested status which preceded the pending controversy." *Id.*

Here, the peaceable status quo — that has endured for years — is that SVOTHI has operated the Website and an online adult media platform using the contested marks. (Corso Decl. at 1 ¶ 3.) To enter the requested injunction would upend that status quo, would materially disrupt SVOTHI's business, and would shut down the Website. It would also interfere with the legitimate expectations of users (who pay subscription fees for access to the Website) and of producers (who are paid fees in exchange for the content they contribute to it). (*See id.* at 1 ¶ 5.)

The Court should deny the relief requested because the Motion fails to meet the heightened standards for a mandatory injunction that would alter the status quo. It neither

makes a "strong showing of irreparable harm" nor establishes a "clear likelihood of success" on the merits of any claim. *Daileader*, 96 F.4th at 356, 359.

## B.    The Court should deny the motion because there is no irreparable harm

"[I]rreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.* 559 F.3d 110, 118 (2d Cir. 2009) (quotation marks omitted). A movant's burden is "substantial," for it must "demonstrate that irreparable harm is not only 'possible' but 'likely'." *Daileader*, 96 F.4th at 358. Under the heightened standard applicable here, the Motion must make a "strong showing" that the Defendants will be irreparably harmed absent an injunction. *Id.*

When a movant fails to show the requisite irreparable harm, a court need not address the remaining elements for injunctive relief. *E.g.*, *Roberts v. Atl. Recording Corp.*, 892 F. Supp. 83, 87 (S.D.N.Y. 1995); *Johnson v. Saba Cap. Mgmt, L.P.*, No. 22-CV-4915 (AT), 2023 U.S. Dist. LEXIS 16388, at *10, 2023 WL 1345717 (S.D.N.Y. Jan. 31, 2023) ("Because the Court concludes that [movants] have not shown irreparable harm, it does not reach the other preliminary injunction factors.")

Here, the Motion should be denied on the papers[11] because nothing in the Motion supports the requisite strong showing of irreparable harm.

### 1.    Defendants' delay precludes injunctive relief

A court "must consider a plaintiff's delay in seeking relief when analyzing whether the plaintiff will suffer irreparable harm … ." *Monowise*, 2018 U.S. Dist. LEXIS 75312, at *3, 2018

---

[11] By contrast, "[o]n a motion for an injunction, where [] essential facts are in dispute, there must be a hearing and appropriate findings of fact must be made." *Hyundai Mipo Dockyard Co.v . AEP/Borden Indus.*, 261 F.3d 264, 269 (2d Cir. 2001).

WL 2089342 (citations omitted); *accord Coscarelli v. Esquared Hosp. LLC*, 364 F. Supp. 3d 207, 222 (S.D.N.Y. 2019).

Delay "standing alone" may "preclude the granting of preliminary injunctive relief" because the "failure to act sooner … suggests that there is, in fact, no irreparable injury[.]" *Coscarelli*, 364 F. Supp. 3d at 222 (citation omitted); *see Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) ("delay alone may justify denial of a preliminary injunction for trademark infringement.").

Courts in the Second Circuit "typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months." *Monowise*, 2018 U.S. Dist. LEXIS 75312, at *4, 2018 WL 2089342 (citing *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998)); *see Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.2d 137, 144 (2d Cir. 2005) (delay of "as little as ten weeks" is "sufficient to defeat the presumption of irreparable harm that is essential to … a preliminary injunction.").

Defendants cannot seriously contest that SVOTHI has been operating the Website, and using the contested marks, since at least 2010. (Corso Decl. at 1 ¶ 4, 3 ¶ 11.) More than a decade of that conduct has gone by without interference by, or objection from, the Defendants. Continuing it would be prohibited under the requested injunction. Thus the Defendants' delay of more than a decade precludes any showing of irreparable harm.

Indeed, the Defendants have acquiesced to SVOTHI's operation of the Website and its use of the contested marks. The Motion openly admits that Dark Alley accepted payment from SVOTHI for the content that Dark Alley contributed to the Website — a set of uncontested facts that is entirely consistent with SVOTHI's longstanding, lawful operation of

the Website with the full knowledge and consent of the Defendants. (*See* Felt. Decl. at 9 ¶ 32 ("[SVOTHI] issued payments to DAM …").)

Even under the Defendants' contract-based theory of the case (which Plaintiff disputes), Defendant Dark Alley agrees that for the past ten or more years, it never had exclusive rights to the contested marks. Instead, it authorized another entity — non-party VideoApp — to "operate an adult video website under the brand 'Raw F*** Club' and the associated trademarks … ." (Am. Ans. at 36 ¶ 15.) And the Defendants also concede that they only recently added SVOTHI's RFC Marks to the Defendants' own websites and social media content, thereby creating the very controversy about which the Motion now complains. (Am. Ans. at 12-13 ¶¶ 32-33, 14 ¶ 37.)

In sum, the Defendants' delay of over a decade in objecting to SVOTHI's use and exploitation of the contested marks defeats irreparable harm under any conceivable standard. That is because "[p]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action … [and d]elay in seeking enforcement … tends to indicate at least a reduced need for such drastic, speedy action." *Citibank*, 756 F.2d at 276-77.

The Motion attempts to re-frame the Defendants' application as a newly-sprung contract dispute between Defendant Dark Alley and non-party VideoApp, rather than an attempt to upend SVOTHI's business after more than a decade of peaceable status quo. (*E.g.*, Mot. at 14 ¶ 33 (complaining of "continued use of the [contested marks] despite the termination of the JVA.").) Even under that lens, the Defendant has engaged in extended delay that defeats the Motion. Dark Alley admits that it alleged breach of contract against non-party VideoApp no later than November 1, 2024. (Mot. at 9 ¶ 14 (citing Sharma Decl. ¶¶ 18-19).) Rather than seeking to enjoin SVOTHI's use of the contested marks in November

2024, Defendants began using the contested marks themselves in early 2025. (Am. Ans. at 12-13 ¶¶ 32-33, 14 ¶ 37.) That conduct let SVOTHI to file this action; and only in response did Defendants suddenly claim an urgent need for injunctive relief.

Since courts in the Second Circuit "typically decline to grant preliminary injunctions in the face of … delays of more than two months," Defendants' delay here is too long to establish the type of imminent irreparable harm that would warrant the relief sought. *Hodnett v. Medalist Partners Opportunity Master Fund II-A, L.P.*, No. 21-CV-00038 (MKV), 2021 U.S. Dist. LEXIS 27205, at *15, 2021 WL 535485 (S.D.N.Y. Feb. 12, 2021); *see also Council for Responsible Nutrition v. James*, No. 24-CV-1881 (ALC), 2024 U.S. Dist. LEXIS 72982, at *31 (S.D.N.Y. Apr. 19, 2024) ("months-long delays in seeking preliminary injunctions have repeatedly been held … to undercut the sense of urgency accompanying a motion for preliminary relief") (citation omitted).

## 2. Even ignoring the delay, there is no irreparable harm

To warrant injunctive relief, a movant must prove that it is likely to experience irreparable harm in the absence of an injunction. *Winter*, 555 U.S. at 22. Harm is "irreparable" when it "cannot be remedied after a final adjudication[.]" *Salinger v. Colting,* 607 F.3d 68, 81 (2d Cir. 2010). "[I]rreparable harm exists only where there is a threatened imminent loss that will be very difficult to quantify at trial." *Tom Doherty Assocs. v. Saban Entm't*, 60 F.3d 27, 38 (2d Cir. 1995). Therefore, "where monetary damages may provide adequate compensation, a preliminary injunction should not issue." *Jaryaj v. Scappinin*, 66 F.3d 36, 39 (2d Cir. 1995).

Plaintiff claims that absent an injunction, it will suffer "financial strain" because it is deprived of a "rightful share of profits generated" by the Website. (Felt Decl. at 19-20 ¶¶ 81-82.) But it is hornbook law that monetary harm "can be remedied through damages at the

close of a case," so it is not irreparable. *E.g. Pado, Inc. v. SG Trademark Holding Co LLC*, No. 19-CV-6614 (RPK) (RER), 2020 U.S. Dist. LEXIS 240423, at *11-12, 2020 WL 7625363 (E.D.N.Y. Dec. 22, 2020) (citing *Tom Doherty*, 60 F.3d at 38) (other citations omitted). And since Defendants purport to be able to calculate their financial entitlements to the penny — "$67,289.62 as of November 1, 2024, and an additional $146,959 in unpaid royalties and other amounts due as of December 4, 2024," (Felt Decl. at 19-20 ¶ 81) — the purported monetary damages are not "difficult to quantify" and not irreparable for that reason too. *Tom Doherty*, 60 F.3d at 38.

Defendants also claim that without an injunction they may suffer "significant harm to [Dark Alley's] business and reputation." (Felt Decl. at 17 ¶ 68; *see also id.* at 17 ¶ 69 ("reputational damage"); *id.* at 21 ¶ 89 ("harm to [Dark Alley's] business, reputation, and ability to monetize its intellectual property … .").) But they offer no explanation how Dark Alley's "reputation and goodwill have been negatively impacted." *M.V. Music v. V.P. Records Retail Outlet, Inc.*, 653 F.Supp.3d 31, 40 (E.D.N.Y. 2023). Those are exactly the sort of "conclusory statements of loss of reputation [that] will not justify an irreparable harm finding." *Id* at 39-40. (citation omitted); *see also Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, No. 10-CV-3314 (RWS), 2015 U.S. Dist. LEXIS 84172, at *29, 2015 WL 4033019 (S.D.N.Y. June 26, 2015) ("conclusory statements of loss of reputation will not justify" irreparable harm).

Finally, the Defendants make a one-sentence reference to a statutory rebuttable "presum[ption]" of irreparable harm in trademark cases. (Mot. at 16 ¶ 44.) The statute does not apply because, by its terms (and as the Motion acknowledges), it only affords a presumption "upon a finding of likelihood of success on the merits." (15 U.S.C. 1116(a); *see*

Mot. at 16 ¶ 44.) Here, there is no likelihood of success because (among other reasons) the Defendants have not provided a shred of evidence of confusion. *Infra.* And even assuming a presumption applied, it is rebutted both by Defendants' delay and by their failure to describe any type of actual harm or injury. *Supra*; *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) ("[A]ny … presumption of irreparable harm is inoperative if the plaintiff has delayed … in moving for preliminary injunctive relief.")

**C.    The Court should deny the Motion because there is no likelihood of success on any counterclaim**

Even if the Motion carried its burden to show irreparable harm, it would still fail to demonstrate likelihood of success.

Defendants purport to plead fifteen counterclaims, but their Motion rests on only two: federal trademark infringement under the Lanham Act and unfair competition under New York state law. The Motion fails to prove a clear likelihood of success on the merits either.

**1.    The Motion's claim of alter ego liability fails**

Though Defendants' counterclaims purport to name SVOTHI as Counterclaim-Defendant, they are actually directed at VideoApp, Inc., (*see* Felt. Decl. at 9 ¶ 31), and depend on alter ego liability, (*see* Mot. at 6 ¶ 4, 10 ¶¶ 19-20).

Defendants concede that SVOTHI is not a party to any of the contracts between Dark Alley and VideoApp. They admit that SVOTHI "was not a signatory" and "lacks privity of contract with [Dark Alley]." (Mot. at 10 ¶ 21.) Thus, in an attempt to prove a likelihood of success, Defendants argue alter ego liability. (*Id.* at 6 ¶ 4, 10 ¶¶ 19-20.) In support, however, the Motion alleges only that SVOTHI and VideoApp "share the same address, ownership, and attorney … ." (*Id.* at 7 ¶ 9.) Alter ego liability requires far more than that: a party seeking to hold one entity liable for the obligations of another must offer "facts to support the

conclusion that … domination or control of defendant entities took place" including "who allegedly controlled [the] entities, and how such control caused [] damage" as well as proof that the entities "abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice." *MCGM, GmbH v. OPTA Grp. LLC*, No. 22-CV-5851 (PKC), 2024 U.S. Dist. LEXIS 52769, at *19, 2024 WL 1250629 (S.D.N.Y. Mar. 21, 2024) (citations and quotations omitted). The analysis is "fact specific" and should not be lightly undertaken on the abbreviated record of a Rule 65 motion. *MAG Portfolio Consult, GmbH v. Merlin Biomed Group, LLC*, 268 F.3d 58, 63 (2d Cir. 2001); *see Morris v. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141 (1993). And an "unadorned invocation of domination and control is simply not enough" to plead — let alone prove — the alter ego status that would be required to grant the relief sought. *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003). The Motion therefore must fail.

### 2. There is no clear likelihood of success on Defendants' federal trademark infringement claim

Defendants assert a federal trademark claim under the Lanham Act. They have no clear likelihood of success on that claim, and the Motion must be denied because — among other things — the Motion fails to demonstrate any confusion that might justify injunctive relief. *Ivoclar N. Am. v. Dentsply Int'l*, 41 F. Supp. 2d 274, 282 (S.D.N.Y. 1998) (denying injunction motion where plaintiff's affidavit described a "single instance of actual confusion" by an unnamed customer); *see also Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 124 (2d Cir. 2001) (affirming summary judgment where "two anecdotes of confusion over the entire course of competition [was] insufficient to raise triable issues") (*citing C.L.A.S.S. Promotions, Inc. v. D.S. Magazines, Inc.*, 753 F.2d 14, 18 (2d Cir. 1985) (finding district court

did not err in declining to find actual confusion based on two isolated written communications that were "insignificant").

The Motion's analysis of its trademark claim relies almost entirely on the Second Circuit's landmark opinion in *Polaroid Corp. v. Polarad Elecs. Corp.* as the basis for a preliminary injunction under the Lanham Act. 287 F.2d 492 (2d Cir. 1961). In *Polaroid*, Judge Friendly set out eight factors (not six, as the Motion claims) for courts to consider when assessing confusion in the trademark context. *Id.* at 495. But the nature of this case and its posture make *Polaroid* inapposite.

SVOTHI alleges that Defendants are infringing its RFC Marks. (Compl. at 1 ¶ 2.) Defendants have in turn alleged that Plaintiff is infringing an overlapping (but broader) set of marks and domain names. (*See* Mot. at 5 ¶¶ 1-2.) SVOTHI has been openly using the contested marks in commerce in connection with its Website since no later than 2010, which is prima facie evidence of its exclusive rights under the Lanham Act. *See La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271 (2d Cir. 1974) ("Under familiar trademark principles, the right to exclusive use of a trademark derives from its appropriation and subsequent use in the marketplace."). Defendants, in turn, allege that they also have been using the marks (although the Motion hardly says how they have been using them or how such use was continuous). *See Baker v. Parris*, 777 F. Supp. 299, 303 (S.D.N.Y. 1991) (dismissing common law trademark claims for failure to allege continuous use).

At this stage of the litigation, the Motion does not contend that the marks in controversy, or the parties' potential customers, are materially different from ones the other party uses — the sorts of issues that the *Polaroid* factors typically address. Rather, Defendants are attempting to use counterclaims against SVOTHI to litigate contract claims against non-

party VideoApp. Defendants seek to enjoin SVOTHI from operating a business that has been

operating successfully for fifteen years, while Defendant Dark Alley litigates its disagreements

over the joint venture. *Polaroid* is, in large part, off point.

The fifth Polaroid factor, however, is both relevant and determinative: the existence of

actual consumer confusion. 287 F.2d at 495. "[E]vidence of actual consumer confusion is

particularly relevant to a trademark infringement action." *Streetwise Maps v. VanDam, Inc.*, 159

F.3d 739, 745 (2d Cir. 1998). And here the Motion presents no evidence of confusion

involving the marks. Indeed, the Motion falls short of even the "formulaic recitation" of

confusion that was rejected in *Portkey Techs. PTE Ltd. v. Venkateswaran*, No. 23-CV-5074

(JPO), 2024 U.S. Dist. LEXIS 128942, at *16-17, 2024 WL 3487735 (S.D.N.Y. July 19,

2024). On that basis alone, Defendant's motion for an injunction may be denied. *See Ivoclar*,

41 F. Supp. 2d at 282 (denying injunction premised on *de minimis* evidence of actual

confusion).

The Motion cites paragraphs 45 through 50 of Mr. Felt's declaration for its suggestion

that consumers are confused by SVOTHI's use of the contested marks. (Mot. at 13 ¶ 28.)

None of the testimony in those paragraphs supports confusion. Mr. Felt's claim that "[t]he

association of me and these brands is part of the cultural consciousness" is conclusory, (Felt

Decl. 14 ¶ 51), as is his further claim that absent an injunction, "such use will continue to

cause consumer confusion," (*id.* at 17 ¶ 67). Just as in *Portkey*, the Motion may be denied

because parroting the word "confusion" is no substitute for evidence of it.

### 3. There is no clear likelihood of success on Defendants' unfair competition claim

The Motion also fails to establish a clear likelihood of success on Defendants'

counterclaim for unfair competition under New York law. Unfair competition is "the *bad-*

*faith* misappropriation, for the commercial advantage of one person, of a benefit or property right belonging to another person." *KatiRoll Co. v. Kati Junction, Inc.*, 33 F. Supp. 3d 359, 367 (S.D.N.Y. 2014) (internal quotes and punctuation omitted) (emphasis added).

The Motion provides no evidence to support the bad faith element. In its four-paragraph discussion of unfair competition, the Motion makes no attempt to demonstrate bad faith. (Mot. 13-14 ¶¶ 31-34.) Other than a recitation of the elements, the Motion simply states "Counterclaim Defendant's bad faith and the likelihood of consumer confusion strongly support DAM's claim and the requested injunctive relief." (Mot. at 14 ¶ 34.) But a bare allegation of bad faith is insufficient to *plead* a claim, let alone prove a likelihood of success sufficient to warrant an injunction. *E.g. Rodriguez v. Redbubble, Inc.*, No. 21-CV-2973 (VSB), 2023 U.S. Dist. LEXIS 173126, at *14, 2023 WL 6294180 (S.D.N.Y. Sept. 27, 2023) (granting motion to dismiss unfair competition claim with only conclusory allegations of bad faith).

The Motion's reference to *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.* adds nothing. 799 F.2d 867 (2d Cir. 1986). That case involved an appeal of summary judgment findings after "extensive discovery" and a factual hearing. *Id.* at 870. The in-depth evidentiary analysis in that case presents a stark contrast to this Motion, which offers no evidence at all to support the bad faith element of its unfair competition claim.

## D.    The balance of hardships favors SVOTHI

An injunction is an equitable remedy, so the bar for "extraordinary and drastic" relief is high. *Mazurek*, 520 U.S. at 972. Weighing hardships calls on the Court to "balance the competing claims of injury and [to] consider the effect on each party of the granting or withholding of the requested relief." *Salinger*, 607 F.3d at 79. It should "issue the injunction only if the balance of hardships tips in the [movant's] favor." *Id.* at 80 (citation omitted).

Here, the equities tip strongly against issuing the requested relief.

Plaintiff SVOTHI has owned and operated the Website, openly exploiting the contested marks, for over a decade. (Corso Decl. at 1 ¶ 4.) Hundreds of thousands of users access SVOTHI's website for entertainment purposes; thousands pay for membership; hundreds of producers depend on the revenue they earn from the site. (*Id.* at 1-2 ¶¶ 5-7.) Issuing the injunction Defendants seek would shut down a mature and successful business. (*Id.* at 4 ¶ 14.) Unhappy customers would cancel; producers would immediately stop earning revenue. (*Id.* at 4 ¶¶ 15-17.)

Defendants offer nothing but conclusions for the other side of the balance. (Mot. at 17-18 ¶¶ 48-51.) The Motion argues generalized "harm" without any specifics at all. (*Id.*) It complains that SVOTHI's claims against the Defendants are an attempt to "undermine [Dark Alley's] rights." (*Id.* at 18 ¶ 49.) But the Defendants have every right and opportunity to oppose SVOTHI's claims in the ordinary course of litigation. The balance of the equities does not support, much less require, injunctive relief.

## E.    The requested injunction would harm the public interest

The "final" consideration on an injunction motion requires "the court [to] ensure that the public interest would not be disserved by the issuance of a preliminary injunction." *Salinger*, 607 F.3d at 80 (internal quotation omitted). The Motion's argument that the public has an interest "in preventing consumer confusion" carries no weight because the Motion offers no evidence of confusion. (*See* Mot. at 18 ¶ 52.) Its suggestion that the trademarks "have been associated with high-quality content for over 17 years," (*id.* at 19 ¶ 53), addresses an issue not in dispute: the Motion does not allege that SVOTHI is running a low-quality website, and indeed Dark Alley promoted its content on the site as recently as November 2024. (*See*

Corso Decl. at 3 ¶ 10.) And of course it is strongly in the interest of the consuming public to continue to receive the services they enjoy and have already paid SVOTHI for. Entering the requested injunction would interfere with a going concern and leave thousands of consumers out in the cold.

Finally — and even though the Motion falls far short of carrying its burden for the extraordinary remedy it seeks — if the Court were to entertain granting the relief requested, it should adhere to Rule 65(c) and require an appropriate bond. The Rule provides that "no … preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper." *Id.*; *see Doctor's Assocs. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996). The Motion asks the Court functionally to shut down a profitable and sustainable business, causing real and immediate financial harm to SVOTHI on the basis of disputed assertions. Defendants claim that they are entitled to a "50/50 profit split," (Felt. Decl. at 4 ¶ 15), and that their damages for the four months between August and November 2024 total more than $200,000, (*id.* at 19-20 ¶¶ 80-81). If an injunction enters, SVOTHI respectfully submits that the Defendants should be required to post a bond of not less than the amount of revenue that *they project* SVOTHI's would generate during the two years this case may take to litigate through trial:  $2.4 million.[12]

---

[12] The Defendants claim they are "unable to post a bond," (Mot. at 19 ¶ 57), because Defendant Dark Alley lacks "the financial resources necessary to defend its rights and pursue its claims," (Felt. Decl. at 20 ¶ 83). Those admissions call into question the Defendants' assertions that Dark Alley is "a profitable studio with international recognition and a library of over 300 titles" and that Mr. Felt is a "performer … of historical note … ." (*Id.* at 1 ¶¶ 1-2.) And they hardly suggest that the Defendants are prepared to take control of a successful business that operates in a highly-regulated industry with sophisticated compliance obligations. (Corso Decl. at 2-3 ¶¶ 8-10.)

## VI.    CONCLUSION

For these reasons, SVOTHI respectfully requests that the Court deny the Motion on the papers. If the Court does not deny the Motion on the papers, SVOTHI respectfully requests that the Court set a hearing to weigh the contested facts asserted in the Motion and disputed by the SVOTHI. [13]

DATED:        February 12, 2025
              New York, New York

                                              MULLEN P.C.

                                    BY:       _____
                                              Wesley M. Mullen
                                              Martin J.E. Arms
                                              Vincent R. FitzPatrick III
                                              745 Fifth Avenue, Suite 500
                                              New York, NY 10151
                                              (646) 632-3718
                                              wmullen@mullenpc.com

---

[13] The Motion can and should be denied without a hearing. *See Weisshaus v. Cuomo*, 512 F. Supp. 3d 379, 386 n.1 (E.D.N.Y. 2021) ("While a hearing is generally required on motion for preliminary injunction, it is not required in all cases, such as cases in which the affidavits submitted by the parties provide an adequate basis for the court's decision.") (citation, punctuation, and quotation omitted). If not denied, Defendants request an evidentiary hearing. *Hyundai*, 261 F.3d at 269 ("[o]n a motion for an injunction, where [] essential facts are in dispute, there must be a hearing and appropriate findings of fact must be made.").