# Exhibit D

Case 1:25-cv-00333-ALC    Document 26-4    Filed 02/12/25    Page 2 of 30

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

|   |   |
|---|---|
| In the matter of the application of<br><br>VIDEOAPP INC.,<br><br>　　　　　　　　　　　Petitioner,<br><br>　　　-against-<br><br>DARK ALLEY MEDIA, LLC,<br><br>　　　　　　　　　　　Respondent,<br><br>for an Order staying the arbitration<br>demanded by the Respondent. | Index No. _____/25<br><br><br>**PETITION TO**<br>**STAY ARBITRATION**<br>**UNDER CPLR 7503**<br><br>MS001 |

Petitioner VideoApp Inc. alleges as follows:

1.　　　On January 16, 2025, Respondent Dark Alley Media, LLC ("Dark Alley") demanded arbitration against Petitioner VideoApp Inc. ("VideoApp") before JAMS. (Mullen Aff. Ex. 1 (the "JAMS Demand").) The demand for arbitration purports to invoke an arbitration clause in a Joint Venture Agreement executed by the parties on March 25, 2019. (Mullen Aff. Ex. 2.)

2.　　　Arbitration must be stayed under CPLR 7503(b).

3.　　　Dark Alley waived any right to arbitrate by affirmatively pursuing the claims described in its JAMS Demand in *two separate* courts: a complaint it filed against VideoApp in Supreme Court, New York County, (Mullen Aff. Ex. 6 (the "New York Claims," cited as "NY Cl.")); and counterclaims involving VideoApp in federal District Court, (*id.* Ex. 7 (the "Federal Claims," cited as "Fed. Cl.")).

4.　　　Dark Alley also waived any right to confidential by deliberately filing scandalous allegations in the public dockets, and then by publicizing them in the press and on social media. Its New York Claims gratuitously allege fraud, drug abuse, conspiracy, underage sexual misconduct, and animal abuse — not only against VideoApp, but also

Case 1:25-cv-00333-ALC    Document 26-4    Filed 02/12/25    Page 3 of 30

against its owner and his family members. On social media, Dark Alley's principal Mr. Robert Felt — a popular performer known professionally as Owen Hawk — flogs Dark Alley's litigation maneuvers, and their scandalous allegations, to eager fans of his adult film persona. On February 2, 2025, Mr. Felt exulted to hundreds of thousands of Twitter followers that Dark Alley now "h[as] a federal case, a state case, and an arbitration case all open at the same time." (Mullen Aff. ¶ 12.) On February 4, 2025, he bragged that he just "spoke[n] with a reporter" about Dark Alley's public filings, and that he "expect[s] a story on the disputes … to be published soon. (*Id.* ¶ 23.) On February 5, 2025, newspapers began to run stories quoting Mr. Felt about his "bombshell lawsuit" involving "extreme and outrageous" allegations against VideoApp. J. Rohrlich, *[Porn star says his career was destroyed by false claims he nearly killed a dog with meth](#)*, Independent (Feb. 5, 2025) (last visited Feb. 5, 2025).

5.      The strategy is clear: Dark Alley intends to abuse the judicial process in court, while promoting its own image on social media and in the press, to smear VideoApp's reputation and to harass its personnel and their families.

6.      Having chosen to litigate in the courts and in the press, Dark Alley can no longer claim any right to arbitrate its claims. "[C]ommencement of [an] action" involving arbitrable issues "constitutes a waiver of … arbitration." *Volpe v. Interpublic Group of Cos., Inc.*, 118 AD3d 482, 483 [1st Dept 2014]; *see Matter of Vill. of Bronxville v. Bronxville Police Taylor Act Comm.*, 171 AD3d 932, 934 [2d Dept 2019] ("By commencing an action at law involving arbitrable issues" a party has "waived whatever right [it] had to arbitration.") (citations and quotations omitted); *Matter of Allstate Ins. Co. v. Howell*, 151 AD3d 461, 461 [1st Dept 2017] (reversing order denying motion to stay arbitration because "respondent waived her right to arbitrate by initiating litigation … ."); *Jamaica Pub. Serv. Co. v. Compagnie*

Case 1:25-cv-00333-ALC    Document 26-4    Filed 02/12/25    Page 4 of 30

*Transcontinentale de Reassurance*, 282 AD2d 227 [1st Dept 2001] ("institution of [an] action constitutes a waiver of [the] right to arbitration.")

7. "Once waived, the right to arbitrate cannot be regained." *Bronxville*, 171 AD3d at 934.

## PARTIES

8. Petitioner VideoApp Inc. is a Nevis corporation.

9. Respondent Dark Alley Media, LLC is a domestic limited liability company with its principal office in this County.

## JURISDICTION AND VENUE

10. Under CPLR 7503(b), "a party who has not participated in the arbitration and who has not made or been served with an application to compel arbitration[] may apply to stay arbitration on the ground that a valid agreement was not made or has not been complied with … ."

11. Petitioner has not participated in any arbitration and has not been served with an application to compel arbitration.

12. Under CPLR 7503(c), "[a]n application to stay arbitration must be made by the party served [with a demand for arbitration] within twenty days after service upon him of the notice or demand … ."

13. Respondent served its demand for arbitration on VideoApp on January 16, 2025. Twenty days thereafter is today — February 5, 2025 — so this Petition is timely.

14. This Court has personal jurisdiction over the Respondent because Respondent is a corporate entity that resides in and is doing business in the State of New York.

15. Venue is proper under CPLR 7502(a)(i).

## STANDARDS

### A. The Court, not an arbitrator, decides arbitrability and waiver

16. It is a "well-settled proposition that the question of arbitrability is an issue generally for judicial determination in the first instance … ." *Smith Barney Shearson Inc. v. Sacharow*, 91 NY2d 39, 45 [1997] (citations omitted).

17. Likewise, "whether institution of judicial … proceedings constitutes … a waiver of arbitration is an issue to be determined by the court." *Cty. of Suffolk v. Novo*, 96 AD2d 902, 903 [2d Dept 1983]; *see also Sherrill v. Grayco Builders, Inc.*, 64 NY2d 261, 272 [1985] ("the court … should determine th[e] threshold issue" whether "courthouse conduct constituted" waiver of the right to arbitrate); *Volpe*, 118 AD3d at 483 ("the question of waiver of arbitration is properly decided by the court").

### B. Dark Alley waived arbitration by commencing and publicizing litigation

18. "Where a party affirmatively seeks the benefits of litigation … the right to arbitrate has been waived." *Bronxville*, 171 AD3d at 934. "Once waived, the right to arbitrate cannot be regained." *Id.*

19. Dark Alley waived any right it may have had to arbitration by affirmatively litigating the same claims that it seeks to arbitrate in two separate courts.

20. *The JAMS Demand for Arbitration.* Dark Alley's JAMS Demand alleges that VideoApp and "Svothi Inc., … the alter-ego of [VideoApp]" "fail[ed] to make due payments, provide real-time reports, and maintain industry standards," failed to pay "royalties," "failed to return [Dark Alley's] assets," and "falsely claim[ed] ownership of … trademarks" allegedly owned by Dark Alley. (Mullen Aff. Ex. 1 at 2.) It demands "immediate cessation of [VideoApp's alleged] unauthorized use of [Dark Alley's] trademarks and content, the return of all digital and intellectual property, and payment of

all outstanding amounts, damages, costs, and legal fees," along with other unspecified "legal remedies." (*Id.*)

21.    *The New York Supreme Court action.* On January 31, 2025, Dark Alley filed a Summons and Complaint against VideoApp in Supreme Court, New York County, seeking essentially the same relief requested in its JAMS Demand for Arbitration. (Mullen Aff. Ex. 6 (NY Cl).) Dark Alley's New York Claims contend that the "Joint Venture Agreement … govern[s] the operation of" Dark Alley and VideoApp's relationship as well as "intellectual property matters" between them. (*Id.* at 4 ¶ 19.) The New York Claims also allege that, under the Joint Venture Agreement, Dark Alley "contributed original video content, industry expertise, and performer connections," while VideoApp "provided website hosting, billing, and customer service for the joint venture." (*Id.* at 4 ¶¶ 20-21.) On the basis of those and other allegations, Dark Alley purports to bring its New York Claims against VideoApp and others — including two individuals alleged to be the "owner of" and "an employee of" VideoApp, (*id.* at 2 ¶¶ 7-9) — for, among other things, "lost revenue," "harm to business reputation," and "severe emotional distress … ," (*id.* at 10-12 ¶¶ 46, 52, 58).

22.    *The Federal District Court action.* On February 3, 2025, Dark Alley sought the same relief in yet another action pending in Federal District Court for the Southern District of New York. (Mullen Aff. Ex. 7 (Fed. Cl).) In the Federal Claims, Dark Alley seeks permission to "join third part[y] VideoApp, Inc." (Mullen Aff. Ex. 8 at 1), to answer claims that, among other things, Dark Alley "is the rightful owner of [trademarks] under the" Joint Venture Agreement, (Fed. Cl. at 39 ¶ 28); that "an affiliate or the alter ego of VideoApp[] breached the" Joint Venture Agreement, (*id.* at 39 ¶ 32); that "VideoApp … knowingly made false representations in the" Joint Venture Agreement, (*id.* at 40 ¶ 37); that VideoApp

"interfere[ed] with [Dark Alley's] rights under the" Joint Venture Agreement, (*id.* at 42 ¶ 51); and for "rescission of the [Joint Venture Agreement] … ," (*id.* at 44 ¶ 64).

23.     "A litigant waives arbitration when its conduct is clearly inconsistent with its … claim that the parties were obligated to settle their differences by arbitration." *Owen v. Array US, Inc.*, No. 651471/2022, 2024 NY Misc LEXIS 8371, at *2-3 [Sup Ct NY Cty (Comm Div) Oct 3, 2024]. Asserting judicial "claims [that] embrace the same issues as those asserted in [an] arbitration … effect[s] a waiver of the right to arbitrate … [and] to forgo … arbitration rights." *Tengtu Int'l Corp. v. Pak Kwan Cheung*, 24 AD3d 170, 171-172 [1st Dept 2005].

24.     Dark Alley also cannot avoid waiver by naming additional parties to its judicial claims, as "the result[ing waiver of arbitration] does not change where, as here, the [judicial] compliant names additional defendants who are not subject to arbitration and includes nonarbitrable claims." *Id.* at 172.

25.     Finally, Dark Alley waived arbitration by asserting scandalous claims in Supreme Court and in federal District Court, and then by intentionally publicizing that scandalous matter to its fans by courting attention on social media and in the press. As set forth at length in the accompanying Memorandum of Law, Dark Alley is abusing the advantages of public access to judicial dockets, while at the same time attempting to force VideoApp to respond in confidential arbitration. That is impermissible, and constitutes waiver of arbitration, because parties "electing the benefits of arbitration … cannot also draw on the judicial process for a particular advantage." *Sherrill*, 64 NY2d at 273.

## CONCLUSION

26.     Respondent Dark Alley has waived any right it may have had to arbitration by affirmatively asserting purportedly arbitrable claims in court, and by taking actions inconsistent with arbitration.

27.     Petitioner VideoApp therefore respectfully seeks an order staying arbitration pursuant to CPLR 7503(b).

## PRAYER FOR RELIEF

28.     WHEREFORE, Petitioner requests that the Court enter an Order permanently staying the arbitration purportedly commenced by the Respondent, or in the alternative staying the arbitration temporarily pending the hearing and determination of the issues of arbitrability raised herein, and granting to Petitioner such other further relief as the Court may deem just and proper.

DATED:     February 5, 2025
           New York, New York



                         MULLEN P.C.


               BY:     _____
                       Wesley M. Mullen
                       Martin J.E. Arms
                       Vincent R. FitzPatrick III
                       745 Fifth Avenue, Suite 500
                       New York, NY 10151
                       (646) 632-3718
                       wmullen@mullenpc.com
                       marms@mullenpc.com
                       vfitzpatrick@mullenpc.com

                       *Counsel for Petitioner*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

In the matter of the application of

    VIDEOAPP INC.,

                Petitioner,

    -against-

    DARK ALLEY MEDIA, LLC,

                Respondent,

for an Order staying the arbitration
demanded by the Respondent.

Index No. _____/25

MS001

---

### PETITIONER'S MEMORANDUM OF LAW
### IN SUPPORT OF PETITION TO STAY ARBITRATION
### PURSUANT TO CPLR 7503(b)

---

Wesley M. Mullen
Vincent R. FitzPatrick III
Martin J.E. Arms
745 Fifth Avenue, Suite 500
New York, NY 10151
(646) 632-3718
wmullen@mullenpc.com
vfitzpatrick@mullenpc.com
marms@mullenpc.com

# TABLE OF CONTENTS

**INTRODUCTION** ................................................................................................................ 1

**BACKGROUND** ................................................................................................................ 3

     A.    VideoApp, Dark Alley, and the Joint Venture Agreement ............................ 3

     B.    Dark Alley's JAMS Demand for Arbitration against VideoApp ................... 4

     C.    Dark Alley's Supreme Court claims against VideoApp ................................ 6

     D.    Dark Alley's Federal District Court claims against VideoApp...................... 7

     E.    Dark Alley's efforts to publicize its claims against VideoApp...................... 8

**STANDARDS** ...................................................................................................................10

**ARGUMENT** ....................................................................................................................11

**I.**    **The Court should stay arbitration pursuant to CPLR 7503(b)** ...........................11

     A.    Dark Alley waived arbitration by litigating
         against VideoApp in New York Supreme Court ..........................................12

     B.    Dark Alley waived arbitration by litigating
         against VideoApp in Federal District Court ................................................14

     C.    Dark Alley waived arbitration by publicizing
         its litigation against VideoApp ....................................................................17

**CONCLUSION** .................................................................................................................19

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Ciao Europa, Inc. v. Silver Autumn Hotel (N.Y.) Corp.*,
 290 AD2d 216 [1st Dept 2002] ............................................................................12

*Cty. of Suffolk v. Novo*,
 96 AD2d 902 [2d Dept 1983] ...............................................................................11

*Jamaica Pub. Serv. Co. v. Compagnie Transcontinentale De Reassurance*,
 282 AD2d 227 [1st Dept 2001] ............................................................................12

*Matter of Allstate Ins. Co. v. Howell*,
 151 AD3d 461 [1st Dept 2017] ............................................................................12

*Matter of State of N.Y. U.C.S. v. District Council 37*,
 121 AD3d 497 [1st Dept 2014] ............................................................................11

*Moton v. Maplebear Inc.*,
 No. 15-CV-8879, 2016 U.S. Dist. LEXIS 17643
 [S.D.N.Y. Feb. 9, 2016] ........................................................................................ 5

*Litchfield Fabrics, Inc. v. Rosewood Fabrics*,
 438 NYS2d 239 [1st Dept 1981] ..........................................................................13

*Sherrill v. Grayco Builders, Inc.*,
 64 NY2d 261 [1985].......................................................................................*passim*

*Smith Barney Shearson Inc. v. Sacharow.*,
 91 NY2d 39 [1997] ...............................................................................................11

*SVOTHI, Inc. v. Dark Alley Media, LLC et al*,
 No. 25 CV 0333 (S.D.N.Y.) ................................................................................14

*Tengtu Int'l Corp. v. Pak Kwan Cheung*,
 24 AD3d 170 [1st Dept 2005] ..........................................................................3, 12

*Vill. of Bronxville v. Bronxville Police Taylor Act Comm.*,
 *171 AD3d 932 [2d Dept 2019]* ....................................................................1, 3, 13

*Volpe v. Interpublic Group of Cos., Inc.*,
 118 AD3d 482 [1st Dept 2014] ............................................................................11

## <u>Statutes and Rules</u>

CPLR 7503 ..................................................................................................*passim*

Petitioner VideoApp Inc. ("VideoApp") respectfully submits this Memorandum of Law in support of its Petition to stay arbitration pursuant to CPLR 7503(b).

## INTRODUCTION

Petitioner VideoApp and Respondent Dark Alley Media, LLC ("Dark Alley") are adult media companies. On January 16, 2025, Dark Alley filed a demand for arbitration before JAMS (the "JAMS Demand"), contending that an arbitration clause in a 2019 Joint Venture Agreement requires VideoApp to arbitrate claims for (among other things) non-payment and trademark infringement. (Mullen Aff. Ex. 1 (cited as "JAMS Demand").)

By this Petition, VideoApp seeks to stay the arbitration. CPLR 7503(b).

Dark Alley waived any right it might have had to arbitration by waging a highly-public, multi-forum litigation campaign against VideoApp in the state and federal courts. Like its JAMS Demand, Dark Alley's state and federal claims all seek damages under the Joint Venture Agreement. The federal ones seek rescission of the Joint Venture Agreement. Dark Alley's arbitration must be stayed because "[b]y commencing an action at law involving arbitrable issues, [Dark Alley] waived whatever right [it] had to arbitration."[1]

In contrast to its confidential arbitration papers, Dark Alley does not confine its *public* pleadings to dry contractual matters. Instead it gratuitously alleges fraud, illegal drug use, conspiracy, underage sexual misconduct, and animal abuse — not only against VideoApp, but also against its owner and his family members. On social media, Dark Alley's principal Mr. Robert Felt — a popular performer known professionally as Owen Hawk — flogs Dark

---

[1] *Vill. of Bronxville v. Bronxville Police Taylor Act Comm.*, 171 AD3d 932, 934 [2d Dept 2019] (citation and quotation omitted).

PETITIONER'S MEM. OF LAW | 1

Alley's litigation maneuvers, and their scandalous allegations, to eager fans of his adult film persona.

Just days ago, Mr. Felt exulted to hundreds of thousands of Twitter followers that Dark Alley "h[as] a federal case, a state case, and an arbitration case all open at the same time."[2] Last night, he bragged that he had just "spoke[n] with a reporter" about Dark Alley's public filings, and that he "expect[s] a story on the disputes … to be published soon.[3] Mr. Felt's PR plan worked. This morning, that reporter published a piece quoting Mr. Felt at length, and recounting his salacious claims, under the tabloid headline *Porn star says his career was destroyed by false claims he nearly killed a dog with meth*. J. Rohrlich, INDEPENDENT (Feb 5, 2025) (last visited Feb. 5, 2025).[4]

The strategy is clear: Dark Alley intends to abuse the judicial process in court, while promoting its own image on social media and in the press, to smear VideoApp's reputation and to harass its personnel and their families. VideoApp will respond to those improper tactics through proper procedural means in the courts where Dark Alley has elected to file its claims.

In the meantime, Dark Alley's confidential arbitration must be stayed. The deliberate effort to gin up scandal through public litigation waives any right Dark Alley had to cloak its related claims in arbitration secrecy.

---

[2] Mullen Aff. ¶ 12.

[3] Mullen Aff. ¶ 23.

[4] Mullen Aff. ¶ 25.

## BACKGROUND

### A.    VideoApp, Dark Alley, and the Joint Venture Agreement

As alleged in Dark Alley's various pleadings,[5] Petitioner VideoApp is a technology company in the adult entertainment industry. (*See* Mullen Aff. Ex. 6 (the "New York Claims," cited as "NY Cl." at 3 ¶ 6); Mullen Aff. Ex. 7 (the "Federal Claims," cited as "Fed. Cl." at 36 ¶ 15).) So is Respondent Dark Alley. (NY Cl. at 3 ¶ 4, at 4 ¶ 12); Fed. Cl. at 34 ¶ 4, at 35 ¶ 12.) Dark Alley's principal Mr. Robert Felt is an adult-industry and social-media celebrity: "a public figure with over 20 years of experience in … adult entertainment" who claims to be a member of the industry's "wall of fame." (NY Cl. at 3 ¶ 5.)

VideoApp and Dark Alley allegedly "operate[d] a joint venture … under a Joint Venture Agreement … signed in 2019, which governed … their shared platform and addressed intellectual property matters." (*Id.* at 5 ¶ 19.) Under the Joint Venture Agreement, Dark Alley "contributed original video content, industry expertise, and performer connections … ." (*Id.* at 5 ¶ 20; Fed. Cl. at 36 ¶ 18.) VideoApp, for its part, "provided website hosting, billing, and customer service … ." (NY Cl. at 5 ¶ 21); Fed. Cl. at 36 ¶ 19.) Dark Alley alleges that it and VideoApp worked together for more than a decade.

---

[5] The Court's task on a petition to stay arbitration on the basis of waiver is to determine whether the Respondent has "commenc[ed] an action at law involving arbitrable issues," *Bronxville*, 171 AD3d at 934; *see also Tengtu Int'l Corp. v. Pak Kwan Cheung*, 24 AD3d 170, 172 [1st Dept 2005] ("the affirmative use of the judicial process to prosecute claims [] encompassed by an arbitration agreement [] results in … waiver of the right to arbitration"). Thus, for purposes of this Petition only, VideoApp recites the allegations in Dark Alley's various demands and pleadings against it. It does not admit the truth of those allegations, and reserves all rights with respect to such allegations.

As most relevant here, the Joint Venture Agreement contains an arbitration clause. It provides that "[a]ny and all disputes arising from or relating to this [Joint Venture] Agreement shall be submitted to … binding arbitration, to be conducted in New York, New York." (Mullen Aff. Ex. 2 (JVA § 9.7).)

In 2024, the parties' relationship began to deteriorate. Dark Alley claims that VideoApp "breached the [Joint Venture Agreement] … by failing to make … payments, provide real-time reports, and maintain industry standards." (JAMS Demand at 2; Fed. Cl. at 39 ¶ 33, at 43 ¶ 51.) Dark Alley further alleges that VideoApp, its founder, (NY Cl. at 3 ¶ 7; Fed. Cl. at 39 ¶ 32), and the founder's "long-term [domestic] partner," (NY Cl. at 3 ¶ 8), engaged in a "conspiracy" to use the joint venture's "accounts" and "social media platforms," (*id.* at 6 ¶ 29, at 7 ¶ 31, 32, at 10 ¶ 56), to make "false claims" against Dark Alley, (*id.* at 7 ¶ 36). By doing so, Dark Alley alleges, VideoApp caused harm to Dark Alley's business prospects, finances and reputation. (*Id.* at 8 ¶ 46; JAMS Demand at 2; Fed. Cl. at 47 ¶ 83). Dark Alley also claims that VideoApp interfered with its trademark and intellectual property rights. (JAMS Demand at 2; Fed. Cl. at 18 ¶ 49.)

In addition, Dark Alley contends that an "alter ego" of VideoApp — a corporation named SVOTHI, Inc. that had earlier been in a trademark dispute with Dark Alley — also "breached the [Joint Venture Agreement] by interfering with [Dark Alley's] rights under the agreement." (Fed. Cl. at 39 ¶ 33.) SVOTHI is not a party to the Joint Venture Agreement that Dark Alley contends SVOTHI breached. (*Id.* at 27 ¶ 17.)

## B. Dark Alley's JAMS Demand for Arbitration against VideoApp

On January 16, 2025, Dark Alley filed a three-page demand for arbitration against VideoApp before the arbitration forum JAMS. (Mullen Aff. Ex. 1) The JAMS Demand

PETITIONER'S MEM. OF LAW | 4

annexes and incorporates by reference the parties' Joint Venture Agreement, (*id.* Ex. 2), as well as three letters from Dark Alley's counsel to VideoApp's counsel expounding on Dark Alley's theory of its claims, (*id.* Exs. 3, 4, 5).[6]

Dark Alley's JAMS Demand contends that VideoApp "breached the [Joint Venture Agreement] between the parties by failing to make [] payments, provide real-time reports, and maintain industry standards." (JAMS Demand at 2.) It claims that VideoApp wrongfully "continues to exploit [Dark Alley's] intellectual property" and "has failed to return [Dark Alley's] assets as per the" Joint Venture Agreement. (*Id.*) It further alleges that "Svothi Inc.," which it describes as an "alter-ego of" VideoApp[,]" is "also falsely claiming ownership of [Dark Alley's] trademarks contributed … under the" Joint Venture Agreement. (*Id.*)

The JAMS Demand seeks "payment of all outstanding amounts, damages, costs, and legal fees[,]" along with "further legal remedies available under law." (*Id.*)

The JAMS Demand is a private arbitration document not filed in public. JAMS Rules, like the rules of most arbitration forums, require confidentiality. *Moton v. Maplebear Inc.*, No. 15-CV-8879, 2016 U.S. Dist. LEXIS 17643, at *25 [S.D.N.Y. Feb. 9, 2016] ("JAMS' Rules explicitly anticipate that … the proceedings and award are … confidential in nature [unless] required by law or judicial decision."); *see also* Mullen Aff. Ex. 12 (JAMS Rules). The substance of Dark Alley's JAMS Demand is only a few sentences long, and it largely refrains from scandalous or outrageous allegations.

---

[6] VideoApp has not responded to the JAMS Demand, and has not participated in any way in any proceeding before JAMS.

### C.    Dark Alley's Supreme Court Claims against VideoApp

Just two weeks later — on January 31, 2025 — Dark Alley sued VideoApp and others in New York Supreme Court alleging similar claims for harms arising under the Joint Venture Agreement. (Mullen Aff. Ex. 6.)

This time Dark Alley filed in a public forum, and so it dressed the allegations up with scandalous references to sex crimes, (*id.* at 7 ¶ 34); non-consensual sex with minors, (*id.* at 8 ¶ 41); drug abuse, (*id.* at 6 ¶ 30); and alleged attempts to kill household pets, (*id.* at 6 ¶¶ 28, 30).

In addition to VideoApp, Dark Alley's New York Claims gratuitously name VideoApp's alleged principal, Mr. Todaro, along with his "long-time [domestic] partner" whose name Dark Alley admits it does not know. (*Id.* at 3 ¶¶ 7, 8.) The New York Claims also sue another adult-industry star unrelated to VideoApp but alleged to be a "former performer for" Dark Alley in its adult productions. (NY Cl. at 4 ¶ 10, at 7 ¶ 35.)

Stripped of superfluous scandal, the New York Claims are at the core just like the JAMS Demand. They allege that Dark Alley "operated a joint venture with [VideoApp] under a Joint Venture Agreement … signed in 2019" that "governed the operation of a "shared platform and addressed intellectual property matters." (*Id.* at 5 ¶ 19.) Dark Alley's New York Claims assert that Dark Alley "contributed original video content, industry expertise, and performer connections" to the joint venture, (*id.* at 5 ¶ 20), and that VideoApp "provided website hosting, billing, and customer service," (*id.* at 5 ¶ 21). According to Dark Alley, VideoApp and the individual defendants named in the New York Claims also manipulated a social media account "used by the joint venture" to "disrupt [Dark Alley's] business and reputation … ." (*Id.* at 6 ¶ 29, at 10 ¶ 57.)

Despite the overlapping claims and substance, Dark Alley's New York Claims against VideoApp do not mention the related JAMS Demand that Dark Alley filed against VideoApp just weeks earlier.

**D.    Dark Alley's Federal District Court Claims against VideoApp**

On February 3, 2025, Dark Alley struck again in federal court, where SVOTHI's trademark claims against it were already pending. Dark Alley filed an Amended Answer asserting counterclaims against SVOTHI, which it labels an "alter ego" of VideoApp that is liable for purported wrongs committed by VideoApp. (Mullen Aff. Ex. 7.)

Like the New York Claims before them, Dark Alley's Federal Claims repackage the substance of Dark Alley's JAMS Demand. The JAMS Demand asserts that SVOTHI is "the alter-ego of [VideoApp]," (JAMS Demand at 2); its Federal Claims say SVOTHI is "the alter ego of VideoApp," (*id.* at 28 ¶ 20), such that it is "liable for the actions and obligations of VideoApp," (*id.* at 47 ¶ 84). Dark Alley's JAMS Demand asserts that SVOTHI has "falsely claim[ed] ownership of [Dark Alley's] trademarks … under the Joint Venture Agreement," (JAMS Demand at 2); its Federal Claims allege that SVOTHI "breached the [Joint Venture Agreement] by asserting ownership of [Dark Alley's] [m]arks," (Fed. Cl. at 39 ¶ 32).

In sum — and just like the JAMS Demand — the Federal Claims allege nonpayment, harm to business and reputation, and infringement of Dark Alley's intellectual property rights under the Joint Venture Agreement.

Dark Alley's Federal Claims against VideoApp's "alter ego" SVOTHI are transparently directed at VideoApp itself. Dark Alley alleges that VideoApp engaged in "fraud … against" Dark Alley, (*id.* at 42 ¶ 44); it claims VideoApp made "false representations in the" Joint Venture Agreement, (*id.* at 40 ¶ 37); and it seeks to enjoin VideoApp "from using

Case 1:25-cv-00333-ALC    Document 26-4    Filed 02/12/25    Page 19 of 30

the [tradem]arks" that Dark Alley claims rights to under the Joint Venture Agreement, (*id.* at 33 ¶ 8). If that were not clear enough, Dark Alley also requested the federal district court's permission to sue VideoApp and its principal. (Mullen Aff. Ex. 8 at 1 ("we respectfully request a … [c]onference to discuss [Dark Alley's] anticipated motion seeking to … implead and join third parties[] VideoApp … and [its] principal, Mr. Todaro.").)

Dark Alley's Federal Claims adopt the same made-for-social-media pleading style and strategy as its New York Claims. The fifteen blunderbuss counts allege fraud, deception and conspiracy — based on attention-grabbing allegations — in an effort to attract publicity and to embarrass VideoApp, its principal, and his family in a public filing.

## E.    Dark Alley's efforts to publicize its claims against VideoApp

While flooding the courts' dockets with claims against VideoApp, Dark Alley and its principal Mr. Felt have been hyping their court cases to fans and social media followers. That conduct — memorialized in dozens of public social media posts — is designed to fan the flames sparked by Dark Alley's litigation filings. The sex-and-scandal-packed allegations are designed to attract attention. They also bait the press. A handful of examples demonstrate it.

As early as December 6, 2024, Dark Alley's principal Mr. Felt built anticipation for the public relations surge by announcing to his more than 250,000 Twitter followers that Dark Alley "will bring legal action against" VideoApp.[7] In early January, the same Twitter account posted: "f*ck [VideoApp] and especially the weak beta male Damian [Todaro] who runs it."[8] In a separate post the same day, Dark Alley crowed: "Lie all you want. … It won't matter.

---

[7] Mullen Aff. ¶ 13.

[8] Mullen Aff. ¶ 14.

The complaint will be filed, Damian will be held to account. You are powerless and immaterial … ."[9]

After it filed the New York Claims and the Federal Claims, Dark Alley turned up the volume. Mr. Felt crowed to his quarter-million followers that he "h[as] a federal case, a state case, and an arbitration case all open at the same time."[10] To drive attention to the scandal his company started, Mr. Felt asked "anyone that's interested" to watch a "10-minute TikTok explaining the lawsuits," which he teased as "the trifecta of hell." (*Id.*) In the video, Mr. Felt rants about his company's multi-prong litigation campaign, admitting that "I'm a plaintiff because after the contract [i.e., the Joint Venture Agreement] is terminated, I tweeted that I was gonna take legal action against them … ." (*Id.* Ex. 9 at 5:24-6:2.) And on February 2, 2025, Mr. Felt told his fans: "I've liquidated all my retirement funds so that I have money to press a legal case. Well, three legal cases … ." (*Id.* ¶ 22.)

Apart from Dark Alley's own social media, it has also leveraged the press to drive publicity. Just yesterday, February 4, 2025, VideoApp received inquiries from a reporter tipped off to Dark Alley's latest litigation maneuver. (*See id.* Ex. 10 ("[W]e are interested in covering [Dark Alley's latest lawsuit] … in an article today … ").) Later in the evening, Mr. Felt tweeted that he "spoke with [the] reporter … and expect[s] a story on the disputes … to be published soon." (*Id.* ¶ 23.) It was, and it quoted him and Dark Alley's outrageous allegations extensively. (*Id.* ¶ 25.)

---

[9] Mullen Aff. ¶ 15.

[10] Mullen Aff. ¶ 12.

VideoApp should not be constrained to respond in confidential arbitration to a fight that Dark Alley started on the public docket, then dragged into the press.

*      *      *

In sum, Dark Alley has deliberately filed litigation against VideoApp, in multiple judicial forums, while openly leveraging those claims for attention. It made scandalous allegations designed to attract press coverage and to titillate Dark Alley's fans. Dark Alley's claims in the courts target not only VideoApp and its principals, but also their family members, for the purpose of harassment.

By litigating purportedly arbitrable claims against VideoApp, and by availing itself of the courts' public dockets, Dark Alley waived any right it might once have had to hide in a confidential arbitration. That is because "[p]arties electing the benefits of arbitration … cannot also draw on the judicial process for [their] particular advantage." *Sherrill v. Grayco Builders, Inc.*, 64 NY2d 261, 273-274 [1985] ("The courtroom may not be used as a convenient vestibule to the arbitration hall so as to allow a party to create his own unique structure combining litigation and arbitration … .").

**STANDARDS**

Under CPLR 7503(b), "a party who has not participated in [] arbitration and who has not made or been served with an application to compel arbitration[] may apply to stay arbitration on the ground that a valid agreement was not made or has not been complied with … ." Once served with a demand for arbitration, a party has twenty days to seek a stay, or "he shall thereafter be precluded from objecting that a valid agreement was not made … ." CPLR 7503(c). This petition is timely. (Pet. ¶¶ 10-11.)

Courts determine the threshold issues of arbitrability and waiver. On an application to stay arbitration under CPLR 7503, it is a "well-settled proposition that the question of arbitrability is an issue generally for judicial determination in the first instance … ." *Smith Barney Shearson Inc. v. Sacharow*, 91 NY2d 39, 45 [1997] (citations omitted). Likewise, "whether institution of judicial … proceedings constitutes … a waiver of arbitration is an issue to be determined by the court." *Cty. of Suffolk v. Novo*, 96 AD2d 902, 903 [2d Dept 1983]; *see Volpe v. Interpublic Group of Cos., Inc.*, 118 AD3d 482, 483 [1st Dept 2014] ("the question of waiver of arbitration is properly decided by the court"); *see also Sherrill*, 64 NY2d at 272 ("the court … should determine th[e] threshold issue" whether "courthouse conduct constituted" waiver of the right to arbitrate).

## ARGUMENT

### I. The Court should permanently stay arbitration pursuant to CPLR 7503(b)

"Like contract rights generally, a right to arbitration may be … waived or abandoned." *Sherrill*, 64 NY2d at 272. A party waives arbitration by "affirmatively s[eeking] the benefits of litigation[]" or by taking "actions inconsistent with a claim that the dispute must be resolved only by arbitration." *Id.* at 273. The rule exists because parties "electing the benefits of arbitration … cannot also draw on the judicial process for a particular advantage." *Id.* And "[o]nce the right to arbitrate a particular dispute has been lost by an election to litigate it cannot be recaptured." *Id.* at 274.

A party waives arbitration by filing ostensibly arbitrable claims. *E.g., Volpe*, 118 AD3d at 483 ("plaintiff's commencement of [an] action … constitutes a waiver of … arbitration"); *Matter of State of N.Y. U.C.S. v. District Council 37*, 121 AD3d 497, 497 [1st Dept 2014] ("Supreme Court correctly found that respondents waived their right to arbitration by

commencing an action … ."); *Ciao Europa, Inc. v. Silver Autumn Hotel (N.Y.) Corp.*, 290 AD2d 216, 216 [1st Dept 2002] ("two attempts to litigate [a] claim manifested a preference clearly inconsistent with [the] claim that the parties are obligated to arbitrate"); *Jamaica Pub. Serv. Co. v. Compagnie Transcontinentale De Reassurance*, 282 AD2d 227, 227 [1st Dept 2001] ("institution of [an] action constitute[s] a waiver of [the] right to arbitration.").

In keeping with that rule, the First Department instructs that it is error for trial courts to allow a party to arbitrate once it has "elect[ed] to litigate". *Tengtu Int'l Corp.* 24 AD3d at 172 (reversing order denying stay of arbitration where respondent's conduct demonstrated an "election to litigate" in federal court); *see Matter of Allstate Ins. Co. v. Howell*, 151 AD3d 461, 461 [1st Dept 2017] (reversing order denying stay of arbitration where "respondent waived her right to arbitrate by initiating litigation … .").)

Here, Dark Alley waived its right to arbitrate by initiating and aggressively pursuing purportedly arbitrable claims against VideoApp in two separate courts.

## A. Dark Alley waived arbitration by litigating against VideoApp in New York Supreme Court

In the New York Claims, Dark Alley sued VideoApp and others — including VideoApp's owner and his "long-term partner" — seeking damages for purported harms to Dark Alley's business. (NY Cl. at 3 ¶ 8, at 10 ¶ 57.) All of the New York Claims fall ostensibly with the scope of Section 9.7 of the Joint Venture Agreement between Dark Alley and VideoApp, which calls for arbitration of "[a]ny and all disputes arising from or related to this [Joint Venture] Agreement … ." (Mullen Aff. Ex. 2 (JVA § 9.7).) Indeed, the New York Claims substantially overlap with Dark Alley's JAMS Demand.

Dark Alley's allegations in its New York Claims include that, "[s]ince 2010, [Dark Alley] has operated a **joint venture** with [VideoApp] under a **Joint Venture Agreement** …

PETITIONER'S MEM. OF LAW | 12

signed in 2019, which governed the operation of their shared platform and addressed intellectual property" issues between Dark Alley and VideoApp. (NY Cl. at 4 ¶ 19 (emphasis added).) The New York Claims further allege that, under the Joint Venture Agreement, Dark Alley "contributed original video content, industry expertise, and performer connections," while VideoApp "provided website hosting, billing, and customer service …" to the joint venture, (*id.* at 5 ¶¶ 20-21). Dark Alley's alleged business harms arise from and relate to Twitter accounts "**used by the joint venture** between" Dark Alley and VideoApp, involve "trademarks" that Dark Alley claims rights to under the Joint Venture Agreement, and target employees of VideoApp who operated the alleged joint venture. (*See id.* at 3 ¶¶ 8-9, at 6 ¶¶ 29-30 (emphasis added).)

Even the New York Claims' more scandalous allegations "aris[e] from or relate[] to" the joint venture, and the Joint Venture Agreement, that gives rise to the JAMS Demand. References to sex offenses, (*id.* at 6 ¶ 28), underage "non-consensual sex," (*id.* at 8 ¶ 41), methamphetamine abuse, (*id.* at 6 ¶ 30), and attempts to kill dogs, (*id.*), involve Twitter accounts allegedly used by, and related to, the joint venture. (*See id.* at 6 ¶ 29.)

By filing its New York Claims against VideoApp in Supreme Court, Dark Alley "affirmatively seeks the benefits of litigation," *Bronxville*, 171 AD3d at 934, including the benefit of airing (alleged) dirty laundry in public. The New York Claims against VideoApp

PETITIONER'S MEM. OF LAW | 13

relate to arbitrable issues under the Joint Venture Agreement, so Dark Alley has waived its

right to arbitration.[11]

### B.    Dark Alley waived arbitration by litigating against VideoApp in Federal District Court

Apparently not content with parallel arbitration and *state* court litigation, Dark Alley

also seeks to assert claims against VideoApp — and an entity that Dark Alley labels

VideoApp's "alter ego" — in federal district court. Dark Alley's affirmative conduct in that

litigation is yet another independent waiver of arbitration.

In *SVOTHI Inc. v. Dark Alley Media, LLC et al.*, a plaintiff that has been operating adult

websites for decades under trademarks claimed by Dark Alley filed suit against Dark Alley

under federal trademark law. No. 25 CV 0333 [S.D.N.Y.]. Dark Alley filed counterclaims

against that plaintiff — SVOTHI — but used them to advance its campaign against

Petitioner VideoApp under the Joint Venture Agreement.

Dark Alley's Federal Claims against SVOTHI allege, among other things, harms

"due to VideoApp's **breach of the joint venture agreement**[.]" (Fed. Cl. at 33 ¶ 6 (emphasis

added).) They allege that SVOTHI "was aware of some or all of the activities of" the joint

venture and "was aware of" the Joint Venture Agreement, (*id.* at 37 ¶¶ 27-28), and that

SVOTHI "knowingly made false representations in the" Joint Venture Agreement, (*id.* at 40

¶ 37).

---

[11] Dark Alley's New York Claims also allege torts allegedly arising from the parties' joint venture. Those tort claims are equally subject to the arbitration clause of the Joint Venture Agreement; Dark Alley cannot avoid waiver by tiptoeing around claims for pure breach of contract. *E.g., Litchfield Fabrics, Inc. v. Rosewood Fabrics*, 438 NYS2d 239, 240 [1st Dept 1981] (under a "broad arbitration clause … it is immaterial whether the claims are labeled in contract or in tort").

Dark Alley admits that SVOTHI is not a party to the Joint Venture Agreement (*Id.* at 27 ¶ 17 ("Plaintiff [SVOTHI] was not a party to the Agreement … .").) Nevertheless, its Federal Claims allege that SVOTHI "breached" the Joint Venture Agreement, (*id.* at 39 ¶ 32), "by interfering with [Dark Alley's] rights under the" Joint Venture Agreement, (*id.* at 39 ¶ 33).

Just as in the JAMS Demand, and just as in the New York Claims, Dark Alley's Federal Claims seek damages for "lost revenue and harm to its business reputation." (*Id.* at 40 ¶ 35.) The Federal Claims even contend that SVOTHI's alleged "fraudulent conduct in inducing [Dark Alley] to enter into the [Joint Venture Agreement] is grounds for rescission" of the Joint Venture Agreement. (*Id.* at 44 ¶ 63.)

And Dark Alley does not limit its Federal Claims to SVOTHI, the entity it contends is VideoApp's alter-ego. (*See id.* at 46 ¶ 81 (alleging that SVOTHI and VideoApp "are not truly separate entities.").) Dark Alley requested the federal court's permission to bring the Federal Claims against VideoApp itself. On January 31, 2025 — the same day it filed its New York Claims against VideoApp — Dark Alley sought the district court's leave "to implead and join third parties [VideoApp and its] principal … " in the federal action. (Mullen Aff. Ex. 8 at 1.)

Leaving no question that its Federal Claims involve purportedly arbitrable issues, Dark Alley's letter to the federal district court lays out the theory that SVOTHI and VideoApp both acted "**contrary to the terms of the [Joint Venture Agreement]**" by "purposefully conceal[ing] their true intentions," which (according to Dark Alley) amount to "fraud" and "support piercing the corporate veils of" SVOTHI and VideoApp "since they are as one." (*Id.* at 3 (emphasis added).) Dark Alley's Federal Claims purport to plead more

than a dozen causes of action against SVOTHI, and they request that the federal district court enjoin SVOTHI "*and VideoApp* from using" trademarks that Dark Alley contends are exclusively its to use and exploit under the Joint Venture Agreement. (*See* Fed. Cl. at 33 ¶ 8 (emphasis added).)

Dark Alley's Federal Claims for violations of the "**terms of the Joint Venture Agreement**," (*id.* at 46 ¶ 79), and for rescission of the Joint Venture Agreement, (*id.* at 44 ¶ 64), plainly arise from and relate to the Joint Venture Agreement. Because Dark Alley has affirmatively asserted those arbitrable claims in federal court, that too constitutes waiver of arbitration.

Perhaps recognizing that mounting the Federal Claims against VideoApp is a waiver, Dark Alley's Federal Claims include a footnote "assert[ing] that th[e federal] matter must be stayed pending arbitration involving the parties[.]" (Fed. Cl. at 1 n.1.) Some courts have found that "measures taken by a defendant during litigation to assert a right to arbitrate, such as an affirmative defense or counterclaim, … might preserve the right before it is [arbitrated]." *See Sherrill*, 62 NY2d at 274. But here, neither Dark Alley's footnote nor the suggestion of a stay can forestall waiver for three reasons.

First, despite giving lip service to a request to stay the federal litigation, Dark Alley simultaneously makes clear that it has every intention to proceed with it. On January 31, 2025, Dark Alley asked the district court for permission to join VideoApp and Mr. Todaro as defendants in the Federal Claims, (Mullen Aff. Ex. 8 at 1), which is inconsistent with a stay. It also announced its intention "to shortly move the court, via Order to Show Cause, for a temporary restraining order and preliminary injunction … to prevent further [alleged] harm to [Dark Alley's] business and reputation, (*id.* at 4), which is also inconsistent with a

PETITIONER'S MEM. OF LAW | 16

Case 1:25-cv-00333-ALC    Document 26-4    Filed 02/12/25    Page 28 of 30

stay. (Dark Alley's counsel reiterated that threat by email just last night, on February 4, 2025, (*id.* Ex. 11), and then made good on it earlier today by filing its purported emergency motion in the federal court.) Neither expanding the federal litigation by joining VideoApp nor bringing a motion for the same relief sought in its JAMS Demand is allowed in a stayed case; instead, those actions are exactly the sort of affirmative litigation that results in waiver.

Second, even if Dark Alley's perfunctory request to stay the federal litigation were adequate to protect against waiver, there is no similar request in Dark Alley's New York Claims. Thus Dark Alley has manifested its intention to litigate in at least one judicial forum — New York Supreme Court — and that is enough. A party cannot publicly engage in two performative litigations, while depending on a throwaway footnote in one of them to keep its adversary pinned down in arbitration.

And third, as *Sherrill* makes clear, "[o]nce the right to arbitrate a particular dispute has been lost by an election to litigate it cannot be recaptured." 64 NY2d at 274. Dark Alley's footnote in its Federal Claims is too little too late: having already waived its right to arbitrate by affirmatively litigating in two courts, Dark Alley cannot "resuscitate an expired right" by requesting to stay one of its two court cases against VideoApp. *Id.*

### C. Dark Alley waived arbitration by publicizing its litigation against VideoApp

As recounted at length above, Dark Alley and its celebrity principal have been publicizing their litigation efforts on social media to drum up attention and support. (*See* Mullen Aff. ¶ 12 (2/2/25 @owenhawkxxx ("For anyone that's interested … I did a 10-minute TikTok explaining the lawsuits … ."); *id.* ¶ 19 (2/2/25 @owenhawkxxx ("[T]here's just no limit to the shady shit these people are capable of doing to keep me from claiming my lawful rights."); *id.* ¶ 20 ("[H]e try [sic] to cut me out and escaped to the islands with all

PETITIONER'S MEM. OF LAW | 17

the valuable assets."); *id.* ¶ 21 (1/17/25) (there "was a joint venture between Dark Alley and
[VideoApp]. multiple legal disputes have arisen in the past months, nothing settled yet.");
*id.* ¶ 22 (2/2/25 @owenhawkxxx ("I've liquidated my all my retirement funds so that I have
money to press … three legal cases … ."); *id.* ¶ 22 (2/4/25 @owenhawkxxx ("I spoke with
a reporter … . I appreciate any attention on this issue and remain hopeful that [VideoApp's]
deceitful and malicious actions — and those of their employee — will fully come to light.").)

Dark Alley has also been courting media coverage by contacting journalists about his
salacious claims, and by handing out juicy quotes (and press photographs) to reporters. *See*
J. Rohrlich, *Porn star says his career was destroyed by false claims he nearly killed a dog with meth*,
INDEPENDENT (Feb. 5, 2025).

By pounding the drum of publicity that it created by filing outrageous allegations in
court, Dark Alley "affirmatively sought the benefits of litigation" — including the right of
public access to judicial proceedings — that is absent from confidential arbitration. *Sherrill*,
64 NY2d at 273. Dark Alley's choice to carry out its PR strategy in the public dockets is
fully "inconsistent with a claim that … dispute[s] must be resolved only by arbitration." *Id.*

"Parties electing the benefits of arbitration," such as confidentiality, "cannot also
draw on the judicial process for a particular advantage," such as pretrial publicity. *Id.* at 273-
274. The rule applies with special force here. Dark Alley ought not be allowed to file
scandalous claims in the public courts, and to drum up attention and publicity for itself on
the internet, while simultaneously insisting that VideoApp's only recourse lies out of public
view in a confidential arbitration.

PETITIONER'S MEM. OF LAW | 18

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court permanently stay arbitration, or in the alternative stay the arbitration pending the hearing and determination of the issues of arbitrability and waiver, and grant to Petitioner such other further relief as the Court may deem just and proper.

DATED:    February 5, 2025
          New York, New York

                    MULLEN P.C.

BY:

                    Wesley M. Mullen
                    Vincent R. FitzPatrick III
                    Martin J.E. Arms
                    745 Fifth Avenue, Suite 500
                    New York, NY 10151
                    (646) 632-3718
                    wmullen@mullenpc.com
                    vfitzpatrick@mullenpc.com
                    marms@mullenpc.com

                    *Counsel for Petitioner VideoApp, Inc.*