UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SVOTHI INC.,<br><br>                Plaintiff,<br><br>     v.<br><br>DARK ALLEY MEDIA, LLC and ROBERT FELT,<br><br>                Defendants. | Civil Action No. 25 CV 00333<br><br>**REPLY MEMORANDUM OF LAW OF DARK ALLEY MEDIA, LLC IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND ORDER TO SHOW CAUSE** |

### Table of Authorities

**Cases**

*1-800 Contacts, Inc. v. JAND, Inc.*,
  119 F.4th 234 ..................................................................................................................6

*AVCO Fin. Corp. v. CFTC*,
  929 F. Supp. 714 ............................................................................................................8

*Blaich Assocs. v. Coach/Blaich Real Estate of Manhasset, Inc.*,
  186 Misc. 2d 594 ............................................................................................................6

*Boost Worldwide, Inc. v. Talk Til U Drop, Wireless, Inc.*,
  2014 U.S. Dist. LEXIS 142969 ......................................................................................7

*Christopher D. Smithers Found., Inc. v. St. Lukes-Roosevelt Hosp. Ctr.*,
  2001 U.S. Dist. LEXIS 9293 ..........................................................................................7

*Church of Scientology Intl. v Elmira Mission of the Church of Scientology*,
  794 F2d 38 [2d Cir 1986] ...............................................................................................7

*Fenig v. Hexalon Real Estate, Inc.*,
  186 A.D.2d 411 ............................................................................................................10

*Fido's Fences Inc. v. Canine Fence Co.*,
  309 Fed. Appx. 480 ........................................................................................................6

*Flower v. May*,
  498 F. Supp. 2d 664 (S.D.N.Y. 2007) ............................................................................5

*Gayle Martz, Inc. v. Sherpa Pet Group, LLC*,
  651 F. Supp. 2d 72 .........................................................................................................7

*George Restauration S.A. v. Little Rest Twelve, Inc.*,
  58 A.D.3d 428 ................................................................................................................. 5, 6

*King v. Pine Plains Cent. Sch. Dist.*,
  918 F. Supp. 772 .................................................................................................................. 8

*Lobo Enters. v. Tunnel, Inc.*,
  822 F.2d 331 ........................................................................................................................ 5

*Luitpold Pharms., Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie*,
  784 F.3d 78 ........................................................................................................................ 10

*New Kayak Pool Corp. v. R&P Pools, Inc.*,
  246 F.3d 183 ........................................................................................................................ 6

*Prichard v. Consumers Brewing Co.*,
  136 F.2d 512 (6th Cir. 1943) ............................................................................................... 8

*Rainbow Ranch Corp. v. Rainbow Shops, Inc.*,
  89 Misc. 2d 808 .................................................................................................................. 6

*Rogers v. HSN Direct Joint Venture*,
  1999 U.S. Dist. LEXIS 14392 ............................................................................................ 7

*Timex Corp. v. AAI.Fostergrant, Inc.*,
  8 Fed. Appx. 94 .................................................................................................................. 6

*Tough Traveler, Ltd. v. Outbound Prods.*,
  60 F.3d 964 (2d Cir. 1995) ................................................................................................. 5

*Upper Hudson Planned Parenthood, Inc. v. Doe*,
  836 F. Supp. 939 ................................................................................................................. 8

**Statutes**

Section 12.4 ................................................................................................................................ 9

1. Defendants Dark Alley Media, LLC ("DAM") respectfully submits this reply memorandum of law in support of its motion for a preliminary injunction.

2. Defendant here introduces newly discovered evidence including critical evidence of Defendant's alter ego theory and the existence of irreparable harm and lack of delay. The opposition has argued that the initial declaration or the allegations of the counterclaim do not factually support the alter ego theory, thereby claiming there is no likelihood of success on the merits, and that there has been great delay in seeking this relief which is untrue. However, the newly discovered evidence in the records of Robert Felt and the present facts demonstrate a high likelihood of success on the merits.

3. The evidence shows an extensive unity of interest and ownership between plaintiff and VideoApp, Inc. ("VideoApp") under the singular unchecked control of their owner Damian Todaro who treats them as a singular enterprise to the point of collecting and paying money under contracts with VideoApp through Plaintiff. Failure to disregard their separate status results in an inequitable outcome, thereby satisfying the requirements for applying the alter ego theory.

4. This crucial information was not available until extensive searching through Mr. Felt's records. We agree to a surrebuttal if the court permits allowing the opposing party an opportunity to respond.

**IRREPARABLE HARM**

5. Plaintiff's claim that defendants delayed objecting to Plaintiff's use of the RFC Marks (a subset of the JV Marks) for over a decade is as bold as it is specious. The only support it has mustered despite the first use evidence of the marks presented; as well as the evidence of the

business relationship between Robert Felt and Todaro that initiated the RFC website, is the minimal declaration of Cynthia Corso that fails to set forth the basis of her knowledge.

6. The Reply Affidavit of Robert Felt provides evidence that as late as March 2023, the plaintiff admitted that the content and associated intellectual property on the RFC Site either belonged to the Independent Producers or to VideoApp. Reply Aff. Felt, Pg 8, para 43

7. Since Plaintiff admitted that VideoApp owned the RFC Marks as late as 2023, not only does Plaintiff's Complaint appear to be untrue, but the question of any contractual obligation of VideoApp to Defendant, that is the JV Agreement ("JVA"), becomes keenly important.

**Claim of Delay is Misleading**

8. The timeline presented by Plaintiff is misleading. Defendants' claims arose only after the termination of the Joint Venture Agreement (JVA) in on December 4, 2024, due to VideoApp's material breaches. Sharma Aff. Ex. 6. Prior to this, the parties operated under the JVA, which governed their respective rights. The dispute over ownership of the marks did not arise until VideoApp failed to comply with the JVA's terms and continued using the marks post-termination.[1]

9. Further, after the Complaint was filed, on January 18, 2025, counsel for Plaintiff and Defendant, in an effort to take time to explore a settlement, agreed in writing that through January 31, 2025, any forbearance from, or failure to seek injunctive relief is not an admission by any party or its affiliates or related persons that irreparable harm is not imminent, and shall no prejudice any party's right to seek injunctive, equitable or other relief. Sharma Reply Aff. Ex. 1.

10. Therefor the chargeable time between the termination of the JVA on December 4, 2024, through February 4, 2025, when the OSC was filed is 47 days and under the circumstances of the

---

[1] Such is bad faith on the part of Plaintiff supporting the NY State Claim.

*Svothi, Inc. v. Dark Alley Media, LLC et al*, No. 25 CV 00333 | Reply Memo In Support    Page 4

timing, including the holidays is not unduly lengthy and does not minimize the immediate and irreparable harm alleged.

11. In *Flower v. May*, 498 F. Supp. 2d 664 (S.D.N.Y. 2007), the court held that a delay due to good faith settlement negotiations did not preclude the issuance of a preliminary injunction.. Similarly, in the present case, the delay resulted from efforts to negotiate a settlement, which courts have recognized as a valid reason for delaying the pursuit of immediate legal action.

12. Moreover, delay does not negate irreparable harm. In *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995), the court affirmed that loss of control over trademarks constitutes irreparable harm, even if there is a delay in seeking an injunction.

13. Irreparable harm is presumed when there is a likelihood of consumer confusion and loss of control over the reputation of the trademark (*George Restauration S.A. v. Little Rest Twelve, Inc.*, 58 A.D.3d 428; *Lobo Enters. v. Tunnel, Inc.*, 822 F.2d 331).

14. Defendant's delay of approximately six weeks over the holidays does not undermine the claim of irreparable harm. The ongoing unauthorized use of the defendant's trademarks continues to cause reputational damage, consumer confusion, and loss of brand integrity, which are harms that cannot be remedied by monetary damages alone.

**Balance Of Hardships Do not Favor Plaintiff**

15. Plaintiff claims it must stop serving its users. Such is nonsense. Nothing will stop those users from finding and using Plaintiff's website if Plaintiff stops using the JV Marks. Such a suggesting is non-sense. Plaintiff has other websites and any users going to the current RawF***Club.com site can be redirected and notified of the new URL over a reasonable period of time.

16.     Any harm SVOTHI claims is purely financial and compensable through monetary damages, which does not outweigh the irreparable harm Defendants face. Courts consistently hold that financial losses alone are insufficient to tip the balance of hardships in favor of the non-moving party.

**IRREPARABLE HARM TO DEFENDANT IS NOT SPECULATIVE**

17.     Plaintiff's attempt to minimize Defendant's claims of reputational harm is unpersuasive. Defendants have consistently used the trademarks since 2007, building significant goodwill and industry recognition. Unauthorized use by the plaintiff undermines this goodwill and creates consumer confusion (*1-800 Contacts, Inc. v. JAND, Inc.*, 119 F.4th 234), as evidenced by Google search results showing 31,000 results associating RFC with the defendant, while the plaintiff's association is negligible. Plaintiff's continued use of the marks post-termination conflicts with the defendants' ownership rights under a licensing agreement. Aff of Felt, Ex's 17 & 18.

18.     In New York, a likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm (*Timex Corp. v. AAI.Fostergrant, Inc.*, 8 Fed. Appx. 94; *New Kayak Pool Corp. v. R&P Pools, Inc.,* 246 F.3d 183). See, also, *Fido's Fences Inc. v. Canine Fence Co.*, 309 Fed. Appx. 480; George *Restauration S.A. v. Little Rest Twelve, Inc.*, 58 A.D.3d 428.

19.     The inability to control the nature and quality of goods associated with the trademark leads to a loss of goodwill, an intangible and immeasurable asset (*Blaich Assocs. v. Coach/Blaich Real Estate of Manhasset, Inc*., 186 Misc. 2d 594; Rainbow Ranch Corp. v. Rainbow Shops, Inc., 89 Misc. 2d 808).

**HARM SUFFERED BY DAM IS NOT MERELY FINANCIAL**

20. The harm suffered by Defendant extends well beyond mere financial loss. The unauthorized use of Defendant's trademarks by Plaintiff has resulted in significant irreparable harm that cannot be adequately remedied by monetary damages alone. *Boost Worldwide, Inc. v. Talk Til U Drop, Wireless, Inc.*, 2014 U.S. Dist. LEXIS 142969.

21. First, the unauthorized use of Defendant's trademarks has brought Defendant's business operations to a standstill, jeopardizing its survival. Defendant has been unable to release two completed DVDs or commercialize its library of RFC-branded content due to the uncertainty created by Plaintiffs claims of trademark ownership and Plaintiff's complaint seeking injunctive relief. This situation has prevented Defendant from monetizing its intellectual property, which is a critical aspect of its business model.

22. The unauthorized use of a trademark by a former licensee constitutes irreparable harm due to the threat it poses to the economic value of the goodwill and reputation associated with the licensor's mark. *Rogers v. HSN Direct Joint Venture*, 1999 U.S. Dist. LEXIS 14392., *Gayle Martz, Inc. v. Sherpa Pet Group*, LLC, 651 F. Supp. 2d 72. In *Church of Scientology Intl. v Elmira Mission of the Church of Scientology*, 794 F2d 38 [2d Cir 1986], the court concluded that unauthorized trademark use by a former licensee invariably threatens injury to the economic value of the goodwill and reputation associated with a licensor's mark, thus constituting irreparable harm. *Rogers v. HSN Direct Joint Venture*, 1999 U.S. Dist. LEXIS 14392, *Christopher D. Smithers Found., Inc. v. St. Lukes-Roosevelt Hosp.* Ctr., 2001 U.S. Dist. LEXIS 9293. This aligns with Defendant's situation, where Plaintiff's unauthorized use of its trademarks has caused significant harm beyond financial loss.

23. In cases where the monetary loss will probably force the party into bankruptcy, there is more than the risk of mere monetary loss. Here, Defendant's inability to release its products and

commercialize its content due to Plaintiff's actions has brought its business to a standstill, jeopardizing its survival and creating a situation where the harm extends beyond financial boundaries. *Upper Hudson Planned Parenthood, Inc. v. Doe*, 836 F. Supp. 939, *King v. Pine Plains Cent. Sch. Dist.*, 918 F. Supp. 772. Additionally, the loss of goodwill and damage to reputation may constitute irreparable injury, *AVCO Fin. Corp. v. CFTC*, 929 F. Supp. 714.

### ACCEPTANCE OF PAYMENTS FROM PLAINTIFF DOES NOT CONSTITUTE DAM'S ACQUIECENSE TO PLAINTIFF ASSERTION OF OWNERSHIP OF THE JV MARKS

24. Plaintiff admitted it is own terms of service that *all* the content on the Site was either owned by the Independent Producers that the remainder of the content was licensed from VideoApp. [2] Reply Aff. Felt, Pg 8, para 43.

25. The facts presented are that the JV Agreement between Video App and Defendant indicated that VideoApp would host the JV content provided by DAM on the Sites—which it did, either by running the Site itself, or by licensing it to Plaintiff, whether tacitly, or expressly as the Terms of Service on the Site reveals.

26. Payments made under a licensing agreement do not constitute acquiescence. The licensing agreement explicitly recognized the plaintiff's ownership rights, and continued use of the trademarks post-termination violates those rights.

27. *In Prichard v. Consumers Brewing Co.*, 136 F.2d 512 (6th Cir. 1943), the court emphasized that no agreement or payment of royalty is sufficient to create a valid license. This principle

---

[2] Plaintiff wishes to distance itself from VideoApp and maintain the fiction that they act like wholly unrelated third parties as to each other, but the evidence before the court is that Plaintiff took in and dispensed funds for VideoApp, evidenced by the fact that DAM was asked to make payments due VideoApp to Plaintiff by Todaro and directed Cynthia Corso to make such happen. Reply Aff. Felt, Ex 12.

underscores that payments made under a licensing agreement are part of a contractual arrangement and do not imply consent to the use of the trademarks beyond the terms of the agreement.

28. Furthermore, the general rule of licensee estoppel provides that when a licensee enters into an agreement to use the intellectual property of a licensor, the licensee effectively recognizes the validity of that property and is estopped from contesting its validity in future disputes.

**The Status Quo Ante Favors DAM**

29. The status quo ante is not Plaintiff hosting the Sites and the JV Marks, it is Plaintiff doing so under a license from VideoApp based on a valid and operational Joint Venture Agreement since 2010. The lettere provided Sharma's Decloaration show that VideoApp was asserting its rights as late as November 2024.

30. The status quo ante—the last uncontested state before the dispute—favors Defendants. The Joint Venture Agreement (JVA) explicitly provides that all rights to the RFC marks revert to Dark Alley Media upon termination due to VideoApp's breach, which occurred in December 2024.

31. It now time for Plaintiff to hand over the marks it can no longer license from VideoApp because VideoApp no longer owns them. Section 12.4 of the JVA is clear – all rights to the Marks go to DAM.

32. Plaintiff and VideoApp are dead set against arbitration. So at least Svothi must answer for its unauthorized use in this court.

33. The termination of the trademark license agreement explicitly requires the licensee to discontinue using the mark. Even without an express provision, the right of the licensee to use the mark ends with the termination of the license agreement, and any continued use of the mark

thereafter is considered trademark infringement. *Luitpold Pharms., Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie*, 784 F.3d 78.

34.  Furthermore, the typical remedy for trademark infringement, preliminary injunctive relief, is commonly granted if the plaintiff establishes the traditional elements of probability of success on the merits, irreparable injury, and an imbalance of hardship. *Fenig v. Hexalon Real Estate, Inc.,* 186 A.D.2d 411. In this case, the defendant has demonstrated that the plaintiff's continued use of the trademarks post-termination is likely to cause irreparable harm to the defendant's business reputation and goodwill, which cannot be adequately compensated by monetary damages alone. The balance of hardships tips decidedly in favor of the defendant, as the plaintiff no longer has any legitimate right to use the trademarks following the termination of the agreement. The public interest also supports the issuance of an injunction to prevent consumer confusion and protect the integrity of the defendant's trademarks.

**CONCLUSION**

35.  The statutory and common law bases for DAM's claims, combined with the applicable legal standards for obtaining a preliminary injunction, strongly support the requested relief. The facts of this case align with established legal principles, demonstrating that Counterclaim

Defendant's actions are unauthorized and detrimental to DAM's rights and the public interest.

Dated: February 14, 2025

Respectfully submitted,

                          **SHARMALAW – Ravi Ivan Sharma, P.C.**

                By:  /s/_____
                      Ravi Ivan Sharma
                      26 Broadway, Suite 1108
                      New York, NY 10004
                      (212) 537-5957
                      ravi@sharmalaw.com

                      Counsel for Defendants
                      and Counterclaim Plaintiffs

Certificate of Word Length

Please take notice that this Memorandum
Consists of approximately 2,362 words.

/s/ _____
Ravi Ivan Sharma