```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK
```

|  |  |
|---|---|
| SVOTHI, INC., | : Docket #25cv0333 |
| Plaintiff, | : |
| - against - | : |
| DARK ALLEY MEDIA LLC, et al., | : New York, New York |
| Defendants. | : February 19, 2025 |
| ------------------------------------- : | |

```
                       PROCEEDINGS BEFORE
                 THE HONORABLE ANDREW L. CARTER,
               UNITED STATES DISTRICT COURT JUDGE
```

APPEARANCES:

For Plaintiff:          MULLEN P.C.
                        BY:  MARTIN ARMS, ESQ.
                        745 Fifth Avenue, Suite 500
                        New York, New York 10151

For Defendants:         SHARMALAW - RAVI IVAN SHARMA, P.C.
                        BY:  RAVI IVAN SHARMA, ESQ.
                        26 Broadway, 26th Floor
                        New York, New York 10004

Transcription Service:  Carole Ludwig, *Transcription Services*
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Email:  Transcription420@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

**INDEX**


**E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None | | | | |

**E X H I B I T S**

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|
| None | | | | |

PROCEEDINGS                    3

THE CLERK:  Good afternoon.  This is Tara, Judge Carter's deputy.  Who just joined the call please?

MR. MARTIN ARMS:  This is Martin Arms from Mullen P.C.

THE CLERK:  Thank you, Mr. Arms.  Counsel, today's proceeding is being recorded, so I ask that each time when you address the Court, please state your name prior to speaking, and when you're not addressing the Court, to please place your phone on mute.  Thank you.

(indiscernible) for a telephone order to show cause hearing for a preliminary injunction and for a premotion conference in case number 25cv333, Svothi, Inc. v. Dark Alley, et al.  Counsel, please state your appearances for the plaintiff.

MR. WESLEY MULLEN:  Good afternoon, this is Wesley Mullen for the plaintiff Svothi, Inc., and with me on the line today is my partner Martin Arms.

THE CLERK:  And for the defendant.

MR. RAVI IVAN SHARMA:  Ravi Ivan Sharma, 26 Broadway, New York, New York, for defendants, both of them.

THE CLERK:  Thank you.

THE COURT:  Hi, good afternoon.  We're here today for a hearing in conjunction with counterclaim-

PROCEEDINGS                    4

plaintiff's application for a preliminary injunction as well as a premotion conference ahead of the defendants' anticipated motion to stay the case pending arbitration and to implead and enjoin third parties.  I'll address both matters in turn.  I've reviewed the parties' submissions.  I want to address a few issues first.

Regarding ownership of the mark, it seems that it's very clear it's undisputed that this mark is not registered.  Is that correct, counsel for plaintiff?

MR. MULLEN:  This is Mr. Mullen for the plaintiff.  That's correct, Your Honor.

THE COURT:  Is that correct, counsel for defendant?

MR. SHARMA:  This is Ravi Sharma for defendant. That is correct.

THE COURT:  All right, my understanding is that from the submissions that the plaintiff claims that it is the owner of the mark and has been using the mark since about 2010.  Is that correct, counsel for plaintiff?

MR. MULLEN:  Yes, Your Honor, for the plaintiff, yes.

THE COURT:  And for the defendant, defendant claims that it is the owner of the mark and has been

PROCEEDINGS                    5

using the mark since 2007, is that correct?

MR. SHARMA:  Ravi Sharma for defendant, yes, that is correct, Your Honor.

THE COURT:  Now, let me ask a few more questions then.  Defendant, is it correct that you have known about plaintiff's use of the mark since on or around 2010?

MR. SHARMA:  I would say that isn't necessarily correct.  The defendant has known --

THE COURT:  Okay, how long has defendant known about - okay, go ahead.

MR. SHARMA:  Well, the defendant has known since 2010 that an affiliate company of plaintiff was using the mark to exploit videos that defendants and the other entity joined together to exploit.  Based on the complaint, it appears that plaintiff has claimed that it was the owner-operator of those websites since 2010 not its affiliate.  My client always believed that it was the affiliate that operated and owned those websites because that is exactly what the affiliate and my client agreed to in their joint venture agreement.

If Svothi, the plaintiff, was operating the site or, and because they're co-owned by the same individual, at best it would've been under a license.

PROCEEDINGS                    6

But as to when the actual knowledge that Svothi was operating the site, that's what they alleged in the complaint.  Frankly, that was probably the first that that was asserted to my client's actual knowledge.

THE COURT:  Well, when did the defendant know that the plaintiff here was using the mark?

MR. SHARMA:  Well, when the plaintiff alleged in the complaint that it was using the RFC mark, that's when it came to the attention that it was plaintiff that was using the RFC marks as opposed to the other company, Videoapp.  After the breakdown of the Videoapp and my client's joint venture agreement in December of 2024, my client was getting ready to seek action against Videoapp for continuing to utilize the marks on the website despite demands to take such marks down.  And then Svothi, the plaintiff here, filed this lawsuit alleging that Mr. Felt and, therefore, also Dark Alley Media was using a subset of those marks which it alleges is called the RFC marks, and here we are.

So if Svothi's using them, they need to stop, and also Videoapp, the joint company also needs to stop.

THE COURT:  But from defendants' perspective is there any distinction that makes a difference between the plaintiff and the affiliate of plaintiff in terms of

PROCEEDINGS                    7

the relief that the defendant is seeking?

MR. SHARMA:  No because if plaintiff was using the mark because it was the actual operator of the website from whatever period, we have evidence that showed that it added its name to the website in 2023, yet at the same time said it was licensing materials from Videoapp which is the sister company that we're talking about.  All of that was done pursuant to a license from Videoapp which was pursuant to the license terms of the joint venture agreement which said that as long as the joint venture was in place, the joint venture would own these marks and that after termination those marks would go to either one of the two parties, depending on how the termination actually occurred.

So the answer is the same relief would be asserted against Videoapp as it is against Svothi which is that neither of these companies should be using the marks.

THE COURT:  But certainly then the defendant is aware that Videoapp was using the mark since around 2010.

MR. SHARMA:  One hundred percent.  The joint venture was using the mark, and my client and Mr. Felt and the owner of Videoapp and plaintiff here, Mr.

PROCEEDINGS                    8

Todaro, worked closely together with the joint venture. The 2019 joint venture written agreement by its own terms memorializes the joint venture that started back around 2010.  So absolutely the answer is yes, but only under and pursuant to the joint venture agreement.

THE COURT:  So from defendants' perspective, the claim that you are the exclusive owner of the mark is tethered to your argument that the plaintiff breached the joint venture agreement.  Is that correct?

MR. SHARMA:  Not exactly.  If the plaintiff, we believe the plaintiff is the alter ego of its sister company Videoapp.  If they are, indeed, alter egos of each other, then, yes, plaintiff along with Videoapp reached the agreement.  But even if they are not alter egos, if plaintiff's sole use of the mark was under license from its sister company Videoapp which was in a joint venture agreement with my client, then our argument would be that Videoapp ceased having any rights to utilize the mark following the termination of a joint venture agreement on December 4 of 2024 and that, therefore, any license that plaintiff might have from its sister company Videoapp can be no more because Videoapp has no more mark to license with.

THE COURT:  Okay, I think that it seems to me

PROCEEDINGS                        9

to be the same thing.  I think your position is that the joint venture agreement was such that whoever breaches the agreement loses the mark.  The person who breached the agreement loses the mark, and the other person then owns the mark.  Is that correct?

MR. SHARMA:  It's slightly, that is close to fully correct.  It's a little bit more nuanced than that.  The remedies for who, for what happens to the marks depending on who breaches are slightly different.  In the case of – well, and I'll just back up just one second.  The joint venture agreement essentially has my client creating the content and the Videoapp, Mr. Todaro's company, publishing it and monetizing it and splitting the proceeds.  So what happens is, if Videoapp, Mr. Todaro's companies breach, then all the marks are deemed to go to my client.  On the other hand, if my client is the one that breaches, what it says is that both parties get to continue using the marks, but Videoapp could actually start making its own content using the mark as well.  And, of course, it retains its website, etc.

So pretty much both parties get to go away with what they brought, but in the case of my client's breach, if that were true, then my client still could

PROCEEDINGS                    10

use the marks but Videoapp could go ahead and keep the site and create its own content and apply those marks to its content.  So it's slightly different.

THE COURT:  Okay, but would it be fair to say that under the defendant's theory, if defendant breached the joint venture agreement, the defendant wouldn't have any right to try to prevent Videoapp from using the mark?  Is that correct?

MR. SHARMA:  On its own websites and with content shown on its websites, that's correct.  I don't believe the agreement allows, would allow Videoapp to create content and how them or sell them elsewhere.  But so for those specific things, using the marks on its website, creating content and selling it on its website, the answer would be correct, my client would not have a right to say you can't do that because the joint venture agreement says that it can.

THE COURT:  Okay.  Let me then hear from plaintiff.  What is plaintiff's position as to the relevance as to any of the joint venture agreement with plaintiff's claim to ownership of the mark?

MR. MULLEN:  We don't have a claim that the joint venture agreement is relevant to the plaintiff's ownership of the mark.  Svothi's use both predates the

PROCEEDINGS                11

joint venture agreement by nearly nine years and is independent of that joint venture agreement.  So as to the plaintiff's affirmative claims which are not being advanced on the defendant's motion for a preliminary injunction in support of its counterclaims, I think the answer is none.

As for the plaintiff's position on the joint venture agreement as it relates to the defendant's injunction motion, Your Honor, our position is that it's not before the Court because the defendant has threatened to, but has not, impleaded Videoapp who is the allegedly counterparty under that joint venture agreement.

And so if I can summarize what I think I heard opposing counsel describe as a vigorous dispute between Dark Alley Media, the defendant, and the non-party Videoapp over who may have breached the joint venture agreement and what the respective parties' rights are under that joint venture agreement, it's just not briefed and joined because the other party under that agreement is not a party to the motion that's been brought.

THE COURT:  Okay.  What is plaintiff's position on the relationship between plaintiff and Videoapp?

PROCEEDINGS                12

MR. MULLEN:  So these entities have common ownership.  We do not deny that Mr. Todaro is a shareholder in each of those two entities.  But we vigorously dispute the defendants' assertion that they are alter egos, and for the reasons that we set out in our papers, we think the defendants fall far short of proving, let alone to the clear standard required for this mandatory injunction, that assigning of alter ego status is appropriate.

THE COURT:  Okay.  Let me ask plaintiffs this, what is your position regarding the relationship of plaintiffs and Videoapp as it pertains to the joint venture agreement?

MR. MULLEN:  So the plaintiff Svothi, Inc. is not a party to the joint venture agreement.  Am I understanding the Court's question correctly?  Is that responsive?

THE COURT:  No, that's not my question.  My question is the defendants put forth the position that Videoapp signs this joint venture agreement and that plaintiff is claiming perhaps additional rights to the mark as a result of this agreement, and I'm trying to make sure that is your position or if your position is that the joint venture agreement has nothing to do with

PROCEEDINGS                      13

plaintiff's rights or defendants' rights to use the mark?

MR. MULLEN:  I'm sorry, so I can certainly speak for the plaintiff Svothi, Inc. here, Your Honor, and I can say that the joint venture agreement doesn't underpin and is not a condition to our rights to use the mark, marks.  Again, Svothi has been exploiting these marks, including via the website, since at least 2010, and the joint venture agreement that we're talking about was signed in 2019.

As to whether the joint venture agreement affects the defendants' right to use the marks, I'm not sure that the plaintiff has a position on that, at least one that I can articulate now, but forgive me if I'm misunderstanding the Court's question.

THE COURT:  No, that is my question.  What is the plaintiff's position regarding plaintiff's use of the mark related to Videoapp's use of the mark?  Is your position that plaintiff owns the mark and has licensed the mark to Videoapp or something else?

MR. MULLEN:  I don't know of any, I don't know that the plaintiff has licensed the mark to Videoapp. No, I don't believe we're taking that position.

THE COURT:  So then how did Videoapp get to use

PROCEEDINGS                        14

the mark?  If plaintiff is the --

MR. MULLEN:  I don't know --

(interposing)

THE COURT:  If your position is that plaintiff was the sole owner of the mark and that Videoapp is separate and distinct from plaintiff, by what mechanism does Videoapp have a right to use the mark, if any?

MR. MULLEN:  I don't know that Videoapp has a right to use the mark, Your Honor.  I don't think there's evidence in the record of, and certainly none that plaintiff has advanced that Videoapp has the right to use the mark.

THE COURT:  And you said that there's an individual in common between the plaintiff and Videoapp?

MR. MULLEN:  That's right, Your Honor.  It is the --

THE COURT:  -- that individual --

(interposing)

MR. MULLEN:  -- alleged --

THE COURT:  The alleged, go ahead.

MR. MULLEN:  Forgive me, Your Honor, please continue.  The alleged or the threatened third-party defendant, Mr. Todaro, who has an ownership stake in both Videoapp and the plaintiff Svothi.

PROCEEDINGS                    15

THE COURT:  So is it your position that Mr. Todaro, if Mr. Todaro entered into a joint venture with the defendant on behalf of Videoapp, that that joint venture was invalid because he never had a right to use the mark in connection with Videoapp?

MR. MULLEN:  No, that's not our position, Your Honor.

THE COURT:  So what is your position on that?

MR. MULLEN:  I don't know that I have a position on that, Your Honor, it's that Svothi, Inc. has a position on whether Videoapp's entry into the joint venture agreement was valid or invalid, I don't have a position on that.

THE COURT:  Okay, let me ask a few more questions then.  Let's me ask, back to the defendant, in a typical injunction case, the parties seeking an injunction must show irreparable harm, either a likelihood of success on the merits, or both serious questions on the merits and a balance of hardship decidedly favoring the moving party, that a preliminary injunction is in the public interest, but where an injunction would alter the status quo, the standard is heightened.  The party seeking an injunction must show a strong showing of irreparable harm and a clear

PROCEEDINGS                 16

likelihood of success on the merits.  This seems to me that your injunctive relief that you are seeking would alter the status quo.  Do you agree with that?  Defendant.

MR. SHARMA:  I don't.  The reason I don't is that we disagree with the plaintiff's assertion as to what the status quo is.  The plaintiff asserts the status quo is that plaintiff has been using and owning this mark since 2010 and exploiting it since then, and that is the status quo that would be upset.  Our position is that the status quo is that plaintiff has been, if plaintiff has been using this mark since 2010 but in any event up until now from some point, the only status quo that they were using this mark as the licensee of Videoapp pursuant to the joint venture agreement, which just terminated about, just over at this point 60 days ago.  So that was the status quo that there was a license agreement, that license agreement is over, and that moment just prior to December 4 of 2024 was the status quo, and that's, we'd like to go back to that contract, but that contract obviously is over, and the marks now need to go elsewhere.  So we disagree that the status quo is ten years or fifteen years of use by the, unfettered use by the plaintiff but at most

PROCEEDINGS                    17

licensed use.

THE COURT:  When was the joint venture agreement terminated, to use your terminology?

MR. SHARMA:  Yes, the joint venture agreement was terminated pursuant or by a letter from me on December 4 to Mr. Mullen who represented Videoapp which is the other company that we're discussing.  Videoapp had in August had stopped paying its payments to my client pursuant to the joint venture agreement.  My client made demand of such more than 30 days prior to the termination and provided, as per the joint venture agreement provided Videoapp the opportunity to pay the monies owed pursuant to their use of the exploitation of the marks on the website that we're all discussing right now in July and August when the payments stopped.  When those payments were not received, I sent a letter terminating the agreement, as per the terms of the agreement, you know, how to do it, etc.  And that's what terminated the agreement.

THE COURT:  And if the agreement is, in fact, terminated, it does seem from our discussion before, that one critical factor is going to be who potentially was at fault for potentially breaching that agreement.  And I'm sure the parties have different views.  Is that

PROCEEDINGS                    18

correct, defense counsel?

MR. SHARMA:  That is absolutely correct.  The parties obviously, Videoapp, Mr. Mullen is not going to speak for Videoapp today I don't think.  Maybe he will, who knows.  But there were competing letters between myself and Mr. Mullen, and we believe that at an arbitration, which is also part of the, or any adjudication, whether it's arbitration or not, to just construe what happened with the joint venture, that we would prevail and that it would be, being that it was Videoapp itself that had breached without cure and not our client, my client.

THE COURT:  And up to today, there has been no determination by a court, an arbitrator, or a settlement between the party as to who breached the agreement, is that correct?

MR. SHARMA:  That is correct.  We did file and seek arbitration before JAMS below.  That has been vigorously tried, opposed by Videoapp.  Videoapp has filed an Article 78 proceeding saying that by mentioning them here, we shouldn't be able to arbitrate, and they sent a letter to that effect, to the JAMS representative who rightly so said, well, unless both parties agree, we can't do anything.  Because, unfortunately this

PROCEEDINGS                    19

arbitration, the arbitration provision didn't specify which specific company, or fora that the arbitration should take place in, whether it should be JAMS or the American Arbitration Association.

So that is correct, we are trying, but that's what we should do, we mentioned that to this Court in the first instance when we answered the complaint that we believe that this matter and most of this matter should be arbitrated and that we probably should bring in the other parties but still only to preserve the issues and then get it down to arbitration.  If we can't go to arbitration, then maybe it should all be here, but, yes, my clients want to litigate that because they want those marks back, and those marks now apparently are being held by Svothi.  In fact, they are because that's what Svothi says in its complaint here.

THE COURT:  So in December when the agreement was terminated up till now, there has been no determination by anyone as to who breached the agreement, from December until now, it's the defendants' position, and I think it's the plaintiff's position, that the plaintiff has continued to use those marks.  Correct, defense counsel?

MR. SHARMA:  Yes, correct.

PROCEEDINGS                    20

THE COURT:  Why isn't that the status quo?

MR. SHARMA:  Now between December, oh, between December '24, between December 4 and now?  Well --

THE COURT:  Yeah.

MR. SHARMA:  -- that 65, 70 day is the status quo as of this moment.  That is --

THE COURT:  And in terms of the status quo being that the plaintiff has been using the mark, that has also been true in addition to that period from December until now.  That has also been true since 2010.  Correct?

MR. SHARMA:  As I said, the plaintiff using the marks, if they were in 2010, like I said, we don't know that it was Svothi using the mark.  Svothi's name did not appear onto the websites until sometime in 2023.  So we can go back that far because we found evidence of that and prevented that in the reply affirmation, I'm sorry, declaration of my client, Mr. Felt.  But back to 2010 it was our understanding that it was Videoapp that was utilizing it pursuant to the joint venture agreement.

THE COURT:  Okay.  Thank you.  I'm going to deny the request for preliminary injunction.  I do find that this is the status quo right now that you are

PROCEEDINGS                    21

seeking a mandatory injunction.  Also, issuing such injunctive relief would require a determination as to who owns the mark, the unregistered mark, and perhaps a determination as to who breached the joint venture agreement, and those are issues that are ripe for some sort of discovery for the litigation.  A preliminary injunction is an extraordinary remedy, and I will not impose that.

Let's move on to the other issues raised by the defendant.  You were seeking a stay pending arbitration. We received some filings from the plaintiff saying that arbitration has been delayed and/or cancelled.  Let me hear from defendant on this.

MR. SHARMA:  Yes.  So we filed our answer which included counterclaims which names, at least alleged in the allegations, obviously Videoapp and Mr. Todaro and others.  And my motion was to, first, firstly to add those parties to the complaint but at the same time with the understanding that, and this is why I mentioned in the footnote of our answer, that we're adding these people and these parties and bringing these claims to preserve them, but we fully understand that there's a contract between Videoapp and my client that calls for arbitration.  And we're not trying to fight that, but

PROCEEDINGS                    22

we're here, we're being pulled into federal court.  And so I want to simultaneously bring them in but at the same time agree that it should be (indiscernible).  And I think at this point, given that plaintiff has tried to derail the arbitration, isn't leaning in, it's actually doing everything possible to avoid it, it doesn't appear that it wants to arbitrate, but it certainly doesn't seem to be interested, and I said plaintiffs, well, plaintiff, Videoapp, Mr. Todaro, doesn't seem to want to deal with the joint venture agreement at all.  It wants to basically have Svothi, the plaintiff here, hold onto evidence and sidestep and go around that arbitration, that joint venture agreement.

So my motion to add would remain, to allow us to amend the cross-complaint or the counterclaims to add their names as counter-defendants stands, but in terms of the motion to stay pending arbitration, I think probably it should be a motion to compel arbitration at this point.  Mr. Mullen has brought an Article 78 in regard to that arbitration in New York State Supreme, and I expect that I'll be counterclaiming to compel arbitration as opposed to just defending against the arbitration.

So that's what I think is going on here, and we

PROCEEDINGS                23

want to be sure that everybody gets their day in court, we prefer arbitration, but it could be right here before Your Honor if that's the way it has to be.  But you're right, these things need to get decided, and it is a complicated case given plaintiff's strange position.

THE COURT:  All right, let me hear from defendant on your desire to implead the third party under Rule 13.  Let me hear from you.  I think I have a sense of your position on that.  I guess let me hear from plaintiff.  Does plaintiff plan to oppose such a motion?

MR. MULLEN:  Well, Judge, I confess I don't know if we're in the 14-day window when the plaintiff can do it without leave.  I'm not inclined to consent to something I haven't seen yet, and I don't know what claims are being threatened, but in principle, no, we'd like to go ahead and get everybody in one court, this court is an excellent one, and get these issues resolved.  So subject to what my clients may say after seeing a draft third-party complaint, I don't think we would oppose a motion to implead.

THE COURT:  Okay.  And let me hear from plaintiff on this motion for a stay pending arbitration.

MR. MULLEN:  Sure.  So just to put the timeline

PROCEEDINGS                24

in context, my client filed this complaint in January. Three days later the defendants noticed an arbitration against the non-party Videoapp, and then they carried that notice or the demand for arbitration back to this Court saying that my client Svothi's claims couldn't go ahead because the defendant has initiated an arbitration against an entity that it claims is an alter ego.  Now, it hasn't proven that alter ego theory in this Court or in arbitration, and, of course, as the Court has seen, JAMS has told us now that it won't go forward with an arbitration because there's no agreement between the defendant and the non-party to arbitration before JAMS.

So my client's position, strictly speaking, is that we would oppose the defendants' anticipated motion to stay the case in favor of an arbitration that is not proceeding and likely will not any time soon given that there's no arbitration pending and there's also Videoapp's petition to permanently stay any arbitration that the defendant might assert against it.

THE COURT:  Okay.  Let me ask this question. Have there been any settlement discussions between the party and if not why not?  Let me hear from plaintiff first.

MR. MULLEN:  There have been, Your Honor, and

PROCEEDINGS                25

without getting into the substance, I think Mr. Sharma and I have been a little busy this past week dealing with these motion papers, but stepping out of my role as an advocate and into my role as an experienced litigator, I hope they will continue.

THE COURT:  Without getting into detail, can you give me a sense, well, without getting numbers, was there a demand made and was there an offer made in response to that demand?

MR. MULLEN:  Your Honor, the answer's yes to both.

THE COURT:  And, again, without getting into detail, how would counsel, I will hear from both counsel, how would you describe the distance between the parties in aquatic terms?  Are we talking about the pond, a river, or an ocean?

MR. MULLEN:  This is Mr. Mullen for the plaintiff.  Maybe a Great Lake, Your Honor, in this metaphor.

THE COURT:  Okay, let me hear from defendant on this.

MR. SHARMA:  Ravi Sharma for defendant, Your Honor.  The communications had a number of different facets.  One was a global type of settlement that would

PROCEEDINGS                    26

basically allow the parties to walk away from each other, and I think Mr. Mullen's characterization as a Great Lake is accurate.  There was other facets which involved similar relationships in regard, similar to but not exactly the same as the joint venture agreement. And in those regards I would not say Great Lake; I would say that whole process being so nuanced it's hard to say how far apart people are or were.  And it may be still on the able; it may not be on the table; it's had to say.

THE COURT:  Okay, thank you.  All right, let me just find out from the parties regarding potential settlement talks.  Do the parties think they could do this on their own or do you think it would be helpful to have referral to a magistrate judge or to mediation program?  Do the parties want to take a shot at this further on their own first?

Here's what I'm thinking, let me just tell you what's on my mind.  I'm thinking I'll give the parties a couple of weeks to engage in some settlement discussions, and if that's fruitful, great, and let me know if you need a little bit more time.  If not, the parties can submit a proposed briefing schedule for the impleader motion.  It may be that during the course of

PROCEEDINGS                27

negotiation maybe the parties may have some agreement on that.  But the parties can give me an agreed-upon briefing schedule for the motion to implead the third party in that joint status report, and we can have that joint status report due on March 6th.  How does that sound to plaintiff?

MR. MULLEN:  That sounds good to the plaintiff. Your Honor, I might add one request which I regret I haven't raised with Mr. Sharma yet, which is that my client's answer to the counterclaims or premotion letter on it motion to dismiss the counterclaims would be due Friday, this Friday, absent an adjustment.  I'm wondering if we can move that deadline out too so that if we're engaging in further motion practice and impleader, we can do all of that motion briefing at the same time.

THE COURT:  Okay, how does that sound to defendant?

MR. SHARMA:  Ravi Sharma for defendant.  Before I answer that, based on what was said earlier by Mr. Mullen, I wasn't sure that Mr. Mullen had not said that he didn't think they were going to oppose that motion to bring in Videoapp but that he was holding that final say until he spoke to his client.  So the question would be

PROCEEDINGS                28

whether or not the Court would want to hear from, I mean we can put it plainly, the additional claims are going to be the same as the current counterclaims as against plaintiff here.  We named the individuals in the allegations.  We just didn't actually name them as counterclaim defendants.  So if there's no need for a motion for the interpleader motion, if we could agree, then we don't need to do that.

In terms of the timing, in terms of putting off his time to answer, I'm amenable to that.  I think, however, March 6 is a little soon.  I also want to go back and say that I believe that we would be served with assistance with the Court in regard to settlement only because I think it would be worthwhile to have an additional set of eyes and set of eyes that can make recommendations to the clients in regard to the overall cases here.

And, finally, the March 6 date is a little soon for me because there is, there are motions, Article 78 motions below in this matter, and now there is a new motion to dismiss that's been filed in another matter by Videoapp in a matter that both my clients are involved with, and that motion return date is pretty much within a week of that same March 6 date.

PROCEEDINGS                    29

THE COURT:  The Article 78 proceeding, is your opposing counsel the same counsel that's on this call now?

MR. SHARMA:  Yes.  Mr. Mullen and his firm are, and myself, are counsel on all at this point, including the arbitration, four matters.

THE COURT:  So what I was proposing by the March 6 date was that in that joint status report the parties can let me know several things.  They could let me know whether or not they've settled the matter amongst themselves.  If not, they can let me know whether or not they would like a referral to a magistrate judge or the court's mediation program.  They can also in that joint status report let me know if they have discussed the issue of the impleading motion, and if they have resolved it, you can let me know that in the report.  And if not, you can give me a proposed briefing schedule for that implead motion, that motion to implead on the 6th.  It doesn't mean your motion is due that day.  You give you a proposed briefing schedule.

So this should not affect really too many substantive motions that defense would be filing between now and March 6 or whether there should be some work in

PROCEEDINGS                30

terms of potentially trying to settle this matter, and obviously, if this matter settles, you won't have that extra work in the Article 78 proceeding.  How does that sound to defense counsel?

MR. MULLEN:  Your Honor, for the plaintiff that's – oh, excuse me.

THE COURT:  How's that sound to defense counsel?

MR. SHARMA:  That sounds, again, it still sounds relatively tight.  Mr. Mullen is asking me to consent to delay his answer.  If we're settling, then, if we're looking to settle or trying to settle or trying to spend some time to settle, I would be asking Mr. Mullen to consider the other pending motions that he filed be similarly delayed so that we can concentrate on settling, and at least there'll be something to, some basis to settle.  Because otherwise I'm going to be doing a lot of work even prior to March 6 on these two other motions.  And I should --

(interposing)

THE COURT:  When are the other motions – again, I'm not going to get into the motions --

MR. SHARMA:  Yeah --

(interposing)

PROCEEDINGS                    31

THE COURT:  -- that are in front of another court, but when are these motions due?

MR. SHARMA:  One is due I believe, one is the return date is the beginning of March or within seven days or that, Mr. Mullen, your Article 78 I'm referring to, and the latest one that was filed today I believe is March 13, but because of reply time, I mean response time it lands smack right before, right around the March 6 period that you mentioned.  So there has to be work done.

THE COURT:  Well, I guess I'm trying to understand just as a practical matter, if you're asking for more time for the status report, that makes it much more likely that you're going to be filing these motions as opposed to perhaps --

MR. SHARMA:  No --

(interposing)

THE COURT:  -- these reports filed earlier, and maybe there can be a determination as to whether or not, if you're close to settling, you don't need to file these motions.  Are you saying the March 6 deadline --

MR. SHARMA:  I don't mind the date --

(interposing)

THE COURT:  Go ahead, what were you going to

PROCEEDINGS                    32

say?

MR. SHARMA:  I don't, sorry to interrupt, I don't disagree with the March 6 date for the reasons you said.  I was speaking mainly to the concept of seeking, Mr. Mullen seeking extra time to answer in the first place.

THE COURT:  Yes.  No, I think in terms of the litigation here I think it makes sense for the parties to try to focus on settling this matter, and then, therefore, we hold off on any filing of any motions or answers or motions at least until March 6, and then we'll see where we are.  And in that March 6, again, joint status report, you can let me know if there's an agreement to implead, give me a proposed deadline for the answer or the motion, but hopefully the parties will let me know that you're on track for settling.  But let's have that joint status report filed on March 6. Does that work for the plaintiff?

MR. MULLEN:  It does, Your Honor.

THE COURT:  Does that work for the defendant?

MR. SHARMA:  That's fine, Your Honor, yes, Your Honor.

THE COURT:  Okay.  All right, we are adjourned, thank you.

PROCEEDINGS                    33

MR. MULLEN:  Thank you.

MR. SHARMA:  Thank you, Your Honor.

(Whereupon, the matter is adjourned.)

34

C E R T I F I C A T E

I, Carole Ludwig, certify that the foregoing transcript of proceedings in the case of SVOTHI v. DARK ALLEY MEDIA, Docket #25cv0333, was prepared using digital transcription software and is a true and accurate record of the proceedings.


Signature_____*Carole Ludwig*_____

Carole Ludwig

Date:  March 5, 2025