

# SHARMALAW
LAW OFFICES OF RAVI IVAN SHARMA, P.C.
26 BROADWAY, SUITE 1108, NEW YORK, NEW YORK 10004

**212 537 5957**
Facsimile 212 537 5956
Voice Mail 213 537 5953
RAVI@SHARMALAW.COM

April 10, 2025

**VIA ECF and EMAIL: ALCarterNYSDChambers@nysd.uscourts.gov**

The Honorable Andrew L. Carter
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

     RE: *Svothi Inc. v. Dark Alley Media*, 25 CV 0333 – Status Updated and Defendants' Request For a Pre-Motion Conference and/or briefing schedule as to Motion to Stay Proceeding Pending Arbitration

Dear Judge Carter,

     I reply to Plaintiff's counsel's letter of even date ("<u>Mullen Response</u>") to correct mischaracterizations and omissions regarding central procedural and substantive issues.

     Unfortunately, the Mullen Response conflates distinct entities, misstates claims, and blurs procedural history, obscuring the issues and Defendants' intentions. Contrary to this tact, Defendant, Dark Alley Media, Inc.'s ("<u>DAM</u>") efforts have been consistently designed to preserve its right to seek relief under the Joint Venture Agreement ("JVA"), and Plaintiff's assertions regarding waiver, procedural posture, and claim nature are incorrect.

**A. DAM's Consistent Position on Arbitration**

     Contrary to the Mullen Response, Defendants' Answer explicitly seeks a stay pending arbitration involving Svothi, Inc.'s ("<u>Svothi</u>") related entities, VideoApp Inc. ("<u>VideoApp</u>") and Damian Todaro ("<u>Todaro</u>") on its first page and as an affirmative defense. See, *Amended Answer, pg 1. Fn1., Affirmative Defense 25*.

     Exploring the concept that DAM's claims against Svothi along with its alter egos, VideoApp and Todaro might be more efficiently maintained under one roof in this matter—even at the great cost of giving up its right to arbitrate, resulting in the joint schedule, such efforts were rejected by Plaintiff on specious procedural grounds; while, simultaneously, VideoApp was unable to bring itself to resolve with Defendant to dismiss its equally specious Article 75 arguments, repeated ad nauseum in counsel's many court communications. Such plays made clear that the only correct and direct way forward, which has never been waived, here or anywhere, is via the arbitration that Mr. Todaro and Mr. Felt agreed should govern their and their companies' disputes when they signed the JVA.

**B. The First Amended Answer**

The Mullen Response claim that Defendants "appear content" with their First Amended Answer is grossly misleading. On April 9, 2025, in an email to Mr. Mullen, I explicitly reserved Defendants' right to amend the Answer following Plaintiff's pre-motion conference letter as outlined in the Court's Individual Practices. Far from abandoning its position, Defendant has taken proactive steps to ensure that their pleadings remain responsive and aligned with the evolving procedural posture of this case. It was Plaintiff who previously opposed such an amendment and now complains it was Defendant who changed its mind.

Contrary to running any clock, the purpose of Defendant's letter on April 8, 2025, timely seeks a stay to efficiently obviate the need to amend until such time as the direction of the arbitration between DAM and Videoapp is ruled upon by the Supreme Court. Plaintiff has neither asserted any prejudice by such a stay, nor, despite ample opportunity, made any mention of a single fact or argument supporting its bald allegation of ownership of marks. Moreover Plaintiff has soundly waived its right to a preliminary injunction by sitting on its hands.

Supporting its arguments by circular citations to counsel's own letters the Mullen Response offers little in the way of compelling arguments. For example, it succumbs to connecting Svothi and VideoApp in its reliance on the "first-filed" rule given the plain fact that Svothi is not a party to any other action but this one and VideoApp is not a party to this case. The "first-filed" rule only applies and the Mullen Response's reliance on this theory only works if, like Defendants have asserted all along, Svothi and Videoapp are each other's alter ego. But that circle only points to the applicability of the JVA arbitration clause and militates in favor of a stay.

**C. No Waiver of Arbitration**

The Mullen Response's recitation of a single line of the *Thomspon-CSF* case conveniently ignores the most important language in that case: That New York courts have "recognized a number of theories under which nonsignatories may be bound to the arbitration agreements of others," including "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995). In this case there is ample evidence already before this court in support of the Order to Show Cause for Preliminary Injunction that not only are VideoApp and Svothi the alter ego's of each other, but that where Todaro, and thus Svothi, had actual knowledge of the JVA and its content, Svothi also "knowingly exploited a direct benefit of a separate agreement containing an arbitration clause." *Life Techs. Corp. v. AB Sciex Pte. Ltd.*, 803 F. Supp. 2d 270, 276 (S.D.N.Y. 2011).

DAM's counterclaims against Svothi in this case are legitimate claims to protecting its rights to the marks that Svothi's principal, Damian Todaro, in the language of the JVA, and in his words to Mr. Felt during the joint venture and prior to the execution of the JVA, made clear belonged to the JVA – not Svothi. Dec of Felt in Support at 24. Such counterclaims (explicitly reserving the right to seek arbitration) and answer (raising the JVA arbitration clause as an affirmative defense) in no way suggest that arbitration with any of Mr. Mullen's clients is waived.

At each opportunity for Mr. Mullen's clients to efficiently join together into a single proceeding, they resisted with last minute rejection, inaction, and, in at least one case, made-up legal attacks. For example, VideoApp, in asserting the Anti-SLAPP statute against DAM and

seeking to dismiss the complaint in *DAM v VideoApp*, has argued for a "clear and convincing" standard when it is established in New York that at a motion to dismiss it is merely a "substantial basis in law" test to be applied.

### D. The Nature of the Defamation Matter

Plaintiff's counsel continuously mischaracterizes *DAM v. VideoApp* as a defamation matter ignoring that it primarily involves interference with contractual relations between DAM and a third party following the JVA termination. Furthermore, the defamation and business interference alleged is wholly unrelated to any contractual relationship including the JVA and did not, nor could not enhance any party's position in such relationship. Courts have consistently held that litigation involving non-arbitrable claims or different cases does not constitute a waiver of arbitration. *Cotugno v. Bartkowski*, 2012 NY Slip Op 22288, 2, 37 Misc. 3d 917, 919, 952 N.Y.S.2d 421, 423 (Sup. Ct.2012). The only parties attempting to connect the JVA to these torts in lockstep with each other, as always with no surprise, are Plaintiff and VideoApp.

There is little in the Mullen Response that does not leave out facts or disguise argument as fact. For example, the repetition that the *DAM v. Videoapp* case "arises" out of the JVA is a fact nowhere to be found in in the complaint – much less in the cited paragraphs 19, 20, 21, and 29. This reaching "It's as plain as 1, 2, 3, 10!" argument is neither helpful nor imparts arbitrability to such claims.

### E. Misrepresentation of Scandalous Claims

The Mullen Response, like VideoApp's motion to dismiss, loudly misidentifies (and itself ironically amplifies via indignance, recitation, links, and quotations throughout public filings) "allegations of sexual misconduct and animal abuse" as though they were made by Mr. Felt and DAM, when the reality is those were part of clearly per se defamatory statements directed at such victims, not the other way around. In addition to being incorrect, these references at most distract from the substantive issues.

It is important to remember that DAM is seeking to compel arbitration in New York Supreme Court as a cross-petition in response to Svothi's sister *VideoApp's* Article 75 petition seeking to unjustifiably stay the JAMS arbitration it is undoubtedly subject to undre the JVA JAMS has not dismissed the arbitration, but merely has indicated (since no particular arbitration forum was listed in the JVA) it must wait until either both parties agree to appear or a court orders such. That fact is not support for Plaintiff's position at this juncture.

The Mullen Response's reliance on cases such as *Sherrill*, are opposite to what they actual hold. For example, no facts exist, such as required by *Sherrill*, that DAM has "manifest[ed] [] a preference 'clearly inconsistent with [its] later claim that the parties were obligated to settle their differences by arbitration' . . . and thereby elected to litigate rather than arbitrate." Moreover, the Mullen Response claims no meaningful prejudice to any of the Mullen clients, which is *the* "critical" consideration. *See In the Matter of NBC Universal Media, LLC v Strauser*, 190 A.D.3d 461 (1st Dep't 2021) (finding that the defendant had not waived its right to pursue arbitration after 26 months between the start of litigation and the demand for arbitration where the action had not been substantially litigated at that point, and the plaintiff could not demonstrate prejudice as a result). All of such is a very, very far cry from the simplistic Mullen Response argument that Defendants "have actively litigated their counterclaims in this case."

**F. Conclusion**

Defendants have consistently preserved their rights under the JVA—including its arbitration clause—and acted appropriately within established legal principles favoring arbitration under FAA precedent. Staying federal proceedings pending arbitration avoids duplicative litigation while respecting contractual obligations.

The Court upon critical evaluation of the Mullen Response's selective representations, should grant Defendants' motion for a stay pending arbitration for judicial efficiency and fairness in resolving intertwined disputes efficiently across forums and/or order a briefing schedule as to the motion to stay.

Respectfully submitted,

Ravi Ivan Sharma
SHARMALAW – Ravi Ivan Sharma, P.C.
26 Broadway, Suite 1108
New York, NY 10004
(212) 537-5957
ravi@sharmalaw.com
*Attorneys for Defendants*

cc. Marms@mullenpc.com, wmullen@mullenpc.com; vfitzpatrick@mullenpc.com