**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SVOTHI INC., <br><br> Plaintiff, <br><br> v. <br><br> DARK ALLEY MEDIA, LLC and ROBERT FELT, <br><br> Defendants. | Civil Action No. 25 CV 00333 <br><br> **DECLARATION OF ROBERT FELT IN SUPPORT OF MOTION FOR STAY PENDING ARBITRATION** |

**DECLARATION OF ROBERT FELT IN SUPPORT OF MOTION FOR STAY PENDING ARBITRATION**

I, Robert Felt, hereby declare and affirm under penalty of perjury that the following is true and correct:

1. Except as otherwise specifically indicated, this Declaration is based on my personal knowledge, and I am competent to testify as to all matters set forth below.

2. I am a managing member and owner of 50% of Dark Alley Media, LLC ("DAM"), a New York-based limited liability company engaged in the production and distribution of adult entertainment, and I am authorized to make this declaration on behalf of myself and my company.

3. I make this Declaration in support of: DAM's Motion for Stay Pending Arbitration.

4.      I have served as the President of DAM from its foundation and shepherded it from start-up funded on credit card debt, into a profitable studio with international recognition and a library of 300 titles.

5.      On March 25, 2019, DAM and Petitioner VideoApp, Inc. ("VideoApp") entered into a written joint venture agreement ("JV Agreement" or "Agreement")[1] to memorialize their business relationship which had been ongoing for approximately ten years at such time.

6.      The JV Agreement contains a mandatory arbitration clause, which requires disputes arising from or relating thereto to be resolved by arbitration in New York City, as follows:

9.7 Any and all disputes arising from or relating to this Agreement shall be submitted to full and final resolution by binding arbitration, to be conducted in New York, New York. Arbitrator will be mutually selected by Key Members from both parties, and a lawyer with 10+ years' experience with entertainment law. Judgment on the arbitration award may be entered in any court of competent jurisdiction [hereinafter, "**the arbitration clause**"]; . . .

7.      The JV Agreement memorialized the joint venture ("JV") for the purpose of marketing and selling pay-per-view videos produced by DAM on a website maintained and/or administered by VideoApp, under the JV Marks (defined below).

8.      As further detailed below, Svothi is the alter ego and agent of VideoApp, Svothi has also directly and unquestionably benefited from the JV

---

[1] A copy of the Joint Venture Agreement is filed herein as Exhibit 11 (Document 12) to the Declaration of Robert Felt In Support of Order To Show Cause Dated February 5, 2025.

Agreement. For these and other reasons described below, Svothi is clearly bound by the arbitration clause.

9. The trademarks at issue under the JV Agreement consist of two identical marks, word mark "RFC" and image mark "RFC" (together the "JV RFC Abbreviation Letter Marks"), as well as the word marks "Raw Fuck Club", and "RFC Channels" ("JV Word Marks") as well as the URLs "rawfuckclub.com, and rfcchannels.com ("JV URL Marks" together with the JV Abbreviation Letter Marks, the JV Word Marks, hereafter, the "**JV Marks**").

10. On January 13, 2025, Svothi filed an action against DAM and me in the Federal District Court for the Southern District of New York, Civil Action No. 25 CV 00333, asserting claims against the JV Marks that are subject to mandatory arbitration under the JV Agreement (hereinafter, "the Federal Action").

11. I initially note that Svothi has failed, both in its Federal Action Complaint, and its subsequent papers, to offer evidence sufficient to establish a valid, enforceable trademark under the Lanham Act - a prerequisite for bringing charges of Trademark Infringement.

12. Svothi *claims* that its mere use of various marks (the "RFC Marks") and rawF**kclub.com (the "Site") gives it all the rights to all the RFC Marks. However, prior to 2023, Svothi never owned or operated the Site except, *if at all*, under the joint control of Damian Todaro ("Todaro").

13. It is undisputed that Todaro is the sole owner and CEO of both Svothi and VideoApp, and three or more other companies that Todaro operates **together as one company** under the same d/b/a of "PPVNetworks (or "PPVN").

14. Even when Svothi's name first appeared on the Site in its Terms of Service, these terms indicated that most of the content that appeared on the Site, *i.e.* the DAM-produced Raw F**k Club ("RFC") videos, were licensed by VideoApp. This is consistent with the terms of the JV Agreement between VideoApp and DAM because VideoApp's role in the Joint Venture ("JV") was explicitly the operation of the Site (and others) while DAM's role was to provide the RFC branded content it had been producing since 2007.

15. **EXHIBIT 1** attached hereto is a true and correct copy of a 2009 XBIZ industry press release referencing Dark Alley Media and its "subsidiary line[] Raw F*** Club".

16. **EXHIBIT 2** attached hereto is a true and correct copy of Fleshbot Reviews of RFC branded films from 2009.

17. **EXHIBIT 3** attached hereto is a true and correct copy of Adult DVD Talk entry for Load Factory showing release date 02-06-09

18. DAM's use of RFC as a brand mark on our products began in 2007 and continues through today across multiple platforms, including digital and hard goods, online retail sales, and wholesale.

19. As the listed owner of the domain from 2007 to 2018, DAM's involvement in rawF**kclub.com membership sales is irrefutable.

20. **EXHIBIT 4** attached hereto is a true and correct copy of Examples of Continuous use, including screenshots of "darkalleydvd.com", "XBIZ press releases", and "articles on JRLCharts".

### SVOTHI'S BAD FAITH/FRAUDULENT CONDUCT IN PROCURING AGREEMENT/BRINGING ACTION

21. Todaro has been listed as the CEO of Svothi since its incorporation in 2000.

22. **EXHIBIT 5** attached hereto is a true and correct copy of Svothi's registration document.

23. Todaro repeatedly affirmed DAM's rights to both the trademarks word marks 'Raw F**k Club" and "RFC."

24. Specifically, on March 7, 2018, I stated Todaro, "I don't think you should have ownership of the RFC name or brand" to which Todaro responded, "I don't either."

25. That same day Todaro stated, "I consider RFC to be a Joint Venture."

26. Accordingly, Svothi either lied then when Todaro made these statements to me knowing them to be untrue, in order to secure my willingness to sign the JV Agreement declaring the marks to be owned by the JV–at least until termination of the agreement, or Svothi is lying now in its Federal Action. Either way, Svothi has lied and caused egregious injuries to DAM.

SVOTHI'S ASSERTION OF DOMINANCE OVER THE JV WEBSITE

27. **EXHIBIT 6** attached hereto is a true and correct copy of the Terms of Service page located on the RawF---Club.com website as it existed on January 12,

2022. ("2022 Terms of Service") This document is publicly available on the WaybackMachine web service that catalogs the internet in historical context.

28.     The 2022 Terms of Service states that the site was held out as "owned and operated by PPVNetworks" at "228 Park Avenue South, Suite 40543, New York, NY 10003."

29.     The 2022 Terms of Service also stated "We, our licensors, studio partners and independent producers, own all right, title, and interest, including all intellectual property rights, in and to the Site, the content on the site and the Service."

30.     Later the 2022 Terms of Service states, "This Agreement is governed by the laws of [] Nevis" and "You irrevocably consent to the exclusive jurisdiction of the courts located in Nevis."

31.     As is evident from the JV Agreement and the parties' various communications, VideoApp is a Nevis company and, thus the 2022 Terms of Service referenced VideoApp.

32.      However, sometime before March 7, 2023, **critical information was changed on the Terms of Service pages**.

33.     **EXHIBIT 7** attached hereto is a true and correct copy the Terms of Service page located on the RawF---Club.com website as it existed on March 7, 2023.  Again, this page is publicly available on the WaybackMachine web service that catalogs the internet in historical context.

34. Not later than March 8, 2023, the Terms of Service ("2023 Terms of Service") stated: "**this site is owned and operated by Svothi Inc. DBA PPVNetworks**, 228 Park Avenue South, Suite 40543, New York, NY 10003."

35. Moreover, currently, and, on information and belief, since March 8 2023, the Terms of Service do not mention VideoApp at all, and they state that all actions are subject to New York laws and are to be brought in New York.

36. The contents of the 2022 and 2023 Terms of Service indicate that the pages were always prior to 2022 owned and operated by VideoApp which is consistent with the JV Agreement. However, that changed in 2023 when the 2023 Terms of Service stated Svothi was the owner and operator, and the content on the site was "licensed from VideoApp Inc." which had "ownership" of such content.

37. This is a direct admission by Svothi that the content of the site that was not mere independent producer content, *i.e.*, the RawF---Club content that was owned at that time by the JV was always owned by the JV and licensed to the site and then to Svothi **via the operation of the joint venture and the JV Agreement**. Further, the fact that payments and operational directives were issued by Svothi evidences Svothi's direct benefit and involvement in the joint venture.

### TODARO'S INTERCHANGEABLE USE OF SVOTHI AND VIDEOAPP AND COMMINGLING OF FUNDS

38. Again, it was not until 2023 that Svothi was listed as the owner operator of the RawF***Club.com website.

39. Prior to that time the owner operation was listed as PPVNetworks, which is the d/b/a of **both VideoApp and Svothi**.

40. **EXHIBIT 8** attached hereto is a true and correct copy of an email to me informing me that my company Dark Alley Distribution was being sued with VideoApp by the owner of Eric Videos based on breach of contract by VideoApp. This lawsuit, which was in the SDNY in 2020, alleged that VideoApp continued to distribute the property and trademarks of Eric Video under the Lanham Act after termination of the agreement.

41. **EXHIBIT 9** attached hereto is a true and correct copy of a 2019 email thread between Damian Todaro, Cynthia Corso and me. This email shows that Todaro held himself out as Video App, Inc. but at the same time was discussing with us both that payments I owed the joint venture to reimburse it for payments Todaro made to independent contractors was to go into a **Svothi account**. I wanted to be sure that the account was correct since it appeared to be the same Svothi account I made payments to for the Eric Videos DVD deal between my company Dark Alley Distribution and VideoApp.

42. The Eric Videos deal resulted in a lawsuit against my company and VideoApp that was defended on behalf of both of us by the Mullin P.C. firm.

43. Todaro confirmed that money DAM owes to VideoApp under the JV Agreement is actually to be paid into a Svothi bank account further evidencing Svothi's financial control and benefit from the joint venture.

44. At the end of this email conversation, **Todaro stated that he considered his five companies and 12 bank accounts to be one company and that the only one that deal with "you" (meaning DAM) is, on information and belief, SVOTHI**.

45. The reason that such confirms that Svothi was dealing with VideoApp finances is the admission that the payments I was making for the Eric Video Lawsuit are the same as I would be used to make payments under the JV Agreement. Such account was a Svothi Account, not a VideoApp account.

46. The fact that at the end of the day that Svothi bank accounts are used to deal with money due VideoApp whether by DAM or in conjunction with a lawsuit against VideoApp is further proof that Svothi was the alter ego of VideoApp.

47. **EXHIBIT 10** attached hereto is a true and correct copy of a 2020 skype communication between Todaro and me (which reads from the bottom to top) where Todaro stated, "[I']m closing down videoapp[,] not because of [E]ric [Video**], but because [N]evis is changing all their rules for corps … they now need financials and [N]evis tax returns etc … and more due diligence**."

48. Todaro also commented about his money in Belize, "half is still there … the rest I took out because cash flow was meh." During that conversation he stated he has "3 US corps already." This plan by Todaro to closing down VideoApp due to regulatory changes in Nevis, while also referencing multiple U.S. corporations further indicates the interconnected nature of these entities and the

fact that Todaro was using Caribbean countries such as Nevis and Belize as a shield.

49. **EXHIBIT 11** attached hereto is a true and correct copy of a Skype conversation I had with Todaro in regard to the lawsuit against us by Eric Videos. In that conversation Todaro states that although "we're set up in [N]evis to protect ourselves from this sh_t, and [I']m still paying lawyers, I could just drop the case.. and let [E]ric try to collect from Nevis" (*i.e.* VideoApp).

50. **EXHIBIT 12** attached hereto is a true and correct copy of a skype text between Todaro and me (read from bottom to top) in which he discusses that his Belize bank is giving him problems wanting "proof of good standing for Svothi and VIDEOAPP". These communications from Damian Todaro reveal that his Belize bank required proof of good standing for both Svothi and VideoApp, indicating that the entities were treated by his bank as interconnected for financial and compliance purposes.

51. Communications from Damian Todaro evidences his use of both "videoapp.net" and "svothi.com" email addresses interchangeably, demonstrating operational the integration and shared control between the entities. **EXHIBIT 13** attached hereto is a true and correct copy of an email between Todaro and me where he forwarded me an email he found interesting from his videoapp.net email address which he received to his svothi.com email address. In addition, such demonstrates the fluidity and lack of separation in the operations and communications of the Svothi and Videoapp.

52. Payments to independent producers for activities under the Joint Venture Agreement were issued from Svothi, as evidenced by email communications involving Cynthia Corso and Damian Todaro, further indicating Svothi's direct financial involvement in the joint venture. **EXHIBIT 14** attached hereto is a true and correct copy of an email from Cynthia Corso with Todaro and me on cc regarding payment to an independent producer who was owed money from the JV activities on RawF---Club.com **that shows that such payment was coming from Svothi**.

53. **EXHIBIT 15** attached hereto is a true and correct copy of an email between Cynthia Corso, Todaro, and me. In this conversation Todora, using emails with a Video App, Inc. signature block, directs Cynthia Corso to finalize the VideoApp and Dark Alley Distribution deal for Eric Videos DVD distribution. And she directs me to pay money due VideoApp in regard to that deal to, on information and belief**, a Svothi bank account**, evidencing the commingling of financial operations between Svothi and VideoApp.

54. According to the Complaint in the Federal Action, Svothi alleges it has operated the Site for over a decade, if that is true it is without a doubt that Svothi even now is profiting from the goodwill, branding, and reputation that DAM built over nearly two decades, while simultaneously attempting to prevent DAM from using its own long-held marks. The JV (and as memorialized in the JV Agreement) established the relationship between the company owned by me, Dark Alley Media LLC, and the contact we produced, and the hosting and exploitation of such content

by Damien Todaro companies, which, based on the allegations of the Federal Complaint included Svothi. It appears that regardless that the JV Agreement only indicated VideoApp as the party to the JV Agreement, that in fact, as admitted by the Svothi in the Federal Matter that Svothi was at least co-operating the Site and in any event was collecting the income from the Site.

55. Payments to Dark Alley Media pursuant to the JV came from Svothi throughout this relationship which establishes that somehow, whether collecting the same directly from customers of the Site or by being passed the money from VideoApp, that Svothi was directly involved in the financial operations of the JV and the JV Agreement.

56. According to the Complaint in the Federal Action, Svothi alleges it has operated the Site for over a decade, if that is true it is without a doubt that since August 2024, Svothi has actually operated the Site without compensating DAM.

57. **Affiliation Between Svothi and VideoApp:** Svothi is the agent and alter ego of VideoApp, as evidenced by, *inter alia*, their shared address, shared attorney, shared ownership, shared resources, shared conduct, hiding of funds, Svothi's pervasive domination of VideoApp, use of the same d/b/a (PPVNetworks), similar website evidencing the same control and function, and the fact that Svothi was the source and payor on checks to DAM pursuant to profit shares due DAM from the proceeds of the exploitation of DAM's videos on the websites under the JV Agreement. Despite this domination, Svothi shrouded its involvement from DAM, and was not a named party to the JV Agreement.

58. Svothi and VideoApp share the same business address, ownership by Damian Todaro, and attorney, Wesley Mullen, Esq. This overlap in corporate structure and representation demonstrates a lack of separation between the two entities, suggesting that they operate as a single economic unit.

59. Svothi issued payments to DAM under the JV Agreement, despite not being a signatory to the agreement. These payments were made pursuant to profit shares due to DAM from the proceeds of the exploitation of DAM's videos on the websites operated under the JV Agreement.

60. Further demonstrating their operational and structural overlap, Svothi and VideoApp operate under the same d/b/a, "PPVNetworks" and operates at 228 Park Avenue South, Unit 40543, New York, NY 10003. **EXHIBIT 16** attached hereto is a true and correct copy of **screenshot of the rawfuckclub.com website.**

61. Svothi and VideoApp utilize similar websites, also with addresses, 228 Park Avenue South, Unit 40543, New York, NY 10003, that evidence the same control and function. **EXHIBIT 17** attached hereto is a true and correct copy of **screenshots of Videoapp.net, Svothi.com, and PPVNetworks.com websites.**

62. Svothi's involvement in the joint venture, including (a) issuing payments to DAM and, (b) in this action asserting ownership of the JV Marks (as defined below), demonstrates its lack of independence from VideoApp, Inc.

63. Svothi and VideoApp, Inc. have failed to maintain separate corporate identities, commingling their operations and resources to the detriment of DAM.

64. Svothi's actions, including its attempt to circumvent the arbitration process and assert independent ownership of the JV Marks, further demonstrate its bad faith and alter ego relationship with VideoApp, Inc.

65. Because of Svothi's fraud/bad faith/deceit, the failure to find Svothi bound by the JV Agreement and its arbitration clause would be egregious and inequitable to DAM.

66. Due to the JV Agreement, both VideoApp and Svothi have used and continue to use DAM's JV Marks that fall within the JV Agreement. Svothi has directly and substantially benefited from the JV Agreement by reason of such use.

67. Due to the JV Agreement, Svothi has used and continues to use DAM's JV Marks to sell competing goods to many of the same consumers served by DAM. Svothi has directly and substantially benefited from the JV Agreement because of such sales.

68. As previously stated, JV Agreement memorializes the JV. None of the Dark Alley Media content would have existed on the Site without the JV and DAM's continuous involvement in the JV.

69. DAM's involvement with the Site and my involvement with the Site on behalf of Dark Alley Media would not have existed without the JV as memorialized in the JV Agreement.

70. The actions of Svothi, including fraudulent conduct described herein, have caused severe financial and reputational harm to DAM, threatening its very survival.

## CONCLUSION

71. I respectfully request that the Court consider the foregoing facts when evaluating the merits of compelling Svothi to arbitrate under JV Agreement.

72. I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 21, 2025

**Signature:** *Robert Felt*
Robert Felt (Apr 21, 2025 17:05 EDT)

**Email:** robert@darkalleymail.com