**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| SVOTHI INC., <br><br> Plaintiff, <br><br> v. <br><br> DARK ALLEY MEDIA, LLC and ROBERT FELT, <br><br> Defendants. | Civil Action No. 25 CV 00333 <br><br> **DECLARATION OF RAVI SHARMA IN SUPPORT OF MOTION FOR STAY PENDING ARBITRATION** |

**DECLARATION OF RAVI SHARMA IN SUPPORT OF MOTION FOR STAY PENDING ARBITRATION**

RAVI IVAN SHARMA, an attorney duly admitted to practice law in the Courts of the State of New York, hereby affirms as follows:

**INTRODUCTION**

1. l am an attorney duly admitted to practice law in the State of New York and am a principal with the law firm of LAW OFFICES OF RAVI IVAN SHARMA, P.C., attorneys for Defendants, Dark Alley Media, LLC (hereinafter "DAM") and Robert Felt in the above-entitled action. As such, I am fully familiar with the facts and circumstances of this matter as set forth below.

2. **EXHIBIT 1** annexed hereto is a true and correct copy of Svothi's Complaint in this Action.

3. This action asserts claims against certain trademarks that are also subject to arbitration under a joint venture agreement that Videoapp Inc.

("VideoApp") and DAM executed as of January 1, 2019 (hereinafter, "JV Agreement"). A copy of the JV Agreement is annexed Exhibit 11 (Document 12) to the Declaration of Robert Felt In Support of Order To Show Cause dated February 5, 2025).

4. I make this declaration in support of Defendant's Motion For Stay Pending Arbitration. This declaration is submitted to the Supreme Court of New York State seeking to compel arbitration based on the JV Agreement.

5. The JV Agreement contains an arbitration clause that encompasses "[a]ny and all disputes arising from or relating to this Agreement[.]" There is no dispute that VideoApp agreed to arbitrate when it contemporaneously signed the JV Agreement, or that VideoApp and DAM's trademark dispute falls within the scope of this arbitration clause.

**STATEMENT OF FACTS**

6. As noted, DAM entered into the JV Agreement with VideoApp (defined as "PPVNetworks" therein), executed as of January 1, 2019, by Damian Todaro[1] and Robert Felt. According to its terms, the JV Agreement memorialized the joint venture (or "JV") established by DAM and VideoApp under which they operated a website bearing the "RFC Marks" (which DAM established prior thereto) for the purpose of

---

[1] Mr. Todaro is the owner, operator and CEO of both VideoApp and Svothi as per Declaration of Robert Felt In Support of Order To Show Cause dated February 5, 2025 (Decl. of Felt In Supp. Order to Show Cause) Paragraph 31.

.

streaming "pay-per-view" videos produced by DAM which VideoApp would operate and administer for the profit of the JV.

7. The JV Agreement explicitly declares the RFC Marks "are owned by the JV" and sets forth the disposition of the rights to the Marks upon termination under various scenarios. For example, if the JV was terminated due to the breach of the agreement, "*DAM gains all rights to RFC Brands, Content and Domain Names…*". Alternatively, if the JV was terminated due to the breach of DAM, "*PPVNetworks may continue to use the RFC Brands, Content and Domains.*" In addition, the parties so recognized the critical need to protect the Marks that among other things the Agreement obligated VideoApp/PPVNetworks to "*immediately notify DAM*" if it perceived

any actual, suspected or threatened claim that use of the Domains and Brands infringes the rights of any third party … or … any other actual, suspected or threatened claim to which the Domains and Brands may be subject.

8. The JV Agreement also contains a mandatory arbitration clause in section 9.7:

> Any and all disputes arising from or relating to this Agreement shall be submitted to full and final resolution by binding arbitration, to be conducted in New York, New York. Arbitrator will be mutually selected by Key Members from both parties, and a lawyer with 10+ years' experience with entertainment law. Judgment on the arbitration award may be entered in any court of competent jurisdiction [hereinafter, "**arbitration clause**"]; . . .

9. The foregoing terms of the arbitration clause could not be any clearer, explicit, or unambiguous. They were not hidden in the contract and were not

inconspicuous. Moreover, the arbitration agreement stated clearly what the effect of the arbitration clause was: to wit, "full and final resolution by binding arbitration."

10. On January 16, 2025, I submitted on DAM's behalf a JAMS Demand for Arbitration, *Dark Alley Media, LLC vs. VideoApp* Inc. #5425003243, demanding payment of at least $147,000 withheld by VideoApp since at least August 2024, and a determination that the Marks and other assets are to be transferred to DAM on account of VideoApp's uncured breach of the Joint Venture. **See EXHIBIT 2** hereto.

11. DAM initiated the JAMS arbitration after over five months of acrimony ending in December 2024 between Mr. Todaro and Mr. Felt on behalf of VideoApp and DAM, respectively, over non-payment of DAM by VideoApp (and Svothi), and at least four letters between Svothi's counsel, Mr. Mullen, and I, consisting of competing notifications, demands, and declarations of termination of the JV under the terms of the JV Agreement.

12. Despite the existence of the valid arbitration clause in the JV Agreement, on February 5, 2025, VideoApp filed the present Article 75 proceeding, seeking to stay arbitration.

13. In this action Svothi asserts Lanham Act claims against Defendants DAM and Robert Felt over certain common-law trademarks (the "**RFC Marks**") that Svothi alleges it owns based on its claim that it has operated adult websites under such marks since 2010. These are among the same marks covered by the JV Agreement.

14. By letters dated January 31, 2025, attached hereto as **EXHIBIT 3**, I requested a *pre-motion* conference in this action on behalf of Defendants (DAM and Mr. Felt), to discuss an anticipated motion seeking to (i) stay this matter pending arbitration, and (ii) possibly implead VideoApp. As further detailed below and in the accompanying Declaration of Robert Felt, VideoApp is a company dominated by Svothi and by Svothi's principal, Damian Todaro.

15. VideoApp in fact has not been joined into this matter, and DAM has no intention of doing so unless for some reason it is blocked from doing so via VideoApp's Article 75 proceeding pending in New York Supreme Court (Mullen Declaration in Opposition to Order to Show Cause Exhibit D (Decl of Mullen - Exhibit D); which DAM is both vigorously defending and has cross-moved to compel the arbitration of the JV Agreement by VideoApp.

16. I requested the pre-motion conference as a *precautionary* measure to avoid any possible waiver of arbitration rights. This and all other actions I have taken on behalf of DAM and Mr. Felt were done to preserve and protect their right to arbitration under the JV Agreement without compromising their defense.

17. This Court held the requested hearing conference on February 19, 2025. At the hearing, VideoApp/Svothi's counsel, Mr. Mullen demonstrated that their objection to application of the arbitration clause is, at best, disingenuous:

> THE COURT: . . . **What is the plaintiff's position regarding plaintiff's use of the mark related to Videoapp's use of the mark? Is your position that plaintiff owns the mark and has licensed the mark to Videoapp or something else**?

> MR. MULLEN: I don't know of any, **I don't know that the plaintiff has licensed the mark to Videoapp.** No, I don't believe we're taking that position.
> THE COURT: So then how did Videoapp get to use the mark? If plaintiff is the -- MR. MULLEN: **I don't know** -- (interposing)
> THE COURT: If your position is that plaintiff was the sole owner of the mark **and that Videoapp is separate and distinct from plaintiff, by what mechanism does Videoapp have a right to use the mark, if any**?
> MR. MULLEN: I don't know that Videoapp has a right to use the mark, Your Honor. I don't think there's evidence in the record of, and certainly none that plaintiff has advanced that Videoapp has the right to use the mark.
> THE COURT: And you said that there's an individual in common between the plaintiff and Videoapp?
> MR. MULLEN: **That's right**, Your Honor. It is the –
> THE COURT: -- that individual -- (interposing) MR. MULLEN: -- alleged –
> THE COURT: The alleged, go ahead.
> MR. MULLEN: Forgive me, Your Honor, please continue. The alleged or the threatened third-party defendant, **Mr. Todaro, who has an ownership stake in both Videoapp and the plaintiff Svothi**
> THE COURT: So is it your position that Mr. Todaro, if Mr. Todaro entered into a joint venture with the defendant on behalf of Videoapp, that that joint venture was invalid because he never had a right to use the mark in connection with Videoapp?
>
> MR. MULLEN: **No, that's not our position**, Your Honor.
>
> THE COURT: So what is your position on that?
>
> MR. **MULLEN: I don't know that I have a position on that, Your Honor, it's that Svothi, Inc. has a position on whether Videoapp's entry into the joint venture agreement was valid or invalid, I don't have a position on that.**

Feb. 19, 2025 Hearing Tr., pp. 13-15 (emphasis added). **EXHIBIT 4** annexed hereto are true and correct excerpts from the February 19, 2025 hearing transcript before the Court.

18.     In VideoApp's Memorandum of Law in Support of Petition to Stay Arbitration ("MOL") (Mullen Declaration in Opposition to Order to Show Cause Exhibit D (Decl. of Mullen - Exhibit D), VideoApp makes the following waiver and arguments against DAM:

> Dark Alley waived any right it might have had to arbitration by waging a highly public, multi-forum litigation campaign against VideoApp in the state and federal courts. Like its JAMS Demand, Dark Alley's state and federal claims all seek damages under the Joint Venture Agreement. The federal ones seek rescission of the Joint Venture Agreement. Dark Alley's arbitration must be stayed because "[b]y commencing an action at law involving arbitrable issues, [Dark Alley] waived whatever right [it] had to arbitration." In contrast to its confidential arbitration papers, Dark Alley does not confine its public pleadings to dry contractual matters. Instead it gratuitously alleges fraud, illegal drug use, conspiracy, underage sexual misconduct, and animal abuse — not only against VideoApp, but also against its owner and his family members. On social media, Dark Alley's principal Mr. Robert Felt — a popular performer known professionally as Owen Hawk — flogs Dark Alley's litigation maneuvers, and their scandalous allegations, to eager fans of his adult film persona.

MOL, at 4-5.

19.     Petitioner's foregoing waiver and "gratuitous[]" argument and assessment is flawed, misguided, and completely wrong for multiple reasons. First, as noted above, on January 13, 2025, Svothi filed this action asserting claims against the JV Marks that are also subject to mandatory arbitration under the JV Agreement's arbitration clause.  In this action, DAM pled arbitration as an affirmative defense in its Answer and Amended Answer to the Complaint herein, **to preserve DAM's right to arbitration**.

20.     Critically, DAM filed its Answer and Amended Answer purely to preserve its Counterclaims against Svothi and protect the substantial goodwill that

it has developed over approximately 17 years in its distinctive word mark and logo alleged in the Complaint and Counterclaim herein and via a motion for preliminary injunction. Accordingly, DAM's Answer in this matter did not waive DAM's right to arbitrate under the JV Agreement.

21.     Moreover, whatever actions DAM maintain in this matter, according to VideoApp's position in the Article 75 petition, only against Svothi.  That is, VideoApp (disingenuously) insisted that Svothi is not its alter ego or otherwise liable for VideoApp's conduct. If that were so, then DAM's defense in this matter *cannot* be deemed a waiver of DAM's arbitration rights against **VideoApp**.  **VideoApp and Svothi are attempting to have it both ways**.  But that is precisely what VideoApp attempted to do by claiming there was waiver based on DAM's (purely defensive) pleading in this action.

22.     VideoApp (in the Article 75 proceeding) and Svothi (in its Oppostion to the Order to Show Cause in this matter) also contends that DAM is not entitled to arbitrate because it filed a New York State Supreme Court action against VideoApp that is based on matters subject to arbitration.  This claim is specious. DAM's state court action addresses tortious interference arising from conduct that occurred after the termination of the JV Agreements and defamatory statements, both of which, in any event, **are not** related to the JV Agreement. None of the claims alleged in the state action are related to the ownership of Marks or the business relationship covered by the JV Agreement.  Courts have consistently held that litigation involving non-arbitrable claims or third parties does not constitute a waiver of arbitration.

*E.g., Enron Power Mktg. v. Pub. Util. Dist. No. 1 (In re Enron Corp.),* 364 B.R. 489 (Bankr. S.D.N.Y. 2007).

23. VideoApp and Svothi also contend that Dark Alley's public promotion of its own image in social media and in the press somehow waives Dark Alley's right to arbitration. VideoApp and Svothi are both wrong as Defendants have pointed out before to this Court ([Reply Letter to Court](#)). Rules 26 and 21 of JAMS Comprehensive Arbitration Rules and JAMS Streamlined Arbitration Rules respectively, state, "JAMS and the Arbitrator shall maintain the confidential nature of the Arbitration proceeding and the Award, including the Hearing…." and "The Arbitrator may issue orders to protect the confidentiality of proprietary information, trade secrets or other sensitive information." There are **_no_** confidentiality agreements or orders prohibiting Mr. Felt from speaking about the facts of the case. Public statements about ongoing litigation or arbitration are not inherently inconsistent with arbitration. *See Moton v. Maplebear Inc.*, 2016 U.S. Dist. LEXIS 17643, *25 (S.D.N.Y. Feb. 9, 2016). Neither is there any evidence of prejudice to VideoApp or Svothi. *Brownstone Inv. Group, LLC v. Levey*, 514 F. Supp. 2d 536 (S.D.N.Y. 2007).

24. Curiously, Svothi (and VideoApp) also objects to the notion that Svothi is liable for the wrongs VideoApp committed. However, **_Svothi_** has not disputed that it is closely related to VideoApp, nor has it denied that the same trademarks Svothi claims were used by the joint venture between DAM and VideoApp.

25. Svothi's claims in this action rest solely on its alleged use of these same trademarks beginning in 2010. This is extremely significant inasmuch as (i) the JV

Agreement explicitly governs the ownership and use of these trademarks, and (ii) Svothi has an incestuous and domineering relationship with VideoApp. These facts and circumstances strongly support the determination that Svothi, although a nonsignatory to the JV Agreement, is nevertheless bound by its arbitration clause as the alter ego or agent of VideoApp, or because Svothi directly benefited from the JV Agreement.

26. The accompanying declaration of Robert Felt documents that Svothi pervasively dominates VideoApp, and that the two entities have, *inter alia*, a shared address, shared attorney, shared ownership, shared resources, shared conduct, shared hiding of funds, the same d/b/a ("PPVNetworks"), similar websites evidencing the same control and function, and that *Svothi* was the source and payor on checks to DAM pursuant to profit shares due DAM *from VideoApp* for the proceeds of the exploitation of DAM's videos on the websites under the JV Agreement. Mr. Felt further avers that Svothi has directly benefited from the JV Agreement by reason of its use of DAM's JV Marks.

## CONCLUSION

27. Neither DAM nor Robert Felt has done nothing from which a waiver of arbitration in this case can be found, imputed or implied against DAM.

28. Although Svothi did not sign the JV Agreement, it is bound by the arbitration clause because of its close and dominant relationship with VideoApp, or because it directly benefited from the Agreement, or for both reasons.

29. I affirm this 21st day of April 2025, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

/s/
_____
RAVI IVAN SHARMA