EXHIBIT 4

```
                   UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF NEW YORK

                                      : Docket #25cv0333
 SVOTHI, INC.,
                                      :
                  Plaintiff,
                                      :
   - against -
                                      :
 DARK ALLEY MEDIA LLC, et al.,          New York, New York
                                      : February 19, 2025
                   Defendants.
 ------------------------------------ :


                       PROCEEDINGS BEFORE
                THE HONORABLE ANDREW L. CARTER,
                UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For Plaintiff:           MULLEN P.C.
                         BY:  MARTIN ARMS, ESQ.
                         745 Fifth Avenue, Suite 500
                         New York, New York 10151

For Defendants:          SHARMALAW - RAVI IVAN SHARMA, P.C.
                         BY:  RAVI IVAN SHARMA, ESQ.
                         26 Broadway, 26th Floor
                         New York, New York 10004
```

Transcription Service:   Carole Ludwig, *Transcription Services*
                         155 East Fourth Street #3C
                         New York, New York 10009
                         Email:   Transcription420@aol.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

<u>**INDEX**</u>

<u>**E X A M I N A T I O N S**</u>

| <u>**Witness**</u> | <u>**Direct**</u> | <u>**Cross**</u> | <u>**Re-Direct**</u> | <u>**Re-Cross**</u> |
|---|---|---|---|---|
| None | | | | |

<u>**E X H I B I T S**</u>

| <u>**Exhibit Number**</u> | <u>**Description**</u> | <u>**ID**</u> | <u>**In**</u> | <u>**Voir Dire**</u> |
|---|---|---|---|---|
| None | | | | |

```
 1                     PROCEEDINGS              3

 2          THE CLERK:  Good afternoon.  This is Tara,

 3  Judge Carter's deputy.  Who just joined the call please?

 4          MR. MARTIN ARMS:  This is Martin Arms from

 5  Mullen P.C.

 6          THE CLERK:  Thank you, Mr. Arms.  Counsel,

 7  today's proceeding is being recorded, so I ask that each

 8  time when you address the Court, please state your name

 9  prior to speaking, and when you're not addressing the

10  Court, to please place your phone on mute.  Thank you.

11          (indiscernible) for a telephone order to show

12  cause hearing for a preliminary injunction and for a

13  premotion conference in case number 25cv333, Svothi,

14  Inc. v. Dark Alley, et al.  Counsel, please state your

15  appearances for the plaintiff.

16          MR. WESLEY MULLEN:  Good afternoon, this is

17  Wesley Mullen for the plaintiff Svothi, Inc., and with

18  me on the line today is my partner Martin Arms.

19          THE CLERK:  And for the defendant.

20          MR. RAVI IVAN SHARMA:  Ravi Ivan Sharma, 26

21  Broadway, New York, New York, for defendants, both of

22  them.

23          THE CLERK:  Thank you.

24          THE COURT:  Hi, good afternoon.  We're here

25  today for a hearing in conjunction with counterclaim-
```

1                           PROCEEDINGS                    4

2    plaintiff's application for a preliminary injunction as

3    well as a premotion conference ahead of the defendants'

4    anticipated motion to stay the case pending arbitration

5    and to implead and enjoin third parties.  I'll address

6    both matters in turn.  I've reviewed the parties'

7    submissions.  I want to address a few issues first.

8              Regarding ownership of the mark, it seems that

9    it's very clear it's undisputed that this mark is not

10   registered.  Is that correct, counsel for plaintiff?

11             MR. MULLEN:  This is Mr. Mullen for the

12   plaintiff.  That's correct, Your Honor.

13             THE COURT:  Is that correct, counsel for

14   defendant?

15             MR. SHARMA:  This is Ravi Sharma for defendant.

16   That is correct.

17             THE COURT:  All right, my understanding is that

18   from the submissions that the plaintiff claims that it

19   is the owner of the mark and has been using the mark

20   since about 2010.  Is that correct, counsel for

21   plaintiff?

22             MR. MULLEN:  Yes, Your Honor, for the

23   plaintiff, yes.

24             THE COURT:  And for the defendant, defendant

25   claims that it is the owner of the mark and has been

```
 1                          PROCEEDINGS                 5

 2   using the mark since 2007, is that correct?

 3            MR. SHARMA:  Ravi Sharma for defendant, yes,

 4   that is correct, Your Honor.

 5            THE COURT:  Now, let me ask a few more

 6   questions then.  Defendant, is it correct that you have

 7   known about plaintiff's use of the mark since on or

 8   around 2010?

 9            MR. SHARMA:  I would say that isn't necessarily

10   correct.  The defendant has known --

11            THE COURT:  Okay, how long has defendant known

12   about - okay, go ahead.

13            MR. SHARMA:  Well, the defendant has known

14   since 2010 that an affiliate company of plaintiff was

15   using the mark to exploit videos that defendants and the

16   other entity joined together to exploit.  Based on the

17   complaint, it appears that plaintiff has claimed that it

18   was the owner-operator of those websites since 2010 not

19   its affiliate.  My client always believed that it was

20   the affiliate that operated and owned those websites

21   because that is exactly what the affiliate and my client

22   agreed to in their joint venture agreement.

23            If Svothi, the plaintiff, was operating the

24   site or, and because they're co-owned by the same

25   individual, at best it would've been under a license.
```

```
 1                        PROCEEDINGS              6
 2   But as to when the actual knowledge that Svothi was
 3   operating the site, that's what they alleged in the
 4   complaint.  Frankly, that was probably the first that
 5   that was asserted to my client's actual knowledge.
 6            THE COURT:  Well, when did the defendant know
 7   that the plaintiff here was using the mark?
 8            MR. SHARMA:  Well, when the plaintiff alleged
 9   in the complaint that it was using the RFC mark, that's
10   when it came to the attention that it was plaintiff that
11   was using the RFC marks as opposed to the other company,
12   Videoapp.  After the breakdown of the Videoapp and my
13   client's joint venture agreement in December of 2024, my
14   client was getting ready to seek action against Videoapp
15   for continuing to utilize the marks on the website
16   despite demands to take such marks down.  And then
17   Svothi, the plaintiff here, filed this lawsuit alleging
18   that Mr. Felt and, therefore, also Dark Alley Media was
19   using a subset of those marks which it alleges is called
20   the RFC marks, and here we are.
21            So if Svothi's using them, they need to stop,
22   and also Videoapp, the joint company also needs to stop.
23            THE COURT:  But from defendants' perspective is
24   there any distinction that makes a difference between
25   the plaintiff and the affiliate of plaintiff in terms of
```

```
 1                      PROCEEDINGS                    7
 2   the relief that the defendant is seeking?
 3            MR. SHARMA:  No because if plaintiff was using
 4   the mark because it was the actual operator of the
 5   website from whatever period, we have evidence that
 6   showed that it added its name to the website in 2023,
 7   yet at the same time said it was licensing materials
 8   from Videoapp which is the sister company that we're
 9   talking about.  All of that was done pursuant to a
10   license from Videoapp which was pursuant to the license
11   terms of the joint venture agreement which said that as
12   long as the joint venture was in place, the joint
13   venture would own these marks and that after termination
14   those marks would go to either one of the two parties,
15   depending on how the termination actually occurred.
16            So the answer is the same relief would be
17   asserted against Videoapp as it is against Svothi which
18   is that neither of these companies should be using the
19   marks.
20            THE COURT:  But certainly then the defendant is
21   aware that Videoapp was using the mark since around
22   2010.
23            MR. SHARMA:  One hundred percent.  The joint
24   venture was using the mark, and my client and Mr. Felt
25   and the owner of Videoapp and plaintiff here, Mr.
```

```
 1                        PROCEEDINGS                 8
 2   Todaro, worked closely together with the joint venture.
 3   The 2019 joint venture written agreement by its own
 4   terms memorializes the joint venture that started back
 5   around 2010.  So absolutely the answer is yes, but only
 6   under and pursuant to the joint venture agreement.
 7            THE COURT:  So from defendants' perspective,
 8   the claim that you are the exclusive owner of the mark
 9   is tethered to your argument that the plaintiff breached
10   the joint venture agreement.  Is that correct?
11            MR. SHARMA:  Not exactly.  If the plaintiff, we
12   believe the plaintiff is the alter ego of its sister
13   company Videoapp.  If they are, indeed, alter egos of
14   each other, then, yes, plaintiff along with Videoapp
15   reached the agreement.  But even if they are not alter
16   egos, if plaintiff's sole use of the mark was under
17   license from its sister company Videoapp which was in a
18   joint venture agreement with my client, then our
19   argument would be that Videoapp ceased having any rights
20   to utilize the mark following the termination of a joint
21   venture agreement on December 4 of 2024 and that,
22   therefore, any license that plaintiff might have from
23   its sister company Videoapp can be no more because
24   Videoapp has no more mark to license with.
25            THE COURT:  Okay, I think that it seems to me
```

```
 1                    PROCEEDINGS                    9
 2  to be the same thing.  I think your position is that the
 3  joint venture agreement was such that whoever breaches
 4  the agreement loses the mark.  The person who breached
 5  the agreement loses the mark, and the other person then
 6  owns the mark.  Is that correct?
 7        MR. SHARMA:  It's slightly, that is close to
 8  fully correct.  It's a little bit more nuanced than
 9  that.  The remedies for who, for what happens to the
10  marks depending on who breaches are slightly different.
11  In the case of - well, and I'll just back up just one
12  second.  The joint venture agreement essentially has my
13  client creating the content and the Videoapp, Mr.
14  Todaro's company, publishing it and monetizing it and
15  splitting the proceeds.  So what happens is, if
16  Videoapp, Mr. Todaro's companies breach, then all the
17  marks are deemed to go to my client.  On the other hand,
18  if my client is the one that breaches, what it says is
19  that both parties get to continue using the marks, but
20  Videoapp could actually start making its own content
21  using the mark as well.  And, of course, it retains its
22  website, etc.
23        So pretty much both parties get to go away with
24  what they brought, but in the case of my client's
25  breach, if that were true, then my client still could
```

PROCEEDINGS                10

1
2  use the marks but Videoapp could go ahead and keep the
3  site and create its own content and apply those marks to
4  its content.  So it's slightly different.
5          THE COURT:  Okay, but would it be fair to say
6  that under the defendant's theory, if defendant breached
7  the joint venture agreement, the defendant wouldn't have
8  any right to try to prevent Videoapp from using the
9  mark?  Is that correct?
10         MR. SHARMA:  On its own websites and with
11 content shown on its websites, that's correct.  I don't
12 believe the agreement allows, would allow Videoapp to
13 create content and how them or sell them elsewhere.  But
14 so for those specific things, using the marks on its
15 website, creating content and selling it on its website,
16 the answer would be correct, my client would not have a
17 right to say you can't do that because the joint venture
18 agreement says that it can.
19         THE COURT:  Okay.  Let me then hear from
20 plaintiff.  What is plaintiff's position as to the
21 relevance as to any of the joint venture agreement with
22 plaintiff's claim to ownership of the mark?
23         MR. MULLEN:  We don't have a claim that the
24 joint venture agreement is relevant to the plaintiff's
25 ownership of the mark.  Svothi's use both predates the

1                          PROCEEDINGS                11

2   joint venture agreement by nearly nine years and is

3   independent of that joint venture agreement.  So as to

4   the plaintiff's affirmative claims which are not being

5   advanced on the defendant's motion for a preliminary

6   injunction in support of its counterclaims, I think the

7   answer is none.

8           As for the plaintiff's position on the joint

9   venture agreement as it relates to the defendant's

10  injunction motion, Your Honor, our position is that it's

11  not before the Court because the defendant has

12  threatened to, but has not, impleaded Videoapp who is

13  the allegedly counterparty under that joint venture

14  agreement.

15          And so if I can summarize what I think I heard

16  opposing counsel describe as a vigorous dispute between

17  Dark Alley Media, the defendant, and the non-party

18  Videoapp over who may have breached the joint venture

19  agreement and what the respective parties' rights are

20  under that joint venture agreement, it's just not

21  briefed and joined because the other party under that

22  agreement is not a party to the motion that's been

23  brought.

24          THE COURT:  Okay.  What is plaintiff's position

25  on the relationship between plaintiff and Videoapp?

```
1                        PROCEEDINGS              12

2              MR. MULLEN:  So these entities have common

3    ownership.  We do not deny that Mr. Todaro is a

4    shareholder in each of those two entities.  But we

5    vigorously dispute the defendants' assertion that they

6    are alter egos, and for the reasons that we set out in

7    our papers, we think the defendants fall far short of

8    proving, let alone to the clear standard required for

9    this mandatory injunction, that assigning of alter ego

10   status is appropriate.

11             THE COURT:  Okay.  Let me ask plaintiffs this,

12   what is your position regarding the relationship of

13   plaintiffs and Videoapp as it pertains to the joint

14   venture agreement?

15             MR. MULLEN:  So the plaintiff Svothi, Inc. is

16   not a party to the joint venture agreement.  Am I

17   understanding the Court's question correctly?  Is that

18   responsive?

19             THE COURT:  No, that's not my question.  My

20   question is the defendants put forth the position that

21   Videoapp signs this joint venture agreement and that

22   plaintiff is claiming perhaps additional rights to the

23   mark as a result of this agreement, and I'm trying to

24   make sure that is your position or if your position is

25   that the joint venture agreement has nothing to do with
```

1                          PROCEEDINGS                13

2   plaintiff's rights or defendants' rights to use the

3   mark?

4          MR. MULLEN:  I'm sorry, so I can certainly

5   speak for the plaintiff Svothi, Inc. here, Your Honor,

6   and I can say that the joint venture agreement doesn't

7   underpin and is not a condition to our rights to use the

8   mark, marks.  Again, Svothi has been exploiting these

9   marks, including via the website, since at least 2010,

10  and the joint venture agreement that we're talking about

11  was signed in 2019.

12         As to whether the joint venture agreement

13  affects the defendants' right to use the marks, I'm not

14  sure that the plaintiff has a position on that, at least

15  one that I can articulate now, but forgive me if I'm

16  misunderstanding the Court's question.

17         THE COURT:  No, that is my question.  What is

18  the plaintiff's position regarding plaintiff's use of

19  the mark related to Videoapp's use of the mark?  Is your

20  position that plaintiff owns the mark and has licensed

21  the mark to Videoapp or something else?

22         MR. MULLEN:  I don't know of any, I don't know

23  that the plaintiff has licensed the mark to Videoapp.

24  No, I don't believe we're taking that position.

25         THE COURT:  So then how did Videoapp get to use

```
 1                         PROCEEDINGS                14
 2   the mark?  If plaintiff is the --
 3             MR. MULLEN:  I don't know --
 4             (interposing)
 5             THE COURT:  If your position is that plaintiff
 6   was the sole owner of the mark and that Videoapp is
 7   separate and distinct from plaintiff, by what mechanism
 8   does Videoapp have a right to use the mark, if any?
 9             MR. MULLEN:  I don't know that Videoapp has a
10   right to use the mark, Your Honor.  I don't think
11   there's evidence in the record of, and certainly none
12   that plaintiff has advanced that Videoapp has the right
13   to use the mark.
14             THE COURT:  And you said that there's an
15   individual in common between the plaintiff and Videoapp?
16             MR. MULLEN:  That's right, Your Honor.  It is
17   the --
18             THE COURT:  -- that individual --
19             (interposing)
20             MR. MULLEN:  -- alleged --
21             THE COURT:  The alleged, go ahead.
22             MR. MULLEN:  Forgive me, Your Honor, please
23   continue.  The alleged or the threatened third-party
24   defendant, Mr. Todaro, who has an ownership stake in
25   both Videoapp and the plaintiff Svothi.
```

```
 1  |              PROCEEDINGS            15
 2  |         THE COURT:  So is it your position that Mr.
 3  | Todaro, if Mr. Todaro entered into a joint venture with
 4  | the defendant on behalf of Videoapp, that that joint
 5  | venture was invalid because he never had a right to use
 6  | the mark in connection with Videoapp?
 7  |         MR. MULLEN:  No, that's not our position, Your
 8  | Honor.
 9  |         THE COURT:  So what is your position on that?
10  |         MR. MULLEN:  I don't know that I have a
11  | position on that, Your Honor, it's that Svothi, Inc. has
12  | a position on whether Videoapp's entry into the joint
13  | venture agreement was valid or invalid, I don't have a
14  | position on that.
15  |         THE COURT:  Okay, let me ask a few more
16  | questions then.  Let's me ask, back to the defendant, in
17  | a typical injunction case, the parties seeking an
18  | injunction must show irreparable harm, either a
19  | likelihood of success on the merits, or both serious
20  | questions on the merits and a balance of hardship
21  | decidedly favoring the moving party, that a preliminary
22  | injunction is in the public interest, but where an
23  | injunction would alter the status quo, the standard is
24  | heightened.  The party seeking an injunction must show a
25  | strong showing of irreparable harm and a clear
```

```
1                        PROCEEDINGS              16
2   likelihood of success on the merits.  This seems to me
3   that your injunctive relief that you are seeking would
4   alter the status quo.  Do you agree with that?
5   Defendant.
6              MR. SHARMA:  I don't.  The reason I don't is
7   that we disagree with the plaintiff's assertion as to
8   what the status quo is.  The plaintiff asserts the
9   status quo is that plaintiff has been using and owning
10  this mark since 2010 and exploiting it since then, and
11  that is the status quo that would be upset.  Our
12  position is that the status quo is that plaintiff has
13  been, if plaintiff has been using this mark since 2010
14  but in any event up until now from some point, the only
15  status quo that they were using this mark as the
16  licensee of Videoapp pursuant to the joint venture
17  agreement, which just terminated about, just over at
18  this point 60 days ago.  So that was the status quo that
19  there was a license agreement, that license agreement is
20  over, and that moment just prior to December 4 of 2024
21  was the status quo, and that's, we'd like to go back to
22  that contract, but that contract obviously is over, and
23  the marks now need to go elsewhere.  So we disagree that
24  the status quo is ten years or fifteen years of use by
25  the, unfettered use by the plaintiff but at most
```

1                            PROCEEDINGS                    17

2     licensed use.

3            THE COURT:  When was the joint venture

4     agreement terminated, to use your terminology?

5            MR. SHARMA:  Yes, the joint venture agreement

6     was terminated pursuant or by a letter from me on

7     December 4 to Mr. Mullen who represented Videoapp which

8     is the other company that we're discussing.  Videoapp

9     had in August had stopped paying its payments to my

10    client pursuant to the joint venture agreement.  My

11    client made demand of such more than 30 days prior to

12    the termination and provided, as per the joint venture

13    agreement provided Videoapp the opportunity to pay the

14    monies owed pursuant to their use of the exploitation of

15    the marks on the website that we're all discussing right

16    now in July and August when the payments stopped.  When

17    those payments were not received, I sent a letter

18    terminating the agreement, as per the terms of the

19    agreement, you know, how to do it, etc.  And that's what

20    terminated the agreement.

21           THE COURT:  And if the agreement is, in fact,

22    terminated, it does seem from our discussion before,

23    that one critical factor is going to be who potentially

24    was at fault for potentially breaching that agreement.

25    And I'm sure the parties have different views.  Is that

```
 1                            PROCEEDINGS              18

 2    correct, defense counsel?

 3           MR. SHARMA:  That is absolutely correct.  The

 4    parties obviously, Videoapp, Mr. Mullen is not going to

 5    speak for Videoapp today I don't think.  Maybe he will,

 6    who knows.  But there were competing letters between

 7    myself and Mr. Mullen, and we believe that at an

 8    arbitration, which is also part of the, or any

 9    adjudication, whether it's arbitration or not, to just

10    construe what happened with the joint venture, that we

11    would prevail and that it would be, being that it was

12    Videoapp itself that had breached without cure and not

13    our client, my client.

14           THE COURT:  And up to today, there has been no

15    determination by a court, an arbitrator, or a settlement

16    between the party as to who breached the agreement, is

17    that correct?

18           MR. SHARMA:  That is correct.  We did file and

19    seek arbitration before JAMS below.  That has been

20    vigorously tried, opposed by Videoapp.  Videoapp has

21    filed an Article 78 proceeding saying that by mentioning

22    them here, we shouldn't be able to arbitrate, and they

23    sent a letter to that effect, to the JAMS representative

24    who rightly so said, well, unless both parties agree, we

25    can't do anything.  Because, unfortunately this
```

```
1                          PROCEEDINGS                    19

2    arbitration, the arbitration provision didn't specify

3    which specific company, or fora that the arbitration

4    should take place in, whether it should be JAMS or the

5    American Arbitration Association.

6            So that is correct, we are trying, but that's

7    what we should do, we mentioned that to this Court in

8    the first instance when we answered the complaint that

9    we believe that this matter and most of this matter

10   should be arbitrated and that we probably should bring

11   in the other parties but still only to preserve the

12   issues and then get it down to arbitration.  If we can't

13   go to arbitration, then maybe it should all be here,

14   but, yes, my clients want to litigate that because they

15   want those marks back, and those marks now apparently

16   are being held by Svothi.  In fact, they are because

17   that's what Svothi says in its complaint here.

18           THE COURT:  So in December when the agreement

19   was terminated up till now, there has been no

20   determination by anyone as to who breached the

21   agreement, from December until now, it's the defendants'

22   position, and I think it's the plaintiff's position,

23   that the plaintiff has continued to use those marks.

24   Correct, defense counsel?

25           MR. SHARMA:  Yes, correct.
```

```
  1                     PROCEEDINGS              20
  2            THE COURT:  Why isn't that the status quo?
  3            MR. SHARMA:  Now between December, oh, between
  4   December '24, between December 4 and now?  Well --
  5            THE COURT:  Yeah.
  6            MR. SHARMA:  -- that 65, 70 day is the status
  7   quo as of this moment.  That is --
  8            THE COURT:  And in terms of the status quo
  9   being that the plaintiff has been using the mark, that
 10   has also been true in addition to that period from
 11   December until now.  That has also been true since 2010.
 12   Correct?
 13            MR. SHARMA:  As I said, the plaintiff using the
 14   marks, if they were in 2010, like I said, we don't know
 15   that it was Svothi using the mark.  Svothi's name did
 16   not appear onto the websites until sometime in 2023.  So
 17   we can go back that far because we found evidence of
 18   that and prevented that in the reply affirmation, I'm
 19   sorry, declaration of my client, Mr. Felt.  But back to
 20   2010 it was our understanding that it was Videoapp that
 21   was utilizing it pursuant to the joint venture
 22   agreement.
 23            THE COURT:  Okay.  Thank you.  I'm going to
 24   deny the request for preliminary injunction.  I do find
 25   that this is the status quo right now that you are
```

```
 1                      PROCEEDINGS              21

 2   seeking a mandatory injunction.  Also, issuing such

 3   injunctive relief would require a determination as to

 4   who owns the mark, the unregistered mark, and perhaps a

 5   determination as to who breached the joint venture

 6   agreement, and those are issues that are ripe for some

 7   sort of discovery for the litigation.  A preliminary

 8   injunction is an extraordinary remedy, and I will not

 9   impose that.

10          Let's move on to the other issues raised by the

11   defendant.  You were seeking a stay pending arbitration.

12   We received some filings from the plaintiff saying that

13   arbitration has been delayed and/or cancelled.  Let me

14   hear from defendant on this.

15          MR. SHARMA:  Yes.  So we filed our answer which

16   included counterclaims which names, at least alleged in

17   the allegations, obviously Videoapp and Mr. Todaro and

18   others.  And my motion was to, first, firstly to add

19   those parties to the complaint but at the same time with

20   the understanding that, and this is why I mentioned in

21   the footnote of our answer, that we're adding these

22   people and these parties and bringing these claims to

23   preserve them, but we fully understand that there's a

24   contract between Videoapp and my client that calls for

25   arbitration.  And we're not trying to fight that, but
```

1                          PROCEEDINGS                 22

2    we're here, we're being pulled into federal court.  And

3    so I want to simultaneously bring them in but at the

4    same time agree that it should be (indiscernible).  And

5    I think at this point, given that plaintiff has tried to

6    derail the arbitration, isn't leaning in, it's actually

7    doing everything possible to avoid it, it doesn't appear

8    that it wants to arbitrate, but it certainly doesn't

9    seem to be interested, and I said plaintiffs, well,

10   plaintiff, Videoapp, Mr. Todaro, doesn't seem to want to

11   deal with the joint venture agreement at all.  It wants

12   to basically have Svothi, the plaintiff here, hold onto

13   evidence and sidestep and go around that arbitration,

14   that joint venture agreement.

15           So my motion to add would remain, to allow us

16   to amend the cross-complaint or the counterclaims to add

17   their names as counter-defendants stands, but in terms

18   of the motion to stay pending arbitration, I think

19   probably it should be a motion to compel arbitration at

20   this point.  Mr. Mullen has brought an Article 78 in

21   regard to that arbitration in New York State Supreme,

22   and I expect that I'll be counterclaiming to compel

23   arbitration as opposed to just defending against the

24   arbitration.

25           So that's what I think is going on here, and we

```
 1                        PROCEEDINGS              23
 2   want to be sure that everybody gets their day in court,
 3   we prefer arbitration, but it could be right here before
 4   Your Honor if that's the way it has to be.  But you're
 5   right, these things need to get decided, and it is a
 6   complicated case given plaintiff's strange position.
 7            THE COURT:  All right, let me hear from
 8   defendant on your desire to implead the third party
 9   under Rule 13.  Let me hear from you.  I think I have a
10   sense of your position on that.  I guess let me hear
11   from plaintiff.  Does plaintiff plan to oppose such a
12   motion?
13            MR. MULLEN:  Well, Judge, I confess I don't
14   know if we're in the 14-day window when the plaintiff
15   can do it without leave.  I'm not inclined to consent to
16   something I haven't seen yet, and I don't know what
17   claims are being threatened, but in principle, no, we'd
18   like to go ahead and get everybody in one court, this
19   court is an excellent one, and get these issues
20   resolved.  So subject to what my clients may say after
21   seeing a draft third-party complaint, I don't think we
22   would oppose a motion to implead.
23            THE COURT:  Okay.  And let me hear from
24   plaintiff on this motion for a stay pending arbitration.
25            MR. MULLEN:  Sure.  So just to put the timeline
```

1                            PROCEEDINGS                24

2   in context, my client filed this complaint in January.

3   Three days later the defendants noticed an arbitration

4   against the non-party Videoapp, and then they carried

5   that notice or the demand for arbitration back to this

6   Court saying that my client Svothi's claims couldn't go

7   ahead because the defendant has initiated an arbitration

8   against an entity that it claims is an alter ego.  Now,

9   it hasn't proven that alter ego theory in this Court or

10  in arbitration, and, of course, as the Court has seen,

11  JAMS has told us now that it won't go forward with an

12  arbitration because there's no agreement between the

13  defendant and the non-party to arbitration before JAMS.

14          So my client's position, strictly speaking, is

15  that we would oppose the defendants' anticipated motion

16  to stay the case in favor of an arbitration that is not

17  proceeding and likely will not any time soon given that

18  there's no arbitration pending and there's also

19  Videoapp's petition to permanently stay any arbitration

20  that the defendant might assert against it.

21          THE COURT:  Okay.  Let me ask this question.

22  Have there been any settlement discussions between the

23  party and if not why not?  Let me hear from plaintiff

24  first.

25          MR. MULLEN:  There have been, Your Honor, and

1                             PROCEEDINGS                    25

2   without getting into the substance, I think Mr. Sharma

3   and I have been a little busy this past week dealing

4   with these motion papers, but stepping out of my role as

5   an advocate and into my role as an experienced

6   litigator, I hope they will continue.

7          THE COURT:  Without getting into detail, can

8   you give me a sense, well, without getting numbers, was

9   there a demand made and was there an offer made in

10  response to that demand?

11         MR. MULLEN:  Your Honor, the answer's yes to

12  both.

13         THE COURT:  And, again, without getting into

14  detail, how would counsel, I will hear from both

15  counsel, how would you describe the distance between the

16  parties in aquatic terms?  Are we talking about the

17  pond, a river, or an ocean?

18         MR. MULLEN:  This is Mr. Mullen for the

19  plaintiff.  Maybe a Great Lake, Your Honor, in this

20  metaphor.

21         THE COURT:  Okay, let me hear from defendant on

22  this.

23         MR. SHARMA:  Ravi Sharma for defendant, Your

24  Honor.  The communications had a number of different

25  facets.  One was a global type of settlement that would

1                              PROCEEDINGS                      26

2    basically allow the parties to walk away from each

3    other, and I think Mr. Mullen's characterization as a

4    Great Lake is accurate.  There was other facets which

5    involved similar relationships in regard, similar to but

6    not exactly the same as the joint venture agreement.

7    And in those regards I would not say Great Lake; I would

8    say that whole process being so nuanced it's hard to say

9    how far apart people are or were.  And it may be still

10   on the able; it may not be on the table; it's had to

11   say.

12              THE COURT:  Okay, thank you.  All right, let me

13   just find out from the parties regarding potential

14   settlement talks.  Do the parties think they could do

15   this on their own or do you think it would be helpful to

16   have referral to a magistrate judge or to mediation

17   program?  Do the parties want to take a shot at this

18   further on their own first?

19              Here's what I'm thinking, let me just tell you

20   what's on my mind.  I'm thinking I'll give the parties a

21   couple of weeks to engage in some settlement

22   discussions, and if that's fruitful, great, and let me

23   know if you need a little bit more time.  If not, the

24   parties can submit a proposed briefing schedule for the

25   impleader motion.  It may be that during the course of

1                        PROCEEDINGS            27

2 negotiation maybe the parties may have some agreement on

3 that.  But the parties can give me an agreed-upon

4 briefing schedule for the motion to implead the third

5 party in that joint status report, and we can have that

6 joint status report due on March 6th.  How does that

7 sound to plaintiff?

8            MR. MULLEN:  That sounds good to the plaintiff.

9 Your Honor, I might add one request which I regret I

10 haven't raised with Mr. Sharma yet, which is that my

11 client's answer to the counterclaims or premotion letter

12 on it motion to dismiss the counterclaims would be due

13 Friday, this Friday, absent an adjustment.  I'm

14 wondering if we can move that deadline out too so that

15 if we're engaging in further motion practice and

16 impleader, we can do all of that motion briefing at the

17 same time.

18            THE COURT:  Okay, how does that sound to

19 defendant?

20            MR. SHARMA:  Ravi Sharma for defendant.  Before

21 I answer that, based on what was said earlier by Mr.

22 Mullen, I wasn't sure that Mr. Mullen had not said that

23 he didn't think they were going to oppose that motion to

24 bring in Videoapp but that he was holding that final say

25 until he spoke to his client.  So the question would be

1 |                          PROCEEDINGS                28

2 | whether or not the Court would want to hear from, I mean

3 | we can put it plainly, the additional claims are going

4 | to be the same as the current counterclaims as against

5 | plaintiff here.  We named the individuals in the

6 | allegations.  We just didn't actually name them as

7 | counterclaim defendants.  So if there's no need for a

8 | motion for the interpleader motion, if we could agree,

9 | then we don't need to do that.

10 |         In terms of the timing, in terms of putting off

11 | his time to answer, I'm amenable to that.  I think,

12 | however, March 6 is a little soon.  I also want to go

13 | back and say that I believe that we would be served with

14 | assistance with the Court in regard to settlement only

15 | because I think it would be worthwhile to have an

16 | additional set of eyes and set of eyes that can make

17 | recommendations to the clients in regard to the overall

18 | cases here.

19 |         And, finally, the March 6 date is a little soon

20 | for me because there is, there are motions, Article 78

21 | motions below in this matter, and now there is a new

22 | motion to dismiss that's been filed in another matter by

23 | Videoapp in a matter that both my clients are involved

24 | with, and that motion return date is pretty much within

25 | a week of that same March 6 date.

```
 1                        PROCEEDINGS                    29

 2              THE COURT:  The Article 78 proceeding, is your

 3   opposing counsel the same counsel that's on this call

 4   now?

 5              MR. SHARMA:  Yes.  Mr. Mullen and his firm are,

 6   and myself, are counsel on all at this point, including

 7   the arbitration, four matters.

 8              THE COURT:  So what I was proposing by the

 9   March 6 date was that in that joint status report the

10   parties can let me know several things.  They could let

11   me know whether or not they've settled the matter

12   amongst themselves.  If not, they can let me know

13   whether or not they would like a referral to a

14   magistrate judge or the court's mediation program.  They

15   can also in that joint status report let me know if they

16   have discussed the issue of the impleading motion, and

17   if they have resolved it, you can let me know that in

18   the report.  And if not, you can give me a proposed

19   briefing schedule for that implead motion, that motion

20   to implead on the 6th.  It doesn't mean your motion is

21   due that day.  You give you a proposed briefing

22   schedule.

23              So this should not affect really too many

24   substantive motions that defense would be filing between

25   now and March 6 or whether there should be some work in
```

```
1                        PROCEEDINGS              30
```

2  terms of potentially trying to settle this matter, and

3  obviously, if this matter settles, you won't have that

4  extra work in the Article 78 proceeding.  How does that

5  sound to defense counsel?

6          MR. MULLEN:  Your Honor, for the plaintiff

7  that's – oh, excuse me.

8          THE COURT:  How's that sound to defense

9  counsel?

10          MR. SHARMA:  That sounds, again, it still

11  sounds relatively tight.  Mr. Mullen is asking me to

12  consent to delay his answer.  If we're settling, then,

13  if we're looking to settle or trying to settle or trying

14  to spend some time to settle, I would be asking Mr.

15  Mullen to consider the other pending motions that he

16  filed be similarly delayed so that we can concentrate on

17  settling, and at least there'll be something to, some

18  basis to settle.  Because otherwise I'm going to be

19  doing a lot of work even prior to March 6 on these two

20  other motions.  And I should --

21          (interposing)

22          THE COURT:  When are the other motions – again,

23  I'm not going to get into the motions --

24          MR. SHARMA:  Yeah --

25          (interposing)

```
 1                    PROCEEDINGS              31

 2            THE COURT:  -- that are in front of another

 3    court, but when are these motions due?

 4            MR. SHARMA:  One is due I believe, one is the

 5    return date is the beginning of March or within seven

 6    days or that, Mr. Mullen, your Article 78 I'm referring

 7    to, and the latest one that was filed today I believe is

 8    March 13, but because of reply time, I mean response

 9    time it lands smack right before, right around the March

10    6 period that you mentioned.  So there has to be work

11    done.

12            THE COURT:  Well, I guess I'm trying to

13    understand just as a practical matter, if you're asking

14    for more time for the status report, that makes it much

15    more likely that you're going to be filing these motions

16    as opposed to perhaps --

17            MR. SHARMA:  No --

18            (interposing)

19            THE COURT:  -- these reports filed earlier, and

20    maybe there can be a determination as to whether or not,

21    if you're close to settling, you don't need to file

22    these motions.  Are you saying the March 6 deadline --

23            MR. SHARMA:  I don't mind the date --

24            (interposing)

25            THE COURT:  Go ahead, what were you going to
```

PROCEEDINGS                    32

1
2   say?

3          MR. SHARMA:  I don't, sorry to interrupt, I
4   don't disagree with the March 6 date for the reasons you
5   said.  I was speaking mainly to the concept of seeking,
6   Mr. Mullen seeking extra time to answer in the first
7   place.

8          THE COURT:  Yes.  No, I think in terms of the
9   litigation here I think it makes sense for the parties
10  to try to focus on settling this matter, and then,
11  therefore, we hold off on any filing of any motions or
12  answers or motions at least until March 6, and then
13  we'll see where we are.  And in that March 6, again,
14  joint status report, you can let me know if there's an
15  agreement to implead, give me a proposed deadline for
16  the answer or the motion, but hopefully the parties will
17  let me know that you're on track for settling.  But
18  let's have that joint status report filed on March 6.
19  Does that work for the plaintiff?

20         MR. MULLEN:  It does, Your Honor.

21         THE COURT:  Does that work for the defendant?

22         MR. SHARMA:  That's fine, Your Honor, yes, Your
23  Honor.

24         THE COURT:  Okay.  All right, we are adjourned,
25  thank you.

```
 1                       PROCEEDINGS              33

 2          MR. MULLEN:  Thank you.

 3          MR. SHARMA:  Thank you, Your Honor.

 4          (Whereupon, the matter is adjourned.)

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

34

<u>C E R T I F I C A T E</u>

I, Carole Ludwig, certify that the foregoing transcript of proceedings in the case of SVOTHI v. DARK ALLEY MEDIA, Docket #25cv0333, was prepared using digital transcription software and is a true and accurate record of the proceedings.


Signature_____*Carole Ludwig*_____

Carole Ludwig

Date:  March 5, 2025