

# SHARMALAW

LAW OFFICES OF RAVI IVAN SHARMA, P.C.

26 BROADWAY, SUITE 1108, NEW YORK, NEW YORK 10004

212 537 5957
Facsimile 212 537 5956
Voice Mail 213 537 5953
RAVI@SHARMALAW.COM

August 25, 2025

**VIA ECF and EMAIL: ALCarterNYSDChambers@nysd.uscourts.gov**

The Honorable Andrew L. Carter
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      **RE:** *Svothi Inc. v. Dark Alley Media*, 25 CV 0333 –Defendants' Request For a Pre-Motion Conference and/or briefing schedule as to Motion to Disqualify Counsel for Plaintiff (and restoration of the matter to the active docket for such purpose).

    Dear Judge Carter,

    I write on behalf of Defendants Dark Alley Media, LLC ("DAM") and Robert Felt to respectfully request a pre-motion conference under Rule 2.A of Your Honor's Individual Practices, in anticipation of our motion to disqualify Plaintiff's counsel.

    **Background and Procedural Posture**. On June 20, 2025, the parties agreed that the settlement in principle was subject to the requirement that definitive settlement documentation would be executed within a particular timeframe.

    Following our communication, the Court entered an Order of dismissal on June 23, 2025, without prejudice to restore for thirty days ([ECF Doc. 53](#)), and subsequently granted an extension of such time to August 22, 2025, ([ECF Doc. 56](#)) at Plaintiff's request to which I joined. However, at that time I informed Mr. Mullen that there would be no extensions given the condition that the settlement papers be timely completed. Despite these extensions, the parties are not close to agreement on several material terms, including those previously thought resolved, much less within the agreed timeframe. Accordingly, the settlement in principle has lapsed, and no definitive agreement exists.

    Nonetheless, on August 21, 2025, Plaintiff's counsel requested an additional month---to which I expressly indicated Defendants *did not join* via email to Chambers in response to Plaintiff's courtesy copy.[1]

    This procedural posture is further complicated since I recently discovered that Mr. Mullen represented Mr. Felt (**Exhibit 1, Mullen P.C. Engagement Letter**). Such led to my request of Mr. Mullen by letter delivered last weekend that he and his firm immediately withdraw to which he has refused.

---

[1] Mr. Mullen wrote that I had not responded to his email. However, he omitted that I had told him on a call just days before his letter to the Court that Defendants would not join in Plaintiff's planned further request for extension.

**Plaintiff's Recent Conduct**. On August 20, 2025, the Mullen firm sent a takedown demand to AEBN , a third-party platform (**Exhibit 2, AEBN Letter**), asserting that DAM was infringing Plaintiff's trademark rights to the marks including "Raw Fuck Club" which *DAM has used on AEBN since 2007*—and are *not included in the Complaint herein* (ECF Doc. 1)—yet took liberties to mis-identify *this matter* as "now pending" apparently to scare AEBN–-neither which is in line with the "desire to [settle]" asserted in Mr. Mullen's August 21st letter to the court (ECF Doc 62). As a direct result of this demand, AEBN removed DAM's content causing immediate and substantial harm to Defendants' business interests. Seeking to advance Plaintiff's position and inflict harm on Defendants without notice and outside the judicial process is incompatible with the requirements of candor and fair dealing expected of counsel and highlights the urgency to restore the matter to the active docket to disqualify Mr. Mullen.[2]

**Existence of Prior Attorney-Client Relationship**. Mr. Mullen represented Robert Felt and his company, Dark Alley Distribution LLC ("DAD") which he owned as a subsidiary of DAM, in EMBV Media, S.A. v. VideoApp, Inc. et al. , No. 20 CV 4228 in the SDNY. The engagement letter expressly covers Mr. Felt in his personal capacity and as principal of DAD, and was signed by all parties, leaving no doubt as to the scope and existence of the attorney-client relationship.

In the engagement letter Mr. Mullen made the following promises to Mr. Felt:

- "the Firm will never use your confidential information in a manner that is or may be harmful to you",
- "the Firm will not represent a party adverse to you on a subject matter substantially related to the subject matter on which the Firm represented you",
- "the *individual lawyers* personally *involved in representing you will not personally be involved in representing parties adverse to you without first obtaining your consent*", and
- "*in the event that [both parties] develop inconsistent objectives*, such that one of you wishes us to pursue an objective which would adversely affect the interests of the other, *a conflict would arise which would require us to withdraw as counsel for any of* you in your respective individual capacities." (emphasis added)

**Legal Standard for Disqualification** Under New York law and the practices of the Southern District of New York, a party seeking disqualification must demonstrate three elements: (1) the existence of a prior attorney-client relationship; (2) that the prior and current matters are substantially related; and (3) that the interests of the current and former clients are materially adverse. This standard is articulated in *Matter of Bacot v. Winston*, 21 Misc. 3d 1123(A) (N.Y. Sup. Ct. 2008) and is codified in Rule 1.9 of the New York Rules of Professional Conduct.

Rule 1.9(a) provides: A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Federal courts in the S.D.N.Y. apply the New York Rules of Professional Conduct pursuant to Local Civil Rule 1.5, which authorizes discipline for conduct violative of the New York State Rules and directs courts to give due regard to New York state court decisions in the absence of binding federal authority.

The substantial relationship test is interpreted broadly: matters are substantially related if they involve the same transaction or legal dispute, or if there is a substantial risk that confidential information obtained in the prior representation would materially advance the new client's position.

---

[2] Restoring the matter should render Mr. Edisad's objections moot (ECF Doc. 57).

Once a substantial relationship is established, courts apply an irrebuttable presumption that confidential information was shared, and actual use or possession of such information need not be proven (*Solow v. W.R. Grace & Co.*, 83 N.Y.2d 303 (1994); *Hempstead Video, Inc. v. Incorporated Village of Hempstead*, 409 F.3d 127 (2d Cir. 2005)).

Courts in this District have repeatedly emphasized that the duty of loyalty to former clients is paramount, and that disqualification is required to avoid even the appearance of impropriety and safeguard the integrity of the judicial process. (*GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204 (2d Cir. 2010)). The standard is applied with particular rigor where, as here, the attorney seeks to represent a party directly adverse to a former client in a matter involving overlapping facts, legal issues, and confidential information. *(Solow v. W.R. Grace & Co, Id.).*

**Substantial Relationship Between Prior and Current Matters.** Here, both the EMBV litigation and the present action center on intellectual property disputes in the adult entertainment industry, involving the same websites (rawfuckclub.com, vod.darkalley.com), and the defense of such involved Mr. Felt's joint venture agreements with Mr. Todaro's companies, and business relationships among the parties. The direct overlap in parties, legal issues, business practices, and factual context—including the operation of the same websites—establishes a substantial relationship between the two matters.

Moreover, the confidential information shared during the prior representation—including business strategies, financial data, and legal assessments—directly pertains to the issues now in dispute, not only here, but in the New York State Court matters.[3] Mr. Mullen was aware of the joint venture structure, the relationships among the parties, and the strategic considerations underlying the defense of the EMBV litigation. These facts are not merely tangential; they are central to the current litigations.

**Material Adversity of Interests.** Mr. Mullen now represents Plaintiff in direct opposition to Felt and DAM, seeking damages and injunctive relief for alleged trademark infringement and unfair competition. The interests of the current and former clients are not only adverse, but diametrically opposed, as Plaintiff's claims, if successful, would deprive Felt and DAM of rights in intellectual property and technology that were the subject of the joint venture agreement and Mr. Mullen's prior representation.

**No Consent**. The engagement letter broadly and expressly prohibits any attorney personally involved in the prior representation from representing interests adverse to Mr. Felt absent his informed consent and requires withdrawal in the event of a conflict. Mr. Mullen never asked for or received consent from Mr. Felt and there is obviously a conflict. Therefore, he should withdraw from representation of Mr. Todaro's companies against Mr. Felt.

**Waiver Argument and Timing**. Waiver of the right to seek disqualification must be "knowing, intelligent, and voluntary," and cannot be imputed where the movant was unaware of the full scope of the conflict or the prior representation. *Blue Planet Software, Inc. v. Games Int'l, LLC*, 331 F. Supp. 2d 273, 276 (S.D.N.Y. 2004). Mr. Felt recalled that the Mullen firm had represented DAD in a prior matter but did not recall the extent of the representation. Nonetheless, "any doubt is to be resolved in favor of disqualification." *Id.* at 275. Only days before I sent Mr. Mullen a letter

---

[3] Once a substantial relationship between the matters is established, there is an irrebuttable presumption that confidential information was shared during the prior representation. *United States v. Prevezon Holdings Ltd.,* 839 F.3d 227 (2d Cir. 2016)

demanding he withdraw did Mr. Felt send me his newly discovered engagement letter.[4] This litigation, at seven months old remains in its early stages and this motion is brought promptly upon discovery of the relevant facts with no substantive prejudice to Plaintiff. Additionally, in the associated New York Supreme Court matters (all younger than this case), a motion to dismiss—brought by the Mullen firm; and a CPLR Art. 75 petition to stay arbitration —filed by the Mullen firm—with cross-petition to compel such arbitration pursuant to the joint venture agreement between Mr. Felt's and Mr. Todaro's companies involving the same intellectual property at issue in this matter were pending (but subject to reinstatement absent settlement).

Prompt judicial intervention is essential to protect client confidences, maintain ethical standards, and preserve the integrity of these proceedings. Defendants therefore respectfully request that the Court restore this matter to the active docket and schedule a pre-motion conference at the earliest opportunity.

Respectfully submitted,

*[signature]*

Ravi Ivan Sharma
SHARMALAW – Ravi Ivan Sharma, P.C.
26 Broadway, Suite 1108
New York, NY 10004
(212) 537-5957
ravi@sharmalaw.com
*Attorneys for Defendants*

cc. Marms@mullenpc.com, wmullen@mullenpc.com; vfitzpatrick@mullenpc.com

---

[4] In late January, I brought up with Mr. Mullen that I believed he had spoken to Mr. Felt previously as to joint matters with Mr. Todaro's companies, and that I wondered if there was a conflict. The totality of Mr. Mullen's response was something to the effect that he didn't remember such. If Mr. Mullen had instead confirmed he had previously represented Mr. Felt, I would have immediately demanded Mr. Mullen withdraw based on his conflict of interest and the terms of his engagement letter.