August 29, 2025

Marc Edisad
70 Wyckoff Avenue, Apartment 2K
Brooklyn, NY 11237
Tel: 646-683-8672
Email: marc.edisad@gmail.com

Clerk of Court
United States District Court
Southern District of New York
Pro Se Intake Unit
500 Pearl Street, Room 200
New York, NY 10007

**Re: SVOTHI, Inc. v. Dark Alley Media, LLC, et al.,**
**Case No. 1:25-cv-00333 (ALC)**

Dear Clerk and Chambers of the Honorable Andrew L. Carter, Jr.:

Please find enclosed a filing packet with cover letter, notice of filing, exhibit index, and Exhibits A through D for inclusion in the record of this case.

Respectfully submitted,

/s/ Marc Edisad
Marc Edisad (pro se)

## Notice of Filing

Marc Edisad, pro se, respectfully submits the following materials for filing in the above-captioned matter:

- Cover Letter
- Notice of Filing
- Exhibit Index
- Letter to the Honorable Andrew L. Carter, Jr. (August 29, 2025), with Postscript Addendum

- Exhibit A — Dark Alley Media LLC Shareholders Agreement (2004, extracted sections with signature page)
[Note: Extract prepared due to printing issues; a complete well-printed copy will be submitted separately.]
- Exhibit B — Addendum to Shareholders Agreement (executed January 1, 2016)
[Note: Attached copy lacks signatures; a signed executed copy exists and will be filed when located.]
- Exhibit C — Email to Robert Felt
- Exhibit D — Email to Ravi Sharma, Esq.

## EXHIBIT INDEX

- Exhibit A — Dark Alley Media LLC Shareholders Agreement (2004, executed)

- Exhibit B — Addendum to Shareholders Agreement (executed January 1, 2016)

- Exhibit C — Email from Marc Edisad to Robert Felt

- Exhibit D — Email from Marc Edisad to Ravi Sharma, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————X
SVOTHI, INC., Plaintiff,

-against-

DARK ALLEY MEDIA, LLC, et al., Defendants.

Case No. 1:25-cv-00333 (ALC)
—————————————————————X

LETTER TO THE COURT REGARDING REPRESENTATION OF DARK ALLEY MEDIA,
LLC

Hon. Andrew L. Carter, Jr.
United States District Judge
500 Pearl Street
New York, NY 10007

August 29, 2025

Dear Judge Carter:

I respectfully submit this letter as a 50% owner and member of Dark Alley Media, LLC. On
August 25, 2025, I filed an application to reinstate this case to the active docket. I now write
to clarify serious concerns regarding the representation of Dark Alley Media by attorney
Ravi Ivan Sharma.

Mr. Sharma has filed papers and now intends to appear before the Court as "counsel for
Dark Alley Media, LLC." In practice, however, he has acted solely at the direction of the
other 50% member, Mr. Robert Felt. I received no notice when this lawsuit was filed against
the company. Neither Mr. Felt nor Mr. Sharma informed me, despite their obligation to notify
me immediately of litigation that placed the company's assets and trademarks at risk.

In fact, I only learned of this lawsuit indirectly — from a former employee, who himself had
discovered it through Mr. Felt's social media postings. Mr. Felt evidently found it more
important to publicize the lawsuit on social media than to notify — in the first order — his
equal business partner of pending litigation.

Throughout this litigation and the settlement negotiations, I received no formal updates,
letters, or correspondence from Mr. Sharma. I was not copied on communications with
opposing counsel and had no knowledge of when or how negotiations were taking place. I
began to be copied on correspondence only after I filed my first motion to the Court. Most

recently, Mr. Sharma's direct communications with me consisted of late-night emails pressing me for binary consent after filings had already been made.

This exclusion is longstanding and reflects a pattern of unilateral conduct by Mr. Felt: refusal to meet or consult face-to-face for seven to eight years; termination of all employees and consolidation of control; and repeated execution of extraordinary agreements. When I returned from working abroad on DAM films and sought to participate, Mr. Felt initially resisted. It was not until I involved an attorney, Peter Gruber, that he unwillingly allowed me to resume my role in filming and directing at the studio in Florida. However, less than a year later, he unilaterally terminated all of Dark Alley Media's employees, including myself, on Christmas Day 2018 without pay, which I considered unacceptable treatment of the employees.

He then replaced the entire staff with a single young man — his partner — who had no prior professional experience in editing, directing, casting, or in marketing and social media for adult companies. This individual was given free rein and the entire budget that had previously been divided among a team of seasoned professionals, further undermining the company's stability and quality of output.

Pattern of Exclusion and Unilateral Conduct

Mr. Felt has repeatedly executed extraordinary acts without my consent, each in violation of the 2004 Shareholders Agreement (which requires the consent of both 50% members):
•    Mass firing (2018): Terminated all employees, including myself, on Christmas Day 2018 without pay.
•    2019 Joint Venture Agreement: Signed without my consent, granting Plaintiff access to company marks and domains.
•    Creation of Dark Alley Distribution: Formed as his solely owned entity, overlapping with Dark Alley Media's business, excluding me from ownership or participation.
•    Engagement of Mullen P.C.: Retained through that sole-owned distributor, without consulting me.
•    Attempted unilateral settlement (2025): Nearly transferred DAM's most valuable assets — domains and marks — to Plaintiff without my involvement or approval.

Financial Exclusion and Lack of Transparency

For the last seven years, I was not permitted to work for the company in any capacity. My only income from Dark Alley Media was a reduced profit-share check, which was calculated only after Mr. Felt first paid himself a managerial salary and reimbursed all charges on the company's American Express card. He refused to let me see the Amex statements on the grounds that the card was secured by his personal credit, even though the company reimbursed him in full. At the same time, no professional accounting system such as QuickBooks was ever maintained, making it impossible to conduct a proper audit or verify how company funds were spent.

Attorney Sharma, by signing filings as counsel for Dark Alley Media, had an obligation under New York Rule of Professional Conduct 1.13 to ascertain who may act for the entity and to consult with both members. Proceeding solely on Mr. Felt's instructions ignored that duty and placed my ownership rights at risk.

Request for Relief

I respectfully request that the Court:

1.   Take notice that Mr. Sharma does not represent the position of Dark Alley Media, LLC as a whole, but only that of Mr. Felt;

2.   Direct Mr. Sharma, if he is to appear as counsel for the company, to consult with both members before making any filings or representations that might alter the outcome of this proceeding or unpredictably affect its course; and

3.   Adjourn the September 4, 2025 conference by at least one week, or for such longer period as Your Honor finds appropriate, so that I may be meaningfully consulted before any further steps.

Respectfully submitted,

Marc Edisad
50% Owner, Dark Alley Media, LLC
70 Wyckoff Avenue, Apt 2K
Brooklyn, NY 11237
Tel: 646-683-8672
Email: marc.edisad@gmail.com

**Postscript to Letter to Judge Carter (August 29, 2025)**

I respectfully add that on August 26, 2025, I sent detailed emails both to Mr. Sharma and to Mr. Felt, not only regarding the company's legal strategy but also to protest the way important matters were being handled at the last minute without consulting me. These emails were written in response to a filing made late at night on August 25 and an urgent request for consent sent at 4:26 a.m. the next morning.

I received no reply to either of these emails. To ensure complete transparency, I then followed up by sending Mr. Sharma a message with a photograph of a document I had received from Mullen, and I sent the same to Mr. Felt. I did this so there could be no suspicion that I was engaging in undisclosed communications with Mr. Mullen or withholding information.

Respectfully submitted,

Marc Edisad

**EXHIBIT A**

**Dark Alley Media LLC**
**Shareholders Agreement (2004, Executed Copy)**

Dark Alley Media LLC — Shareholders Agreement (2004, Extracts for Readability)

Note: This page reproduces only key terms from the executed 2004 agreement. The full executed document exists and will be provided separately when printing issues are resolved. The original signed signature page will be attached at the end of this Exhibit.

1) Shareholders & Ownership (as of 2004)
- Robert Felt — shareholder
- Maciej Dziekiewicz (now legally Marc Edisad) — shareholder
- Timothy Boyle — shareholder
- Each held an equal one-third (1/3) ownership interest at the time of execution.

2) Decision-Making Authority
- Ordinary business decisions: May be taken in the ordinary course of business consistent with day-to-day operations.
- Extraordinary decisions: Require the knowledge and consent of all shareholders. These include, without limitation:
- Sale, transfer, or encumbrance of significant company assets, trademarks, or domain names;
- Settlement of litigation or material legal disputes;
- Dissolution, merger, or sale of substantially all assets;
- Admission of new members or any transfer of ownership interests;
- Incurring extraordinary debt/obligations outside ordinary course.
- No shareholder may unilaterally undertake any extraordinary action without the express consent of the other shareholders.

3) Transfer / Assignment of Ownership Interests
- A shareholder may not sell, assign, or transfer any portion of their ownership interest without first offering it to the other shareholders (right of first refusal).
- The transferring shareholder must give advance written notice of the material terms of any proposed transfer to the other shareholders.
- Any transfer attempted without compliance with notice/consent and first-refusal provisions is void and unenforceable against the Company and the non-transferring shareholders.

4) Notice & Consent Requirements
   •      For any contemplated extraordinary decision or ownership transfer, the initiating shareholder must provide written notice with sufficient detail and allow a reasonable opportunity for the others to review and decide.
   •      Affirmative consent of all shareholders is required for extraordinary actions.

5) Death / Withdrawal (Summary)
   •      Upon the death of a shareholder, that shareholder's interest is handled pursuant to the agreement's succession provisions and applicable law; surviving shareholders retain proportionate rights, and any transfer is subject to the agreement's restrictions.
   •      A shareholder seeking to withdraw must provide written notice; the remaining shareholders retain a first right to purchase the withdrawing shareholder's interest, per the agreement's terms.

Signature Page (Original Execution)
   •      The original signed signature page from the 2004 agreement will be attached immediately after this extracted text to confirm execution.

Agreement, nor waiver of any of its provisions shall be valid or enforceable unless in writing and signed by all the parties.

17.  Binding Agreement.  This Agreement shall be binding on the parties, their distributees, their legal representatives, successors and assigns.

18.  Notices.  All notices under this Agreement shall be in writing, and shall be served by personal service, or be certified mail, return receipt requested.  Notice by mail shall be addressed to each party at the address set forth below his signature in this Agreement.  Any party may notify the other parties of a different address to which notices shall be sent.

19.  Governing Law.  This Agreement shall be governed by the laws of the State of New York.

20.  Execution in Counterparts.  This Agreement may be executed in any number of counterparts deemed for all purposes to be one Agreement.  To the same effect as if it were the original, anyone may rely on a copy certified by a Notary Public or other authorized person to be a true copy of the Agreement and of any writings endorsed on or attached to the Agreement. Anyone may rely upon any Statement of Facts certified by a party to this Agreement.

IN WITNESS WHEREOF the parties hereto have executed this Agreement on April 16 , 2005.

Robert Felt:

_____          SSN: 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

Maciek Dzickiewicz:

_____          SSN: 17-92-7144

Timothy Boyle:

_____          SSN: 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

Witness:

_____          Print Name: _____

11

# EXHIBIT B

## Dark Alley Media LLC
## Addendum to Shareholders Agreement
## (Executed January 1, 2016)

## ADDENDUM TO SHARE HOLDERS AGREEMENT

### DARK ALLEY MEDIA, LLC

January 1st, 2016

-- Timothy Boyle is no longer an owner of Dark Alley Media, having sold his shares back to the company in 2006.

-- Maciej Dziekiewicz is now known as Marc Edisad, having legally changed his name.

-- Ownership of the company is as follows:

     50% Ownership for Mr. Robert Felt

     50% Ownership for Mr. Marc Edisad

Addendums to specific paragraphs:

<u>1b Control and Operations</u>

| OFFICER | OFFICE |
|---|---|
| Robert Felt | President |
| Marc Edisad | Vice-President |
| Robert Felt | Treasurer |
| Marc Edisad | Secretary |

<u>8 Death of a Shareholder</u>

If a shareholder dies, 50% of their ownership will automatically transfer to the other partner, giving that partner controlling interested in the company. The deceased partner may will the other 50% of their ownership to any person of their choosing, however in the absence of any specific will, this agreement will constitute agreement to transfer 100% of the ownership of the company to the other shareholder.

The company and its surviving shareholder is under no obligation to purchase any stock willed to the deceased shareholders heirs or his estate.


SIGNED AND AGREED

ROBERT FELT


_____          DATE _____

MARC EDISAD


_____          DATE _____

# EXHIBIT C

**Email from Marc Edisad to Robert Felt**
**(regarding settlement, ownership, and domain names)**

August 26, 2025

Robert,

I want nothing more but to be aligned with you. Hence since forever I have been asking for a face to face meeting. This is how people actually talk to each other. Which part of this do you not understand? You've never seen business partners talk and work out their differences in person? You are digging yourself into deeper and deeper hole by not meeting me, which is highly suspicious and avoiding to tell me the whole truth.

I see that there was a joint agreement hiring Mullen signed by you (also completely unlawfully) in regards to some lawsuit of a third party I have never been informed of, which clearly falls under extraordinary decisions that require two signatures, not one. Why did you never mention you were signing an agreement jointly with Damian hiring a law firm to defend a separate suit against the business. How much do I not know? defense of the matter captioned EMBV Media, S.A. v. VideoApp, Inc. et al., No. 20 CV 4228, now pending in United States District Court for the Southern District of New York.

Also the way you talk to me every single time is like you are playing some chess game for domination that I never wanted to play. Trying to leverage information and transparency to force me to agree to what you want is unacceptable. And you've said this in emails recently more than once if I am not mistaken.

You are directing Ravi like I was still not in the picture, and for all I know he is defending your interests and some shady deal you were going to close with Damian trying to sell him your 50% and fool me this would not affect me. In the meantime you'd sign off the rights to the domains to him, take for yourself the measly 200K and leave me out.

You are either going to show some good will and face me and answer any questions that would clear my suspicions, since I took a position to actually not serve you with a drafted lawsuit, and am willing to put the past behind, or my questions why you are continuously hiding things as I have just found out, will emerge in front of the judge, even though they don't have to. You

I didn't open the envelope from Mullen yet. It's here sitting sealed. But I see there is a revelation after revelation like with this suit you've never told me about. God knows whats in that envelope. I was going to open it but It is late at night and I've just got one bombshell. I need to read into what that process was about and how it ended if it ended etc.

If you dont yeld and tell me all the secrets in person then I will not trust you and will protect my interests through direct contact with the court and this will be just a field day for Mullen who will definitely try to use this against us.

I am not hiding anything, you are hiding yourself for 8 years now and there must be a reason for that. You know, if you continue on this path there will be not a subpoena - I will show the judge how many times I was asking you to meet me, how many times I asked in emails questions you have avoided, how until today you refuse my demand to add me to the company's bank account and how you have this private company that is theoretically DAM Distribution, but I cant be the member of it so you have the full control of it and whatever deals are going on. Similarly like you have told me I cannot see what you charge on company's Amex because it's secured by your own credit. Another absurdity. If you reimburse yourself you have the obligation to be transparent.

I believe that we can come to an agreement, but I won't play that game where only you know what is going to happen and what has happened and will not sit down to speak with me. You want this to play out in front of the judge then it will, and you will be acting against the company's interests making us look bad, because I cannot lie.

To answer your question in a nutshell; I have filed a motion to dig into what is really going on. One very short one you will see on Pacer tomorrow, but after this evening I feel it would be logical to actually object to Ravi's request because I need time to familiarize myself with facts that are supposed to be discussed and agree on the strategy. I certainly am not going to a conference where I have no knowledge and full understanding of what is being discussed. If you keep me in the dark then I will say that I object to this pre-conference because I have not had any knowledge of underlying facts and neither your our "our" counsel tried to explain it.

I am also going to ask Ravi to explain to me what is really going on and who is he really representing, because for sure he doesn't consult anything with me.

I have probably repeated my points several times but it was midnight when Ravi sent me his email and I am tired.

I am also not copying this email to Ravi who charges by the hour, because it's meant for you and I do have a separate email written for him with my questions I just need to finish it tomorrow. Feel free to forward this one to him if you feel I am in any way attacking you, but he is going to spend time to read it and advise you that I am actually trying to put into your stubborn head that I want to be in agreement with you, and this advice eventually will be paid form the damages awarded to both of us so it will cost me too.

Your conduct is exhausting.

Best regards,

Marc

# EXHIBIT D

**Email/Letter from Marc Edisad to Ravi Sharma, Esq.**

Context / Preamble:

On August 25, 2025, at 11:00 p.m., Ravi Ivan Sharma filed a motion without prior consultation with me.

Just a few hours later, at 4:26 a.m. on August 26, 2025, he sent the email below requesting an immediate response.

At the same time, I was writing to Robert Felt to express my concerns about being excluded from strategy discussions and being asked to make binary decisions in the middle of the night.

It took me until 6:21 a.m. to draft the response that follows.

———

Ravi's Email (August 26, 2025, 4:26 a.m.):

"Wes and Marc,

I ask that both of you let me know whether you consent to my request— which I will make after Wes submits his request for a delayed response to my letter—to adjourn the September 4th appearance. I propose to request that the appearance be postponed until after the Court has reviewed our submissions and ruled on whether a pre-motion conference or briefing schedule regarding Defendant's motion is necessary. This is particularly important, as the Court may restore the case as I have requested, which could render Mr. Edisad's motion unnecessary or not yet ripe as of September 4th.

Please advise. Thank you.

Ravi Ivan Sharma"

———

My Response (August 26, 2025, 6:21 a.m.):

Hi Ravi,

Can you please explain to me the benefit of disqualifying Mullen from the case?

What I understand for what you wrote here:

This
litigation, at seven months old remains in its early stages and this motion is brought promptly upon
discovery of the relevant facts with no substantive prejudice to Plaintiff. Additionally, in the
associated New York Supreme Court matters (all younger than this case), a motion to dismiss—
brought by the Mullen firm; and a CPLR Art. 75 petition to stay arbitration —filed by the Mullen
firm—with cross-petition to compel such arbitration pursuant to the joint venture agreement between
Mr. Felt's and Mr. Todaro's companies involving the same intellectual property at issue in this
matter are pending.


is that the intended result is to close the Federal case and force Mr. Todaro
to arbitration with at this point a new attorney?

Since you have filed this at 11pm I was trying to understand the final goal.
Even if we manage to get into arbitration, which cannot be appealed, who
is going to actually enforce the arbitration's result?
The domains are abroad in the Netherlands and Svothi is in St. Kitts and
Nevis where none of the courts have the jurisdiction.
Since neither Robert nor you discuss with me the strategy even though I
own half of the DAM, I don't see how the LLC gets back the domains.
Also from what I know there was never a proper discovery done where we
would really know what Svothi was making and is making currently.
I did not appreciate the settlement being nearly signed by Robert without
consultation, hence I have petitioned the court directly to put it back on the
docket so Robert could not sell his 50% and sign off the rights to both
domains, one of them stolen after hacking my email.
I have written a letter to you but not finished it. I was asking to explain what
was really going on behind the scenes of this settlement that for 200K vs
20yo famous domain made no sense whatsoever and I was going to be
excluded on top of that.

If you'd help me understand also why Robert would not meet with me face
to face it would be helpful. I'll send you a letter in which I have penned all
my questions. I want to be as aligned with Robert as possible but he has
some secret agenda I dont know about if he is avoiding me since 8 years
and denying me a say in what the company is doing.

Yes arbitration is short and cheap but I feel excluded from a greater plan
even if we get there and the way Robert avoids me and keeps on pulling
strings makes me want to leave the case where it is because finally the
court has been made aware of the fact that I also exist.

I am all for defeating Damian, all for getting the domains back and all for
supporting your efforts if they also include me.
I really think that in order to defeat Damian Robert has to start behaving
normally and perhaps you could explain to him that I have no bad
intentions against him.

Also Robert said that once the case is closed he intends to leave the
company and do something completely different. Now I don't think this is
his desire anymore and I really don't know what is the plan.

And you writing at 4.26 am asking to say yes or no is kind of impossible. I
have spent a long time writing Robert tonight that yet again I am not
consulted on the common strategy so I object to sending motions to the
court that will have unknown to me repercussions. What do you plan to
achieve during pre-motion conference if everything goes your way?

I think that my brain needs a rest. Plus there is a still sealed envelope from
Mullen sent to my mailbox which I didn't open because I barely am
guessing what you want to do and the contents of this envelope might be
another can of worms. One thing you can say to Robert that unlike him I
am not having any direct contact with Damian or am attempting to settle
with him. But also I cant trust someone who won't sit with me face to face
to discuss the strategy and tries to bargain - whole truth in exchange for me
agreeing to what he wants. That probably upsets me the most and maybe
you could have a very positive effect on the outcome if you have managed
to convince him that I don't have any secret interests or deals I am
defending or making behind his back.

I'd hope that Robert would finally understand that I did not sue him because
I thought he has finally, after 7-8 years of excluding me from the company's
operations, and having any say on what DAM is doing, would finally stop
fighting me and pretending I don't exist. or that its not thanks to my
creativity that the brand became a world renown success.

In essence at the moment I feel the court and the judge have finally heard
of me and are interested indeed who is Mr. Edisad and why was he
excluded. Your motion, perhaps I am completely wrong, threatens all of that

and I am worried we will end up with the status quo where Robert has all the say and I have none. Hence my hesitation to give a yes or no immediately on something that wasn't consulted with me at all and has unknown repercussions going forward.

Please educate me as to what the desired effect is and how is that going to help change the awful situation I was in, with no say, just because Robert controlled the finances. Right now at least I know the judge wants to hear from me, and if that threatens Robert's power grab and domination since years then that is actually some justice I am hoping to achieve.

Best regards,

Marc Edisad