

# SHARMALAW

LAW OFFICES OF RAVI IVAN SHARMA, P.C.

26 BROADWAY, SUITE 1108, NEW YORK, NEW YORK 10004

**212 537 5957**
Facsimile 212 537 5956
Voice Mail 213 537 5953
RAVI@SHARMALAW.COM

May 8, 2026

**VIA ECF and EMAIL: ALCarterNYSDChambers@nysd.uscourts.gov**

The Honorable Andrew L. Carter
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

> **RE: Svothi, Inc. v. Dark Alley Media, LLC, et al., Case No. 1:25-cv-0333 (ALC) —: Applicability of Joint Venture Agreement Arbitration Clause to Proposed Joinder of Videoapp in this Action.**

Dear Judge Carter:

Defendants Dark Alley Media, LLC ("DAM") and Robert Felt respectfully submit this letter brief addressing the applicability of the Joint Venture Agreement's mandatory arbitration provision to the proposal that non-party VideoApp Inc. ("VideoApp") be joined in this pending federal action so that the joint venture dispute between DAM and VideoApp may be adjudicated here.

Defendants do not dispute that the Joint Venture Agreement contains a mandatory arbitration provision applicable to disputes properly arising between its signatories. Nor do Defendants contend that a signatory may simply disregard a valid arbitration agreement at will. The present question is narrower: whether the clause now bars joinder of VideoApp into this action or otherwise requires the entire dispute before the Court to be displaced into arbitration. It does not.

There are three independent reasons. First, VideoApp waived any right to insist upon arbitration by filing and maintaining a New York Article 75 proceeding to stop the very arbitration DAM had commenced, and by maintaining that anti-arbitration posture for approximately fourteen months before reversing course. As *Morgan* explains, federal courts may not "invent special, arbitration-preferring procedural rules" and the federal policy is "about treating arbitration contracts like all others, not about fostering arbitration." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). *Cusimano v. Schnurr*, 26 N.Y.3d 391, 400–01 (2015). Second, arbitration remains a matter of consent and ordinary contract law, not coercion, and the present case includes claims against a nonsignatory defendant who did not sign the Joint Venture Agreement. *Volt Info. Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468, 479 (1989); *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995); *Matter of Belzberg v. Verus Invs. Holdings Inc.*, 21 N.Y.3d 626, 631–34 (2013). Third, even apart from waiver,

arbitration between DAM and VideoApp would not resolve the full dispute now before the Court, including SVOTHI's claims and DAM's counterclaims.

DAM and VideoApp entered into a Joint Venture Agreement dated January 1, 2019, concerning operation of adult video websites under the "RFC" and "Raw Fuck Club" brands. Section 9.7 provides for binding arbitration in New York, New York, for disputes arising from or relating to the agreement. On January 16, 2025, DAM served a formal arbitration demand on VideoApp alleging breaches of that agreement. On February 5, 2025, rather than proceed in arbitration, VideoApp filed a CPLR Article 75 petition seeking to permanently stay the arbitration and advised JAMS that it reserved objections including to jurisdiction, venue, forum, and waiver and would not communicate further. JAMS then declined to administer the matter, and VideoApp maintained its anti-arbitration position until March 2026, when it withdrew the petition and reversed course.

That reversal did not occur in a vacuum. Defendants state that they did not learn until after substitution of counsel in December 2025 that VideoApp had been stricken from the Nevis corporate registry in May 2021, years before the alleged termination of the Joint Venture Agreement. Defendants further note that VideoApp's reversal came only after disclosure that it had been restored to the registry. Whether that corporate-status issue ultimately bears on capacity in some broader sense need not be resolved here. The narrower point is that VideoApp resisted arbitration throughout the period in which its active corporate status was in doubt and embraced arbitration only after restoration, which underscores the tactical character of its present reliance on the clause.

Meanwhile, SVOTHI filed this action asserting trademark-related claims against DAM and Robert Felt. The Complaint pleads claims against Felt based on his own alleged conduct, including alleged operation of OwenHawk.com. DAM has asserted counterclaims against SVOTHI arising from the Joint Venture Agreement, the JV Marks, and related conduct. The issue now is whether the existence of the arbitration clause prevents VideoApp from being joined here so that the overlapping disputes can be adjudicated in one Court. It does not.

## I. The Court decides whether the clause forecloses joinder here

Arbitration is a matter of contract, and absent a clear and unmistakable delegation, questions of arbitrability are for the Court. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–50 (1986). The issues presented here are gateway questions for judicial determination: whether VideoApp waived any right to insist on arbitration through litigation conduct, whether the clause may now be invoked to block joinder of the contractual counterparty, and whether the clause can displace claims involving parties who did not agree to arbitrate.

## II. The FAA does not make arbitration a mandatory forum for this entire case

The Federal Arbitration Act enforces arbitration agreements according to their terms; it does not convert arbitration into a free-floating forum mandate whenever a contract contains an arbitration

clause. The Supreme Court has made clear that arbitration under the Act is "a matter of consent, not coercion," *Volt Info. Scis.*, 489 U.S. at 475. Likewise, whether a nonsignatory may enforce or be bound by an arbitration agreement turns on ordinary contract and state-law principles rather than a categorical federal command. *Arthur Andersen L.L.P. v. Carlisle*, 556 U.S. 624, 630–32 (2009); *Thomson-CSF, S.A.*, 64 F.3d at 776.

That matters here. Defendants do not argue that DAM may unilaterally nullify a valid arbitration agreement simply because litigation is now preferred. The argument is instead that VideoApp cannot spend fourteen months repudiating arbitration and then invoke the same clause as a categorical bar to joinder or as a basis to displace the entire federal case. Nor does the clause automatically sweep in every party and issue now before the Court. Even if SVOTHI may potentially be treated together with VideoApp for purposes of the joint venture dispute under an alter-ego theory, the present case still includes claims against a nonsignatory defendant who did not sign the agreement, and no recognized basis has been shown on the present record to bind him personally to that clause. *Id.*; *Matter of Belzberg*, 21 N.Y.3d at 631–34.

### III. VideoApp waived any right to use the clause as a bar to joinder

Under *Morgan v. Sundance*, waiver exists where a party knew of its right to arbitrate and acted inconsistently with that right; prejudice is not required. *Morgan*, 596 U.S. at 417–19. VideoApp's conduct satisfies that standard on its face. It knew of the arbitration clause and of DAM's arbitration demand, yet instead of proceeding in arbitration it affirmatively invoked judicial process to stop that arbitration altogether.

VideoApp filed an Article 75 petition specifically seeking to permanently stay the arbitration DAM had commenced and maintained that anti-arbitration posture for approximately fourteen months. That is conduct fundamentally inconsistent with any present claim that arbitration is the exclusive or mandatory forum. New York law points the same way. In *Cusimano*, the Court of Appeals held that a party may waive arbitration by using the courts in a manner clearly inconsistent with a later claim that the dispute belongs in arbitration, and found waiver where parties litigated for approximately a year before seeking arbitration. *Cusimano*, 26 N.Y.3d at 400–01. The concern is stronger here because VideoApp went to court for the express purpose of preventing arbitration.

That sequence matters to the question the Court posed. A party cannot use the courts to prevent arbitration for more than a year and then reverse course and invoke the same clause as a bar to joining the contractual counterparty in the pending federal case. The clause is not a one-way tactical device.

### IV. Arbitration between DAM and VideoApp would not resolve the full dispute now before the Court

If SVOTHI independently owns the marks, independently operates the relevant sites, and asserts claims based on rights separate from VideoApp and separate from the Joint Venture framework, then

arbitration between DAM and VideoApp would not resolve the central trademark dispute currently before this Court. Denying joinder on arbitration grounds would therefore fragment, not streamline, the case.

Conversely, if SVOTHI and VideoApp are functionally the same for purposes of the joint venture dispute, that still would not convert arbitration into a complete substitute for this action. The present case includes claims and issues not coterminous with a simple contract dispute between the Joint Venture signatories.

If the Court concludes that some subset of claims between DAM and VideoApp remains subject to arbitration notwithstanding waiver, any resulting limitation should be narrowly tailored. Defendants have identified concrete consequences from the prolonged delay, including asserted exclusion from a major distribution platform after SVOTHI invoked this federal action in communications with AEBN while the parties' dispute remained unresolved. Whatever ultimate weight the Court gives those merits-related facts, they underscore why a blanket stay would risk practical prejudice while doing little to simplify the broader controversy.

For the foregoing reasons, Defendants respectfully request that the Court determine that the Joint Venture Agreement's arbitration clause does not foreclose joinder of VideoApp in this federal action, determine that VideoApp waived any right to insist upon arbitration as a bar to joinder, and permit the overlapping disputes to proceed in this Court. In the alternative, if the Court concludes that some DAM-VideoApp issues remain arbitrable, Defendants respectfully request that any resulting limitation or stay be narrowly tailored so that nonarbitrable claims remain before this Court.

**Dated:** May 8, 2026

Respectfully submitted,
/s/
Ravi Ivan Sharma
SHARMALAW – Ravi Ivan Sharma, P.C.
26 Broadway, Suite 1108
New York, NY 10004
(212) 537-5957
ravi@sharmalaw.com
*Attorneys for Defendants*

cc. jgallagher@hs-law.com, tlapsia@hs-law.com