GLENN AGRE BERGMAN & FUENTES

Joseph Gallagher
jgallagher@glennagre.com
1185 Avenue of the Americas, 22nd Floor
New York, NY 10036
(212) 970-1608

May 22, 2026

**VIA ECF**

Hon. Andrew L. Carter, U.S.D.J.
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 444
New York, NY 10007

> Re: *SVOTHI, Inc. v. Dark Alley Media, LLC et al.,* **Case No. 25-cv-00333**

Your Honor:

Pursuant to the Court's April 22nd order (Dkt. No. 94), Plaintiff SVOTHI, Inc. ("SVOTHI") respectfully submits this letter brief to address the applicability of the Joint Venture Agreement's ("JV Agreement") mandatory arbitration provision on the claims in this matter. The JV Agreement, which is attached as Exhibit A, is between defendant Dark Alley Media, LLC ("DAM") and SVOTHI's affiliate, VideoApp Inc. ("VideoApp"). The arbitration provision requires that "[a]ny and all disputes arising from or relating to this Agreement shall be submitted to full and final resolution by binding arbitration, to be conducted in New York, New York." Ex A. at § 9.7. Despite seeking to arbitrate claims against SVOTHI under the JV Agreement in the past, DAM now denies that SVOTHI is covered by the Agreement. As set forth below and in SVOTHI's prior submission on this issue (ECF No. 89), it is both consistent with the JV Agreement and in the interest of judicial and party economy to permit this dispute to be consolidated with similar disputes between the parties in arbitration.

**Relevant Background**

This is but one part of a wide-ranging dispute between DAM, SVOTHI, VideoApp, and their respective principals. SVOTHI filed this case on January 13, 2025, seeking damages for DAM's misuse of its trademarks. The next day, DAM responded by making a formal demand for JAMS arbitration against VideoApp for breach of the JV Agreement. *See* ECF No. 89 at 1. Two weeks after that, DAM and its 50% co-owner, Robert Felt, sued VideoApp, Mr. Todaro, and others in New York State court for defamation and a variety of business torts (the "Defamation Action") arising, they claim, out of their broken business relationship with VideoApp. *Id.*

Hon. Andrew L. Carter
Page **2** of **5**
March 22, 2026

Five days later, VideoApp filed a petition under Article 75 of the CPLR seeking to enjoin DAM's proposed arbitration (the "Article 75 Proceeding"). *Id.* at 2. In light of this filing and the fact that the arbitration provision does not designate a particular arbitral forum (*i.e.*, it does not say JAMS, AAA, or any other arbitration service), JAMS declined to administer the arbitration. *Id.*

On April 7, 2025, DAM wrote to SVOTHI (the "SVOTHI Letter") demanding that it "arbitrate pursuant to the [JV Agreement]" because it "is the principal of and/or the alter ego of Videoapp, Inc. and therefore bound by the arbitration clause contained in the" JV Agreement." A copy of the SVOTHI Letter is attached as Exhibit B. For the avoidance of doubt, SVOTHI denies that it is an alter ego of VideoApp but now consents to arbitrate pursuant to the demand in the SVOTHI Letter and shall bring the claims it has asserted in this action in arbitration instead.

In late 2025, after a settlement fell apart and after DAM moved to disqualify VideoApp's prior counsel in the state court matters, the undersigned took over the representation of SVOTHI, VideoApp, and Mr. Todaro. *See* Dkt. No. 89 at 2-3. On March 18, 2026, SVOTHI informed the Court that (i) VideoApp is withdrawing its Article 75 petition and will consent to arbitration, and (ii) SVOTHI agrees to "arbitrate claims related to the JV Agreement, and the claims asserted in this action, against DAM in an arbitration administered by JAMS," given that the DAM/VideoApp arbitration provides the most efficient forum for hearing SVOTHI's claims regarding the same intellectual property. *Id.*

At a telephonic conference on April 14th, the Court asked the parties to submit letter briefs on the applicability of the arbitration clause to this dispute. DAM submitted its letter brief (the "DAM Brief") on May 8, 2026 (Dkt. No. 95). DAM went beyond the Court's instruction and instead of addressing whether SVOTHI is subject to the arbitration agreement, claimed that *all* claims related to the JV Agreement, including those between DAM and VideoApp that were the subject of DAM's initial arbitration demand, should somehow be heard in this Court. *See* DAM Brief at 2.

**Argument**

I.    **The Arbitration Clause in the JV Agreement Extends to SVOTHI Because the Parties Have Agreed to Extend it to SVOTHI**.

Under the Federal Arbitration Act, an agreement to arbitrate arising from a contract is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to arbitration on

Hon. Andrew L. Carter
Page **3** of **5**
March 22, 2026

issues as to which an arbitration agreement has been signed." *Polanco v. Spartan Auto Group, LLC*, 2025 WL 3110432, at *3 (S.D.N.Y. Nov. 6, 2025) (internal citations omitted). Courts facing such questions must address "whether the parties agreed to arbitrate," "the scope of that agreement," whether any federal statutory claims falling with the agreement are not arbitrable, and if "some, but not all" of the claims are arbitrable, whether to stay proceedings. *Id.* (*quoting Bristol v. Securitas Sec. Servs. USA, Inc.*, 597 F. Supp. 3d 574, 578 (S.D.N.Y. 2022)).

New York law is similarly clear that arbitration agreements are to be enforced whenever they are found to exist. A "valid arbitration agreement only requires proof that the parties intended to be bound by such an agreement," regardless of whether it was reduced to writing. *Beautyko, LLC v. FedEx Ground Package Sys., Inc.*, 2015 WL 224361, at *3 (S.D.N.Y. Jan. 16, 2025).

SVOTHI's position is straightforward: Defendants themselves demanded that SVOTHI submit to arbitration under the JV Agreement via the SVOTHI Letter, and SVOTHI has agreed to do so. Having gotten what they wanted, Defendants now reverse course and ask this Court to deny the very arbitration they demanded, and indeed to shoehorn other arbitrable claims brought against a non-party into federal court. The Court should reject both of DAM's requests and allow the parties, in the interest of judicial and party economy and consistent with the JV Agreement, to consolidate these claims with the other claims involving the disputed IP between SVOTHI, VideoApp, and DAM in the one place where they are best heard: arbitration.

## II.    Defendants' Arguments Are Without Merit.

### A.  The Arbitration Clause Has Not Been Waived.

The bulk of Defendants' argument in the DAM Brief rests on VideoApp's prior objection to arbitration and its filing of the Article 75 Proceeding. But this argument has the unique feature of being both unripe and moot. VideoApp is not a party to these proceedings. It is not a plaintiff, and Defendants have not filed third-party claims against VideoApp to bring it into these proceedings. Moreover, VideoApp has informed the court overseeing the Article 75 Proceedings that it intends to discontinue them, and will move to do so at the appropriate time. In other words, VideoApp has consented to arbitrate the issues set forth in the Demand, just as SVOTHI now consents to arbitrate these issues as DAM requested in the SVOTHI Letter. There is no waiver to adjudicate where the party in question has voluntarily abandoned the allegedly inconsistent litigation posture and agreed to proceed in arbitration.

This argument also fails as a matter of law. Defendants rely heavily on the Supreme Court's 2022 opinion in *Morgan v. Sundance, Inc.*, in which a unanimous Court rejected a rule that the Eighth Circuit had grafted onto the FAA purporting to require a showing of harm to demonstrate a party had waived its right to arbitrate. *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022). *Morgan*,

Hon. Andrew L. Carter
Page **4** of **5**
March 22, 2026

however, did not address what kinds of facts actually constitute waiver. There, Morgan sued Sundance in federal court. Sundance moved to dismiss, and then answered and interposed affirmative defenses, all without mentioning the binding arbitration agreement between the parties. Then, after a failed mediation, Sundance raised the arbitration agreement for the first time and moved to compel. *Id.* at 414-15. That is not the case here, where DAM sought to arbitrate, VideoApp challenged the applicability of the arbitration clause under state law, DAM asserted counterclaims in that action to compel arbitration, and VideoApp has indicated that it will withdraw its petition prior to any ruling on either side's applications. See Dkt. No. 89 at 2-3.

*Cusimano v. Schnurr*, cited in the DAM Brief, is similarly unhelpful to Defendants. In that case, the Court of Appeals concluded that plaintiffs had waived their right to arbitrate under a written agreement by "vigorously pursuing their litigation strategy" for a year. That strategy included filing their arbitral claims in court first, and only seeking to move to arbitration after the judge hearing the case mused that the claims might be "frivolous." The court found that this shift in tactics was "indicative of blatant forum shopping" and constituted waiver. *See* 26 N.Y.3d 391, 401 (2015).[1] But unlike the potentially "frivolous" litigation in *Cusimano*, the Article 75 Proceeding was not litigation on the merits brought in defiance of an arbitration agreement. It was a proceeding specifically designed to determine whether DAM's demand for arbitration was valid or not.

There is no reason or basis to bring VideoApp into this case. SVOTHI respectfully submits that the proper course of action would be to allow the claims here to be subject to arbitration, as DAM previously requested.

### B. Claims Against Mr. Felt Are Arbitrable.

Defendants also contend that Robert Felt, as a nonsignatory to the JV Agreement, cannot be compelled to arbitrate. A non-signatory may be compelled to arbitrate under the "direct benefits" theory of estoppel where, as here, he "'knowingly exploits' the benefits of an agreement containing an arbitration clause, and receives benefits flowing directly from the agreement." *Belzberg v. Verus Investments Holdings Inc.*, 21 N.Y.3d 626, 631 (2013). Mr. Felt produced the videos containing the offending marks at issue here and received meaningful economic benefit for doing so under the JV Agreement, which contains the relevant arbitration clause.

---

[1] It is not clear that the portion of *Cusimano*'s holding relying on a finding of prejudice has survived *Morgan* intact. However, we do not rely on that portion of the holding for this argument.

Hon. Andrew L. Carter
Page **5** of **5**
March 22, 2026

### C.  Arbitration is the Most Efficient Way to Resolve this Dispute

Defendants assert that arbitration would not resolve the full dispute before this Court. That depends largely on Defendants' own choices. SVOTHI (and VideoApp) stand ready to arbitrate the full range of IP- and joint venture-related disputes with DAM and Mr. Felt. SVOTHI has indicated as much to this Court, to the court overseeing the Article 75 Proceedings, and to JAMS.[2] JAMS has not yet responded to this proposal, presumably because the arbitrability issue is still pending in various courts, and DAM has now strategically decided to ignore its prior demands for arbitration against VideoApp and SVOTHI alike. The Court should not do the same.

For the foregoing reasons, SVOTHI respectfully requests that this Court stay proceedings pending (i) the resolution of any arbitration between DAM and SVOTHI, or (ii) the refusal by JAMS to administer an arbitration in which SVOTHI's claims in this action against DAM may be heard. If the Court nevertheless declines to enforce the arbitration clause in this case, SVOTHI renews its request that the parties be ordered to attend a settlement conference before the magistrate judge.

Respectfully submitted,

Joseph Gallagher

---

[2] SVOTHI is not seeking to move the Defamation Action to arbitration because it involves different issues that are not subject to the arbitration clause in the JV Agreement.