# EXHIBIT A

Case 1:25-cv-00333-ALC    Document 107-1    Filed 07/21/26    Page 2 of 23

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

| | | |
|---|---|---|
| **PRESENT:** | **HON. JAMES G. CLYNES** | **PART** 39M |
| | *Justice* | |

-------------------------------------------------------------------------X

DARK ALLEY MEDIA, LLC, ROBERT FELT,

                Plaintiff,

        - v -

VIDEOAPP INC., ANDRE COSTA-KLEIN, ELVIS TAOUIL,
DAMIAN TODARO, DOES 1 THROUGH 10

                Defendant.

-------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 151501/2025 |
| **MOTION DATE** | 02/19/2025, 09/10/2025 |
| **MOTION SEQ. NO.** | 001 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 42, 43, 44, 45, 46, 54, 56

were read on this motion to/for                DISMISSAL            .

The following e-filed documents, listed by NYSCEF document number (Motion 003) 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 177, 192, 193, 195

were read on this motion to/for                REINSTATE            .

      Upon the foregoing documents and following oral argument, it is ordered that Defendants' motion to dismiss (Motion Sequence 001) and to reinstate their previously withdrawn motion to dismiss (Motion Sequence 003) are consolidated for disposition and are decided as follows.

      Plaintiffs Dark Alley Media, LLC ("DAM") and Robert Felt a/k/a Owen Hawk ("Felt" or "Hawk") (together "plaintiffs") bring this defamation case against VideoApp Inc. d/b/a PPVNetworks ("PPVN"), Damian Todaro ("Todaro"), Andrew Costa-Klein a/k/a Marco Star ("Star"), Elvis Taouil ("Elvis") and 1-10 John Does, (collectively "defendants"). Plaintiffs allege that defendants defamed plaintiffs claiming, among other things, that Hawk committed crimes and nearly killed a dog with meth. These false accusations allegedly affected plaintiffs' professional

Case 1:25-cv-00333-ALC    Document 107-1    Filed 07/21/26    Page 3 of 23

reputation, their business relations with platforms such as Adult Entertainment Broadcast Network ("AEBN"), and their ability to earn income.

Defendants PPVN and Todaro (together "moving defendants") previously moved to dismiss plaintiffs' complaint pursuant to CPLR 3211 (a) (7), CPLR 3211 (g), Civil Rights Law 70-a and Civil Rights Law 76-a (Motion Sequence 001) but then withdrew the motion pursuant to a stipulation (*see* NYSCEF Doc Nos 54 and 56). By Decision and Order dated December 3, 2025 (NYSCEF Doc No. 195), the Court granted the motion to reinstate the prior motion to dismiss (Motion Sequence 003) and reinstated Motion Sequence 001. For the reasons stated below, the court grants moving defendants' motion to dismiss (Motion Sequence 001) and awards them attorney's fees.

### BACKGROUND FACTS AND PROCEDURAL HISTORY

A.  Allegations in the Verified Amended Complaint

DAM produces and distributes adult entertainment (NYSCEF Doc No. 110, Mullen affirmation, exhibit 2, amended complaint, ¶ 4). Felt is a managing member and a 50% owner of DAM (*id.* at ¶ 5). He has 20 years of experiences in adult entertainment and operates under the professional name Owen Hawk (*id.* at ¶ 5). In 2010, DAM entered into an exclusive contract with AEBN, a leader in video-on-demand services (*id.* at ¶¶ 18-19).

PPVN is also an adult entertainment company (*id.* at ¶ 6). Todaro owns PPVN and resides in Fire Island, New York (*id.* at ¶ 7). Elvis was PPVN's employee during the relevant time, was Todaro's long-term partner, and was listed as a person "working with creators to schedule their content release" (*id.* at ¶¶ 8-10).

DAM and PPVN had a joint venture since 2010, for which they signed an agreement in 2019 that governed the operation of an adult video website, among other things (*id.* at ¶ 23). In the

Case 1:25-cv-00333-ALC    Document 107-1    Filed 07/21/26    Page 4 of 23

joint venture, DAM contributed video content, industry expertise and connections with performers and PPVN provided website hosting, billing and customer service (*id.* at ¶¶ 24-25).

After DAM and PPVN's relationship deteriorated in 2024, Todaro, Elvis and PPVN, individually and in concert, allegedly defamed, harassed, and interfered to harm plaintiffs and their reputation and business (*id.* at ¶ 30). Elvis, working within the scope of his employment for the moving defendants, allegedly used official Twitter accounts that PPVN uses for its business, @rawfuckclub and @nastypigs, and various other anonymous accounts to make false and defamatory statements about plaintiffs (*id.* at ¶ 31-34).

Plaintiffs, however, allege that they are the original owners of Twitter account @rawfuckclub, which DAM used to communicate with customers, promote the business, and engage with professionals from the industry (*id.* at ¶¶ 96-97). Todaro allegedly obtained access to the account from a DAM former employee by threatening legal action against them if they did not switch the two-factor authentication for the account to Todaro's phone (*id.* at ¶¶ 99-105). After gaining access to the account, Todaro allegedly granted access to Elvis, who then used it to defame Hawk (*id.* at ¶ 104-106).

Elvis is alleged to have tweeted the following defamatory statements using PPVN official accounts and other anonymous accounts:

(1) On April 20, 2024, on X via @rawfuckclub: "Make sure @owenhawk is sober on set . . . He has a parole officer to report too" (*id.* at ¶ 36).

(2) On April 20, 2024, on X via @nastypigs: "NYC HAS MANY SOCIAL PROGRAMS CRACKHEAD . . . I love my block feature your amphibious looking freak . . . She [David Eck] was fired for doing drugs and stealing money. Begs for he last $1000 dollars for crack and then gets blocked for life" (*id.* at ¶ 38).

(3) On December 7, 2024, on YouTube via @musclefuk1225: "You are supporting a sex offender . . . Owen Hawk committed illegal activities and was terminated. He is not being Honest! . . . he is a DRUG ADDICT and nearly killed someones dog by dropping a METH baggie on the floor . . . Owen Hawk tried killing my dog with METH (*id.* at ¶ 40).

Case 1:25-cv-00333-ALC   Document 107-1   Filed 07/21/26   Page 5 of 23

(4) On December 7, 2024, on YouTube via @musclefuk1225: "You ar A Guy Named Rural is supporting a sex offender . . . Owen Hawk committed illegal activities and was terminated. . . He is not being Honest! . . . he is a DRUG ADDICT and nearly killed someones dog by dropping a METH baggie on the floor . . . Owen Hawk tried killing my dog with METH . . . ASK ABOUT THE REAL REASON HE WAS TERMINATED" (*id.* at ¶¶ 49-51).

(5) Via @AlexChavez5461: "I was very excited when I was asked to travel interstate to shoot for RFC some studio content. I was invited by @OwenHawkXXX. After a long flight I arrived and was greeted by @OwenHawkXXX. I was told that unfortunately the shoot fell through because his cameraman / bf had a . .mental breakdown the night before and wasn't available. I am very familiar with mental heath issues and totally respected the situation at hand. Until . . . . Day 2 I met up with a friend from ATL. He showed me texts of who he had been with the last 48 hours. If @OwenHawkXXX considers a cameraman partying for 48 hours a mental health issue. Fuck knows what he considers mental health issues. I am disgusted that he would LIE to my face!" (*id.* at ¶ 59).

(6) On December 11, 2024, on X via @JacqueMenOff: "I WANT MY MONEY YOU HAVE STOLEN. OWEN HAWK IS LYING. . . remember FRAUD is real and so is your felony actions . . . He also stole revenue from (lost count) of many producers" (*id.* at ¶¶ 61-62).

(7) On December 10, 2024, via JacqueMenoff@gmail.com filed a DMCA notice with AEBN accusing DAM of trafficking, underage material and non-consensual content: "Owen Hawk was requested to take down material from numerous sites cause creators had never signed 2257 compliance forms . . . this is a felony. A federal offense . . . will be reaching out to your banking compliance and host with a growing group of creators also pursuing legal action and takedowns. You are enabling and promoting the same thing porn hub got destroyed for"[1] (NYSCEF Doc No. 129, Mullen affirmation, exhibit 21, Felt's affirmation at ¶ 61[2]).

(8) On January 1, 2025, on X via @EDBTZ365, in response to Hawk's post: "It's sad. disgusting, and illegal to see that someone like @alessiovegaxxx and @owenhawkxxx are making money on OF, JJ, on a dead person's videos" (*id.* at ¶ 47).

(9) Via @musclefuk1225 made a profile impersonating Mr. Eck, a DAM former employee: "My legs are on Tina crack diet" (*id.* at ¶ 48).

---

[1] The court notes that this alleged defamatory statement, and the two listed after (Nos. 8 and 9) were not plead in the amended complaint but were included in Felt's affirmation.

[2] Felt did not sign his affirmation that was submitted in opposition to the moving defendants' motion to dismiss (*see* NYSCEF doc No. 18). He signed the affirmation submitted in opposition to the moving defendants' motion to reinstate, however (*see* NYSCEF Doc No. 129), which the court will use. The affirmations are the same, so the moving defendants will not be prejudiced. As a result, the court will also refer to all the documents regarding the moving defendants' motion to reinstate for consistency purposes: where the motion to dismiss moving papers are also included.

Elvis also allegedly attacked Hawk's supporters by commenting on their online statements (NYSCEF Doc No. 110 at ¶ 72). Elvis allegedly stated through @muscfuk on X in reply to a comment posted by Beefy T in response to Hawk's tweets: "you obviously support people that like abusing other men . . . I'll be sure to tell your fans what you're all about" (*id.* at ¶ 72)[3]. He also allegedly stated on X, through @muscfuk in reply to a comment posted by a model in response of Hawk's tweets: "This is projection. I heard you uploaded illegal and stolen content . . . how many illegal GB did you upload? We also heard the word on the street, you forced your way onto a performer"[4] (*id.* at ¶¶ 73-74).

Todaro allegedly knew that Elvis used PPVN Twitter accounts to defame Hawk because Felt told him (*id.* at ¶ 43). Todaro allegedly condoned Elvis's conduct because he continued to allow Elvis to defame Hawk (*id.* at ¶ 46).

As a result of the moving defendants' defamatory actions, AEBN allegedly terminated the exclusive contract with plaintiffs, causing "significant" financial loss, reputational damage, and interference with its business (*id.* at ¶¶ 77-78).

A. Procedural Posture

On January 31, 2025, plaintiffs filed the complaint against defendants. On February 19, 2025, the moving defendants filed a motion to dismiss. On March 24, 2025, plaintiffs opposed the moving defendants' motion to dismiss and filed their amended complaint. Todaro and PPVN filed their reply on April 16, 2025.

On June 26, 2025, the moving defendants withdrew their motion to dismiss because the parties reached a settlement in principle. When the settlement did not go through, the moving defendants

---

[3] The amended complaint does not explicitly allege that this is a defamatory statement against plaintiffs, but states that it was an attack to Hawk's supporters, so the court will not treat it as such.
[4] The same as with footnote No. 3.

**151501/2025   DARK ALLEY MEDIA, LLC ET AL vs. VIDEOAPP INC. ET AL**           **Page 5 of 22**
**Motion No.  001 003**

5 of 22

Case 1:25-cv-00333-ALC   Document 107-1   Filed 07/21/26   Page 7 of 23

moved to reinstate their motion to dismiss and to dismiss all of plaintiffs' claims. On December 23, 2025, the court granted the moving defendants' motion to reinstate (Motion Sequence 003) and stayed discovery pending the determination of the instant motion to dismiss (motion sequence no. 001).

## DISCUSSION

Under CPLR 3211 (a) (7), the movant has the burden to demonstrate that the complaint, construed liberally in favor of the plaintiff, states no legally cognizable cause of action (*Leon v Martinez,* 84 NY2d 83, 87-88 [1994]; *see also Goshen v Mut. Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002]. Plaintiff is accorded "the benefit of every possible favorable inference" (*Goshen*, 98 NY2d at 326 [internal quotation marks and citation omitted]). "Whether the plaintiff will ultimately be successful in establishing [its] allegations is not part of the calculus" (*Greystone Funding Corp. v Kutner*, 121 AD3d 581, 583 [1st Dept 2014] [internal quotation marks and citation omitted]).

CPLR 3211 (g) (1) provides that a motion under CPLR 3211 (a) (7) "shall be granted unless the party responding to the motion demonstrates that the cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law. The court shall grant preference in the hearing of such motion." Under CPLR 3211 (g) (1), "the defendant bears the initial burden of showing that the action or claim is a SLAPP suit. Once the defendant makes that showing, the burden shifts to the plaintiff to demonstrate that the claim has a 'substantial basis in law'" *Reeves v Associated Newspapers, Ltd.*, 232 AD3d 10, 12 [1st Dept 2024], lv to appeal dismissed, 44 NY3d 990 [2025] [internal citations omitted]). Substantial basis in law means "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact'. . . and it requires the submission of evidence such as an affidavit

151501/2025  DARK ALLEY MEDIA, LLC ET AL vs. VIDEOAPP INC. ET AL
Motion No. 001 003

Page 6 of 22

rather than reliance on the mere allegations in the complaint'" (*Black v Ganieva*, 236 AD3d 427, 428 [1st Dept 2025] [internal citations omitted]; CPLR 3211 [g] [1]). If dismissal is granted, defendant is entitled to a mandatory award of attorney's fees (*Reeves*, 232 AD3d at 12).

As an initial matter, the moving defendants' motion to dismiss will be directed to plaintiffs' amended complaint, which was filed with plaintiffs' opposition to moving defendants' motion to dismiss. A court may apply a dismissal motion to plaintiff's amended complaint if the moving party decides that its pending motion should be applied to the new pleading (*Plotch v Citibank, N.A.*, 244 AD3d 604, 604 [1st Dept 2025] [internal citations omitted]). Here, plaintiffs' amended complaint "did not moot the motions to dismiss" (*Fownes Bros. & Co., Inc. v JPMorgan Chase & Co.*, 92 AD3d 582, 582 [1st Dept 2012]), as the moving defendants decided that its motion should be applied to plaintiff's amended complaint (*see* NYSCEF Doc No. 152, Mullen affirmation, exhibit 44, p. 9).

(A) Civil Rights Law 76-a (anti-SLAPP statute)

The moving defendants argue that the New York anti-SLAPP law applies because the alleged defamatory statements against Hawk, who admitted that he is a public figure in the original complaint, were made on public forums and the statements about sexual impropriety and criminal accusations are matters of public interest. The moving defendants further argue that plaintiffs fail to carry their burden to prove that their claims have substantial basis in law that: there is no evidence that the moving defendants made the alleged defamatory statements or that the statements are susceptible of defamatory meaning. Even if the moving defendants were the authors or speakers, the statements identified are opinion and cannot be defamatory. The moving defendants further contend that plaintiffs fail to provide any evidence that Elvis's online postings were within the scope of his employment with the moving defendants, and thus they cannot be held liable for

151501/2025  DARK ALLEY MEDIA, LLC ET AL vs. VIDEOAPP INC. ET AL          Page 7 of 22
Motion No. 001 003

7 of 22

Case 1:25-cv-00333-ALC    Document 107-1    Filed 07/21/26    Page 9 of 23

his actions through a respondent superior theory. They argue that there is no proof of actual malice and that no statements are defamatory per se.

The moving defendants also contend that the amended complaint does not cure the defects in the original complaint because it does not specify all the defamatory statements per CPLR 3016 (a) and states that "on information and belief" that the moving defendants are the speakers. The moving defendants further contend plaintiffs have waived a chance to seek discovery on any issues raised in the motion, as allowed by CPLR 3211 (g) (3).

In opposition, plaintiffs argue that the anti-SLAPP law does not apply because the alleged defamatory statements were not matter of public interest, but of a private legal matter. Plaintiffs further contend that they met their burden of showing a substantial legal basis for their claims through their amended complaint and Felt's affirmation. Plaintiffs contend that defendants' actual malice and liability have been sufficiently shown through circumstantial evidence. Additionally, plaintiffs argue that defamation per se, where no special damages are required, has been pleaded because Owen Hawk is Felt's professional persona. Defamation of Hawk thus injures Felt and DAM's reputation. Finally, plaintiffs argue that the moving defendants are liable for Elvis's alleged defamatory statements through the doctrine of respondent superior because he wrote them in furtherance of his employment with PPVN.

"A SLAPP suit, typically sounding in defamation, is brought to intimidate or silence a person who has spoken out about a matter of public interest" (*Reeves*, 232 AD3d 12 [internal citations omitted]). "The anti-SLAPP law (*see* Civil Rights Law §§70-a, 76-a; CPLR 3211[g])" however, "is designed to deter strategic lawsuits against public participation and thereby protect the free exercise of speech, petition and association" (*Reeves*, 232 AD3d at 12 [internal quotation marks and citations omitted]).

Civil Rights Law 76-a states, in relevant part, that:

"An 'action involving public petition and participation' is a claim based upon:

(1) any communication in a place open to the public or a public forum in connection with an issue of public interest; or

(2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition" (§ 76-a [1][a]).

A "claim" is defined to include "any lawsuit, cause of action, cross-claim, counterclaim, or other judicial pleading or filing requesting relief" (Civil Rights Law § 76-a [1][b]). "'Communication' shall mean any statement, claim, allegation in a proceeding, decision, protest, writing, argument, contention or other expression" (Civil Rights Law § 76-a [1][c]). Further, "'*[p]ublic interest' shall be construed broadly*, and shall mean any subject other than a purely private matter" (Civil Rights Law § 76-a [1][d] [emphasis added]). Plaintiff may recover damages only if they establish:

"by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false, where the truth or falsity of such communication is material to the cause of action at issue"

(Civil Rights Law § 76-a [2]; *see also Reeves v Foundation for the Child Victims of the Family Cts*, 2026 NY Slip Op 00861, *1 [1st Dept 2026). "'Clear and convincing evidence' is the burden of proof at trial. On a motion to dismiss in an action involving public petition and participation, a plaintiff need only demonstrate that the claim 'has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law'" (*Reeves*, 2026 NY Slip Op 00861 at *1).

The court will first turn to whether the defendants' alleged false statements made on social media constitute a matter of public concern. "Matters of public concern include matters of political, social, or other concern to the community, even those that do not affect the general population"

Case 1:25-cv-00333-ALC    Document 107-1    Filed 07/21/26    Page 11 of 23

(*Aristocrat Plastic Surgery, P.C. v Silva*, 206 AD3d 26, 29-30 [1st Dept 2022] [internal citations omitted]). "When determining whether content is within the sphere of legitimate public concern, allegedly defamatory statements can only be viewed in the context of the writing as a whole and courts must examine the content, form, and context of statements" (*id.* at 30 [internal quotation marks and citations omitted]; *see also Huggins v Moore*, 94 NY2d 296, 302 [1999]). Further, "[s]tatements falling into the realm of mere gossip and prurient interest are not matters of public concern nor are publications directed only to a limited, private audience" (*Aristocrat Plastic Surgery, P.C.*, 206 AD3d at 30 [internal quotations marks and citation omitted]).

Multiple cases show that courts in New York have used an expansive interpretation when analyzing the issue of what constitutes "public interest." "[D]efendant's reviews on internet recommendation platforms of plaintiff physician's treatment were communications made 'in connection with an issue of public interest'" (*Aristocrat Plastic Surgery, P.C*, 206 AD3d at 27). A LinkedIn post explicitly referring to the Black Lives Matter movement was found to be a matter of public concern and interest (*Stiloski v Wingate*, 241 AD3d 958, 960 [2d Dept 2025]). Articles on issues of fraud and deceptive practices, regarding real estate transactions that could affect the public, found to be within the definition of public interest (*Golan v Daily News, L.P.*, 77 Misc 3d 258, 263 [Sup Ct, NY County 2022], affd 214 AD3d 558 [1st Dept 2023]). A statement made to a customer accusing plaintiff, an entity operating with the authority of governmental agency, of criminal conduct deemed as an assertion in connection with an issue of public interest (*Moonbeam Gateway Mar., LLC v Chan*, 239 AD3d 965, 966 [2d Dept 2025]). "The statements [defendant] made [on a podcast] regarding the domestic violence she experienced during her marriage to [plaintiff] and the attendant mental health issues she suffered concerned 'an issue of public interest rather than a purely private matter'" (*Gillespie v Kling*, 217 AD3d 566, 567 [1st Dept 2023]

Case 1:25-cv-00333-ALC    Document 107-1    Filed 07/21/26    Page 12 of 23

[internal quotation marks and citation omitted]). Statements concerning domestic violence, child abuse, and race relations were found to be of legitimate public concern under anti-SLAPP law (*Carey v Carey*, 74 Mis 3d 1214[A], 2022 NY Slip Op 50124[U], *4 [Sup Ct, NY County 2022], affd 220 AD3d 477 [1st Dept 2023]). And allegations of criminal conduct were found to be matters of public interest (*Reeves*, 232 AD3d at 19-20 [internal citations omitted]).

Applying the law to the facts at hand, the alleged defamatory comments made against the moving defendants were publicly visible and related to matters beyond a purely private concern. Most of the alleged defamatory statements against Hawk were made were on public forums, X (formerly Twitter) and YouTube after a business relationship between DAM and PPVN deteriorated. Social media, such as Facebook and similar social media platforms have been found to qualify as public forums (*Nelson v Ardrey*, 231 AD3d 179, 183 [2d Dept 2024]). The alleged defamatory statements made on social media accused Hawk or DAM of criminal behavior (including, being on parole, having substance abuse issues while working, misusing DMCA processes in a professional/industry context, and almost killing a dog with meth), which go beyond purely private gossip (*Reeves*, 232 AD3d at 19-20 [internal citations omitted].

Further, although the alleged defamatory statements are about Hawk and DAM, they can also be read broadly to address issues of distribution of porn videos without the actors' consent and criminal conduct committed by adult video companies or actors, which is a public concern (*see* NYSCEF Doc No. 143; *see also* Civil Rights Law § 76-a [1] [d] ["Public interest shall be construed broadly"]). Further, some of the posts are allegedly linked to PPVN's official corporate/professional Twitter accounts, showing that these are public communications intended to reach a wide audience and have public visibility, and are not purely private exchanges.

151501/2025   DARK ALLEY MEDIA, LLC ET AL vs. VIDEOAPP INC. ET AL                    Page 11 of 22
Motion No.  001 003

11 of 22

Case 1:25-cv-00333-ALC    Document 107-1    Filed 07/21/26    Page 13 of 23

For all these reasons, the moving defendants have demonstrated that plaintiff's action triggers the anti-SLAPP/Civil Rights Law § 76-a law.

(B) Substantial basis in law

Because the anti-SLAPP statute applies, plaintiffs bear the burden of showing that their claims have a substantial basis in law (*see* CPLR 3211 [g] [1]). The court will "consider the pleadings and supporting and opposing affidavits stating the facts upon which the action or defense is based" (CPLR 3211 [g] [2]).

### 1. Defamation

A defamatory statement is one that "tends to expose a person to public contempt, hatred, ridicule, aversion or disgrace" (*Thomas H. v Paul B.*, 18 NY3d 580, 584 [2012] [internal citations omitted]). The court must determine whether the disputed statements must be "reasonably susceptible of a defamatory connotation" (*Davis v Boeheim*, 24 NY3d 262, 268 [2014] [internal citations omitted]; *see also Ava v NYP Holdings, Inc.*, 64 AD3d 407, 412 [1st Dept 2009] [internal citations omitted]).

A defamatory statement "must either cause special harm or constitute defamation per se" (*Dillon v City of New York*, 261 AD2d 34, 38 [1st Dept 1999]). To prevail in a defamation claim, a plaintiff must show "(1) a false statement that is (2) published to a third party (3) without privilege or authorization and that (4) causes harm, unless the statement is one of the types of publications actionable regardless of harm" (*Stepanov v Dow Jones & Co., Inc.*, 120 AD3d 28, 34 [1st Dept 2014], citing *Dillon*, 261 AD2d at 38 ). Further, statements "'(i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman' are defamatory per se" (*Carey*, 2022 NY Slip Op 50124[U], *7). "A complaint alleging defamation must set forth the

151501/2025   DARK ALLEY MEDIA, LLC ET AL vs. VIDEOAPP INC. ET AL                    Page 12 of 22
Motion No. 001 003

12 of 22

Case 1:25-cv-00333-ALC    Document 107-1    Filed 07/21/26    Page 14 of 23

particular words allegedly constituting defamation (*see* CPLR 3016[a]), and it must also allege the time when, place where, and manner in which the false statement was made, and specify to whom it was made" (*Mor v Imbesi Law* Pc, 2022 NY Slip Op 30799 [U], 2022 WL 717901, *3, 2022 NYLJ LEXIS 370, *7 [Sup Ct, NY County 2022] [quotation marks and citations omitted]; *see also Dillon*, 261 AD2d at 38).

"[A] complaint must be dismissed where the statements in question are substantially true. . . If an allegedly defamatory statement is substantially true a claim of libel is legally insufficient and ... should [be] dismissed" (*Golan v Daily News*, L.P., 77 Misc 3d 258, 267 [Sup Ct, NY County 2022], affd 214 AD3d 558 [1st Dept 2023] [internal quotation marks and citations omitted]). Further, "[l]oose, figurative or hyperbolic statements are not actionable" (*Dillon*, 261 AD2d at 38 [internal quotation marks and citations omitted]) and an "expression of pure opinion is not actionable" (*Stiloski v Wingate*, 241 AD3d 958, 961 [2d Dept 2025] [internal quotation marks and citations omitted]; *see also Davis*, 24 NY3d at 269 [internal quotation marks and citations omitted]).

Courts apply three factors in analyzing whether a reasonable reader would consider a statement to connote fact or an opinion:

> "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact"

(*Davis*, 24 NY3d at 270 [internal quotation marks and citations omitted]). "Words have been characterized as 'imprecise' when they are 'indefinite and ambiguous' . . . and when they 'may mean different things to different people,' and cannot be proven true or false because of their 'subjective, relative meanings'" (*Jacobus v Trump*, 55 Misc 3d 470, 476-477 [Sup Ct, NY County

2017], affd 156 AD3d 452 [1st Dept 2017] [internal citations omitted]). "Context is [also] key" (*Carey*, 2022 NY Slip Op 50124[U], *7). "[T]he court should look to the over-all context in which the assertions were made," rather than examine the communication in isolation for the purpose of identifying the assertions of fact (*Davis*, 24 NY3d at 270 [internal quotation marks and citations omitted]). Further, "an opinion that implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it . . . is a 'mixed opinion' and is actionable (*Davis*, 24 NY3d at 269 [internal quotation marks and citations omitted]).

### 2. The Alleged Defamatory Statements

Below, the court addresses each alleged defamatory statement that plaintiffs attribute to Elvis to ascertain whether they are actionable and whether plaintiffs have met their burden as to each statement.

For online comments, when considering the context in which alleged defamatory statements are made: "courts have emphasized the generally informal and unedited nature of" statements made on social media, such as Twitter, and other online forums (*Ganske v Mensch*, 480 F Supp 3d 542, 553 [SD NY 2020]). The courts in this jurisdiction have held that readers "give less credence to allegedly defamatory remarks published on the Internet" (*Sandals Resorts Intl. Ltd. v Google, Inc.*, 86 AD3d 32, 44 [1st Dept 2011]; *see also Jacobus*, 55 Misc 3d at 478-479). However, "allegedly defamatory statements cannot be considered pure opinion simply because they were published on anonymous Internet message boards and similar sites" (*WA Rte. 9, LLC v. PAF Capital LLC*, 194 A.D.3d 508, 509 [1st Dept 2021] [internal citations omitted]).

(i)    <u>The alleged defamatory statement where plaintiffs failed to show falsity</u>

The statement "Make sure @owenhawk is sober on set . . . He has a parole officer to report too" was made on May 22, 2024 on Twitter by @rawfuckclub as a comment on a post regarding

**151501/2025 DARK ALLEY MEDIA, LLC ET AL vs. VIDEOAPP INC. ET AL**
Motion No. 001 003

Page 14 of 22

Case 1:25-cv-00333-ALC    Document 107-1    Filed 07/21/26    Page 16 of 23

filming with @rawfuckclub (NYSCEF Doc No. 129 at ¶ 13; NYSCEF Doc No. 130, Mullen affirmation, exhibit 22). The phrase "Make sure @owenhawk is sober on set" is a mixed opinion and actionable because it implies an underlying factual assertion that Hawk may not be sober or has a problem with sobriety while on set. The readers thus could reasonably infer that it is a verifiable fact. The phrase "He has a parole officer to report to" has a precise meaning that Hawk has a parole officer, and it is reasonably susceptible of being proven false.

Plaintiffs, however, fail to meet their burden because they do not sufficiently show that the alleged defamatory statement is substantially false (*Franklin v Daily Holdings, Inc.*, 135 AD3d 87, 94 [1st Dept 2015] ["To satisfy the falsity element of a defamation claim, plaintiff must allege that the complained of statement is substantially false"] [internal citations omitted]). "[I]f an allegedly defamatory statement is substantially true, a claim of libel is legally insufficient and ... should [be] dismissed" (*id.*, at 94 [internal quotation marks and citations omitted]).

Felt admits in his text message exchanges with Todaro and Elvis that he has substance abuse issues (*see* NYSCEF Doc Nos. 132-133, Mullen affirmation, exhibits 24-25). Further, plaintiffs fail to affirmatively show that Felt's addiction does not affect his work, that he is not on parole or that he does not have a parole officer. Because plaintiffs failed to show that this alleged defamatory statement is substantially false, the statement is not actionable.

(ii)    <u>The alleged defamatory statement where plaintiffs failed to show that the statement was of and concerning plaintiffs</u>

Next the court considers the alleged defamatory statement: "NYC HAS MANY SOCIAL PROGRAMS CRACKHEAD . . . I love my block feature your amphibious looking freak . . . She [David Eck] was fired for doing drugs and stealing money. Begs for her last $1000 dollars for crack and then gets blocked for life" (NYSCEF Doc No. 110 at ¶ 38; NYSCEF Doc No. 129 at

151501/2025   DARK ALLEY MEDIA, LLC ET AL vs. VIDEOAPP INC. ET AL                    Page 15 of 22
Motion No. 001 003

15 of 22

¶13). Elvis allegedly made this statement on twitter via @nastypigs with the rawfuckclub logo on April 20, 2024, as a comment to a post that was deleted (NYSCEF Doc No. 130).

This statement is not actionable because plaintiffs do not sufficiently allege nor show that the statement was of and concerning plaintiffs. An alleged defamatory statement must be "of and concerning" the plaintiffs (*New York Times Co.*, 376 US 254, 288 [1964]). "To be 'of and concerning' the plaintiff, a statement must 'reasonably be read as accusing [plaintiffs] of personal involvement in the acts in question'" (*Greene v Paramount Pictures Corp.*, 813 Fed Appx 728, 731 [2d Cir 2020] [citation omitted]). The "burden is not a light one" (*Three Amigos SJL Rest., Inc. v CBS News Inc.*, 28 NY3d 82, 86 [2016]). Although plaintiffs do not have to be specifically named, plaintiffs must "plead and prove that the statement referred to [him or her] and that a person hearing or reading the statement reasonably could have interpreted it as such" (*id.*; *see also Julian v American Bus. Consultants*, 2 NY2d 1, 17 [1956] ["of and concerning" element is part of the libel plaintiff's prima facie case]). "[W]hether a plaintiff in a defamation action has demonstrated that a particular statement names or so identifies him so that the statement can be said to be of and concerning that plaintiff may be decided as a matter of law" (*Three Amigos SJL Rest., Inc.* 132 AD3d at 88). Here, the statement is not of and concerning plaintiffs because it does not name either plaintiff, Hawk or DAM. The statement also does not provide any identifying information that it is about plaintiffs. In fact, Felt affirmed that the statement is about David Eck.

(iii)     The alleged defamatory statements where plaintiffs failed to demonstrate that the statements were made by the moving defendants

The court now turns to the alleged defamatory statements allegedly made by Elvis via anonymous account @muscelfuk1225 on December 7, 2024. These statements will be analyzed together because they were all comments made in response to a YouTube video titled

Case 1:25-cv-00333-ALC   Document 107-1   Filed 07/21/26   Page 18 of 23

"RawFuckClub and their Crimes (Against Owen Hawk)" posted by a user named "A Gay Named Rural" (NYSCEF Doc No. 137-138, Mullen affirmation, exhibits 29-30):

(1) On December 7, 2024, on YouTube via @musclefuk1225: "You are supporting a sex offender . . . Owen Hawk committed illegal activities and was terminated. He is not being Honest! . . . he is a DRUG ADDICT and nearly killed someones dog by dropping a METH baggie on the floor . . . Owen Hawk tried killing my dog with METH (NYSCEF Doc No. 110 at ¶ 40).

(2) You ar A Guy Named Rural is supporting a sex offender . . . Owen Hawk committed illegal activities and was terminated. . . He is not being Honest! . . . he is a DRUG ADDICT and nearly killed someones dog by dropping a METH baggie on the floor . . . Owen Hawk tried killing my dog with METH" (*id.* at ¶ 49).

(3) "ASK ABOUT THE REAL REASON HE WAS TERMINATED" (*id.* at ¶ 51).

Plaintiffs fail to meet the substantial basis in law burden for these three alleged defamatory statements because they do not sufficiently demonstrate that they were made by the moving defendants. "In order to state a claim for defamation, a complaint must identify adequately who actually made the allegedly [defamatory] statements, when they were made and to whom they were communicated" (*Watson v NY Doe 1*, 439 F Supp 3d 152, 160 [SD NY 2020] [internal citations omitted]; *see also Murphy v City of New York*, 2008 NY Slip Op 31926 [U], *6 [Sup Ct, NY County 2008] ["Plaintiff also fails to allege which of the defendants actually published . . . the . . . [r]eport and to whom it was published. Even if this Court were to overlook plaintiff's lack of specificity in his complaint, in his opposition to this motion, plaintiff has failed to adduce any evidence that any of the defendants published the report"]). Felt's affirmation and the amended complaint fail to prove with supporting evidence that the moving defendants authored the statements or controlled the account @muscelfuk1225[5] (*see Smith v. Montee*, 2021 N.Y. Misc.

---

[5] The court notes that plaintiffs did not make a petition for pre-action limited discovery to determine the identity of the account (*see GSB Gold Std. Corp. AG v. Google LLC*, 2023 NYLJ LEXIS 3067, *5 [Sup Ct, NY County 2023]["petitioner is entitled to pre-action disclosure of information as to the identity of the Anonymous Blogger, as

LEXIS 2525, *10 [Sup Ct, Bronx Couty 2021]; *Alexanian v. Varvaro*, 2022 N.Y. Misc. LEXIS 23708, *4 [Sup Ct, Queens County 2022], citing CPLR 1024 ["Plaintiff has not specifically identified the defendant Jane Doe or the negative google reviewers as the authors or speakers of the alleged defamatory statement"]). The statements are thus not actionable.

The court turns next to the alleged defamatory statement that Elvis allegedly made on December 11, 2024, to AEBN Content Team, via email account JacqueMenoff@gmail.com (NYSCEF Doc No. 144, Mullen affirmation, exhibit 36). Plaintiffs alleged that this email first filed a DMCA notice citing five DAM releases and flagging them as being in violation of DMCA rules due to underage material, trafficking and non-consensual content (NYSCEF Doc No. 129 at ¶¶ 61-62). The alleged defamatory statement was then sent through the email stating:

> "OWEN HAWK WAS REQUESTED TO TAKE DOWN MATERIAL FROM NUMEROUS SITES CAUSE CREATORS HAD NEVER SIGNED 2257 COMPLIANCE FORM . . . THIS IS A FELONY. A FEDERAL OFFENSE . . . WILL BE REACHING OUT TO YOUR BANKING COMPLIACE AND HOST ASAP WITH A GROWING GROUP OF CREATORS ALSO PURSUING LEGAL ACTION AND TAKEDOWNS. YOU ARE ENABLING AND PROMOTING THE SAME THING PORN HUB GOT DESTOYED FOR"

(*id.* at ¶ 61; *see also* NYSCEF Doc No. 144).

This alleged defamatory statement is not actionable because plaintiffs failed to meet their burden of a substantial basis in law. Felt's affirmation states that the statement was false, and that the IP address related to the DMCA notices filed by JacqueMenoff@gmail.com was traceable to Islip and Bayshore, Long Island, placing "JacqueMenoff@gmail.com" in the same vicinity where Elvis and Todaro reside and have their PPVN headquarters (NYSCEF Doc No. 129 at ¶¶ 62-65). Felt points to the fact that the emails sent to AEBN by JacqueMenoff@gmail.com mentions Todaro by stating "he has been very helpful" (*see id.* at ¶ 68; NYSCEF Doc No. 144 ["I suggest

---

she has sufficiently established the merits of her proposed cause of action for defamation against that person . . . the information sought is material and necessary to identify the potential defendant"]).

**151501/2025  DARK ALLEY MEDIA, LLC ET AL vs. VIDEOAPP INC. ET AL**          Page 18 of 22
**Motion No. 001 003**

18 of 22

you contact Damian Todaro from RFC. He has been very helpful and a great source of information"]) as evidence that Todaro had some involvement. Plaintiffs, however, fail to sufficiently show that the moving defendants made this alleged defamatory statement or that they had control of JacqueMenoff@gmail.com (*Watson*, 439 F Supp 3d at 160 [internal citations omitted]; *see also Murphy*, 2008 NY Slip Op 31926 [U] at *6; *Smith*, 2021 N.Y. Misc. LEXIS 2525, *10; *Alexanian*, 2022 N.Y. Misc. LEXIS 23708, *4).

Further, Star's affirmation and the supporting documents show that Elvis texted Star stating that Hawk's ex, David, is the one that uncovered that Hawk was posting videos without consent and "David sent legal takedowns stating they didn't get 2257's signed" (NYSCEF Doc No. 111). Further, Felt admits in his text exchange with Todaro that "David is making noise again and Elvis is going off on some insane rant" while he is "just trying to work" (NYSCEF Doc No. 133, Mullen affirmation, exhibit 25). These text messages, without more proof, undercut plaintiffs' position that only Elvis could have contacted AEBN and made the alleged defamatory statement at issue. For all these reasons, this alleged defamatory statement is not actionable.

Next the court will turn to Elvis's alleged defamatory statement made on X on December 11, 2024, using @JacqueMenOff, where he replied to @OwenHawkXXX's tweets announcing his intent to bring legal action against PPVN (NYSCEF Doc No. 129 at ¶ 46; NYSCEF Doc No. 140, Mullen affirmation, exhibit 32): "I WANT MY MONEY YOU HAVE STOLEN. OWEN HAWK IS LYING . . . remember FRAUD is real and so is your felony actions . . . . He also stole revenue from (lost count) of many producers: (NYSCEF Doc No. 110 at ¶ 61).

Plaintiffs fail to meet their burden of substantial basis in law as to this statement for the same reason: they do not sufficiently demonstrate that it was made by the moving defendants. Felt's affirmation and the amended complaint merely states that the statements are false without

providing any supporting evidence that the moving defendants authored the statements or controlled the account @JacqueMenOff (*see Watson*, 439 F Supp 3d at 160 [internal citations omitted]; *Murphy*, 2008 NY Slip Op 31926 [U] at *6; *Smith*, 2021 N.Y. Misc. LEXIS 2525, *10; *Alexanian*, 2022 N.Y. Misc. LEXIS 23708, *4). For all these reasons this alleged defamatory statement is not actionable.

The court next considers the alleged defamatory statement made by Elvis on December 8, 2024 on X using @AlexChavez5461:

> "I was very excited when I was asked to travel interstate to shoot for RFC some studio content. I was invited by @OwenHawkXXX. After a long flight I arrived and was greeted by @OwenHawkXXX. I was told that unfortunately the shoot fell through because his cameraman / bf had a . .mental breakdown the night before and wasn't available. I am very familiar with mental heath issues and totally respected the situation at hand. Until . . . . Day 2 I met up with a friend from ATL. He showed me texts of who he had been with the last 48 hours. If @OwenHawkXXX considers a cameraman partying for 48 hours a mental health issue. Fuck knows what he considers mental health issues. I am disgusted that he would LIE to my face!" (NYSCEF Doc No. 110 at ¶ 59; *see also* NYSCEF Doc No. 129; NYSCEF Doc No. 139, Mullen affirmation, exhibit 31).

This statement is also not actionable because plaintiffs fail to sufficiently demonstrate that it was made by the moving defendants (*Watson*, 439 F Supp 3d at 160 [internal citations omitted]; *Murphy*, 2008 NY Slip Op 31926 [U] at *6; *Smith*, 2021 N.Y. Misc. LEXIS 2525, *10; *Alexanian*, 2022 N.Y. Misc. LEXIS 23708, *4). There is insufficient evidence to tie the moving defendants to the anonymous account.

Finally, the court analyses the alleged defamatory statement that Elvis allegedly made via @musclefuk1225, impersonating Mr. Eck, a DAM former employee: "My legs are on Tina crack diet" (NYSCEF Doc No. 129 at ¶ 48). This statement is not actionable because plaintiffs again fail to sufficiently show that it was made by the moving defendants (*Watson*, 439 F Supp 3d at 160 [internal citations omitted]; *Murphy*, 2008 NY Slip Op 31926 [U] at *6; *Smith*, 2021 N.Y. Misc.

LEXIS 2525, *10; *Alexanian*, 2022 N.Y. Misc. LEXIS 23708, *4). Additionally, the moving defendants fail to show that the statement was "of and concerning" plaintiffs (*Three Amigos SJL Rest., Inc.*, 28 NY3d at 86 [internal citations omitted]).

For the foregoing reasons, plaintiffs' defamation claim against the moving defendants is dismissed. Plaintiffs' remaining claims of tortious interference with contract, tortious interference with prospective business relations, business disparagement and intentional infliction of emotional distress are dismissed "as duplicative of the defamation claim, as they allege no new facts and seek no distinct damages from the defamation claim" (*Perez v Violence Intervention Program*, 116 AD3d 601, 602 [1st Dept 2014]; *see also S.N. v Integral Yoga Inst., Inc.*, 2026 NY Slip Op 00217, 1 [1st Dept Jan. 15, 2026]; *L.Y.E. Diamonds, Ltd. v Gemological Inst. of Am., Inc.*, 169 AD3d 589, 591 [1st Dept 2019]).

Finally, civil conspiracy is not an independent tort. "While a plaintiff may allege, in a claim of [defamation] or other tort, that parties conspired, the conspiracy to commit . . . [the] tort is not, of itself, a cause of action" *Hoeffner v Orrick, Herrington & Sutcliffe LLP*, 85 AD3d 457, 458 [1st Dept 2011]). Because all of plaintiffs' underlying causes of action are being dismissed, civil conspiracy cannot stand on its own and is also dismissed.

## CONCLUSION and ORDER

Accordingly, it is

ORDERED that the motion of defendants VideoApp Inc. d/b/a/ PPVNetworks and Damian Todaro for an Order reinstating their prior motion to dismiss (Motion Sequence Number 003) is granted and the prior motion to dismiss (Motion Sequence Number 001) is reinstated; and it is further

**151501/2025   DARK ALLEY MEDIA, LLC ET AL vs. VIDEOAPP INC. ET AL**          Page 21 of 22
**Motion No.  001 003**

21 of 22

ORDERED that the motion of defendants VideoApp Inc. d/b/a PPVNetworks and Damian Todaro for an Order dismissing the Complaint of plaintiffs Dark Alley Media, LLC and Robert Felt a/k/a Owen Hawk against them (Motion Sequence Number 001) is granted and the Complaint is dismissed in its entirety as against moving defendants, with costs and disbursements to defendants as taxed by the Clerk of the Court, and the Clerk is directed to enter judgment accordingly in favor of defendants; and it is further

ORDERED that within ten (10) days from the entry of this order, defendants VideoApp Inc. d/b/a PPVNetworks and Damian Todaro shall file and serve on all parties an itemized bill fully detailing the actual costs and attorney's fees associated with this action; the truthfulness and accuracy of which be affirmed by an attorney of said firm who is fully familiar with the facts and circumstances of the instant matter; and it is further

ORDERED that if plaintiffs Dark Alley Media, LLC and Robert Felt a/k/a Owen Hawk dispute the accuracy or reasonableness of the costs and attorney's fees incurred by defendants VideoApp Inc. d/b/a PPVNetworks and Damian Todaro, within ten (10) days from service of the itemized bill referenced above, plaintiffs must file and serve on all parties a sworn statement setting forth their basis for disputing the accuracy or reasonableness of said costs and fees.

This constitutes the Decision and Order of the Court.

| 7/14/2026 | | | | |
|---|---|---|---|---|
| DATE | | | JAMES G. CLYNES, J.S.C. | |

| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | X | GRANTED | ☐ DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ | SETTLE ORDER | | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ | INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

151501/2025 DARK ALLEY MEDIA, LLC ET AL vs. VIDEOAPP INC. ET AL   Page 22 of 22
Motion No. 001 003

22 of 22